**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

Hints, Inc. and Elan Pavlov,                          )
                                                      )
                          Plaintiffs,                 )          Case No.  1:21-cv-573
                                                      )
v.                                                    )
                                                      )          **COMPLAINT**
Andrew Hirshfeld, in his Official Capacity            )
Performing the Functions and Duties of the            )
Director of the United States Patent and              )
Trademark Office,                                     )
                                                      )
                          Defendant.                  )
                                                      )

      Plaintiffs Hints, Inc. ("Hints") and Elan Pavlov ("Dr. Pavlov") (collectively "Plaintiffs")

bring this action against Mr. Andrew Hirshfeld ("Hirshfeld"), in his official capacity performing

the functions and duties of the director of the U.S. Patent and Trademark Office ("USPTO"), to

order the USPTO to reinstate Patent Cooperation Treaty ("PCT") Application No. US 19/61456

("the PCT Application" or "the '456 Application").

      This case began when Plaintiffs' patent agent made a clerical error in one box on one of

many forms submitted with a patent filing.  Plaintiffs' agent worked at a Chicago law firm

located at 333 North Michigan Avenue.  However, on one form, Plaintiffs' agent incorrectly

typed his street address as 33 North Michigan Avenue, a non-existent address.  Mistakes like this

happen from time to time when filing patents, so the USPTO has built redundancies into the

patent filing systems so such mistakes can be timely identified by the USPTO and easily rectified

by the patent applicant, without serious consequences to patent applicants.  When filing a patent

application, a patent agent is required to type his or her mailing address a second time in the

USPTO's electronic filing portal.  And every patent agent's filing account is linked to a

"customer number," which is linked to the agent's mailing address, email address, and telephone

number, so the USPTO can locate the patent agent if a typographical error results in an incorrect mailing address.  In fact, the USPTO's standard practices and procedures direct its employees to check these other sources to determine correct addresses when incorrect or inconsistent addresses are contained on the face of a patent application.

Here, the USPTO mailed two necessary fee payment forms to the non-existent address. When both mailings to "33 North Michigan Avenue" were returned to the USPTO as undeliverable, the USPTO took no apparent steps to locate Plaintiffs or Plaintiffs' agent, even though the USPTO had the ability to find the correct mailing address (333 North Michigan Avenue) by looking to at least two other sources that contained the correct address.  The USPTO then proceeded to deem Plaintiffs' PCT Application abandoned and withdrawn, and continued to use the same incorrect address when it mailed the "Notification that International Application Considered to be Withdrawn" after it had already received two notices from the U.S Postal Service that this address was non-existent.  The USPTO made this decision even though separate and additional regulations require notice to the patent applicant or its agent before declaring an application withdrawn for failing to pay fees.  The USPTO gave no such proper notice here.

When Plaintiffs' agent discovered during a routine docket check that the PCT Application has been deemed withdrawn by the USPTO, he filed a petition to reinstate the patent application.  The petition complied with USPTO regulations and rules that expressly allow a patent applicant to reinstate a patent application by submitting the necessary forms and paying the necessary fees.  The USPTO denied this petition by concluding that "there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees."  This position was plainly contradicted by the Patent Act, the Patent Cooperation Treaty, and underlying rules and regulations.  It was also inconsistent with

the USPTO's longstanding practice of routinely granting such petitions to reinstate patent applications when an applicant states that it unintentionally missed paying fees and then pays the back fees due.

Plaintiffs' patent agent filed a second petition to reinstate the patent application. This time, the USPTO admitted that "it [was] clear that applicant did not receive the forms as they were returned to the USPTO with an indication [from] the Postal Service that no such street number existed" and conceded that "recourse does exist . . . for situations where [the necessary form] was mailed but the applicant never received the [form]." However, the USPTO dismissed the petition because it concluded "the forms in question were properly mailed" by the USPTO, without regard to whether the mailings were actually received. This conclusion was plainly contradicted by the USPTO's own regulations and procedures and was again inconsistent with its past practice of granting similar petitions when an applicant can demonstrate that it did not receive notification from the USPTO, as both the applicant and the USPTO agree happened here.

Plaintiffs continue to seek relief from the USPTO, both through formal petition and informal correspondence, but to date, the USPTO has not acted and refuses to grant relief, even though Plaintiffs are required to convert their PCT Application into a national stage application by May 14, 2021 in the United States and in other jurisdictions by June 14, 2021. As a result of the USPTO's (in)action, Plaintiffs cannot proceed with their patent applications in the United States or abroad claiming the PCT Application's priority date, and thus risk losing the ability to secure full patent rights for their invention. Such disproportionate consequences for a simple typographical error that the USPTO not only has authority to forgive but has promulgated regulations and procedures to remedy are unwarranted. The USPTO's actions here were arbitrary, capricious, contrary to law, and inequitable. Plaintiffs request that this Court set aside

the USPTO's actions, order the USPTO to vacate the "considered withdrawn" status, and permit Plaintiffs to proceed with further patent filings that claim the PCT Applications priority date.

## PARTIES

1.      Plaintiff Hints, Inc. is a Delaware corporation with a principal place of business at 57 Seventh Street, Cambridge, MA 02141.

2.      Plaintiff Elan Pavlov is an individual who resides in the Commonwealth of Massachusetts.

3.      Dr. Pavlov is the founder and principal of Hints and also the named inventor of the PCT Application.

4.      As the intended assignee from Dr. Pavlov of the PCT Application, Hints is named as the Applicant on the PCT Application.

5.      Defendant Andrew Hirshfeld is the Commissioner of Patents at the USPTO and is also currently performing the functions and duties of the Director of the USPTO and Under Secretary of Commerce for Intellectual Property pending the Presidential nomination and Senate confirmation of another individual for that position. Hirshfeld is named as Defendant in this case solely in his official capacity.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 5 U.S.C. §§ 702-706 (the Administrative Procedure Act, or "APA"), and 28 U.S.C. §§ 1331, 1338(a), and 1361.

7.      Venue is proper in this Judicial District under 5 U.S.C. §§ 702-706 and 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### Hints & Pavlov Develop Methods for Detecting
### and Stopping Fake News on Social Media

8.      Dr. Pavlov is a prolific inventor, serial entrepreneur, and respected scientist in the field of artificial intelligence.  After earning his Ph.D. in 2006 from Hebrew University, he completed post-doctoral studies at the Massachusetts Institute of Technology.  Since finishing his studies at MIT, Dr. Pavlov has been involved in research and development across a variety of areas, including RFID, aquaculture, and machine learning technologies.

9.      Dr. Pavlov formed Hints, Inc. in 2018 to commercialize a process that he developed called the Human Interaction News Trust System.

10.      The PCT Application, entitled "System and Method for Detecting Misinformation and Fake News via Network Analysis," is part of Dr. Pavlov's attempt to patent aspects of the Human Interaction News Trust System.

11.      The disclosed and claimed invention traces its origins to research Dr. Pavlov began in 2016, and in lay terms, relates to automating methods for detecting and then stopping the spread of so-called fake news articles on social media platforms.

### To Protect Their Invention, Hints and Pavlov Filed a PCT Application

12.      The '456 application was filed with the USPTO on November 14, 2019 under the Patent Cooperation Treaty ("PCT"), designating the United States and other countries as "designated states." The '456 application claims priority to a USPTO provisional patent application filed a year earlier on November 14, 2018.

13.      The PCT is an international treaty that sets forth harmonized global standards for the filing and initial processing of patent applications.

14.     Under the PCT, a single filing in a national patent office receives a patent application number and the receiving office performs some preliminary review functions.  That single filing can later be used as a "priority" patent application in any of many jurisdictions around the world, subject to complying with additional restrictions of that jurisdiction.

15.     A patent applicant is not required to commit to designated jurisdictions when it initially files a PCT application.  Instead, it makes that decision later, if and when it chooses to enter the "national stage" in each jurisdiction it seeks patent coverage (or when it otherwise uses the application for priority purposes, e.g., as the basis of a continuation application in the United States).  In each country that is a signatory to the PCT, the national stage patent application is deemed to have been filed as of the priority date of the PCT application, regardless of where it was filed, not the date it enters the national stage in that country.

16.     Because patent rights flow from the date a patent application was filed, a patent applicant often files a PCT patent application before finalizing the list of jurisdictions, if any, in which it intends to seek patent protection.  Also, an applicant is not required to pay filing fees with the filing of a PCT patent application.

17.     If an applicant chooses not to pay fees with the filing, the Receiving Office will send what is known as "Notification Concerning Payment of Prescribed Fees" (Form PCT/RO/102) indicating the amount of fees required, and by when.

18.     If an applicant does not pay the fees in this Notification, the Receiving Office will send an "Invitation to Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) requiring submission of fees, as well as a late payment fee, by a certain date.

19.     If the applicant does not pay the fees in this Invitation, the Receiving Office will send a "Notification that International Application Considered to be Withdrawn" (Form

PCT/RO/117) indicating that the international application is considered withdrawn for failure to submit the fees required in the Invitation.

20.     Under PCT regulations, a Receiving Office may not issue a "considered withdrawn" finding until and unless it has sent a proper Form PCT/RO/133 to the applicant or the applicant's agent.  PCT Rule 16*bis*.1(a), (c).

21.     An application "considered withdrawn" has serious consequences, including the patent applicant generally being unable to use the PCT application as the basis for a national stage application.  This can have negative consequences for the patent application—for instance, if in the time between filing the PCT application and entering national stage the applicant has made public disclosures of the invention, the patent applicant could lose the ability to seek patent protection absent claiming priority to the PCT application.

22.     Here, the USPTO served as the "Receiving Office" for this PCT Application. Accordingly, the USPTO was required to receive the application and transmit necessary papers to Plaintiffs (or technically, Plaintiffs' patent agent), including papers related to the payment of fees.  The USPTO did not comply with these requirements.

### The USPTO Fails to Mail Papers to the Agent and Then Deems the PCT Application Withdrawn

23.     On November 29, 2019, the USPTO attempted to mail to Plaintiffs a "Notification Concerning Payment of Prescribed Fees" to the incorrect 33 North Michigan Avenue address.

24.     On December 17, 2019, the USPTO's November 29 mailing was returned to the USPTO by the U.S. Postal Service indicating "no such number."

25.     On January 13, 2020, the USPTO attempted to mail to Plaintiffs an "Invitation to Pay Prescribed Fees Together With Late Payment Fees" to 33 North Michigan Avenue address.

26.     On February 11, 2020, the USPTO's January 13 mailing was returned to the USPTO by the U.S. Postal Service indicating "no such number."

27.     As demonstrated by the returned mailings to the USPTO, neither Plaintiffs nor their patent agent ever received the "Notification" or "Invitation" mailings.

28.     Despite being informed by the U.S. Postal Service that the address did not exist, on February 26, 2020, the USPTO issued "Notification that International Application Considered to Be Withdrawn" and mailed that form to the 33 North Michigan Avenue address.

29.     Though the USPTO possessed Plaintiffs' agent's correct mailing and email address in association with the '456 Application file, the USPTO did not send the Notification or Invitation forms to either of those addresses before issuing its "considered withdrawn" finding.

30.     The USPTO possessed Plaintiffs' agent's correct mailing and email address in association with the '456 application file in at least two ways. First, with the November 14, 2019 filing, Plaintiffs' agent-designee, Clifford Kraft, entered this information correctly in data fields that must be filled out online when filing an application using the USPTO's Electronic Filing Service ("EFS") portal.  Second, with the November 14, 2019 filing, Mr. Kraft entered Plaintiffs' agent's correct "Customer Number"—a reference number indexed to postal and electronic mailing addresses and telephone numbers.  The USPTO created this indexed Customer Number system in part to help applicants avoid dire consequences from innocent typographical errors entered somewhere in an application file.

31.     On November 14, 2019, Mr. Kraft downloaded an Electronic Acknowledgement Receipt in response to the filing of the '456 Application.  The Receipt correctly indicated the Correspondence Address of Plaintiffs' agent as "333 N. Michigan Ave., Chicago, IL 60601."

The Receipt also listed the agent's correct email address.  Ex. A (PCT Application File History) at A0206.

32.    The USPTO never attempted electronic transmission of the Notification (PCT/RO/102) or Invitation (PCT/RO/133) forms.  This was contrary to PCT Administrative Instruction 709 ("Means of Communication with the Receiving Office"), directing Receiving Offices to use electronic communications in electronically-filed international applications, by stating in relevant part: "Where an international application is filed in electronic form and by electronic means of transmittal, the receiving Office shall, if practicable, send any notifications, invitations and other correspondence to the applicant by electronic means of transmittal in accordance with Annex F, or by such other means indicated by the applicant from among those offered by the Office."

33.    The USPTO instead sent those forms via regular mail to a nonexistent address in Chicago ("33 N. Michigan Ave.") instead of the correct address (333 North Michigan Avenue) that the USPTO had previously acknowledged as the "Correspondence Address" for this PCT Application.

34.    On December 17, 2019 and February 11, 2020, respectively, those forms were returned to the USPTO as undelivered. Each returned envelope contained postal service stamps indicating "RETURN TO SENDER / NO SUCH NUMBER / UNABLE TO FORWARD".  Ex. A at A0159, A0164.

35.    Neither Plaintiffs nor their agent received those mailings setting forth fees due.

36.    Despite the returned-undelivered status, no USPTO employee reached out to Plaintiffs or their agent about payment of fees or looming deadlines.

37.     Without any apparent investigation by the USPTO into why these mailings were returned, without any apparent further attempt to communicate with Plaintiffs or their agent by mail, email, or telephone, and with both of its only prior mailings returned as undeliverable, the USPTO issued a "considered withdrawn" finding in the '456 application on February 26, 2020.

38.     The phantom address "33 N. Michigan Ave." was the remnant of a typographical error on a transmittal form (PCT/RO/101, Box 4) filed with the '456 application.  Ex. A at A0211.

39.     At the time Mr. Kraft completed the transmittal form, he was dealing with a number of personal issues, including caring for his elderly wife who was suffering from dementia.  Mrs. Kraft passed away in July 2020.

40.     Although Mr. Kraft made a typographical error on the transmittal form, he included the correct mailing address in the EFS portal when filing the application and included the correct Customer Number when filing the address, as communicated by the USPTO on the November 14, 2019 Electronic Acknowledgement Receipt.

**Hints and Pavlov Learn Their Application Has Been Withdrawn and Petition for Its Restoration**

41.     In performing his docketing duties across multiple firm files, Mr. Kraft came to realize that no activity appeared to have occurred in the '456 Application since the filing date. Upon investigation, he discovered that a "considered withdrawn" finding had been entered, as considered above.

42.     On December 15, 2020, Mr. Kraft, acting as Plaintiffs' agent's designee, filed the first of three petitions to restore the PCT Application, a "Petition for Revival of an International (PCT) Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)."

43.     Rule 137(a) provides that for delays in replying to USPTO mailings, "[i]f the delay in reply by applicant or patent owner was unintentional, a petition may be filed pursuant to this section to revive an abandoned application."  Rule 137(b) then prescribes the relevant requirements of the petition, including the "petition fee" and "a statement that the entire delay was unintentional."

44.     Plaintiffs' Rule 137 petition included all required fees, including both the overdue fees and the petition fee.

45.     Plaintiffs' Rule 137 Petition also included the required statement that "[t]he entire delay . . . was unintentional."

46.     The USPTO generally does not require petitioners to explain the basis of an asserted unintentional delay. *See, e.g.,* 85 Fed. Reg. 12222 (March 2, 2020) (Clarification of the Practice for Requiring Additional Information in Petitions Filed in Patent Applications and Patents Based on Unintentional Delay) (noting the USPTO will only require additional information from the applicant about the "unintentional" statement when an extended delay exceeds two years).

47.     Although no explanation was required, here, the delay was plainly unintentional because (a) the USPTO mailed the required Notification and Invitation forms to a phantom address, (b) those forms were returned as undelivered to the USPTO, and (c) the phantom address was the remnant of an innocent typographical error in an otherwise properly filed application that included the correct address in at least two other ways.

48.     Rule 137 petitions are routine filings that the USPTO regularly grants when accompanied by the necessary fees and statement.  In fact, a search of the petition.ai database (a publicly-available, third-party database) reveals 1,256 petitions to accept unintentionally late

filing fees were granted between 2014 and 2021 (averaging almost 200 grants per year).  Under

35 U.S.C. § 363, an international application (such as the '456 Application) designating the

United States "shall have the effect . . . of a national application for patent regularly filed in the

Patent and Trademark Office."  Rule 137 petitions thus are equally available, by statute, for both

regular USPTO application filings and international filings like the '456 Application.

49.     Despite the seemingly routine nature of Plaintiffs' properly-filed Rule 137

petition, on January 1, 2021, the USPTO ruled the petition as "**<u>DISMISSED</u>** without prejudice"

(emphasis in original) and returned the tendered fees.

50.     The petitions officer/attorney advisor reviewing the petition adopted the following

reasoning, contrary to the USPTO's standard practice of routinely granting such petitions and

despite Plaintiffs complying with the Rule 137 regulations:

> Applicant's present petition asserts that the failure to submit a timely payment of
> the required fees was unintentional; however, there is ***no mechanism*** within the
> PCT to reinstate an international application that is considered withdrawn for
> failure to timely pay the required fees, regardless of whether the failure to timely
> pay the fees was unintentional. Applicant's present petition to reinstate this
> international application is therefore appropriately dismissed.

(Emphasis added).

51.     On January 27, 2021, Plaintiffs filed the second of three petitions to revive the

PCT application, styled a "Request for Reconsideration and Petition under 37 CFR 1.181 to

Withdraw Holding of Abandonment and Withdrawal and to Revive Unintentionally Withdrawn

PCT International Application."  Rule 181 allows the Director of the USPTO to "invoke the

supervisory authority of the Director" to overrule decisions of a patent examiner or attorney

advisor.

52.     The Rule 181 petition included all required fees and contained a sworn

declaration from Patent Attorney Robert Greenspoon, the supervisor of Mr. Kraft.  The

Greenspoon declaration set forth, under oath, the facts and circumstances around the unintentional failure to pay fees, and included all additional information the USPTO deems necessary in such petitions.  Ex. A at A0087-A0138.

53.     On February 26, 2021, the USPTO dismissed without prejudice the Rule 181 petition. Ex. A at A0054-A0056.  However, the USPTO changed tact from its denial of the Rule 137 petition, now acknowledging that "recourse does exist [under this Rule] for situations where a Form PCT/RO/117 withdrawing an international application was mailed but applicant never received the prior Form PCT/RO/102 and PCT/RO/133 at the official correspondence address of record."  Nonetheless, the USPTO denied the petition by construing the phantom address of "33 N. Michigan Ave." as the official correspondence address (despite the November 14, 2019 Electronic Filing Receipt providing a different address) and accordingly finding "that the forms in question were properly mailed."  Ex. A at A0055.

54.     The USPTO denied the Rule 181 petition even though it admitted that "it is clear that applicant did not receive the forms as they were returned to the USPTO with an indication [from] the Postal Service that no such street number existed."  Ex. A at A0054.

55.     On March 17, 2021, Plaintiffs filed the third of three petitions, styled "Request for Final Agency Action, and Renewed Petition Under 37 C.F.R. 1.137(a), 1.181, 1.182, and 1.183."

56.     Petitions under Rules 182 and 183 are typically filed in the last resort.  Rule 182 provides that "[a]ll situations not specifically provided for in the regulations of this part will be decided in accordance with the merits of each situation by or under the authority of the Director."  Rule 183 provides that "[i]n an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director."

57.     As of the filing of this Complaint, the USPTO has not acted on Plaintiffs' third petition.  The third petition noted an important impending deadline of May 14, 2021—the 30-month anniversary of the priority date—by which many jurisdictions require domestic filing of the PCT application.

58.     Plaintiffs have acted diligently to secure a ruling on their March 17, 2021 petition, including Plaintiffs' Patent Attorney Mr. Greenspoon calling and leaving voicemails with the attorney-advisor at the USPTO assigned to this file on May 3 and 4, 2021, and emailing the attorney-advisor on May 4, 2021.

59.     On May 4, 2021, the attorney-advisor assigned to this file advised Mr. Greenspoon over telephone that the March 17, 2021 petition was likely to be denied, but that formal denial may not be issued for several more weeks, potentially after the deadlines for Plaintiffs PCT Application to enter the national stage.

60.     By not acting on the petition in a timely manner, the USPTO has constructively denied Plaintiffs' third petition and effectively entered a final agency action.

**THE USPTO'S REFUSAL TO VACATE ITS "CONSIDERED WITHDRAWN" FINDING OF PLAINTIFFS' PCT APPLICATION VIOLATES THE PATENT ACT, THE PATENT COOPERATION TREATY, AND IMPLEMENTING REGULATIONS**

61.     The situation here is plainly addressed by statute, treaty, the implementing regulations, and the policies, practices, and prior petition decisions of the USPTO.

62.     The Patent Act provides that "[PCT] applications shall be processed by the Patent and Trademark Office when acting as a Receiving Office . . . in accordance with the applicable provisions of the treaty, the Regulations, and this title." 35 U.S.C. § 364(a).  "The term 'treaty' means the Patent Cooperation Treaty." 35 U.S.C. § 351(a).  "The term 'Regulations' . . . means

the Regulations under the treaty."  35 U.S.C. § 351(b).  The term "this title" refers to the rest of the Patent Act.

63.    35 U.S.C. § 364(a) accordingly mandates that the USPTO's decision whether to find Plaintiffs' PCT Application to be "considered withdrawn," and its ensuing decision whether to vacate, comport with the Patent Cooperation Treaty, PCT Regulations, and other provisions of the Patent Act.

64.    Additionally, 35 U.S.C. § 364(b) provides that "an applicant's failure to act within prescribed time limits in connection with requirements pertaining to [a PCT] application may be excused as provided in the treaty and the Regulations."

65.    The Patent Cooperation Treaty specifically addresses situations in which missed deadlines may be excused.  For example, PCT Article 48(2)(a) provides that "[a]ny Contracting State *shall*, as far as that State is concerned, excuse, for reasons admitted *under its national law*, any delay in meeting any time limit."  (Emphasis added). The USPTO must therefore treat PCT Applications in the same manner as it treats other patent applications under the Patent Act, including accepting petitions concerning unintentionally delayed fees.

66.    Likewise, the PCT regulations refer to **national law** to address situations in which missed deadlines may be excused.  For example, PCT Rule 82*bis* states in relevant part:

> 82*bis*    *Reinstatement of Rights and Other Provisions to Which Article 48(2) Applies*
>
> The provisions of the ***national law*** which is referred to in Article 48(2) concerning the excusing, by the designated or elected State, of any delay in meeting any time limit ***are those provisions which provide for reinstatement of rights***, restoration, restitutio in integrum ***or further processing in spite of non-compliance with a time limit, and any other provision providing for the extension of time limits or for excusing delays in meeting time limits***.

(Emphasis added).

67.     37 C.F.R. 1.137 (which implements 35 U.S.C. § 27, which permits the USPTO

"to establish procedures . . . to revive an unintentionally abandoned application for patent") is a

national law "provision[ ] which provide[s] for reinstatement of rights . . . or further processing

in spite of non-compliance with a time limit" pursuant to PCT Rule 82*bis*.  And under Article

48(2)(a), it is a reason "admitted under . . . national law" for excusing delayed payments of fees.

The USPTO was bound by statute, treaty, and regulation to grant Plaintiffs' properly filed Rule

137 petition.  Separately under 35 U.S.C. § 363, the '456 Application was to be treated (or to

"have the effect") as if it were a national application, thus expressly and directly requiring

invocation by the USPTO of restoration rules like Rule 137.

68.     Plaintiffs' Rule 137 petition was therefore a proper basis for the USPTO to vacate

its "considered withdrawn" status of the PCT Application, and thus the USPTO's decision to

deny the Rule 137 petition based on its decision that "there is no mechanism within the PCT to

reinstate an international application that is considered withdrawn for failure to timely pay the

required fees" is clearly erroneous and sufficient to grant the relief that Plaintiffs seek.

69.     Separately, Plaintiffs' second petition under 37 CFR 1.181 similarly provided

acceptable legal basis, pursuant to PCT Article 48(2)(a) and/or PCT Rule 82*bis* as incorporated

by 35 U.S.C. § 364, for the USPTO to vacate its considered withdrawn finding for the PCT

Application, and thus the USPTO's denial of the Rule 1.181 petition based on its decision that

"that the forms in question were properly mailed" is clearly erroneous and is sufficient to grant

the relief that Plaintiffs seek..

70.     The USPTO has a consistent record (at least until this case) of granting relief

when confronted with analogous factual circumstances. Proof of nonreceipt by the patent

applicant of a PCT invitation to pay fees has (at least until this case) routinely led to the Office

16

vacating "considered withdrawn" status, and permitting further prosecution. *See In re Application of Custom Care Products, Inc.*, PCT/US06/09552 (11 September 2007, Decision on Petition) (Ex. A at A0037-A0038); *In re Application of Yissum Research Development Company of the Hebrew University of Jerusalem*, PCT/US06/47336 (22 June 2007, Decision on Petition) (Ex. A at A0040-A0042); and *In re Application of Chevron U.S.A., Inc.*, PCT/US06/010812 (26 March 2007, Decision on Petition) (Ex. A at A0044-A0046).

71.     For example, in *Chevron*, the grant of relief followed a procedural history identical to that here: a first petition filed under Rule 137 that the Office dismissed without prejudice (dated December 20, 2006), followed by the Rule 181 petition that the Office granted. Both petitions were submitted more than two months after the "considered withdrawn" finding.

72.     In denying Plaintiffs' Rule 181 petition, the USPTO applied a legal standard that is not recognized in PCT Article 48(2)(a) and/or PCT Rule 82*bis* as incorporated by 35 U.S.C. § 364, nor consistent with its prior decisions and standards.

73.     The USPTO denied Plaintiffs' Rule 181 petition by stating that the "issue at hand is, were the forms mailed to the correct official correspondence address of record," and then concluding that the Box IV address on Form PCT/RO/101 (containing typo "33") was the "correct official correspondence address of record."

74.     However, that approach is inconsistent with the USPTO's prior rulings and guidance on Rule 181 petitions.  Typically, the USPTO considers whether a mailing was received, not whether the USPTO was obligated to use an indisputably non-existent address found on one line of one form due to a typographical error.  For example, Section 711.03(c)(I)(A) of the Manual of Patent Examining Procedure ("MPEP"), which cites *Delgar v.*

*Schuyler*, 172 USPQ 513 (D.D.C. 1971), explains that "an allegation that an Office action was never received may be considered in a petition to withdraw the holding of abandonment."

75.     Here, the USPTO did not dispute the agent's nonreceipt (nor could it given the returned mail indicated in the file history). In addition, the Rule 181 petition included a sworn declaration demonstrating non-receipt.   Plaintiffs thus met all standards for relief under Rule 181.

76.     The USPTO's actions here were rife with other procedural anomalies and inexplicable deviations from established practice, particularly in view of the US Postal Service's repeated notices that the 33 North Michigan Avenue address did not exist.

77.     When faced with conflicting addresses, typical USPTO procedure mandates the USPTO to use the address corresponding with Applicant's Agent's customer number. Although EFS-Web filing instructions, mirroring MPEP 1807, state that a Customer Number cannot be used to designate initially the correspondence address for a PCT application in the international stage, MPEP 403 provides that it can be used to reconcile inconsistencies when conflicting addresses are provided.

78.     MPEP 403(I) states in part that "As the Office will not recognize more than one correspondence address (37 CFR 1.33(a)), any inconsistencies between the correspondence address resulting from a Customer Number being provided in an application for the correspondence address and any other correspondence address provided in that application will generally be resolved in favor of the address of the Customer Number."  Here, the USPTO did not follow this procedure of using Plaintiffs' agent's customer number to resolve an address inconsistency.

79.     MPEP 403.01(a) also states in part that "37 CFR 1.33(a) specifies that if an applicant provides more than one correspondence address (in a single paper or in different papers), the Office will select one of the specified addresses for use as the correspondence address and, if given, may select the correspondence address associated with a Customer Number over a typed correspondence address."

80.     Using a customer number when an address inconsistency arises is both sensible and consistent with the Office's public statements about customer numbers. *See* https://www.uspto.gov/patents-application-process/applying-online/getting-started-new-users ("The customer number allows you to easily associate all your filings to a single mailing address, thus eliminating typographical errors or variations in addresses that can make it difficult to receive patent correspondence from the USPTO.").  The USPTO did not do so when inconsistencies arose here.

81.     The USPTO also failed to faithfully follow Rules 182 and 183 by not vacating in the interest of justice its considered withdrawn finding under these circumstances.  Plaintiffs' agent's designee Clifford Kraft had been working under great stress and suffering from personal grief since before the filing date of the PCT Application. His wife suffered from dementia, and her illness and ultimate death in July 2020 took a toll. Mr. Kraft was distracted because of his personal situation and was not able to exercise his normal high level of vigilance in overseeing patent files. The limitations imposed by the COVID-19 pandemic further aggravated this situation.

82.     And the USPTO failed to act in good faith, having received returned mail but taking no apparent steps to locate Plaintiffs or their agent, not acting to review the file to resolve address inconsistencies, and never using electronic communications as required by PCT

Administrative Instruction 709 ("Means of Communication with the Receiving Office"), which

states in relevant part: "(a) Where an international application is filed in electronic form and by

electronic means of transmittal, the receiving Office shall, if practicable, send any notifications,

invitations and other correspondence to the applicant by electronic means of transmittal in

accordance with Annex F, or by such other means indicated by the applicant from among those

offered by the Office."

83.     The USPTO's actions in that regard were again inconsistent with its internal

guidelines.  For example, MPEP 707.13, which is entitled Returned Office Action, provides as

follows:

> Office actions are sometimes returned to the Office because the United States
> Postal Service has not been able to deliver them. Upon receipt of the returned
> Office action, the Technology Center (TC) technical support staff will check the
> application file record to ensure that the Office action was mailed to the correct
> correspondence address. If the Office action was not mailed to the correct
> correspondence address, it should be stamped "remailed" with the remailing date
> and mailed to the correct correspondence address. The period running against the
> application begins with the date of remailing. ***If the Office action was mailed to
> the correct correspondence address and it was addressed to an attorney or
> agent, a letter along with a copy of the Office action may be sent to the
> applicant, or the first named inventor if more than one inventor is the applicant,
> informing the applicant of the returned action***. The time period for reply to the
> Office action will be restarted to run from the mailing date of the letter informing
> applicant of the returned action.
>
> A copy of the letter and a copy of the envelope should be added to the IFW. If the
> period dating from the remailing elapses with no communication from applicant,
> the application is abandoned.
>
> (Emphasis added).

The USPTO did not follow the above procedure with respect to the '456 application, though no

barrier stood in the way of the USPTO doing so.

84.     The USPTO's actions were also inconsistent with common notions of procedural

due process and fairness.  Faced with returned mail sent to a non-existent address, the USPTO

proverbially shrugged its shoulders and took no further steps to contact Plaintiffs or their agent, even with the potentially serious consequences of a PCT application being considered withdrawn and even though the USPTO was plainly able to locate Plaintiffs and/or their agent.

## JURY TRIAL DEMAND

85.     Plaintiffs request a jury trial on all matters triable to jury.

## COUNT I – VACATUR OF AGENCY ACTION CONTRARY TO LAW

86.     Plaintiffs incorporate by reference paragraphs 1-84.

87.     This action seeks judicial review of a final agency action under the APA. Specifically, Plaintiffs seek review of the final decision of the USPTO through its Director not to vacate the "considered withdrawn" status of the '456 Application despite the filing of the proper petitions and payment of necessary fees.

88.     The final USPTO decision was in violation of 37 C.F.R. 1.137, 1.181, 1.182 and 1.183, as well as 35 U.S.C. §§ 363 and 364, PCT Article 48, PCT Regulation 82*bis*.2, PCT Administrative Instruction 709, and is inconsistent with the USPTO providing sufficient procedural due process.

89.     The final USPTO decision was contrary to law, and is therefore unlawful and should be set aside under the APA, 5 U.S.C. § 706(2)(A) and (B).

## COUNT II – VACATUR OF ARBITRARY AND CAPRICIOUS AGENCY ACTION

90.     Plaintiffs incorporate by reference paragraphs 1-84.

91.     This action seeks judicial review of a final agency action under the APA. Specifically, Plaintiffs seek review of the final decision of the USPTO through its Director not to vacate the "considered withdrawn" status of the '456 Application and accept the tendered fees.

92.     The final USPTO decision was contrary to history, practices and policies of the USPTO under 37 C.F.R. 1.137, 1.181, 1.182 and 1.183, as well as 35 U.S.C. §§ 363 and 364, PCT Article 48, PCT Regulation 82*bis*.2, PCT Administrative Instruction 709, and is inconsistent with the USPTO providing sufficient procedural due process.

93.     The final USPTO decision was arbitrary, capricious, an abuse of discretion, and is therefore unlawful and should be set aside under the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Wherefore, Hints and Dr. Pavlov pray that this honorable court enter the following relief under law and equity:

1.     Temporarily restrain and preliminarily enjoin the USPTO from prohibiting Plaintiffs from proceeding with the PCT Application, including requiring the USPTO to allow the PCT Application to enter the national stage as if the PCT Application was not considered withdrawn.

2.     Direct the USPTO to vacate the USPTO's finding that the PCT Application has been considered withdrawn, and vacate the denial and dismissal of Plaintiffs' petitions.

3.     Direct the USPTO to accept Plaintiffs' petitions and tendered fees and accordingly reinstate Plaintiffs' PCT Application with full retroactive effect.

4.     Grant all other relief that is just and equitable under law and equity, including Plaintiffs' attorney's fees and expenses incurred in bringing this action.

Respectfully submitted,

May 6, 2021

/s/ Brian H. Pandya
Brian H. Pandya (VSB # 72233)_
Ryan M. Eletto (*pro hac vice* forthcoming)
Duane Morris LLP
505 9th Street NW, Suite 1000
Washington, DC 20004-2166
P: +1 202 776 7807
F: +1 202 478 2811
BHPandya@duanemorris.com
RMEletto@duanemorris.com

Attorneys for Plaintiffs Hints, Inc.
and Elan Pavlov