# Exhibit A



# United States Patent and Trademark Office

*Office of the Chief Financial Officer*

Document Code:WFEE

User :71168

Sale Accounting Date:04/30/2021

| Sale Item Reference Number | Effective Date |
|---|---|
| PCT/US19/61456 | 11/14/2019 |

| Document Number | Fee Code | Fee Code Description | Amount Paid | Payment Method |
|---|---|---|---|---|
| I20214T909324337 | 1601 | TRANSMITTAL FEE | $240.00 | Salea |
| I20214T909324337 | 1714 | INTERNATIONAL SEARCH (ROSPATENT) | $612.00 | Salea |
| I20214T909324337 | 1701 | INTL FILING FIRST 30PGS EFS WITHOUT ZIP | $1,250.00 | Salea |

IN THE INTERNATIONAL BUREAU AND THE
UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re PCT Application of: | ) | |
| | ) | |
| Applicant: Hints, Inc. | ) | Inventor: Elan Pavlov |
| | ) | |
| Serial No. PCT/US19/61456 | ) | Att. Dkt.: H-01PCT |
| | ) | |
| International Filing Date: Nov. 14, 2019 | ) | |
| | ) | |
| Title: System and Method for Detecting | ) | |
| Misinformation and Fake News | ) | Conf. No.: 4833 |
| Via Network Analysis | ) | |
| | ) | |

**ARTICLE 25 REQUEST TO THE INTERNATIONAL BUREAU
TO FORWARD THE ENTIRE PROSECUTION FILE**


PCT Receiving Office
United States Patent and Trademark Office
Alexandria VA, USA

PCT International Bureau
WIPO
Geneva, Switzerland


In the above-referenced PCT application, under PCT Article 25 and PCT

Applicant's Guide (National Phase) ¶ 6.019, please kindly send the entire prosecution file

(all documents) to the following jurisdictions, in furtherance of a potential request to such

jurisdictions under Articles 25 and 48 to disregard or find error within the "considered

withdrawn" status entered by the Receiving Office:

1) United States Patent and Trademark Office (USPTO)

2) European Patent Office (EPO)

A0002

3)  Intellectual Property India (Indian Patent Office)

4)  China National Intellectual Property Administration (China Patent Office)

5)  IP Australia (Australian Patent Office)

6)  Korean Intellectual Property Office (Korean Patent Office)

Should there be any questions or concerns, please contact the undersigned:

Robert Greenspoon
Flachsbart & Greenspoon, LLC
333 N. Michigan Avenue, Suite 2700
Chicago, Illinois 60603
Phone: 312-551-9500
Fax: 312-551-9501
Email: rpg@fg-law.com

Dated: 26 April 2021

Respectfully Submitted

/Robert Greenspoon/

USPTO Reg. No. 40,004
Agent for the Applicant

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 42554432 |
| **Application Number:** | |
| **International Application Number:** | PCT/US19/61456 |
| **Confirmation Number:** | 4833 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Customer Number:** | 93344 |
| **Correspondence Address:** | Flachsbart & Greenspoon<br>-<br>333 N. Michigan Avenue<br>27th Floor<br>Chicago                          IL                    60601-3901<br>US              312-551-9500<br>fg.law.rpg@gmail.com |
| **Filer:** | Robert P. Greenspoon. |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | |
| **Receipt Date:** | 26-APR-2021 |
| **Filing Date:** | 14-NOV-2019 |
| **Time Stamp:** | 16:07:59 |
| **Application Type:** | International Application (PCT) for filing in the US receiving office |
| **Patent Number:** | |

# Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Misc. incoming letter from Applicant - IA | Art25SendRequest.pdf | 62351<br><br>050ef139c93223366e9b925ea73a1ca0c27dfe93 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| | Total Files Size (in bytes): | 62351 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re PCT Application of: | ) |
| | ) |
| Applicant: Hints, Inc. | )    Inventor: Elan Pavlov |
| | ) |
| Serial No. PCT/US19/61456 | )    Att. Dkt.: H-01PCT |
| | ) |
| International Filing Date: Nov. 14, 2019 | ) |
| | ) |
| Title: System and Method for Detecting | ) |
|     Misinformation and Fake News | )    Conf. No.: 4833 |
|     Via Network Analysis | ) |
| | ) |

## REQUEST FOR FINAL AGENCY ACTION, AND
## RENEWED PETITION UNDER 37 C.F.R. 1.137(a), 1.181, 1.182 and 1.183

### INTRODUCTION

This is a request for reconsideration and for final agency action on decisions by the USPTO, as a PCT receiving office, declining to accept the unintentionally delayed payment of required fees for a PCT application, and otherwise declining to vacate a "considered withdrawn" declaration. The application was declared "considered withdrawn" for failure to pay the required fees. Those fees have now been paid, then refunded, then paid again. If any additional fees are deemed due (including for this petition), the Office is authorized to charge deposit account number 601428 associated with Agent's customer number 93344.

## I.    FIRST GROUND: THE PATENT COOPERATION TREATY PROVIDES NO DISCRETION TO REFUSE AN OTHERWISE COMPLETE PETITION UNDER 37 CFR 1.137(a)

As discussed in detail in this section, the USPTO had no discretion to refuse consideration under United States national law of an otherwise proper Rule 1.137(a) petition presented to it as a PCT receiving office. This mandatory obligation exists for the USPTO acting as the receiving

office for an international application. Prior petition decisions erroneously failed to accept the previously-filed Rule 1.137(a) petition.

On 15 December 2020, Applicant's Agent's designee filed a Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a). On 1 January 2021, the Attorney-Advisor in the office of International Patent Legal Administration dismissed that petition without prejudice, under reasoning that "there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees." On 27 January 2021, Applicant requested reconsideration of this decision on several grounds. Many of those grounds are discussed later in this paper. This section addresses mandatory obligations of the United States under the PCT.

The implementing statute for the PCT is 35 U.S.C. § 364. This statute mandates total compliance by the United States with the PCT. Section 364 expressly requires the United States as a "Receiving Office" to comply with "the applicable provisions of the treaty, the Regulations, and this title."

Until 2013, Section 364 used to contain an "excuse" clause noting that an applicant's failure to act within prescribed time limits could be excused, but only on a showing of "unavoidable delay," among other things. Legislation in 2012 (Public Law 112-211, "Patent Law Treaties Implementation Act of 2012") significantly liberalized this provision. Effective in 2013, under that change, Section 364 now states in relevant part:

> (b) An applicant's failure to act within prescribed time limits in connection with requirements pertaining to an international application may be excused as provided in the treaty and the Regulations.

Public Law 112-211 thus removed the "unavoidable delay" standard from the statute, instead linking excuse requirements directly to the treaty and the Regulations. The USPTO is now treaty-

bound to look purely to the requirements of the PCT Articles ("the treaty") and its Rules ("the Regulations") when assessing the excusability of a failure to act within prescribed time limits.

Perhaps overlooked by the Attorney-Advisor in the decisions under review, PCT Article 48 addresses this situation. Article 48 states in full:

### Article 48
### Delay in Meeting Certain Time Limits

(1)  Where any time limit fixed in this Treaty or the Regulations is not met because of interruption in the mail service or unavoidable loss or delay in the mail, the time limit shall be deemed to be met in the cases and subject to the proof and other conditions prescribed in the Regulations.

(2)(a)  Any Contracting State **shall**, as far as that State is concerned, excuse, for reasons admitted under its national law, any delay in meeting any time limit.

(b)  Any Contracting State may, as far as that State is concerned, excuse, for reasons other than those referred to in subparagraph (a), any delay in meeting any time limit.

(Emphasis added). Article 48(2)(a) is relevant here. This provision obligates the USPTO as a receiving office through 35 U.S.C. § 364. It is mandatory for the USPTO as the authority for the United States as a Contracting State, as far as the United States is concerned, to "excuse, for reasons admitted under its national law, any delay in meeting any time limit." The word "shall" appears in this Article. When the United States acts as a receiving office, the United States "is concerned" in its capacity **as** a receiving office.

At least one UK jurist has underscored the mandatory nature of Article 48(2), and its applicability to receiving office activities.

Note that, whereas sub-paragraph (a) is **expressed in mandatory terms**, sub-paragraph (b) is in permissive terms. In this connection Mr Sharrock drew attention to the following observations by Lord Diplock in E's Application, [1983] RPC 231 at 251: "The plain intention of this sub-rule" (Lord Diplock was in fact referring to PCT Article 48(2)) ". . . is that, as respects extensions of time limits, **receiving offices** and the Patent Offices of designated States **are bound to treat international applications no less favourably than national applications**, although they are at

A0008

liberty to accord international applications more favourable treatment than national applications".

*Vapocure Techs. LTD v. UK IP Office*, slip op. at 15 (Court of Appeal, Civil Division, 25 July 1989) (available at https://www.wipo.int/export/sites/www/pctcaselawdb/en/docs/pct-2006-0073.pdf) (emphasis added). Thus in a decision dated 11 April 1988, the European Patent Office considered the plight of an applicant who had paid fees for additional search in a timely way, but later acted untimely by filing a late protest containing a reasoned statement objecting to those fees. While the protest under PCT Rule 40.2(c) had to be dismissed as inadmissible, the EPO nonetheless invited the applicant to invoke EPC Article 122 (dealing with re-establishment of rights when a delay occurred despite "all due care"), which would apply to the international search authority through Article 48(2) and Rule 82*bis*. *Applicant v. European Patent Office*, slip op. at 5 (EPO Boards of Appeal, 11 April 1988) (available at https://www.wipo.int/export/sites/www/pctcaselawdb/en/docs/pct-2006-0085.pdf).

Rule 82*bis*, in turn, contains an expansive definition of what sorts of national laws an applicant might invoke under Article 48(2). That Rule states in relevant part:

> 82*bis*.2   *Reinstatement of Rights and Other Provisions to Which Article 48(2) Applies*
>
> The provisions of the national law which is referred to in Article 48(2) concerning the excusing, by the designated or elected State, of any delay in meeting any time limit are those provisions which provide for **reinstatement of rights, restoration, restitutio in integrum or further processing in spite of non-compliance with a time limit, and any other provision providing for the extension of time limits or for excusing delays in meeting time limits**.

(Emphasis added).

USPTO Rule 1.137(a) is precisely the type of national law that meets the above-quoted definition supplied by Rule 82*bis*.2. And Rule 82*bis*.2 is a "Regulation" (in the terminology of 35

4

U.S.C. 364) that the USPTO must follow as a receiving office.[1] Specifically, in a national application, any USPTO applicant who files a complete petition for the late acceptance of an unintentionally delayed filing fee (including the "delay was unintentional" statement), and who also pays the petition fee along with previously due fees, may receive consideration for "reinstatement of rights," "restoration," and "further processing in spite of non-compliance with a time limit."

Indeed with few exceptions, the USPTO grants such petitions almost automatically in applications arising under national United States law. *See* MPEP 711.03(c) (noting that a delayed "filing fee" for a provisional application can be submitted through the Rule 1.137(a) process); 85 Fed. Reg. 12222 (March 2, 2020) (Clarification of the Practice for Requiring Additional Information in Petitions Filed in Patent Applications and Patents Based on Unintentional Delay) (noting the Office will only require additional information from the applicant about the "unintentional" statement when an extended delay exceeds two years).

The Office of Petitions routinely grants acceptance of delayed filing fee payments under Rule 1.137(a). Just five recent examples include: (1) Decision Mailed 28 October 2020 in App. No. 16/400,033; (2) Decision Mailed 9 October 2020 in App. no. 16/693,998; (3) Decision Mailed 23 September 2020 in App. No. 16/578,396; (4) Decision Mailed 14 September 2020 in App. No. 16/578,397; and (5) Decision Mailed 2 September 2020 in App. No. 16,588,416. These were just the five most recent search results in a database indicating *1,471* such petition grants from 2006 to late 2020 (petition.ai database, search terms: "1.137(a)" and "search fee"). The USPTO

---

[1] 37 CFR 1.468 states that delays may only be excused as provided in PCT Rule 82. However, Rule 1.468 was promulgated on 11 May 11 1978 (43 Fed. Reg. 20466) and has not been updated since. Thus it is superseded by both the 2013 revision of 35 U.S.C. § 364, which incorporates *all* PCT rules, and by the after-arising promulgation of Rule 82*bis* itself (which occurred on 1 January 1985).

A0010

unquestionably permits use of the Rule 1.137(a) petition process to excuse late filing fees that led to considered-withdrawn national applications, and thus under the combined force of Article 48(2) / Rule 82*bis*.2 / 35 U.S.C. § 364, the USPTO must permit the same in this case.

Here, Applicant reaffirms and states again that the entire delay was unintentional. Unintentionality is self-evident on this record, since the delay here stems from practitioner nonreceipt of invitation mailings, as considered in more detail below.

It might be argued that the power and obligation of a State to act under Article 48, and the scope of any decisions thereunder, is limited to its role as a national stage office. But this is not so. Actions under Article 48 can include actions in the role of a national stage office, but treaty language does not restrict it only to that situation. The language of Article 48 bestows obligations on a Contracting State, not just a designated or elected office. The term "Contracting State" encompasses all roles undertaken by a treaty partner, including receiving office roles. When the PCT refers to an action of a Contracting State in a limited role (such as a designated or elected office), it states this explicitly (*e.g.*, Articles 28, 42).[2] Likewise, Rule 82*bis* cannot reasonably be deemed to limit Article 48(2) to actions by a designated State (as opposed to a Contracting State as a receiving office). That rule is definitional. By its plain language, Rule 82*bis* simply clarifies what constitutes the "national laws" referred to in Article 48(2). To define what kinds of "national laws" are relevant does not impact the mandatory language of Article 48(2) requiring a specific kind of action upon those "national laws."

---

[2] Applicant believes it is entitled under 37 CFR 1.137(a) to complete vacatur of the "considered withdrawn" declaration as to all designated countries. Possibly though, the Office might instead only partially grant the present petition, restricting relief solely to vacating that declaration for a future United States national stage filing. Applicant would of course welcome and not refuse the grant of partial relief, but if that occurs, Applicant reserves all rights, including the right to seek equivalent relief with other designated countries or regional offices.

A0011

Consistently, Article 11(3) indicates that every application that meets basic filing requirements related to residency, application language and complete application parts "shall have the effect of a regular national application in each designated state . . . ." The present application met those requirements, and designated the United States. It therefore must be given "the effect of a regular national application" in the United States. This is further evidence in the PCT's overall scheme that the United States, when acting as a receiving office, must consider granting Rule 1.137(a) petitions in United States-designated applications when they arise, under national law standards.

For the foregoing reasons, whether this paper is treated as a new petition or as a request for reconsideration, Applicant respectfully requests that the petition under 37 CFR 1.137(a) be granted.

## II.   SECOND GROUND: DENIAL OF THIS PETITION UNDER 37 CFR 1.181 WOULD BE ARBITRARY AND CAPRICIOUS, WHEN CONSIDERING THE USPTO'S HISTORY OF GRANTING SUCH PETITIONS ON MATERIALLY IDENTICAL FACTS

Independently of issues surrounding Rule 1.137(a) under the First Ground, the USPTO has a practice, policy and history of granting relief under 37 CFR 1.181, vacating the "considered withdrawn" status of an international application to allow further processing, when an applicant meets the MPEP requirements to show that an office communication inviting the payment of filing fees was "not received" by the practitioner. The Attorney-Advisor did not acknowledge those prior decisions, and thus did not follow them. Reconsideration is warranted to prevent the Office from arbitrarily and capriciously withholding the same relief previously granted on materially identical facts.

Prior petition decisions in this case reflect that it is undisputed that the Office did not send to the actual Applicant or Agent, and they did not receive, mailings of a 29 November 2019

7

Notification Concerning Payment of Prescribed Fees (Form PCT/RO/102), nor a 13 January 2020

Invitation To Pay Prescribed Fees Together With Late Payment (Form PCT/RO/133). This fact is

evident in the file history. Those mailings were returned to the USPTO as undelivered (each

indicating "RETURN TO SENDER / NO SUCH NUMBER / UNABLE TO FORWARD").

PCT Rule 16*bis*.1 is entitled "Invitation by the Receiving Office," and states in relevant

part a requirement to invite the applicant to pay unpaid fees:

> (a) Where, by the time they are due under Rules 14.1(c), 15.3 and 16.1(f), the
> receiving Office finds that no fees were paid to it, or that the amount paid to it is
> insufficient to cover the transmittal fee, the international filing fee and the search
> fee, the receiving Office shall, subject to paragraph (d), invite the applicant to pay
> to it the amount required to cover those fees, together with, where applicable, the
> late payment fee under Rule 16*bis*.2, within a time limit of one month of the
> invitation.

There is no time limit for the Receiving Office's invitation to "the applicant" in this regard (thus

an invitation may be re-sent). An example of a very late fee-payment-invitation exists in *Applicant*

*v. EPO*, slip op. at 1-2 (EPO Boards of Appeal, 3 August 2017) (available at

https://www.epo.org/law-practice/case-law-appeals/pdf/j160019eu1.pdf) (invitation first sent 3 ½

years after the international filing date at the receiving office).

Paragraph (c) specifies what happens after further nonreceipt of required fees after such

invitation has been sent to the applicant:

> (c) Where the receiving Office has sent to the applicant an invitation under
> paragraph (a) and the applicant has not, within the time limit referred to in that
> paragraph, paid in full the amount due, including, where applicable, the late
> payment fee under Rule 16*bis*.2, the receiving Office shall, subject to paragraph
> (e): (i) make the applicable declaration under Article 14(3) . . . .

In turn, the "applicable declaration" where "the applicant" is "sent" an invitation and still chooses

not to pay is to declare that the application is "considered withdrawn." The USPTO created that

declaration in this case, via its completion of Form PCT/RO/117 on 26 February 2020, even though

8

neither Applicant nor Agent had by then received the Rule 16*bis*.1 "invitation" (*i.e.*, Form PCT/RO/133).

PCT Administrative Instruction 108 treats the appointed agent as the applicant for correspondence purposes. Mailings in this case did not go to a legitimate agent address (thus neither "applicant" nor "agent" was there to receive them), and the file history reveals no electronic communications were attempted. As is evident from the file history and prior petitions and petition decisions in this case, Applicant's Agent's designee provided correct correspondence address information upon filing in all ways but one. Applicant's Agent's designee incorrectly and unintentionally listed the Agent's address in Box No. IV of the Request (Form PCT/RO/101) as "33 N. Michigan Ave., Chicago, IL 60601 USA" when he should have listed it as "333 N. Michigan Ave., Chicago, IL 60601 US." However, Applicant's Agent's designee correctly listed the address as "333 N. Michigan Ave, chicago, IL 60601" under "Correspondence Address" in the EFS-Web's Application Data field.

The instructions for completing the Correspondence Address state, "Provide an address where USPTO should send correspondence for this application."

A0014



Applicant's Agent's designee also listed a correct Customer Number, which is associated with Applicant's Agent's correct address, in the Application Data field.

A0015



The file history in this matter shows that on 14 November 2019 (immediately upon filing of the present application), the Office generated an Electronic Acknowledgement Receipt in response to the filing of the Application. The Receipt communicated that the Correspondence Address was "333 N. Michigan Ave," *i.e.*, Applicant's Agent's correct address, and also named his correct email address.

| Customer Number: | 93344 |
|---|---|
| Correspondence Address: | Robert Greenspoon<br>Clifford kraft<br>333 N. Michigan Ave<br>.<br>chicago                    IL              60601<br>US          312-551-9500<br>rpg@fg-law.com |
| Filer: | Robert P. Greenspoon /Clifford Kraft |
| Filer Authorized By: | Robert P. Greenspoon. |

11

Applicant and Agent were not aware that the address listed in the PCT Request Form was incorrect, and believed that correspondence would be sent to the address that the Office itself listed for the Correspondence Address. Unfortunately, the incorrect "33" address was used by the Office instead of the "333" address. Subsequent investigation revealed that 33 N. Michigan Ave. does not exist as an address. The returned-undelivered mailings confirm this fact (*i.e.*, "NO SUCH NUMBER").

These circumstances justify remailing to the correct address the Invitation To Pay Prescribed Fees Together With Late Payment (Form PCT/RO/133) (*i.e.*, the Rule 16*bis*.1(a) invitation), and correspondingly vacating the "considered withdrawn" declaration (*i.e.*, Form PCT/RO/117). This conclusion follows solely from undisputed facts.

A review of Office petition decisions reveals that the facts recited above justify relief. The Office has granted the same or similar relief based on materially identical facts. It would be arbitrary and capricious for the Office to do differently now.

For example, in a Decision mailed 4 November 2014 in App. No. 12/798,744 (Exhibit A), the Office granted a petition to withdraw a holding of abandonment under Rule 181(a), after nonreceipt of a Notice of Allowance and subsequent lapse of the application. The sole factual ground justifying this grant was that "review of Office records reveals that the Notice of Allowance was returned to this Office on March 31, 2014. The returned envelop[e] indicates 'No Such Address.'" The Office granted that Petition without consideration of practitioner fault, and without exploring the reasons why the "correspondence address" field for this application got populated incorrectly. The mere fact alone of returned mail justified withdrawing the holding of abandonment.

In a Decision mailed 20 September 2019 in App. No. 15/566,675 (Exhibit B), the Office granted a petition filed under Rule 182 in an international application. The practitioner in the U.S.

national stage entry wrongly named the temporary U.S. Receiving Office number, rather than the permanent IB international application number. Even though almost a year had passed from the mistaken filing papers to the first request for correction, the Office granted relief. The Office deemed that "the correct international application number was included somewhere in the national stage application papers," even though such papers expressly named only the temporary (wrong) number in the field that the Office considered the single relevant field.

These decisions follow the approach mandated by the Federal Circuit for the Office to avoid arbitrary and capricious outcomes, and to render petition decisions in the interests of justice. *See Helfgott & Karas, P.C. v. Dickenson*, 209 F.3d 1328 (Fed. Cir. 2000). In *Helfgott*, the mere fact that the applicant made several errors in its PCT submissions to the USPTO did not end the inquiry. It was "in the interest of justice and equity" to grant relief under Rule 183 (and arbitrary and capricious to withhold relief) to recognize a particular Demand as relating to an application number that the applicant had omitted from the filing papers. Though the Court held the applicant "bears no small amount of blame for the circumstances, the Commissioner was also a primary contributor." *Id.* at 1335. This was, in part, because alterations the applicant suggested to correct the number were "plainly obvious once it is agreed that the Demand was supposed to relate to the [unnamed] application," since the title, applicants and agent file reference number only related to the unnamed (but intended) application. *Id.* at 1336. Here, it is "plainly obvious" in view of the file as a whole and the returned mail to the Office that "333" was always the correct Agent address, not "33." The Office erred by not sending the Form PCT/RO/133 invitation to the correct address.

The Office, in fact, has an admirable record in numerous cases of granting relief in precisely the present factual circumstances. Proof of nonreceipt by the practitioner of a PCT invitation to pay fees has (until this case) uniformly led to the Office vacating "considered

A0018

withdrawn" status, and permitting further prosecution. *See In re Application of Custom Care Products, Inc.*, PCT/US06/09552 (11 September 2007, Decision on Petition, Exhibit C) (requirement "*is satisfied* with Practitioner's statement tha the Notifications 'were not received,'" emphasis added); *In re Application of Yissum Research Development Company of the Hebrew University of Jerusalem*, PCT/US06/47336 (22 June 2007, Decision on Petition, Exhibit D) (nonreceipt by the practitioner sufficient to invoke MPEP 711.03(c) rule); and *In re Application of Chevron U.S.A., Inc.*, PCT/US06/010812 (26 March 2007, Decision on Petition, Exhibit E). The *Chevron* decision is particularly relevant. That grant of relief followed a procedural history identical to that here: a first petition filed under Rule 1.137(a) that the Office dismissed without prejudice (Exhibit F, dated December 20, 2006), followed by the Rule 1.181 petition that the Office granted. Both petitions were submitted more than two months after the "considered withdrawn" declaration. Indeed, the first *Chevron* decision (Exhibit F, page 2) contains language inviting the petitioner to refile under Rule 1.137(a) if only a future United States national stage entry was desired (a request "mooted" by the broader grant of relief bestowed under MPEP 711.03(c), *see* Exhibit E). *See* n.2, above.

Unfortunately, the decision on review applied a legal standard not applied in prior decisions, stating that the "issue at hand is, were the forms mailed to the correct official correspondence address of record." This standard deviates from the standard always applied before by the Office. As shown in the above-cited decisions involving nonpayment after PCT invitations to pay fees, the "issue at hand" under Rule 1.181 is, instead, whether the practitioner ever "received" the mailings. The proper standard follows Office practice in applying MPEP 711.03(c)(I)(A), which cites *Delgar v. Schuyler*, 172 USPQ 513 (D.D.C. 1971), to provide that "an allegation that an Office action was never received may be considered in a petition to withdraw

14

the holding of abandonment." Here, the Office does not dispute the Agent's nonreceipt (nor could it given the returned mail indicated in the file history), and that should have ended the matter. For belt and suspenders, the prior 27 January 2021 petition included the full evidentiary showing concerning nonreceipt required under MPEP 711.03(c)(I)(A). Such nonreceipt is evident whether the "correct official correspondence address of record" is considered "33" or "333" N. Michigan Avenue. It would be arbitrary and capricious for the Office to decide this case differently and under a different decisional standard, denying relief granted on materially identical facts in numerous historical instances.

### III.   THIRD GROUND: THE OFFICE FAILED TO FOLLOW ITS OWN RULES AND POLICIES IN CASES OF CONFLICTING CORRESPONDENCE ADDRESSES

As an independent Third Ground, the present petition will permit the Office to avoid an arbitrary and capricious outcome on a different issue. This concerns the details of what ought to control in USPTO practice as the "correspondence address." The Office did not follow its own rules and policies, which can be mitigated by grant of this petition.

The prior 26 February 2021 petition decision focused on the "one address" rule for PCT applications. But no rule, instruction or guideline specifies that the single correspondence address of the agent **must** be derived from Box No. IV of Form PCT/RO/101. Nor do they state that conflicting addresses must be overlooked. When as here an application was filed in electronic form and by electronic means of transmittal, the Office is under obligation, "if practicable, [to] send any notifications, invitations and other correspondence to the applicant by electronic means of transmittal . . . ." PCT Administrative Instruction 709. This is especially important, when the Office continually receives returned undelivered paper mail. The file history record indicates that no

electronic transmission was attempted.[3] This amounts to noncompliance with Administrative Instruction 709. Administrative Instructions are applicable to the USPTO as a receiving office, because 35 U.S.C. § 364 incorporates the PCT's Regulations, and PCT Rule 89.1 puts "in force" the Administrative Instructions.

The decision on review overlooked Applicant's argument, previously presented, that a controlling USPTO rule should have led the Office to use the address corresponding with Applicant's Agent's customer number, since addresses were conflicting. Although EFS-Web filing instructions, mirroring MPEP 1807, state that a Customer Number cannot be used to designate initially the correspondence address for a PCT application in the international stage, MPEP 403 provides that it can be used to reconcile inconsistencies when conflicting addresses are provided (see also MPEP 601.03). MPEP 403(I) states in part that "As the Office will not recognize more than one correspondence address (37 CFR 1.33(a)), any inconsistencies between the correspondence address resulting from a Customer Number being provided in an application for the correspondence address and any other correspondence address provided in that application will generally be resolved in favor of the address of the Customer Number." MPEP 403.01(a) also states in part that "37 CFR 1.33(a) specifies that if an applicant provides more than one correspondence address (in a single paper or in different papers), the Office will select one of the specified addresses for use as the correspondence address and, if given, may select the correspondence address associated with a Customer Number over a typed correspondence address." Crucially here, according to the Editor's Note to 37 CFR 1.33 (available at

---

[3] Given the absence of any Office attempt at electronic transmission, it is not germane to noncompliance with Administrative Instruction 709 that Form PCT/RO/101 in this case contained an obvious typographical error in the email address: "rpg@fg-law,cim" instead of "rpg@fg-law.com." The Electronic Acknowledgment Receipt image reproduced above in the text shows the Office possessed the Agent's correct email address in this file (rpg@fg-law.com).

https://www.uspto.gov/web/offices/pac/mpep/mpep-9020-appx-r.html), 37 CFR 1.33(a) applies to international applications filed under 35 U.S.C. § 363, *i.e.*, international applications designating the United States (which covers the present application).

Using a customer number when an address inconsistency arises is both sensible and consistent with the Office's public statements about customer numbers. *See* https://www.uspto.gov/patents-application-process/applying-online/getting-started-new-users ("The customer number allows you to easily associate all your filings to a single mailing address, thus eliminating typographical errors or variations in addresses that can make it difficult to receive patent correspondence from the USPTO."). Here, the decision on review did not consider that the Office's practices and policies under the rules use the customer number address in cases of conflicting addresses. The USPTO did not follow its own rule in that regard in the present application. Had this omission not occurred, Applicant would have paid fees that were due after its Agent's timely receipt of the invitations at the ***correct*** address.

The decision on review also overlooks the content of the Electronic Acknowledgment Receipt, which is never discussed. That 14 November 2019 Receipt expressly states that the "Correspondence Address" for this application is the "333" address, not the "33" address. By all indications, the Office acted from the start as if it was ***not*** using PCT/RO/101 as a source for this application's single address, but instead took address information from a reliable source that contained the ***correct*** information. In the interests of justice, the Office should hold to its own representation that it was using the "333" address as the "correspondence address," not the "33" address, by granting the relief requested here.

Finally, the decision on review misapprehended the Legal Framework for Patent Electronic System. Applicant had pointed out that the instructions for completing the Correspondence

Address when filing electronically state, "Provide an address where USPTO should send correspondence for this application." This communicates to practitioners that Form PCT/RO/101 is *not* the source of "correspondence address" information. The decision on review states that the Legal Framework document "indicates that the Office will look to the address in EFS only where the Office doesn't have a proper address in the submission." Yet, the plain text of the Legal Framework is broader. It states the Office "may use the application data furnished through EFS-Web" if "no correspondence information is included in the submission, *or the correspondence information was not made in accordance with the applicable regulations.*" (emphasis added). A nonexistent address, by definition, is not "in accordance with the applicable regulations." Thus even under the Legal Framework, the Office should have followed its policies and practices, and used the Application Data-entered "correspondence address" (as it communicated that it would). Again, granting of the relief requested here will correct this omission by the Office.

Even if the decision on review correctly explained the Legal Framework standard that triggers choosing EFS-Web-entered address information, the present facts meet the stated standard. The decision on review states that this condition triggers when "the Office doesn't have a proper address in the submission." "Proper" and "correct" are synonymous. *See* https://www.collinsdictionary.com/dictionary/english/proper. The absence from Box IV of Form PCT/RO/101 of a correct address (as it is undisputed that the nonexistent "33" address was incorrect) shows that all conditions were in place for the Office to use the correct EFS-Web-supplied address, even under the Attorney-Advisor's restatement of the Legal Framework's standards.

Granting relief here will also avoid the Office taking a position it is legally estopped from taking. The Office communicated during the filing process that it would use the EFS-Web-entered

18

address as the "correspondence address." The statement in the decision on review that the mailings discussed here were addressed to the "correct" correspondence address is inconsistent with that representation. This is so regardless of what the Legal Framework for EFS-Web states. The Legal Framework is not the direct in-the-moment representation of the Office to the Applicant, and is anyhow ambiguous on this point. The unambiguous real-time statement during the application process should control. By granting relief (*i.e.*, vacating the Form PCT/RO/117 declaration, re-sending the Form PCT/RO/133 invitation, and allowing further processing), the Office avoids taking legally estopped positions.

To summarize, nothing justifies a singular focus on Box IV of Form PCT/RO/101 as a source for mailing addresses, in the face of conflicting addresses in the record and after the Office learns that mail is being returned because of a nonexistent address. Rote invocation of Form PCT/RO/101 is not justified, and cannot serve the interests of justice, particularly when there does not exist a single PCT article, rule, administrative instruction or guideline that demands a receiving office use that form as the singular source of data for the "correspondence address" in case of inconsistency. In contrast to the explicit use of the term "Correspondence Address" elsewhere (labeling a field where the present application held the correct address), *the language of the Request Form PCT/RO/101 is less clear*. Box No. IV asks for the name and address of the "Agent or Common Representative; or Address for Correspondence." This wording suggests that entry of an address is optional, if a name is provided. The check box at the bottom of the page, labeled "Address for correspondence," explains that the term means something other than the address of the Agent or Common Representative. Applicants are instructed to "Mark this check-box where no agent or common representative is/has been appointed and [Box No. IV] above is used instead to indicate a special address to which correspondence should be sent." A comparison of the

19

instructions in the Request and either of (1) the EFS-Web Application Data field or (2) the PAIR-reported "Customer Number Correspondence Address" data field, could therefore reasonably lead an applicant to conclude that in the case of a disparity, the address in the EFS-Web Application Data field and Electronic Acknowledgement Receipt should control (if not that of the Customer Number itself).

In short, given the absence of contrary indications in PCT legislative sources, the Office should follow its own rules, practices and policies (no less its specific representations to Applicant here) that it will source the "correspondence address" from the highly reliable Application Data and/or customer number areas in cases (like here) involving address inconsistencies and returned-undelivered mail. This can occur by means of the Office re-sending Form PCT/RO/133 as considered above, while vacating the "considered withdrawn" declaration. To do otherwise would be arbitrary and capricious, in a case where Applicant's Agent's designee entered the correct address on filing in all ways but one, and the correct information was obvious from the overall file record but not used for mailings. *See Helfogott*, above.

## IV.    FOURTH GROUND: SUSPENSION OF THE RULES AND/OR GRANTING RELIEF TO PREVENT MANIFEST INJUSTICE

The facts recited above considered alone are enough to show that fairness and equity, and the interests of justice, support granting the requested relief. Additional compelling facts exist in this record, most of which went unaddressed in the decision on review. In this regard, in a telephone call with Attorney-Advisor Derek A. Putonen on 9 March 2021, Mr. Putonen indicated that 37 C.F.R. 1.183 petitions are not available in international applications. Respectfully, we have found no textual support for this (*e.g.*, *Helfogott* was decided under Rule 1.183), and therefore request that this ground be treated as a petition under 37 C.F.R. 1.181, 1.182 and 1.183 (or any one or combination of them), and a reconsideration request under all such rules.

On equitable factors, the decision on review only takes note that the "considered withdrawn" declaration of Form PCT/RO/117 went out prior to COVID-19 relief taking effect. However, Applicant commented about COVID-19 in the 27 January 2021 petition to explain that COVID closures impacted the usual close communication patterns that marked Agent's ability to spot and resolve previous filing problems. The decision on review overlooked additional facts predating Form PCT/RO/117 that bear on the interests of justice.

The practitioner primarily responsible for prosecuting the Application at issue (Applicant's Agent's designee Clifford Kraft) had been working under great stress and suffering from personal grief since before the filing date of the Application. His wife suffered from dementia, and the prior petition indicated that her illness and death on 10 July 2020 took a toll. The limitations imposed by the COVID-19 pandemic further aggravated this situation. The responsible practitioner continued to work and perform his duties throughout his ordeal; however, Agent's firm recognizes that he was distracted because of his personal situation and was not able to exercise his normal high level of vigilance in overseeing patent files.

Applicant does not ask for consideration of these facts about Mr. Kraft in a vacuum. Rather, Applicant notes that these were factors in addition to everything discussed already in this paper that, in total, would make it unjust to deny relief here. Mr. Kraft's filing error was regrettable but understandable in the context of a person caring for a declining spouse suffering from dementia— missing a digit in one address street number, even while correctly entering the same information two other ways at the same time. Mr. Kraft's particular situation makes unfair the Office's withholding of relief in a context where the Office received returned mail but did not act to locate the Agent afterward, did not act to review the file to resolve address inconsistencies, and never used electronic communications as required by Administrative Instruction 709. Mr. Kraft's

21

particular situation also makes unfair the Office's withholding of relief in a context where the Office historically has used two independent and established grounds for granting relief in situations such as these (Rule 1.137(a) and MPEP 711.03(c)(I)(A) / Rule 1.181), but has so far not applied those standards for reasons ungrounded in prior decisionmaking (*e.g.*, shifting the query away from whether the practitioner "received" the Office communication as indicated under prior Rule 1.181 decisions, to the nonmaterial question of whether the Office "mailed" forms to the "correct correspondence address of record").

Finally, since PCT articles and rules use national law to determine whether to excuse a failure to meet a time limit, by analogy the Office should refer to USPTO national standards to achieve the right outcome in this international application in the handling of returned mail. MPEP 707.13 is entitled Returned Office Action. MPEP 707.13 admittedly directly applies only for United States national applications. However, it is unfortunate and perplexing that nothing like it exists expressly for international applications. If the USPTO had applied receiving office equivalents of the requirements of MPEP 707.13, the sequence of events requiring the present petition would not have occurred:

> Office actions are sometimes returned to the Office because the United States Postal Service has not been able to deliver them. Upon receipt of the returned Office action, the Technology Center (TC) technical support staff will check the application file record to ensure that the Office action was mailed to the correct correspondence address. If the Office action was <u>not</u> mailed to the correct correspondence address, it should be stamped "remailed" with the remailing date and mailed to the correct correspondence address. The period running against the application begins with the date of remailing. ***If the Office action was mailed to the correct correspondence address and it was addressed to an attorney or agent, a letter along with a copy of the Office action may be sent to the applicant, or the first named inventor if more than one inventor is the applicant, informing the applicant of the returned action***. The time period for reply to the Office action will be restarted to run from the mailing date of the letter informing applicant of the returned action.

> A copy of the letter and a copy of the envelope should be added to the IFW. If the period dating from the remailing elapses with no communication from applicant, the application is abandoned.

(Emphasis added). In the interests of justice, the Office should do whatever is necessary to achieve the result that would have ensued had it applied MPEP 707.13 standards in an international application, just as it does in a domestic one. Had it done so, this would have unquestionably put Applicant and Applicant's Agent on notice of the invitation form that preceded the "considered withdrawn" declaration, such that timely payment of the fees would have occurred.

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests that the Office, under any one or combination of 37 CFR 1.137(a), 1.181, 1.182 and 1.183, reconsider the 1 January 2021 dismissal of Applicant's 15 December 2020 Petition for Revival of an International Application, reconsider the 26 February 2021 dismissal of Applicant's 27 January 2021 Petition and Request for Reconsideration, vacate the "Notification that International Application Considered To Be Withdrawn (PCT/RO/117)" mailed on 26 February 2020, re-mail to the correct address (if necessary) a new Invitation (PCT/RO/133), and forward the international application for continued processing. Applicant respectfully requests a prompt determination, since the 30-month date for national stage entries is fast approaching: 14 May 2021.

Short of any of the foregoing, Applicant respectfully requests that the Office make the next action on this request a final agency action.

Dated: 17 March 2021

Respectfully Submitted

/Robert Greenspoon/

USPTO Reg. No. 40,004
Agent for the Applicant

# Exhibit A

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/798,744 | 04/12/2010 | Lung-Tan Hu | | 5945 |

7590     11/04/2014

Hu Lung-Tan
25755 48th Avenue
Langley, BC V4W1J6
CANADA

| EXAMINER |
|---|
| OH, HARRY Y |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3664 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/04/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

A0030



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

In re Application of                          :
Hu et al.                                     :
Application No.:  12/798744                   :   DECISION ON
Filing or 371(c) Date: 04/12/2010            :   PETITION
Title of Invention:                           :
MACKAY COLD-EXPANSION ENGINE SYSTEM           :

This is a decision in response to the correspondence filed July 29, 2014. The correspondence is properly treated as a Petition to Withdraw the Holding of Abandonment Under 37 C.F.R. 1.181(a).

This Petition is hereby **granted**.

This application became abandoned for failure to timely pay the issue and publication fees on or before June 13, 2014, as required by the Notice of Allowance and Fee(s) Due, mailed March 13, 2014. Accordingly, the date of abandonment of this application is June 14, 2014[1].

Applicant/petitioners file the present petition and provide that the Notice of Allowance was not received until July 2, 2014.

A review of Office records reveals that the Notice of Allowance was returned to this Office on March 31, 2014. The returned envelop indicates "No Such Address".

In view of the foregoing, the petition is granted.  The holding of abandonment is hereby withdrawn. No petition fee has been charged and none is due.

The application will be referred to the Office of Data Management for processing of the reply to the Notice to File Corrected Application Papers, filed July 29, 2014.

Telephone inquiries concerning *this matter* should be directed to attorney Derek Woods at (571) 272-3232.

/DW/

Derek Woods
Attorney Advisor
Office of Petitions

---

[1]  In an application or patent, abandoned or lapsed for failure to pay the issue fee or any portion thereof, the required reply must be the payment of the issue fee or any outstanding balance thereof. *See* MPEP 711.03(c)(III)(A)(1).
.

A0031

# Exhibit B



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Timothy E Siegel Patent Law, PLLC
Mari Yamamoto
777 108th Avenue, Suite 2240
Bellevue WA 98004-5178

**MAILED**

SEP 2 0 2019

INTERNATIONAL PATENT LEGAL ADM.

In re Application of        :
RHEONICS GMBH        :
Application No.: 15/566,675    :
PCT No.: PCT/IB2016/000766    :    DECISION
Int. Filing Date: 14 April 2016    :
Priority Date Claimed: 14 April 2015    :
Attorney's Docket No.: VI3.020.US    :
For:   TEMPERATURE COMPENSATED    :
DENSITY VISCOSITY SENSOR HAVING    :
A RESONANT SENSING ELEMENT    :

This decision is in response to applicant's petition under 37 CFR 1.182 and 37 CFR 1.137(a) filed 08 October 2018.

## BACKGROUND

On 13 October 2017, applicant filed national stage papers in the United States Designated/Elected Office (DO/EO/US) electronically via EFS-Web. The submission included, *inter alia*, a Transmittal Letter and an Application Data Sheet (ADS). The international application number keyed into EFS-Web was PCT/US16/27471. The international application number appearing in the Transmittal Letter and the ADS is also PCT/US16/27471.

On 13 September 2018, the United States Designated/Elected Office (DO/EO/US) issued a Filing Receipt and a NOTIFICATION OF ACCEPTANCE OF APPLICATION (Form PCT/DO/EO/903).

On 18 September 2018, applicant filed a "Request for Corrected Filing Receipt."

On 02 October 2018, a decision was sent treating applicant's "Request for Corrected Filing Receipt" as a petition under 37 CFR 1.181 and granting-in-part that petition. The decision also indicated that that international application number PCT/US16/27471 is not a proper international application number for identifying the international application from which the national stage is being filed. This international application number was a temporary number

Application No. 15/566,675                                                    Page 2

assigned to the application when it was initially filed in the United States Receiving Office (RO/US). The application was later forwarded to the International Bureau Receiving Office under PCT Rule 19.4 where it was assigned a permanent international application number of PCT/IB2016/000766. An international application having international application number PCT/US2016/027471 was not published. The decision further indicated that the record with regard to an incorrect international application number can be corrected with a petition under 37 CFR 1.182. Finally, the decision indicated that if it cannot be established that the correct international application number was included in the submission of 13 October 2017, applicant may wish to consider filing a petition to revive the international application under 37 CFR 1.137.

On 08 October 2018, applicant filed the instant petition under 37 CFR 1.182 and petition under 37 CFR 1.137(a).

## **DISCUSSION**

Petition Under 37 CFR 1.182
The petition filed 08 October 2018 requests in effect that the application papers filed 13 October 2017 be accepted as the national stage of international application number PCT/IB2016/00766 rather than international application number PCT/US2016/027471.

A petition under 37 CFR 1.182 is required to correct the record with regard to an incorrect international application number. The petition must include the following: (1) payment of the $400 petition fee; (2) an indication that the correct international application number was included somewhere in the national stage application papers filed prior to the expiration of thirty months from the priority date; and (3) a statement indicating the correct international application number.

Items (1) and (3) have been met. As to item (2), although international application number PCT/IB2016/00766 does not appear in the application papers filed 13 October 2017 and does not appear in the file until after the 30-month date, international application number PCT/IB2016/00766 was initially filed in the United States Receiving Office (RO/US) where it was temporarily assigned application number PCT/US2016/000766. Thus, item (2) is deemed to have been met.

The present application is the national stage application of international application number **PCT/IB2016/000766**.

Petition Under 37 CFR 1.137(a)
Although international application number PCT/IB2016/00766 does not appear in the application papers filed 13 October 2017 and does not appear in the file until after the 30-month date, a petition to revive under 37 CFR 1.137(a) is not required because international application number PCT/IB2016/00766 was initially filed in the United States Receiving Office (RO/US)

Application No. 15/566,675                                                                 Page 3

where it was temporarily assigned application number PCT/US2016/027471. The portion of the decision sent 02 October 2018 indicating that a petition to revive may be required was incorrect and is hereby VACATED. The petition under 37 CFR 1.137(a) is <u>MOOT</u>. The petition fee will be refunded.

## CONCLUSION

For the reasons set forth above, the petition under 37 CFR 1.182 is **GRANTED**.

For the reasons set forth above, the petition under 37 CFR 1.137(a) is **DISMISSED** as **MOOT**.

This application is being forwarded to the National Stage Processing Branch of the Office of PCT Operations to continue national stage processing of the application including preparation and mailing of a new NOTICE OF ACCEPTANCE OF APPLICATION (Form PCT/DO/EO/903) and a corrected Filing Receipt, both indicating the correct international application number of PCT/IB2016/000766.

/Daniel Stemmer/

Daniel Stemmer
PCT Legal Examiner
International Patent Legal Administration
Telephone: (571) 272-3301

# Exhibit C



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## 11 SEP 2007

JAMES SONNTAG
PO BOX 9194
SALT LAKE CITY UT UTAH 84109

In re Application of
CUSTOM CARE PRODUCTS, INC.
PCT No.: PCT/US06/09552
Int. Filing Date: 16 March 2006
Priority Date: 14 March 2005
Attorney's Docket No.: CCPO4WO
For:   ORAL COMPOSITION FOR IMPROVING
MOUTH ENVIRONMENT

:
:
:     DECISION ON PETITION
:
:
:     UNDER 37 CFR 1.181
:
:

This is in response to applicant's "Petition under 37 CFR 1.181 and Under 37 CFR 1.137 to Revive Unintentionally Withdrawn PCT Application", filed in the United States Patent and Trademark Office (USPTO) on 05 September 2007 alleging that applicant did not receive the Notification Concerning Prescribed Fees (Form PCT /RO/102) mailed on 07 April 2006, the Invitation to Pay Prescribed Fees Together with Late Payment Fee (Form PCT /RO/133) mailed on 23 May 2006 and Notification That International Application Considered to be Withdrawn (Form PCT /RO/117) mailed on 14 July 2006.

## BACKGROUND

A review of the application file reveals the following: The Notification Concerning Prescribed Fees mailed on 07 April 2006 indicated that $2,406.00 in total fees were due and payable within ONE month from the date of receipt of the international application. Thereafter, the Invitation to Pay Prescribed Fees Together with Late Payment Fee was mailed on 23 May 2006 indicating that the total unpaid fees and late payment fee was due, amounting to $2,943.00. No response to these Notifications were received. Consequently, on 14 July 2006, the international application PCT/US06/09552 was considered withdrawn and the Notification That International Application Considered to be Withdrawn was mailed on 14 July 2006.

On 05 September 2007, applicant filed the instant petition to vacate the withdrawal of the International application.

## DISCUSSION

In order to establish that papers were not received, a petition under 37 CFR 1.181 with a proper showing is required. As set forth in the Official Gazette at 1156 OG 53, the petition must include the following: (1) a statement by the practitioner that the Office action was not received by the practitioner; (2) a statement attesting that a search of the

Application No.: PCT/US06/09552                                                    2

file jacket and docket records indicates that the Office action was not received; and (3) a copy of the docket record where the non-received Office action would have been entered had it been received (the docket records must also be referenced in practitioner's statement).  No petition fee is required.

Item (1) is satisfied with Practitioner's statement that the Notifications "were not received."  Item (2) is satisfied by the practitioner's statement attesting that "a search of the file jacket and docket records indicated that the papers were not received".

With regard to Item (3), applicant has provided the appropriate docket record for establishing  nonreceipt of an Office communication, the record where all USPTO responses due on the due date for reply to the communication at issue (i.e., a listing of all replies due in the USPTO between 14 April 2006 through 23 June 2006 for the present case) would be entered had it been received.  Thus, applicant has provided the proper showing necessary to vacate the withdrawal of the international application and the petition may be properly granted at this time.

Applicant's petition under 37 CFR 1.181 to vacate the withdrawal of the international application is GRANTED.  The Notification That International Application Considered to be Withdrawn mailed on 14 July 2006 is hereby VACATED.

Applicant provided a credit card payment for payment of the required international fees.

In light of the granting of applicant's petition under 37 CFR 1.181, applicant's petition to revive under 37 CFR 1.137 is dismissed as moot.  No petition fees will be charged to applicant.

## CONCLUSION

Applicant's petition under 37 CFR 1.181 to vacate the withdrawal of the international application is **GRANTED**.  The Notification That International Application Considered to be Withdrawn mailed on 14 July 2006 is **VACATED**.  The fees set forth in the Invitation to Pay Prescribed Fees Together with Late Payment Fee will be charged to applicant's credit card per his authorization.

The application will be forwarded to the United States Receiving Office for further processing.

Cynthia M. Kratz
Attorney Advisor
Office of PCT Legal Administration
Telephone: (571) 272-3286

# Exhibit D



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

JOHN P. WHITE
COOPER & DUNHAM LLP
1185 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036

| | | |
|---|---|---|
| In re Application of | : | |
| YISSUM RESEARCH DEVELOPMENT COMPANY OF | : | |
| THE HENBREW UNIVERSITY OF JERUSALEM et al. | : | DECISION ON |
| PCT No.: PCT/US06/47336 | : | |
| Int. Filing Date: 11 December 2006 | : | PETITION |
| Priority Date: 09 December 2005 | : | |
| Attorney's Docket No.: 75386-A1-PCT/JPW/YC | : | UNDER 37 CFR 1.181 |
| For: Use of Low-Dose Ladostigil For Neuroprotection | : | |

This communication is issued in response to applicants' "Request For Reconsideration Of June 7, 2007 Decision On Petition Under 37 C.F.R. §1.181" submitted on 15 June 2007.

## BACKGROUND

On 11 December 2006, applicants filed international application PCT/US06/47336, claiming a priority date of 09 December 2005.

On 02 February 2007, the United States Receiving Office (RO/US) mailed "Notification Concerning Payment of Prescribed Fees" (Form PCT/RO/102) indicating that "this receiving Office has received: no or insufficient payment of the prescribed fees and the applicant is hereby invited to pay the balance due of…$3,058."

On 06 February 2007, the United States Receiving Office (RO/US) mailed "Notification of the International Application Number and of the International Filing Date' (Form PCT/RO/105); 'Invitation to Correct Defects in the International Application' (Form PCT/RO/106); 'Invitation to Correct Priority Claim' (Form PCT/RO/110); and 'Communication In Cases For Which No Other Form Is Applicable (Form PCT/RO/132).'

On 21 March 2007, the United States Receiving Office (RO/US) mailed an "Invitation To Pay Prescribed Fees Together With Late Payment Fee" (Form PCT/RO/133) which indicated that a total of $3,601 in fees was due.

On 22 May 2007, the United States Receiving Office (RO/US) mailed a "Notification That International Application Considered To Be Withdrawn" (Form/PCT/RO/117) indicating that the international application was considered to be withdrawn for failure to pay the prescribed fess indicated in the "Invitation To Pay Prescribed Fees Together With Late Payment Fee," mailed 21 March 2007.

On 01 June 2007, applicants filed a "Petition To Vacate Form PCT/RO/117 Under 37 C.F.R. §1.181," indicating that the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" (Form PCT/RO/133), mailed 21 March 2007, was never received.

On 07 June 2007, the Office mailed "Decision on Petition Under 37 CFR 1.181," dismissing the petition because the printout of the docket report for this specific application was found to be insufficient to establish that the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" (Form PCT/RO/133) was not received and misdocketed to another application.

On 15 June 2007, applicants filed the instant "Request For Reconsideration Of June 7, 2007 Decision On Petition Under 37 C.F.R. §1.181" including the docket record of all deadlines in the docketing system of the firm for the period of March 21, 2007 until April 21, 2007.


DISCUSSION

Applicants request that the "Notification That International Application Considered To Be Withdrawn," mailed 22 May 2007, be withdrawn.

Under MPEP §711.03(c)(I)(A), a proper showing in order to establish that papers were not received must include the following: (1) a statement by the practitioner that the Office action was not received by the practitioner; (2) a statement by the practitioner attesting that a search of the file jacket and docket records indicates that the Office action was not received; and (3) a copy of the docket record where the non-received Office action would have been entered had it been received and docketed (the docket record must also be referenced in practitioner's statement).

A review of the papers shows that items (1) and (2) have been satisfied.

Regarding item (3), the evidence of record is sufficient to establish with reasonable certainty that applicants did not receive the "Invitation To Pay Prescribed Fees Together With Late Payment Fee," mailed 21 March 2007. Hence, item (3) has been satisfied.

In view of applicants' authorization, the deficient fees of $3,601 will be charged to Deposit Account No. 03-3125.

<u>CONCLUSION</u>

For the reasons stated above, the petition under 37 C.F.R. 1.181 is **GRANTED**.

The "Notification That International Application Considered To Be Withdrawn" (Form/PCT/RO/117) is **VACATED**.

The application is transmitted to the International Stage Processing Division of the PCT Operations for continued processing according to this decision.

Any further correspondence with respect to this matter should be addressed to Mail Stop PCT, Commissioner for Patents, Office of PCT Legal Administration, P.O. Box 1450, Alexandria, VA 22313-1450, with the contents of the letter marked to the attention of the PCT Legal Office.

Leonard Smith
PCT Legal Examiner
Office of PCT Legal Administration
Telephone:      (571) 272-3297
Facsimile:      (571) 273-0459

Stefan Staicovici
PCT Legal Examiner
Office of PCT Legal Administration
Telephone:      (571) 272-1208

A0042

# Exhibit E



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

STEVEN H. ROTH
CHEVRON CORPORATION, LAW DEPARTMENT
POST OFFICE BOX 6006
SAN RAMON CA 94583-0806

In re Application of                               :
CHEVRON U.S.A., INC.                           :
PCT No.: PCT/US2006/010812              :        DECISION
Int. Filing Date: 24 March 2006             :
Priority Date: 04 May 2005                   :
Attorney's Docket No.: 11/122,463          :
For:   LUBRICATING COMPOSITION HAVING   :
IMPROVED STORAGE STABILITY               :

    This decision is in response to applicant's "PETITION UNDER 37 CFR 1.181" filed on 29 January 2007.

## BACKGROUND

    On 24 March 2006, applicant filed in the United States Receiving Office (RO/US) a request, description, claims, and abstract.

    On 17 April 2006, the RO/US mailed a NOTIFICATION CONCERNING PAYMENT OF PRESCRIBED FEES (Form PCT/RO/102) inviting applicant to pay the balance due. The Form indicated that the wrong deposit account number had been provided.

    On 16 May 2006, the RO/US mailed a NOTIFICATION OF THE INTERNATIONAL APPLICATION NUMBER AND OF THE INTERNATIONAL FILING DATE (Form PCT/RO/105) indicating the international filing date as 24 March 2006.

    On 20 June 2006, the RO/US mailed an INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE (Form PCT/RO/133) inviting applicant to pay the balance due within one month of the date of mailing of the INVITATION. The INVITATION also indicated that failure to pay the total amount due with the time limit indicated may result in the international application being considered withdrawn by the RO/US.

    On 02 August 2006, the RO/US mailed a NOTIFICATION THAT INTERNATIONAL APPLICATION CONSIDERED WITHDRAWN (Form PCT/RO/117) indicating that the international application is declared by the RO/US to be considered withdrawn for failure to pay the prescribed fees.

Application No.: PCT/US06/10812                                                                         -2-

On 06 October 2006, applicant filed a "PETITION TO REVIVE UNINTENTIONALLY ABANDONED APPLICATION".

On 20 December 2006, a decision was mailed dismissing without prejudice applicant's petition to revive. The decision also noted that the petition purported that applicants "never received the Invitation to Pay the Prescribed Fees (From (PCT/RO/133)" and that if applicants can establish nonreceipt of this paper, then the application should not have been withdrawn.

On 29 January 2007, applicant filed the instant "PETITION UNDER 37 CFR 1.181" which attempts to establish nonreceipt of the INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE.

## DISCUSSION

Petition Under 37 CFR 1.181

If applicants can establish nonreceipt of the INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE, then the application should not have been withdrawn. In such case, the NOTIFICATION THAT INTERNATIONAL APPLICATION CONSIDERED WITHDRAWN will be vacated pursuant to 37 CFR 1.181. See MPEP § 711.03(c), para. I.A. The showing must include: (1) a statement by the practitioner that the Office action was not received by the practitioner; (2) a statement attesting that a search of the file jacket and docket records indicates that the Office action was not received; and (3) a copy of the docket record where the non-received Office action would have been entered had it been received (the docket record must also be referenced in practitioner's statement).

Items (1) and (2) have been met.

As to item (3), MPEP § 711.03(c), para. I.A. states that "[f]or example, if a three month period for reply was set in the nonreceived Office action, a copy of the docket report showing all replies docketed for a date three months from the mail date of the nonreceived Office action must be submitted as documentary proof of nonreceipt of the Office action." Such a docket report has been provided. Thus, item (3) has also been met. Accordingly, the INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE mailed 20 June 2006 and the NOTIFICATION THAT INTERNATIONAL APPLICATION CONSIDERED WITHDRAWN mailed 02 August 2006 are hereby VACATED.

Decision Mailed 20 December 2006

The decision mailed 20 December 2006 indicated the petition under 37 CFR 1.137(b) was dismissed without prejudice. However, that dismissal was premature. The decision should have stated that the decision on the petition under 37 CFR 1.137(b) would be held in abeyance until the petition under 37 CFR 1.181 was resolved. Accordingly, that part of the decision dismissing applicant's petition under 37 CFR 1.137(b) is vacated and replaced with the holding that such decision will be held in abeyance until the petition under 37 CFR 1.181 is resolved.

Application No.: PCT/US06/10812                                                    -3-

Since the petition under 37 CFR 1.181 is now resolved, the petition under 37 CFR 1.137(b) is DISMISSED as MOOT.

### CONCLUSION

For the reasons set forth above, the petition under 37 CFR 1.181 is **GRANTED**.

For the reasons set forth above, the petition under 37 CFR 1.137(b) is **DISMISSED** as **MOOT**.

For the reasons set forth above, the INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE mailed 20 June 2006 is VACATED.

For the reasons set forth above, the NOTIFICATION THAT INTERNATIONAL APPLICATION CONSIDERED TO BE WITHDRAWN mailed 02 August 2006 is VACATED.

The application is being forwarded to the United States Receiving Office for continued processing of the international application.


Daniel Stemmer
PCT Legal Examiner
PCT Legal Affairs
Office of Patent Cooperation Treaty
Legal Administration
Telephone:   (571) 272-3301
Facsimile:    (571) 273-0459


CC: International Bureau of WIPO

# Exhibit F

**PCT/US2006/010812  20-12-2006**



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

# 2 0 DEC 2006

STEVEN H. ROTH
CHEVRON CORPORATION, LAW DEPARTMENT
POST OFFICE BOX 6006
SAN RAMON CA 94583-0806

In re Application of
CHEVRON U.S.A., INC.
PCT No.: PCT/US2006/010812
Int. Filing Date: 24 March 2006
Priority Date: 04 May 2005
Attorney's Docket No.: 11/122,463
For:   LUBRICATING COMPOSITION HAVING
IMPROVED STORAGE STABILITY

:
:
:
:
:        DECISION
:
:
:
:
:

This decision is in response to applicant's "PETITION TO REVIVE UNINTENTIONALLY ABANDONED APPLICATION" filed on 06 October 2006.

## BACKGROUND

On 24 March 2006, applicant filed in the United States Receiving Office (RO/US) a request, description, claims, and abstract.

On 17 April 2006, the RO/US mailed a NOTIFICATION CONCERNING PAYMENT OF PRESCRIBED FEES (Form PCT/RO/102) inviting applicant to pay the balance due.  The Form indicated that the wrong deposit account number had been provided.

On 16 May 2006, the RO/US mailed a NOTIFICATION OF THE INTERNATIONAL APPLICATION NUMBER AND OF THE INTERNATIONAL FILING DATE (Form PCT/RO/105) indicating the international filing date as 24 March 2006.

On 20 June 2006, the RO/US mailed an INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE (Form PCT/RO/133) inviting applicant to pay the balance due within one month of the date of mailing of the INVITATION.  The INVITATION also indicated that failure to pay the total amount due with the time limit indicated may result in the international application being considered withdrawn by the RO/US.

On 02 August 2006, the RO/US mailed a NOTIFICATION THAT INTERNATIONAL APPLICATION CONSIDERED WITHDRAWN (Form PCT/RO/117) indicating that the international application is declared by the RO/US to be considered withdrawn for failure to pay the prescribed fees.

A0048

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 06/03/21   Page 50 of 215 PageID# 56

On 06 October 2006, applicant filed the instant "PETITION TO REVIVE UNINTENTIONALLY ABANDONED APPLICATION".

## DISCUSSION

It appears that applicant is requesting that the international application be revived as to all designated States. However, a revival under 37 CFR 1.137(b) for an international application, if granted, would only apply to the United States Designated/Elected Office. *See, e.g.,* PCT Article 48(2) and PCT Rule 82bis.2. *See also* PCT Rule 49.6. (If applicant is requesting that the application be revived only as to the DO/EO/US, applicant should so state in the next communication by applicant in the instant application. However, the invitation to file such a petition should not be construed as an indication that such a petition will be granted.)

Applicant purports that "they never received the Invitation to Pay the Prescribed Fees (From (PCT/RO/133)". If applicants can establish nonreceipt of this paper, then the application should not have been withdrawn. In such case, the Notification that International Application Considered Withdrawn will be withdrawn pursuant to 37 CFR 1.181. See MPEP § 711.03(c), para. I.A. Such a petition must include: (1) a statement by the practitioner that the Office action was not received by the practitioner; (2) a statement attesting that a search of the file jacket and docket records indicates that the Office action was not received; and (3) a copy of the docket record where the non-received Office action would have been entered had it been received (the docket record must also be referenced in practitioner's statement). Again, however, the invitation to file such a petition should not be construed as an indication that such a petition will be granted.

It is noted that the address to which the INVITATION TO PAY PRESCRIBED FEES TOGETHER WITH LATE PAYMENT FEE is the address of record which is not the address of petitioner. Thus, the showing concerning non-receipt of the INVITATION would at least have to establish non-receipt at the address of record. The records of petitioner may also be relevant.

## CONCLUSION

For the reasons set forth above, the petition under 37 CFR 1.137(b) is **DISMISSED** without prejudice.

The application is considered withdrawn for failure to pay the prescribed fees.

Please direct further correspondence with respect to this matter to Mail Stop PCT, Commissioner for Patents, Office of PCT Legal Administration, P.O. Box 1450, Alexandria, Virginia 22313-1450, with the contents of the letter marked to the attention of the Office of PCT Legal Administration.

Daniel Stemmer

Application No.: PCT/US06/10812

PCT Legal Examiner
PCT Legal Affairs
Office of Patent Cooperation Treaty
    Legal Administration
Telephone:  (571) 272-3301
Facsimile:  (571) 273-0459

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 42207546 |
| **Application Number:** | |
| **International Application Number:** | PCT/US19/61456 |
| **Confirmation Number:** | 4833 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Customer Number:** | 93344 |
| **Correspondence Address:** | Flachsbart & Greenspoon<br>-<br>333 N. Michigan Avenue<br>27th Floor<br>Chicago        IL      60601-3901<br>US    312-551-9500<br>fg.law.rpg@gmail.com |
| **Filer:** | Robert P. Greenspoon. |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | |
| **Receipt Date:** | 17-MAR-2021 |
| **Filing Date:** | 14-NOV-2019 |
| **Time Stamp:** | 15:16:07 |
| **Application Type:** | International Application (PCT) for filing in the US receiving office |
| **Patent Number:** | |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Petition for review by the PCT legal office | RequestReconFinalAction.pdf | 1607310<br><br>a13b19c557dffe34ccf959e91a46cb7cd70b7d9f | no | 45 |

| Warnings: |
|---|

| Information: |
|---|

| | Total Files Size (in bytes): | 1607310 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

A0052



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
333 N. MICHIGAN AVE.
27th FLOOR
CHICAGO IL ILLINOIS 60601

**MAILED**

**FEB 26 2021**

INTERNATIONAL PATENT LEGAL ADM

In re Application of:                            :
HINTS, Inc.                                      :
PCT No.:  PCT/US2019/061456 (withdrawn)          :
Int. Filing Date: 14 November 2019               :
Priority Date: 14 November 2018                  :          DECISION ON PETITION
Atty. Docket No.: None                           :          UNDER 37 CFR 1.137(a)
Title:   SYSTEM AND METHOD FOR                   :
         DETECTING MISINFORMATION               :
         AND FAKE NEWS VIA NETWORK               :
         ANALYSIS                                :

This decision is issued in response to applicant's petition under 37 CFR 1.181 to re-instate the above-captioned international application based on failure to receive office actions filed 27 January 2021 in the United States Patent and Trademark Office (USPTO).

## BACKGROUND

The background of the international application is detailed in the decision issued in this application on 01 January 2021. Specific to the issue at hand, on 26 February 2020, the USPTO in its capacity as the Receiving Office (RO/US) mailed a "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) indicating that the international application was considered withdrawn for failure to submit the fees required in the Invitation mailed 13 January 2020.

On 01 January 2021, applicant was mailed a decision dismissing as moot applicant's petition under 37 CFR 1.137(a) for the revival of the international application.  The petition fee paid was refunded to applicant.

On 27 January 2021, applicant filed the petition under 37 CFR 1.181 considered herein.

## DISCUSSION

It is agreed that applicant did not pay the $2102.00 in required fees within one month of the filing of the international application, as required under PCT Rules 14.1(c), 15.3, and 16.1(f).

A0053

Application No.: PCT/US2019/061456

The prior decision, perhaps in an inarticulate manner, stated to applicant that the provisions of 37 CFR 1.137(a) did not apply to international applications. Namely, that a mere unintentional delay in paying the required fees was not sufficient for the granting of a petition re-instating a withdrawn international application. It is for that reason that the petition was dismissed as moot and applicant was refunded the petition for revival fee.

Applicant is correct that a recourse does exist under 37 CFR 1.181 for situations where a Form PCT/RO/117 withdrawing an international application was mailed but applicant never received the prior Form PCT/RO/102 and PCT/RO/133 at the official correspondence address of record.

In the present case, it is clear that applicant did not receive the forms as they were returned to the USPTO with an indication form the Postal Service that no such street number existed. Therefore, there is no need to consider the docket record provided or counsel's statement as to non-receipt. The issue at hand is, were the forms mailed to the correct official correspondence address of record.

As discussed in the previous decision, in the PCT Request (Form PCT/RO/101) filed 14 November 2019 Box number IV "AGENT OR COMMON REPRESENTATIVE' OR ADDRESS FOR CORRESPONDENCE listed the correspondence address as "33 N. Michigan Ave., Chicago, IL 60601 USA." A street number that it turns out does not exist.

Applicant's contention is that notwithstanding the error on the PCT/RO/101, the correct address, "333 N. Michigan Ave." was provided during the electronic filing of the application using the USPTO EFS-Web filing system wherein applicant's agent also provided the agent's customer number at the time of filing which also lists the correct 333 N. Michigan Avenue address.

Applicant is advised that PCT Rule 4.4(d) states that for each applicant, inventor or agent, only one address must be indicated. While 4.7(a) provides that if an agent is appointed, the request shall so indicate, and shall state the agent's name and address.

As to the customer number, the customer number input through EFS-Web makes clear that the customer number is only for viewing the application in Private PAIR. It warns, "The Customer Number will allow access to the application in the Private PAIR but may not be used to establish or change the correspondence address."

Applicant points out that the "Correspondence Address" area for the electronic filing of an application includes language to "Provide an address where USPTO should send correspondence for this application." However, the Legal Framework for Patent Electronic System indicates that the Office will look to the address in EFS only where the Office doesn't have a proper address in the submission:

> Where no correspondence information is included in the submission, or the correspondence information was not made in accordance with the applicable regulations, the Office may use the application data furnished through EFS-Web for purposes of correspondence until corrected by the applicant. For example, the

Office may use the correspondence address associated with a customer number entered through EFS-Web rather than an address furnished in an unsigned paper in the new application submission.

In the present case a correspondence address was provided in the Form PCT/RO/101 and that address controls.

Applicant also points to language in the Manual of Patent Examining Procedure (MPEP) at section 403.01 showing that inconsistencies between correspondence addresses in an application may be resolved with the selection of the correspondence address associated with a customer number. Applicant is advised that MPEP 1807 provides:

> The Customer Number Practice set forth in MPEP § 403 may not be used in the international phase to appoint an agent or designate a correspondence address. A power of attorney making use of the Customer Number Practice in the international phase to indicate the name or address of an appointed person will be considered nonexistent unless the defect is corrected. See PCT Rule 90.4(c). A Customer Number may be used in the international phase solely for purposes of viewing the international application in the Patent Application Information Retrieval (PAIR) system. See MPEP § 1809.

For the reasons stated above, it is clear that applicant provided a correspondence address of 33 N. Michigan Ave. and it was to this address that the forms in question were properly mailed.

Finally, counsel has presented that operations for the law firm of record and staff were adversely affected by the COVID-19 epidemic. The USPTO has not issued any Official Gazette notices providing for relief as to international applications. Further, it is noted that the Form PCT/RO/117 informing applicant that the international application was withdrawn was mailed on 26 February 2020, prior to any COVID-19 relief taking effect.

## CONCLUSION

For the reasons discussed above, applicant's petition under 37 CFR 1.181 is **DISMISSED**.

As set forth in the "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) mailed on 26 February 2020, the present international application is considered withdrawn.

Application No.: PCT/US2019/061456

Any further correspondence with respect to this matter may be filed electronically via EFS-Web selecting the document description "Petition for review and processing by the PCT Legal Office" or by mail addressed to Mail Stop PCT, Commissioner for Patents, Office of PCT Legal Administration, P.O. Box 1450, Alexandria, Virginia 22313-1450, with the contents of the letter marked to the attention of the Office of PCT Legal Administration.

/Derek A. Putonen/

Derek A. Putonen
Attorney-Advisor
International Patent Legal Administration
Tel:    (571) 272-3294

A0056

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | PCT/US19/61456 |
| **Filing Date:** | 14-Nov-2019 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Filer:** | Robert P. Greenspoon. |
| **Attorney Docket Number:** | |

Filed as Large Entity

**Filing Fees for   International Application (PCT) for filing in the US receiving office**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| TRANSMITTAL FEE | 1601 | 1 | 260 | 260 |
| LATE PAYMENT FEE | 1619 | 1 | 625 | 625 |
| INTL FILING FIRST 30PGS EFS WITHOUT ZIP | 1701 | 1 | 1344 | 1344 |
| INTERNATIONAL SEARCH (ROSPATENT) | 1714 | 1 | 510 | 510 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **2739** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 41762495 |
| **Application Number:** | |
| **International Application Number:** | PCT/US19/61456 |
| **Confirmation Number:** | 4833 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Customer Number:** | 93344 |
| **Correspondence Address:** | Flachsbart & Greenspoon<br>-<br>333 N. Michigan Avenue<br>27th Floor<br>Chicago      IL     60601-3901<br>US     312-551-9500<br>fg.law.rpg@gmail.com |
| **Filer:** | Robert P. Greenspoon. |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | |
| **Receipt Date:** | 27-JAN-2021 |
| **Filing Date:** | 14-NOV-2019 |
| **Time Stamp:** | 16:34:22 |
| **Application Type:** | International Application (PCT) for filing in the US receiving office |
| **Patent Number:** | |

## Payment information:

A0059

| Submitted with Payment | yes |
|---|---|
| Payment Type | CARD |
| Payment was successfully received in RAM | $2739 |
| RAM confirmation Number | E20211QG35416100 |
| Deposit Account | 601428 |
| Authorized User | Robert Greenspoon |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

37 CFR 1.445(a)(1), (a)(2), (a)(4) and (b) (International application filing, processing and search fees)

37 CFR 1.17(m) (Acceptance of an unintentionally delayed claim for priority)

PCT Rule 14

PCT Rule 15

PCT Rule 16

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for recording of a change/PCT Rule 92bis | 92bis.pdf | 57118<br>3a2bbad90e93o0e37f5b693c1de037812efb670 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Misc. incoming letter from Applicant - IA | H01PCTdwreplacement.pdf | 57040<br>30078f6c3d297f5e50f6e156fad8f8c1418e92dc | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Petition for review by the PCT legal office | RequestforReconsiderationandPetition.pdf | 865961<br>26206028cf3aec771850899aacc60be5603ee1f59 | no | 19 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Misc. incoming letter from Applicant - IA | DeclarationofRobertGreenspoon.pdf | 1239053<br>9705ed9f49c23c4d64e8c636b1b233a2c2ecc906 | no | 52 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| 5 | Substitute Drawings | ReplacementDrawings2.pdf | 284019<br><br>b2c4895536d609114dc915a26e5282ef74d3de8c | no | 2 |

**Warnings:**

**Information:**

| 6 | Fee Worksheet (SB06) | fee-info.pdf | 36843<br><br>3c1412b93f1dfac26bb813c167870a9e2862ac63 | no | 2 |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 2540034 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 63 of 215 PageID# 88

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re PCT Application of: | ) | |
| | ) | |
| Applicant: Hints, Inc. | ) | Inventor: Elan Pavlov |
| | ) | |
| Serial No. PCT/US19/61456 | ) | Att. Dkt.: H-01PCT |
| | ) | |
| International Filing Date: Nov. 14, 2019 | ) | |
| | ) | |
| Title: System and Method for Detecting | ) | |
| Misinformation and Fake News | ) | Conf. No.: 4833 |
| Via Network Analysis | ) | |
| | ) | |

## REQUEST FOR CHANGE OF CORRESPONDENCE ADDRESS UNDER RULE 92bis

PCT Receiving Office
United States Patent and Trademark Office
Alexandria VA, USA

In the above-referenced PCT application, kindly change the correspondence address under Rule 92bis to:

Robert Greenspoon
Flachsbart & Greenspoon LLC
333 N. Michigan Ave.
27th Floor
Chicago, IL 60601
US

Please change the email address (if applicable) to rpg@fg-law.com. Applicant authorizes communication by email.

The original address shown on PCT/RO/101 contained a typographical error, and was to a nonexistent location. Note that a petition will be filed seeking to vacate the PCT/RO/117 notification that this international application is "considered withdrawn."

Dated: 27 January 2021

Respectfully Submitted

/Robert Greenspoon/

USPTO Reg. No. 40,004
Agent for the Applicant

A0063

Case 1:21-cv-00573-LMB-IDD Document 1-2 Filed 05/06/21 Page 65 of 215 PageID# 90

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re PCT Application of:    )
            )
Applicant: Hints, Inc.     )  Inventor: Elan Pavlov
            )
Serial No. PCT/US19/61456  )  Att. Dkt.: H-01PCT
            )
International Filing Date: Nov. 14, 2019 )
            )
Title: System and Method for Detecting )
   Misinformation and Fake News )  Conf. No.: 4833
   Via Network Analysis   )
            )

**SUBMISSION OF SUBSTITUTE DRAWINGS UNDER RULE 26**

PCT Receiving Office
United States Patent and Trademark Office
Alexandria VA, USA

  In response to the Invitation to Correct Defects issued Nov. 29, 2019, the applicant hereby submits a complete substitute drawing set. The applicant believes that these substitute drawings meet the requirements of Rule 11. No new matter has been introduced.

  The original address shown on PCT/RO/101 contained a typographical error, and was to a nonexistent location. Note that a petition will be filed seeking to vacate the PCT/RO/117 notification that this international application is "considered withdrawn."

  By way of background, on 29 November 2019, the Office mailed Agent an Invitation to Correct Defects in the International Application (Form PCT/RO/106). The defect that the Invitation identified related to the Application's drawings, which contained photocopy marks and therefore did not comply with the physical requirements for international publication (Annex C1 to Form PCT/RO/106, 1.p.). The Invitation

provided a reply date of two months from the date of mailing, which, in accordance with Rule 26.2 of the Regulations under the PCT, may be extended by the Receiving Office. The Invitation was sent to the address indicated on the PCT Request, and Agent affirmatively states that he did not receive the communication. Agent believes the accompanying replacements comply with the physical requirements for drawings "to the extent necessary for the purpose of reasonably uniform international publication" (Rule 26.5 of the Regulations under the PCT).

Applicant therefore respectfully requests the Office to accept the submitted corrected drawings in replacement of the drawings in the Application as filed.

Respectfully Submitted

/Robert Greenspoon/

USPTO Reg. No. 40,004
Agent for the Applicant

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 67 of 215 PageID# 92

Replacement Sheet

1/2



FIG. 1
(PRIOR ART)

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 68 of 215 PageID# 93

Replacement Sheet
2/2



Nodes are chosen based on prior info
(e.g., text search).
Edges are hyperlinks.

FIG. 2A

(PRIOR ART)



Seed nodes are chosen based on manual
labeling and weights are fixed for those nodes.
Edges are interactions. Negative edges for
negative and neutral interactions.

FIG. 2B

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re PCT Application of:                    )
                                             )
Applicant: Hints, Inc.                       )        Inventor: Elan Pavlov
                                             )
Serial No. PCT/US19/61456                    )        Att. Dkt.: H-01PCT
                                             )
International Filing Date: Nov. 14, 2019      )
                                             )
Title: System and Method for Detecting       )
        Misinformation and Fake News         )        Conf. No.: 4833
        Via Network Analysis                 )
                                             )

**Request for Reconsideration and Petition under 37 CFR 1.181 to Withdraw Holding of Abandonment and Withdrawal and to Revive Unintentionally Withdrawn PCT International Application**

## INTRODUCTION

Applicant respectfully requests reconsideration under 37 CFR 1.181 of the 1 January 2021 dismissal (without prejudice) of Applicant's 15 December 2020 Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a). This also constitutes a new petition on the same grounds. The basis for this petition is Applicant's non-receipt of Office notifications to pay prescribed fees, which resulted in the unintentional abandonment (withdrawal) of International Application PCT/US19/61456. Applicant believes there is no applicable petition fee, and it authorizes the Office to charge deposit account 601428 for the payment of all prescribed fees. Applicant is separately paying the amounts indicated to be due by the Office (indicated on form PCT/RO/133).

MPEP 711.03(c)(I)(A)) cites *Delgar v. Schuyler*, 172 USPQ 513 (D.D.C. 1971), in providing that "an allegation that an Office action was never received may be considered

in a petition to withdraw the holding of abandonment." The MPEP lays down three requirements to establish non-receipt: the Applicant's agent must state that the communications were not received; the Applicant's Agent must attest that a search of the file jacket and docket records indicate that the Office communication was not received; and the Applicant's Agent must describe and provide a copy of the docket records indicating where the communication would have been entered had it been received (MPEP § 711.03(c)(I)(A)(1)).

In numerous publicly available petition decisions, the Office applied the same requirements to vacate the withdrawal because of nonpayment of fees of an international application filed under the PCT. *See In re Application of Custom Care Products, Inc.*, PCT/US06/09552 (11 September 2007, Decision on Petition); *In re Application of Yissum Research Development Company of the Hebrew University of Jerusalem*, PCT/US06/47336 (22 June 2007, Decision on Petition); and *In re Application of Chevron U.S.A., Inc.*, PCT/US06/010812 (26 March 2007, Decision on Petition). The *Chevron* decision is particularly relevant. That grant of relief followed a procedural history identical to that here: a first petition filed under Rule 1.137(a) that the Office dismissed without prejudice (dated December 20, 2006), followed by the Rule 1.181 petition that the Office granted.

Applicant respectfully submits that it satisfies the three requirements for establishing non-receipt of an Office notification concerning the payment of fees, and deserves the same relief granted on numerous materially identical petitions in the past. Applicant therefore requests that the Office grant this petition under 37 CRF 1.181 and

A0069

vacate the Notification (PCT/RO/117) that the International Application PCT/US19/61456 is considered to be withdrawn.

## BACKGROUND

1. On 14 November 2019, Applicant filed a Request (Form PCT/RO/101) and accompanying materials to initiate the present international application. Applicant's Agent (patent attorney Robert Greenspoon, Reg. No. 40,004, through his delegated assistant, patent attorney Clifford Kraft) electronically filed the application using the Office's EFS-Web registered system. The submission did not include a fee payment. As considered in the following paragraphs, Applicant's Agent provided correct address information in all ways but one.

2. Applicant's Agent incorrectly and unintentionally listed the Agent's address in Box No. IV of the Request as "33 N. Michigan Ave., Chicago, IL 60601 USA" when he should have listed it as "333 N. Michigan Ave., Chicago, IL 60601 US." However, Applicant's Agent correctly listed the address as "333 N. Michigan Ave, chicago, IL 60601" under "Correspondence Address" in the EFS-Web's Application Data field. The instructions for completing the Correspondence Address state, "Provide an address where USPTO should send correspondence for this application."

A0070

Case 1:21-cv-00573-LMB-IDD Document 1-2 Filed 05/06/21 Page 72 of 215 PageID# 97



Applicant's Agent also listed his correct Customer Number, which is associated with Applicant's Agent's correct address, in the Application Data field.

A0071

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 73 of 215 PageID# 98



3. On 14 November 2019, Applicant's Agent received an Electronic Acknowledgement Receipt in response to the filing of the Application. The Receipt listed the Correspondence Address as "333 N. Michigan Ave," *i.e.*, Applicant's Agent's correct address.



5

A0072

Applicant and Agent were not aware that the address listed in the PCT Request Form was incorrect, and believed that correspondence would be sent to the address listed as the Correspondence Address. Subsequent investigation revealed that 33 N. Michigan Ave. does not exist as an address.

4. On 29 November 2019, the United States Receiving Office (the Office) mailed a "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) indicating that $2,102.00 in fees was required. Applicant and Agent did not receive the Notification. This Form PCT/RO/102 shows that it was not sent to the "333" address that the EFS-Web "Application Data" instructions indicated would be used, but to the nonexistent "33" address mistyped on the PCT/RO/101 form.

5. On 17 December 2019, the mailing mentioned in ¶ 4 was "returned to USPTO as undelivered." This nondelivery is recorded in the file history record for the Application.

6. On 13 January 2020, the Office mailed an "Invitation to Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) requiring submission of $2,102.00 in fees, as well as a $625.00 late payment fee. The Invitation stated that payment was required within one month and that: "Failure to pay the total amount due within the time limit indicated above may result in the international application being considered withdrawn by the receiving Office." Applicant and Agent did not receive the Invitation. This Form PCT/RO/133 shows that it was not sent to the "333" address that the EFS-Web "Application Data"

A0073

instructions indicated would be used, but to the nonexistent "33" address mistyped on the PCT/RO/101 form.

7.  On 11 February 2020, the mailing mentioned in ¶ 6 was "returned to USPTO as undelivered." This nondelivery is recorded in the file history record for the Application.

8.  On 26 February 2020, the RO/US mailed a "Notification that International Application Considered To Be Withdrawn (Form PCT/RO/117) indicating that the international application as considered withdrawn for failure to submit the fees required in the Invitation mailed 13 January 2020. Applicant and Agent did not receive the Notification. This Form PCT/RO/117 shows that it was not sent to the "333" address that the EFS-Web "Application Data" instructions indicated would be used, but to the nonexistent "33" address mistyped on the PCT/RO/101 form.

9.  On 10 March 2020, the mailing mentioned in ¶ 8 was "returned to USPTO as undelivered." This nondelivery is recorded in the file history record for the Application.

10. Because of the COVID-19 pandemic, Agent's offices closed in mid-March 2020, and work in subsequent months was done remotely. The offices remained fully closed until just after 4 July; since then, only a limited, intermittent presence in the office has occurred. Although all work continued to be carried out with due care, the closure impacted the usual close communication patterns that marked Agent's ability to anticipate, spot and quickly resolve filing problems.

A0074

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 76 of 215 PageID# 101

11. The practitioner with principal responsibility for completing the Request and managing the Application was Clifford Kraft. On 10 July 2020, Clifford Kraft's wife died following a lengthy, debilitating illness. Agent's firm believes that Mr. Kraft's wife's illness and death, aggravated by the limitations imposed by the COVID-19 pandemic, caused him undue stress and distraction and impacted his performance.

12. On 15 December 2020, Applicant's Agent filed the previous "Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)," along with the required fee.

13. On 1 January 2021, the Office ruled the petition mentioned in ¶ 12 "**DISMISSED** without prejudice" and returned the fee under the following reasoning:

> Applicant's present petition asserts that the failure to submit a timely payment of the required fees was unintentional; however, there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failure to timely pay the fees was unintentional. Applicant's present petition to reinstate this international application is therefore appropriately dismissed.

This reasoning does not comport with new information previously unavailable to the Office from WIPO. *See* n.1 on page 10, below.

14. Applicant's Agent affirmatively states that (1) the Office actions mentioned in ¶¶ 4, 6 and 8 were not received by Applicant or Agent, by his office, or by anyone working under his direction; and (2) a search of the file jacket and docket records indicates that the Office actions were not received. Because the

Office's email PAIR notifications to practitioners do not include international application events, a search of the PAIR notifications also did not provide notice to Agent of nonreceipt.

15. Eleven firm master docket reports came into existence (essentially, weekly) in the period in 2019-2020 when fees under the Office notifications were due and payable (between 29 November 2019 and 13 February 2020). Attached to the accompanying Greenspoon Declaration as Exhibit A are lightly redacted copies (blanking only certain irrelevant names) of the first and last of these master docket records excerpts. Left unredacted are the entries for this Application (designated with client code H-01PCT). The third column lists Action Dates and the fourth column lists Comments. These columns would contain any known and understood deadlines. The absence of fee deadline entries for this Application confirms that, after the nondelivered mailings named in ¶¶ 2, 4 and 6, Agent and his firm did not have the indicated fee deadlines in their master docket. Though only the first and last of the eleven records are included for brevity, Agent has confirmed that the intervening nine master records carried forward the identical and unchanging text of the H-01PCT entry.

## ARGUMENT

Although the PCT may not provide a treaty-based mechanism for reviving an application abandoned (withdrawn) for failure to pay fees, the USPTO, as stated above, has determined that such an application may be revived and Form PCT/US/117 may be vacated, upon a showing that the Applicant's Agent did not receive fee notifications from the USPTO.[1] The requirements for establishing a showing of nonreceipt are laid out in MPEP § 711.03(c)(1). Under MPEP § 711.03(c)(1), a petition to withdraw a holding of abandonment must include:

(1) A statement by the practitioner "that the Office action was not received at the correspondence address of record;"

(2) A statement "that a search of the practitioner's record(s), including any file jacket or the equivalent, and the application contents, indicates that the Office action was not received;" and

(3) "A copy of the record(s) used by the practitioner where the non-received Office action would have been entered had it been received."

Applicant respectfully submits that it meets all three requirements to establish a showing of nonreceipt required by MPEP § 711.03(c)(1).

---

[1] Reconsideration is additionally warranted based on new information from the World Intellectual Property Office (WIPO) not previously available to the petitions officer. After the 1 January 2021 decision on the petition filed under 37 CFR 1.137(a), Applicant sought a Rule 92bis address correction at the International Bureau (IB), to change "33" to "333." (Applicant is also seeking the same at the USPTO). Attached as an addendum hereto is the 27 January 2021 email from WIPO on this topic, responding to a message from Applicant's Agent. There, WIPO states that the IB "will record the requested change of the agent's address only if the International Application is re-instated. Please contact the Receiving Office RO/US which is the only one competent authority for this matter." WIPO thus believes that "re-instatement" is available under the PCT, and that the USPTO is the "competent authority" who would do it.

A0077

I.

With respect to the first item required to establish nonreceipt, Applicant's Agent affirmatively states that neither he, nor his office, nor anyone working under his direction received the "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) mailed by the RO/US on 29 November 2019, the "Invitation to Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133), mailed by the RO/US on 13 January 2020, nor the "Notification that International Application Considered To Be Withdrawn" (Form PCT/RO/117), mailed by the RO/US on 26 February 2020. The notifications were all "returned to USPTO as undelivered" on 17 December 2019, 11 February 2020, and 10 March 2020, respectively. (See ¶¶ 4-9, above.)

Neither MPEP § 711.03(c)(1) nor any of the petition grants under Rule 1.181 cited above required analysis of an applicant's or an agent's good faith or reasonable reliance on Office procedures. Yet if relevant, good faith and reasonable reliance are present here. Applicant acknowledges that Agent unintentionally entered Agent's address incorrectly in Box No. IV of the Request; Agent listed the street address as 33 instead of 333 N. Michigan Ave. However, Agent entered the address correctly in the EFS-Web Application Data field, and the Electronic Acknowledgement Receipt, which Applicant received the same day as filing (14 November 2019), listed Agent's correct address. In addition, Agent entered his correct Customer Number, which is associated with Agent's correct address, in the EFS-Web Application Data field, and the correct Customer Number is listed in the Electronic Acknowledgement Receipt. Agent was not aware of the error in the Request and he believed in good faith that the Office was in possession of Agent's correct correspondence address.

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 80 of 215 PageID# 105

The instructions on the EFS-Web Application Data field and the wording of the Electronic Acknowledgement Receipt provide strong support for Agent's good-faith belief. The EFS-Web Application Data field asks for the Title of the Invention, Attorney Docket Number, Applicant Name, Customer Number, and <u>Correspondence Address.</u> The instruction accompanying the Correspondence Address asks the Applicant to "Provide an address where USPTO should send correspondence for this application." The Electronic Acknowledgement Receipt similarly listed Agent's correct address as the "Correspondence Address." Thus Agent had no reason to doubt that he would receive notifications at the correct address.

In contrast to the explicit use of the term "Correspondence Address" in the EFS-Web Application Data field and Electronic Acknowledgement Receipt, and the PAIR-reported "Application Data" field showing that a "Customer Number" indicates the application's "Correspondence Address," the language of the Request Form PCT/RO/101 is less clear. Box No. IV asks for the name and address of the "Agent or Common Representative; or Address for Correspondence." This wording suggests that entry of an address is optional, if a name is provided. The check box at the bottom of the page, labeled "Address for correspondence," explains that the term means something other than the address of the Agent or Common Representative. Applicants are instructed to "Mark this check-box where no agent or common representative is/has been appointed and [Box No. IV] above is used instead to indicate a special address to which correspondence should be sent." A comparison of the instructions in the Request and either of (1) the EFS-Web Application Data field or (2) the PAIR-reported "Customer Number Correspondence Address" data field, could therefore reasonably lead an Applicant to conclude that in the

A0079

case of a disparity, the address in the EFS-Web Application Data field and Electronic Acknowledgement Receipt should control (if not that of the Customer Number itself).

Support for that conclusion can be found in the inclusion of the Agent's Customer Number in the EFS-Web Application Data field and Electronic Acknowledgement Receipt. Although EFS-Web filing instructions state that a Customer Number cannot be used to designate initially the correspondence address for a PCT application in the international stage, MPEP § 403 provides that it can be used to reconcile inconsistencies when conflicting addresses are provided (see also MPEP § 601.03). MPEP § 403(I) states in part that "As the Office will not recognize more than one correspondence address (37 CFR 1.33(a)), any inconsistencies between the correspondence address resulting from a Customer Number being provided in an application for the correspondence address and any other correspondence address provided in that application will generally be resolved in favor of the address of the Customer Number." MPEP § 403.01(a) also states in part that "37 CFR 1.33(a) specifies that if an applicant provides more than one correspondence address (in a single paper or in different papers), the Office will select one of the specified addresses for use as the correspondence address and, if given, may select the correspondence address associated with a Customer Number over a typed correspondence address." According to the Editor's Note to 37 CFR 1.33 (available at https://www.uspto.gov/web/offices/pac/mpep/mpep-9020-appx-r.html), 37 CFR 1.33(a) applies to international applications filed under 35 U.S.C. 363, *i.e.*, international applications designating the United States. This is consistent with the Office's public statements about customer numbers. *See* https://www.uspto.gov/patents-application-process/applying-online/getting-started-new-users ("The customer number allows you to

A0080

easily associate all your filings to a single mailing address, thus eliminating typographical errors or variations in addresses that can make it difficult to receive patent correspondence from the USPTO.").

Applicant therefore respectfully submits that the statement by Agent that neither he, nor his office, nor anyone working under his direction received the notifications at issue in this petition (see ¶ 14, above) satisfies the first requirement establishing nonreceipt as provided in MPEP § 711.03(c)(I)(A)(1).

## II.

With respect to the second item required to establish nonreceipt, *i.e.*, a statement that "a search of the practitioner's record(s) . . . indicates that the Office action was not received" (MPEP § 711.03(c)(I)(A)(1)), Applicant's Agent carried out a full search of the file jacket and docket records, and Agent affirmatively states that that search indicates that the Office actions were not received (see ¶ 14, above). Applicant therefore respectfully submits that its statement satisfies the second requirement as provided in MPEP § 711.03(c)(I)(A)(1).

## III.

In accordance with the third item, concerning docket records, required to establish nonreceipt, Agent has attached to the accompanying Greenspoon Declaration as Exhibit A a copy of the relevant master docket records that indicate that the fee deadline entries for the Application at issue would have been entered under "Action Date" and "Comments" had they been received. The Case Number for the Application at issue is H-01PCT. The space for those entries contains no information about notifications or the fee deadlines they

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 83 of 215 PageID# 108

would have established, indicating that the notifications were not received. A Declaration by Agent authenticates the master docket records and the factual statements in this petition.

Agent affirmatively states that his firm's docketing system is sufficiently reliable and is well suited for a firm of Agent's small size. The master docket report is divided into two parts: the first part contains a list of rolling upcoming deadlines; the second and much larger part consists of the current status of every active file. The record for each file includes the docket (case) number, the application number, the title of the invention, the priority date (where applicable), the due date for taking action or responding to an office action, the date of receipt of the office action, and frequently includes the name(s) of the inventor(s). There is also a column for comments. The docket report is updated and circulated every Monday to Agent's attorneys and staff. This system has never failed before.

Applicant therefore respectfully submits that it has satisfied the third and final requirement to establish nonreceipt of an Office communication required under MPEP § 711.03(c)(I)(A)(1). Agent maintains a docketing system that has a history of reliability, and the attached records from that system show where the non-received notifications would have been entered had they been received.

Applicant therefore respectfully submits that it has satisfied the showing necessary for the Office to withdraw the holding of abandonment on the basis of nonreceipt of an Office notification.

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 84 of 215 PageID# 109

IV.

Although Applicant believes that the above arguments constitute sufficient grounds for the Office to withdraw the holding of abandonment, Applicant submits that restrictions imposed by the COVID-19 pandemic, as well as circumstances impacting the practitioner who had primary responsibility for the Application at issue, provide additional support for reviving the Application.

As with many firms, the shutdown caused by the COVID-19 pandemic interfered with Agent's normal office communication patterns. In particular, it made it difficult for Agent's practitioners to engage in the sort of work-related conversations that serve to alert Agent to potential problems. Agent's offices have been operating remotely since mid-March 2020, with only a minimal, scattered presence in the office since 4 July. Although all work has continued to be carried out with due care, the inability to maintain close personal communications has increased the challenge of appreciating and resolving problems. The difficulties caused by the COVID-19 pandemic have been widely recognized, including by the International Bureau of the World Intellectual Property Organization, which has encouraged Receiving Offices "to show flexibility" with respect to the timely payment of fees (see https://www.wipo.int/pct/en/covid_19/covid_update.html).

The practitioner primarily responsible for prosecuting the Application at issue had been working under great stress and suffering from personal grief since before the filing date of the Application. His wife suffered from dementia, and Agent believes that her illness and death on 10 July 2020 took a toll. The limitations imposed by the COVID-19 pandemic further aggravated this situation. The responsible practitioner continued to work

16

and perform his duties responsibly throughout his ordeal; however, Agent's firm recognizes that he was distracted because of his personal situation and was not able to exercise his normal high level of vigilance in overseeing patent files.

Had the above factors not been present during the filing and prosecution of the Application at issue, Agent believes that he might have been able to more timely perceive that the notifications at issue had not been received. Applicant therefore respectfully requests that the Office take those factors into consideration in granting Applicant's petition to withdraw the holding of abandonment (withdrawal) based on the failure to receive an Office action, and thus vacate Form PCT/US/117.

V.

On 29 November 2019, the Office mailed Agent an Invitation to Correct Defects in the International Application (Form PCT/RO/106). The defect that the Invitation identified related to the Application's drawings, which contained photocopy marks and therefore did not comply with the physical requirements for international publication (Annex C1 to Form PCT/RO/106, 1.p.). The Invitation provided a reply date of two months from the date of mailing, which, in accordance with Rule 26.2 of the Regulations under the PCT, may be extended by the Receiving Office. The Invitation was sent to the address indicated on the PCT Request, and Agent affirmatively states that he did not receive the communication. Agent is simultaneously filing corrected drawings, which he believes complies with the physical requirements for drawings "to the extent necessary for the purpose of reasonably uniform international publication" (Rule 26.5 of the Regulations under the PCT).

Applicant therefore respectfully requests the Office to accept the submitted corrected drawings in replacement of the drawings in the Application as filed.

A0084

VI.

In order to correct the address included in the PCT Request for the Application at issue, Agent has filed a Request under PCT Rule 92*bis*.1 for the Recording of a Change with the Office.

## CONCLUSION

For the foregoing reasons, Applicant respectfully requests the Office, pursuant to 37 CFR 1.181, to reconsider the 1 January 2021 dismissal (without prejudice) of Applicant's 15 December 2020 Petition for Revival of an International Application, vacate the "Notification that International Application Considered To Be Withdrawn (PCT/RO/117)" mailed on 26 February 2020, and forward the international application for continued processing.

Dated: 27 January 2021

Respectfully Submitted

/Robert Greenspoon/

USPTO Reg. No. 40,004
Agent for the Applicant

A0085

**Subject:** ePCT Message - PCT/US2019/061456
**Date:**     Wednesday, January 27, 2021 at 9:14:01 AM Central Standard Time
**From:**     no.reply@wipo.int
**To:**       rpg@fg-law.com

# PCT/US2019/061456

To:        Robert Greenspoon
From:      PCT Operations Team 8 at the IB

ePCT Message:


Dear Sir

In reply to your ePCT message please be informed the International Bureau will
record the requested change of the agent's address only if the International
Application is re-instated.
Please contact the Receiving Office RO/US which is the only one competent
authority for this matter.


With best regards.


Authorized Officer: James Vannier (IB)
Date and Time:      27 January 2021 16:11:51 CET


NOTE: This is an informal notification for information only.
Access the international application directly in ePCT

WIPO reference: rpg@fg-law.com [14319710,N]

┌─────────────────────────────────────────────┐
│  **ADDENDUM TO RULE 1.181 PETITION**          │
│  **IN PCT/US2019/061456**                     │
└─────────────────────────────────────────────┘

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 88 of 215 PageID# 113

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re PCT Application of: | ) | |
| | ) | |
| Applicant: Hints, Inc. | ) | Inventor: Elan Pavlov |
| | ) | |
| Serial No. PCT/US19/61456 | ) | Att. Dkt.: H-01PCT |
| | ) | |
| International Filing Date: Nov. 14, 2019 | ) | |
| | ) | |
| Title: System and Method for Detecting | ) | |
| Misinformation and Fake News | ) | Conf. No.: 4833 |
| Via Network Analysis | ) | |
| | ) | |

**Declaration of Robert Greenspoon in Support of Petition under 37 CFR 1.181 to Withdraw Holding of Abandonment and Withdrawal and to Revive Unintentionally Withdrawn PCT International Application**

I, Robert Greenspoon, being competent to testify to the facts below, declare as follows:

1. I am a registered patent attorney (Reg. No. 40,004), practicing continually since 1996.

2. On 14 November 2019, my delegated assistant at my direction, patent attorney Clifford Kraft, filed a Request (Form PCT/RO/101) and accompanying materials under my credentials to initiate the present international application. We filed the application using the Office's EFS-Web registered system. The submission did not include a fee payment. We expected to pay fees in response to mailed and received "invitations," as is customary. As I now realize, we provided correct address information in all ways but one.

3. We incorrectly and unintentionally listed my address in Box No. IV of the Request as "33 N. Michigan Ave., Chicago, IL 60601 USA" when that should have been listed as "333 N. Michigan Ave., Chicago, IL 60601 US." However,

Case 1:21-cv-00573-LMB-IDD  Document 1-2  Filed 05/06/21  Page 89 of 215 PageID# 114

we correctly listed the address as "333 N. Michigan Ave, chicago, IL 60601"

under "Correspondence Address" in the EFS-Web's Application Data field.

The instructions for completing the Correspondence Address state, "Provide an

address where USPTO should send correspondence for this application."



We also listed my firm's correct Customer Number, which is associated with

my correct address, in the Application Data field.

A0088



4.  On 14 November 2019, we received an Electronic Acknowledgement Receipt in response to the filing of this application. The Receipt listed the Correspondence Address as "333 N. Michigan Ave," *i.e.*, my correct address.



We were not aware that the address listed in the PCT Request Form was incorrect, and believed that correspondence would be sent to the address listed

A0089

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 91 of 215 PageID# 116

as the Correspondence Address. I investigated recently, and found that 33 N. Michigan Ave. does not exist as an address.

5.  PAIR indicates that, on 29 November 2019, the United States Receiving Office (the Office) mailed a "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) indicating that $2,102.00 in fees was required. We did not receive the Notification. This Form PCT/RO/102 shows that it was sent to the nonexistent "33" address mistyped on the PCT/RO/101 form.

6.  PAIR indicates that, on 13 January 2020, the Office mailed an "Invitation to Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) requiring submission of $2,102.00 in fees, as well as a $625.00 late payment fee. The Invitation stated that payment was required within one month and that: "Failure to pay the total amount due within the time limit indicated above may result in the international application being considered withdrawn by the receiving Office." We did not receive the Invitation. This Form PCT/RO/133 shows that it was sent to the nonexistent "33" address mistyped on the PCT/RO/101 form.

7.  PAIR indicates that, on 26 February 2020, the RO/US mailed a "Notification that International Application Considered To Be Withdrawn (Form PCT/RO/117) indicating that the international application as considered withdrawn for failure to submit the fees required in the Invitation mailed 13 January 2020. We did not receive the Notification. This Form PCT/RO/117 shows that it was sent to the nonexistent "33" address mistyped on the PCT/RO/101 form.

8. Because of the COVID-19 pandemic, my firm's offices closed in mid-March 2020, and work in subsequent months was done remotely. The offices remained fully closed until just after 4 July; since then, only a limited, intermittent presence in the office has occurred. Although all work continued to be carried out with due care, the closure impacted the usual close communication patterns that marked our ability to appreciate, spot and quickly resolve filing and other problems.

9. The practitioner I delegated with principal responsibility for completing the Request and managing the Application was Clifford Kraft. On 10 July 2020, Clifford Kraft's wife died following a lengthy, debilitating illness. I and my firm believe that Mr. Kraft's wife's illness and death, aggravated by the limitations imposed by the COVID-19 pandemic, caused him undue stress and distraction and impacted his performance.

10. I hereby state that (1) the Office actions mentioned above (two fee invitations and the "considered withdrawn" notice) were not received by Applicant or me, by my office, nor by anyone working under my direction; and (2) a search of the file jacket and docket records indicates that we did not receive the Office actions. I also searched my archive of emailed PAIR notifications. Results of that search also confirm that I did not receive the Office actions mentioned above through PAIR.

11. Eleven firm master docket reports came into existence (essentially, weekly) in the period in 2019-2020 when fees under the Office notifications were due and payable (between 29 November 2019 and 13 February 2020). Attached hereto

are lightly redacted copies (blanking only certain irrelevant names) of the first and last of these master docket records excerpts. I have left unredacted the entries for this Application (designated with client code H-01PCT). The third column lists Action Dates and the fourth column lists Comments. These columns would contain any known and understood deadlines. The absence of fee deadline entries for this Application confirms to me that, after the nondelivered mailings named above, I and my firm did not have the indicated fee deadlines in their master docket. Though only the first and last of the eleven records are included for brevity, the intervening nine master records carried forward the identical and unchanging text of the H-01PCT entry.

12. I repeat and affirmatively state that neither I, nor my office and firm, nor anyone working under my direction received the "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) mailed by the RO/US on 29 November 2019, the "Invitation to Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) mailed by the RO/US on 13 January 2020, nor the "Notification that International Application Considered To Be Withdrawn" (Form PCT/RO/117) mailed by the RO/US on 26 February 2020. PAIR indicates that the notifications were all "returned to USPTO as undelivered" on 17 December 2019, 11 February 2020, and 10 March 2020, respectively.

13. I repeat and affirmatively state that I carried out a full search of the file jacket and docket records, and that search indicates that the Office actions were not received.

14. I repeat and affirmatively state that I attach here a copy of the relevant master docket records that indicate that the fee deadline entries for the Application at issue would have been entered under "Action Date" and "Comments" had they been received. The Case Number for the Application at issue is H-01PCT. The space for those entries contains no information about notifications or the fee deadlines they would have established, indicating that the notifications were not received.

15. Our docketing system is sufficiently reliable and is well suited for a firm of our small size. The master docket report is divided into two parts: the first part contains a list of rolling upcoming deadlines; the second and much larger part consists of the current status of every active file. The record for each file includes the docket (case) number, the application number, the title of the invention, the priority date (where applicable), the due date for taking action or responding to an office action, the date of receipt of the office action, and frequently includes the name(s) of the inventor(s). There is also a column for comments. The docket report is updated and circulated every Monday to Agent's attorneys and staff. This system has never failed before.

16. Had the COVID-19 and personal factors not been present during the filing and prosecution of the Application at issue, I believe that I might have been able to more timely perceive that the notifications at issue had not been received.

17. PAIR indicates that on 29 November 2019, the Office mailed an Invitation to Correct Defects in the International Application (Form PCT/RO/106). The defect that the Invitation identified related to the Application's drawings, which

contained photocopy marks and therefore did not comply with the physical requirements for international publication (Annex C1 to Form PCT/RO/106, 1.p.). The Invitation was sent to the address indicated on the PCT Request, and I affirmatively state that I did not receive the communication.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 27, 2021                    /Robert Greenspoon/          /s/

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 96 of 215 PageID# 121

# Exhibit A

DATE: Dec. 2, 2019

**Action items**

DATE   ACTION

Check and/or complete all assignments, declarations and IDS

Change correspondence address on all Rx patents

2019

| | |
|---|---|
| **12/03** | **MIT-15N Issue Date - Continuation??** |
| 12/11 | SW-13N final office action 3 mo date |
| 12/27 | MIT-03DIV office action 3 mo date |
| **12/28** | **SW-05NAT Respond to EU Search Rpt and opinion** |

2020

| | |
|---|---|
| 1/9 | MIT-17 10 month conversion date |
| 1/16 | Wilson final OA 3 month date |
| 1/19 | SW-02 Maint fee |
| **1/22** | **MIT-16N Issue Fee** |
| 2/4 | MIT-04N final  OA 3 mo date |
| **2/14** | **SW-09N Issue Fee** |
| 2/28 | SW-07NAT annuity EP |
| 2/28 | SW-07NAT Req examination JP |
| 3/9 | MIT-17 12 mo conversion date |
| 3/16 | MIT-18 10 mo conversion date |
| 3/24 | MIT-19 10 mo conversion date |
| 5/16 | SW-17 12 mo conversion date |
| 5/24 | MIT-18 12 mo conversion date |
| 5/24 | MIT-19 12 moconversion date |
| 5/29 | SW-04 Maint fee |

A0096

DATE: Dec. 2, 2019

| Case Number | Serial Number | Action Date | Comments |
|---|---|---|---|
| MIT-01 | 62/151,709<br>Filed 4/23/15 | | CONVERTED |
| MIT-01N<br>TLO#17874X<br><br>**DISCRETE ASSEMBLERS UTILIZING CONVENTIONAL MOTION SYSTEMS** | 15/031,545<br>1054<br>Filed 4/22/16<br><br>William Langford<br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/28806<br>62/151,709 4/23/15 | 10,155,313<br>Issued 12/18/18<br><br>**NO CONTINUATION** | **Maintenance Fee 06/18/22** |
| MIT-02 | 62/158,343<br>Filed 5/7/2015 | | CONVERTED |
| MIT-02N<br>TLO#17898X<br><br>**SELF-ASSEMBLING ASSEMBLERS** | 15/034,974<br>1443<br>Filed 5/6/16<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>PCT/US/31058<br>62/158,343<br>5/7/2015 | 10,155,314<br>Issued 12/18/18<br><br>**NO CONTINUATION**<br>(Div pending) | **Maintenance Fee 06/18/22** |
| MIT-02DIV<br>TLO#17898X<br><br>**SELF-ASSEMBLING ASSEMBLERS AND MANIPULATORS BUILT FROM A SET OF PRIMITIVE PARTS** | 15/338,960<br>5765<br>Filed Oct 31, 2016<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority app<br>62/158,343<br>Filed 5/7/2015 | | Final Office Action<br><br>After final amendment filed 11/26/18<br>Advisory Action 12/06/18<br><br>Filed Notice of appeal with pre-appeal req 12/26/18<br><br>Lost 1/22/19<br><br>Filed appeal brief 3/26/19<br><br>Examiner ans 5/1/19<br>Won on 101 issue |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| | | | Filed RCE 7/1/19<br><br>Received Quayle 7/1019<br><br>Filed Quayle resp 9/4/19<br><br>Received non-compliant 10/4/19<br><br>Response to non-compliant 10/31/19 |
| MIT-03 | 62/158,424<br>Filed 5/7/15 | | CONVERTED |
| MIT-03N<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC LATTICE EXTRUDER SYSTEM (MILES)** | 15/035,009<br>1042<br>Filed 5/6/16<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/31069<br>62/158,424 5/7/15 | 9,809,977<br>Issued 11/07/17 | Maintenance Fee 5/7/21 |
| MIT-03CON<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC LATTICE EXTRUDER SYSTEM (MILES)** | 15/649,837<br>6588<br>Filed 7/14/17<br>Filed 5/7/15<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/31069<br>62/158,424 5/7/15 | 10,145,110<br>Issued 12/4/18 | Maintenance Fee 6/4/22 |
| MIT-03DIV<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC LATTICE EXTRUDER SYSTEM (MILES)** | 15/340,244<br>3505<br>Filed 11/1/16<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/31069<br>62/158,424 5/7/15 | 12/27/19<br>Response OA 3 mo | Received restriction requirement 9/11/18<br><br>Filed election 11/13/18<br><br>Received office action 1/22/19<br><br>Filed response 4/22/19<br><br>Received final office action 6/7/19 |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| | | | Filed RCE 9/7/19<br><br>Received office action 2/27/19 |
| MIT-04 | 62/116,423<br>Filed 2/14/15 | | CONVERTED |
| MIT-04N<br>TLO#17664X<br><br>**METHODS, SYSTEMS, AND APPARATUS FOR SELF-CALIBRATING EEG NEUROFEEDBACK** | 15/043,909<br>Filed 2/15/16<br>4989<br><br>Andreas Mershin<br>Thrasyvoulos Karydis | Office Action 2/4/20<br>3 mo | Response filed - Petition for color photos denied<br><br>Applicant-iniated interview 10/9/18<br><br>Filed Pilot 2.0 amendment 10/30/18 plus B/W dwgs and IDS<br><br>Received advisory<br><br>Filed RCE 12/27/18<br>Received OA 2/7/19<br>Filed response 5/7/19<br><br>Received final OA 7/17/19<br><br>Filed 2nd RCE 10/17/19<br><br>Received OA 11/4/19 |
| MIT-05 | 62/318,891<br>Filed 4/6/16 | | **NO CONVERSION** |
| MIT-06 | 62/384,302<br>Filed 9/7/16<br>62/355,008<br>Filed 6/27/16 | | CONVERTED |
| MIT-06N<br>TLO#18764X<br><br>**BIPEDAL ISOTROPIC LATTICE LOCOMOTING EXPLORER: ROBOTIC PLATFORM FOR LOCOMOTION AND MANIPULATION OF DISCRETE** | 15/633,155<br>4989<br>Filed 6/26/17<br><br>Benjamin Jenett<br>Kenneth Cheung<br>Neil Gershenfeld<br><br>Priority<br>62/384,302<br>Filed 9/7/16<br>62/355,008<br>Filed 6/27/16 | 10,046,820<br>Issue date 8/14/18 | Maint Fee 2/14/22<br><br>**NO CONTINUATION**<br>Re Email ███ 8/10/18 |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| **LATTICE STRUCTURES AND LIGHTWEIGHT SPACE STRUCTURES** | | | |
| MIT-06 PCT TLO#18764X<br><br>**BIPEDAL ISOTROPIC LATTICE LOCOMOTING EXPLORER: ROBOTIC PLATFORM FOR LOCOMOTION AND MANIPULATION OF DISCRETE LATTICE STRUCTURES AND LIGHTWEIGHT SPACE STRUCTURES** | PCT/US17/39246<br>6/26/17<br><br>Priority<br>62/355,008<br>6/7/16<br>62/384,302<br>9/716 | | **NO NATIONAL PHASE**<br><br>Rpt/Opinion issued<br><br>12/27/18 Mo. 30 |
| MIT-08 | 62/476,496<br>Filed 3/24/17 | | CONVERTED |
| MIT-08N TLO#19458X<br><br>**CURVED CREASE HONEYCOMBS WITH TAILORABLE STIFFNESS AND DYNAMIC PROPERTIES** | 15/934,547<br>5510<br>Filed 3/23/18<br><br>62/476,496<br>Filed 3/24/16<br><br>Samuel Calisch<br>Neil Gershenfeld<br><br>pub 9/27/18<br>2018/0272588 | | Awaiting Exam<br><br>Declarations and Assign filed<br><br>IDSd international search rpt<br><br>IDSd PCT referred to in text + its art |
| MIT-08PCT TLO#19458X<br><br>**CURVED CREASE HONEYCOMBS WITH TAILORABLE STIFFNESS AND DYNAMIC PROPERTIES** | PCT/US18/24101<br><br>Priority<br>62/476,496<br>3/24/16<br><br>Pub 9/27/18<br>WO 2018 175937 | NO NATIONAL PHASE re client 9/23/19<br><br>INT FD  3/23/18<br>INT PD 3/24/17 | Received search + opinion |
| MIT-09<br>**Folded Honeycombs** | 62/476,519<br>Filed 9/24/16 | | **NO CONVERSION** |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| MIT-10 | 62/549,327<br>Filed 3/24/17 | | CONVERTED<br>**NO PCT** |
| MIT-10N<br>TLO#19890X<br><br>**HIERARCHICAL ASSEMBLY OF SELF-REPLICATING SPACECRAFT USING DISTRIBUTED MECHANISMS AND ACTUATION IN DIGITAL MATERIALS** | 16/109,947<br>8056<br>Filed 8/23/18<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>62/549,327<br>Filed 3/24/17<br><br>Pub 3/14/19<br>2019/0077030 | | Awaiting Exam<br><br>ASSIGNED Filed decs and assigns 11/30/18<br><br>IDS<br><br>Replacement drawings filed 12/3/18 |
| MIT-11 | 62/574,689<br>Filed 10/19/17 | | CONVERTED<br>**NO PCT** |
| MIT-11N<br>TLO#20021JX<br><br>**A MOBILE ROBOT FOR LOCOMOTION THROUGH A 3D PERIODIC LATTICE ENVIRONMENT** | 16/144,144<br>4780<br>filed 9/27/18<br><br>Benjamin Jenett<br>Daniel Cellucci<br>Kenneth Cheung<br>Neil Gershenfeld<br><br>Priority<br>62/574,689<br>Filed 10/19/17<br><br>PUB 2019/0118390<br>4/25/19 | | Awaiting Exam<br><br>Filed response to Notice Corrected Papers 10/21/18 |
| MIT-12<br>TLO#20060X<br><br>**METHOD AND APPARATUS FOR TEMPORAL STEREOSCOPY** | 62/581,508<br>Filed 11/3/17<br><br>Andreas Mershin | | **NO CONVERSION** |
| MIT-13 | 62/598,734<br>Filed 12/14/17 | | CONVERTED<br>**NO PCT** |
| MIT-13N<br>TLO#20075JX<br><br>**METHODS AND APPARATUS FOR** | 16/052,705  5571<br>Filed 8/2/18<br>2019/0184351  6/20/19<br><br>David Lai | | Awaiting Exam<br><br>DECS + ASSIGNS+IDS<br><br>Utility Filed |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| **VARIABLE EMULSIFICATION** | Filippos Tourlomousis<br>Andreas Mershin<br>Neil Gershenfeld<br><br>Priority<br>62/598,734<br>Filed 12/14/17 | | Paid MP 8/25/18 |
| MIT-14 | 62/584,302<br>filed 11/10/17 | | CONVERTED<br>**NO PCT** |
| MIT-14N<br>TLO#20082X<br><br>**DIFFERENTIAL MAGNETIC LOAD CELLS FOR COMPACT LOW-HYSTERESIS FORCE AND TORQUE MEASUREMENTS** | 16/178,643<br>2619<br>Filed 11/2/18<br><br>Samuel Calisch<br>Neil Gershenfeld<br><br>Priority<br>62/584,302<br>filed 11/10/17<br><br>Pub 5/16/19<br>2019/0146043 | | Awaiting exam<br><br>Need decs and assigns<br><br>Need IDS |
| MIT-15 | 62/591,943<br>Filed 11/29/17 | | CONVERTED<br>**NO PCT** |
| MIT-15N<br>TLO#20116<br><br>**DISCRETELY ASSEMBLED LOGIC BLOCKS** | 16/159,835<br>9511<br>Filed 10/15/18<br>2019/0190523 6/20/19<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>62/591,943<br>Filed 11/29/17 | Issue Date 12/03/19<br>10,498,342 | ~~Maint fee 6/3/23~~<br><br><br><br>ASSIGNED/DEC<br>Filed 11/30/18<br><br>Receive notice of allowance 7/31/19<br><br>Paid issue fee 10/30/19 |
| MIT-16 | 62/100,753<br>1/7/15 | | CONVERTED |
| MIT-16N<br>TLO#17051X<br><br>**PRODUCTION OF COMPOSITE PARTS** | 14/960,825<br>6080<br>Filed 12/7/15<br><br>Samuel Calisch<br>Neil Gershenfeld<br>Spencer Wilson | **Issue Fee 1/22/20** | Filed response to non-final office action 3/19/19.<br><br>Final office action 6/5/19<br><br>Filed RCE 9/15/19<br><br>Received NOA 10/22/19 |

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 104 of 215 PageID# 129

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| MIT-17<br>TLO#21319X<br><br>**ELASTIC SHAPE MORPHING OF ULTRALIGHT STRUCTURES BY PROGRAMMABLE ASSEMBLY** | 62/816,078<br>5249<br>Filed 3/9/19<br><br>Benjamin Jenett<br>Neil Gershenfeld<br>Sean Swei<br>Nicholas Cramer<br>Kenneth Cheung | 3/9/20<br>Conversion date | CONVERT by one year date |
| MIT-18<br>TLO#21416X<br><br>**CORRUGATED CURVED CREASE ENERGY ABSORBERS** | 62/852,711<br>3346<br>Filed 5/24/19<br><br>Samuel Calisch<br>Neil Gershenfeld | 10 mo date 3/24/20 | CONVERT by one year date |
| MIT-19<br>TLO#21417X<br><br>**PRECISION PLANAR COIL PLACEMENT FOR THREE-DIMENSIONAL INDUCTIVE SENSORS** | 62/852,731<br>9800<br>Filed 5/24/19<br><br>Samuel Calisch<br>Neil Gershenfeld | 10 mo date 3/24/20 | CONVERT by one year date |
| MIT-20<br>TLO#21808X<br><br>**LASER ASSISTED MATERIAL PHASE CHANGE AND EXPULSION MICROMACHINING PROCESS** | 62/932,914<br>3532<br>Filed 11/8/19<br><br>Prashant Patil | 10 mo date 9/8/20 | CONVERT by one year date |
| MIT-21<br>TLO#21807X<br><br>**DIAMOND ROTORS AND CAPS FOR MF NMR** | 62/935,602<br>2037<br>Filed 11/14/19<br><br>Prashant Patil<br>Wil Langford<br>et al. | 10 mo date 9/14/20 | CONVERT by one year date |

DATE: Dec. 2,  2019

| | | | |
|---|---|---|---|
| MIT-22<br>TLO#21809<br><br>**MICRO ELECTROMECHAN ICAL (MEMS) RELAY** | 62/934,770<br>2408<br>Filed 11/13/19<br><br>Prashant Patil<br>Neal Gershenfeld | 10 mo date 9/13/20 | CONVERT by one year date |
| SW-01 | 61/769,740<br>Filed 2/26/13 | | CONVERTED |
| SW-01N<br><br>**Methods and Apparatus for Construction of Machine Tools** | 14/190,912<br>8572<br>Filed 2/26/14<br><br>Robert Swartz<br>Ilan Moyer<br><br>**Assigned back to Swartz from IO** | Issue date 7/9/19<br>10,343,243 | Maint 1/9/23<br><br>Final Office Action 10/30/18<br><br>FILED AFTER-FINAL 1/30/19<br><br>NOTICE OF ALLOWANCE 2/27/19<br><br>Filed issue fee 5/28/19 |
| SW-01CON<br><br>**Methods and Apparatus for Construction of Machine Tools** | 16/506,774<br>8396<br>Filed 7/9/19<br><br>Robert Swartz<br>Ilan Moyer | | Filed continuation<br><br>Received notice to pay surcharge and need new declaration for 2nd inventor.  Also didn't accept POA |
| SW-02 | 61/773,810<br>Filed 03-06-2013 | | CONVERTED |
| SW-02N<br><br>**Methods for Photosculpture** | 14/199,603<br>Filed 03-06-2014<br><br>Cont Photosculpture | 9,393,770<br>Issued 9/19/16 | Maint 1/19/20 |
| SW-02CON<br><br>**Methods for Photosculpture** | 15/211,972<br><br>Robert Swartz<br>Stephen Ness<br>Eugene Gore<br>Buckley Crist | 10,350,877<br>Issued 7/16/19 | Maint 1/16/23<br><br>Filed response to OA 8/2/18<br><br>Received  Notice of Allowance 3/4/19<br><br>Paid issue fee 6/3/19 |

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 106 of 215 PageID# 131

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| | | | |
| SW-03 | SEE SW-04 et seq/ | | THERE IS NO LONGER AN SW-03 |
| SW-04 et seq.<br><br>NOTE: APP 13/297,262 WAS ORIGINALY CALLED SW-03.<br><br>Methods and Apparatus for Distributed Data Storage<br><br>THERE IS NOW NO SW-03 | This application is a Continuation of<br>    14/816,039<br>    08-02-2015<br>    Patented<br>    9,507,788<br><br>is a continuation of<br>    13/297,262<br>    11-15-2011<br>    Patented<br>    9,098,519<br>Claims Priority from Provisional Application<br>    61/413,793<br>    11-15-2010<br>    Expired<br><br>is a Continuation-in-part of    12/561,252<br>    09-16-2009<br>    Abandoned<br><br>Claims Priority from Provisional Application<br>    61/175,779<br>    05-05-2009<br>    Expired -<br><br>Claims Priority from Provisional Application<br>    61/097,345<br>    09-16-2008<br>    Expired | 9,507,788<br>Issued 11/29/16<br><br><br>9,098,519<br>Issued 8/4/15 | Maint 5/29/20<br><br><br><br>Maint 8/4/22<br>2nd fee |
| SW-04CON2<br><br>**Matrix-Based Error Correction and Erasure Code Methods and Systems and** | 15/362,360<br>2705<br>Filed 11/28/2016<br><br>Elan Pavlov<br>Stephen Ness<br>Roger Critchlow<br>Robert Swartz | | Final Office Action<br>3 mo date<br><br>Filed notice of appeal with preappeal request 1/22/19<br><br>Lost preappeal 2/8/19 |

A0105

DATE: Dec. 2, 2019

| Applications Thereof | Timothy S. Murphy<br>Ronald Lachman<br><br>**Swartz – Private** | | Filed appeal brief 3/21/19<br><br>Exam ans 5/14/19<br>Won on 101 issue<br><br>Filed RCE after appeal. 7/15/19<br><br>Receive notice of allowance 8/27/19<br><br>Paid issue fee 11/27/19 |
|---|---|---|---|
| SW-05 | 62/256,413<br>Filed 11/17/15 | | CONVERTED |
| SW-05N<br><br>**Additive Manufacturing Method and Apparatus** | 15/631,611<br>5433<br>Filed 6/23/2017<br><br>Robert Swartz<br><br>PUB 10/19/17<br>2017/6297303 | 10,252,487<br>Issued 4/9/19 | Maint Fee 10/9/22 |
| SW-05DIV<br><br>**Additive Manufacturing Method and Apparatus** | 16/298,630<br>2318<br>Filed 3/11/19<br><br>Robert Swartz<br><br>Pub 7/4/19<br>2019/0202164 | | Awaiting Examination<br><br>Record Assignment<br><br>FILE IDS |
| SW-05PCT<br><br>**Additive Manufacturing Method and Apparatus** | PCT/US16/62319<br>WO 2017/087546 | | **ENTERED NATIONAL PHASE 5/17/18**<br><br>EP only |
| SW-05NAT<br><br>**Additive Manufacturing Method and Apparatus** | National Phase from<br>PCT/US16/62319<br>WO 2017/087546<br><br>Europe EP 16867054.5 | 11/30/19 FRKelly<br><br>12/28/19 Respond to search | Annuity<br><br>Received search rpt 6/19 |

DATE: Dec. 2, 2019

| | Published as EP3377322 | | |
|---|---|---|---|
| SW-06N<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | 15/631,634<br>Filed 6/23/2017<br><br>SWARTZ ROBERT<br>BAYLDON JOHN<br>CRIST BUCKLEY<br>GORE EUGENE | | **ABANDONED**<br><br>**THIS APPLICATION IS ABANDONED IN FAVOR OF CONTINUATION** |
| SW-06CON<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | 16/195,362<br>5782<br>Filed 11/19/2018<br><br>This is a continuation of SW-06N<br><br>PUB 3/21/19<br>2019/0084046 | | Awaiting Examination<br><br>Filed preliminary amendment 2/6/19<br><br>Restriction 3/28/19<br><br>Filed election 5/24/19 |
| SW-06NPCT<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | PCT/US16/62356<br>WO2017/087572 | | ENTERED NATIONAL PHASE 5/17/18<br><br>EP, JP, KR, CN |
| SW-06NAT<br><br>**Apparatus and Process for** | From<br>PCT/US16/62356<br>WO2017/087572<br><br>Europe EP16867076.8 | 11/30/2019  FRKelly | Annuity |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| **Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | Japan  JP 2018-526517<br>Korea  ref IO118048/KR<br><br><br>China<br>2018 71700840560<br>ref PT-FPAP 1800 334-ZZY2<br><br><br>Note: Europe published as 3377249 on 9/26/18 | 11/16/2019 Tokaokalaw<br>11/16/2021 AJU Kim<br>Chang & Lee<br><br><br>Chang Tsi & Partners | EXAM REQUESTED<br>Req Exam Korea<br><br><br><br>EXAM REQESTED<br><br>Japan: Takaoka ████<br>██████████<br><br>Korea:<br>████████████<br>██████<br><br>China<br>████████████ |
| **SW-07N**<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | 15/611,320<br>Filed 6/1/17<br>8071 | **10,046,552**<br>Issued 8/14/18 | Maint Fee<br>2/14/22 |
| **SW-07DIV**<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | 16/059,275<br>Filed 8/9/18<br>4578 | 10,384,437<br>Issues 8/20/19 | Maint Fee<br>2/20/23<br><br>Filed without paying extra claim fees<br><br>Filed prelim amendment limiting case to 20 claims. 10/29/18<br><br>Received OA 12/12/18<br><br>Filed response to OA 3/8/19 TD and 112<br><br>Notice of Allowance 4/4/19<br><br>Paid issue fee 7/5/19<br><br>Issue 8/20/19 |
| **SW-07DIV-CON**<br><br>**Method and Apparatus for** | 16/544,906<br>Filed 8/20/19<br>5175 | | Filed 4 and 24 claims<br>3 sets apparatus – 1 set method<br><br>Filed base IDS 8/21/19 |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| **Automated Composite-Based Manufacturing** | | | |
| SW-07PCT<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | PCT/US17/17672<br>WO2017/139766 | | ENTERED NATIONAL PHASE 8/8/18<br><br>EP, JP, KR, CN |
| SW-07NAT<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | From PCT/US17/17672<br>WO2017/139766<br><br>Europe  EP17750965.0<br>Japan JP2019-542738<br>Korea<br>China 201780022914X<br><br>Europe pub EP3414094 | 2/28/20  Hertin & Part<br>2/8/20<br>2/8/21<br>2/19        Chofn | Annuity<br>Req Exam Japan<br>Req Exam Korea<br>Exam requested |
| SW-08<br><br>**METHODS AND APPARATUS FOR THREE-DIMENSIONAL PRINTED COMPOSITES BASED ON FLATTENED SUBSTRATE SHEETS** | 14/703,372 | 9,776,376<br>Issued 10/3/17 | Maint Fee<br>4/3/21 |
| SW-08N<br><br>**METHODS AND APPARATUS FOR THREE-DIMENSIONAL PRINTED COMPOSITES BASED ON** | 15/722,653<br>Filed 10/2/17<br>1050 | 10,377,106<br>Issued 8/13/19 | Maint fee<br>2/13/23<br><br>Final Office action 11/14/2018<br><br>Filed after final 3/14/19 |

DATE: Dec. 2, 2019

| FLATTENED SUBSTRATE SHEETS | | | Notice of allowance 4/1/19<br><br>Paid issue fee 6/30/19 |
|---|---|---|---|
| SW-09 | 62/473,062<br>Filed 3/17/17 | | |
| SW-09N<br><br>**Method and Apparatus for Stacker Module for Automated Composite-Based Additive Manufacturing Machine** | 15/922,469<br>Filed 3/15/18<br>7537<br><br>62/473,062<br><br>Stacker | 2/14/20<br>**Pay Issue Fee** | Restriction 3/8/19<br><br>Filed election 5/6/19<br><br>Filed IDS<br><br>Received OA 6/27/19<br><br>Filed response 9/27/19<br><br>Received NOA 11/14/19 |
| SW-10 | 62/473,084<br>Filed 3/17/17 | | |
| SW-10N<br><br>**Method and Apparatus for Platen Module for Automated Composite-Based Additive Manufacturing Machine** | 15/923,335<br>Filed 3/16/18<br>8565<br><br>62/473,084<br><br>PUB 9/20/18<br>2018/0264725<br><br>Platen | | Awaiting exam<br>Filed IDS |
| SW-11 | 62/473,129<br>Filed 3/17/17 | | |
| SW-11N<br><br>**Method and Apparatus for Powder System Recycler for Printing Process** | 15/922,158<br>Filed 3/15/18<br>4175<br><br>62/473,129<br><br>PUB 9/20/18<br>2018/0264732<br><br>Powder Recycler | | Awaiting exam<br><br>Filed IDS for PCT search and opinion 7/27/18 |
| SW-11PCT<br><br>**Method and** | PCT/US18/22640<br><br>Not in foundation ip | Filed in<br><br>Japan<br>China | PUB 9/11/18<br>WO2018/170268 |

DATE: Dec. 2, 2019

| | | Korea | |
|---|---|---|---|
| **Apparatus for Powder System Recycler for Printing Process** | | | Received Int search rpt and opinion - IDSd into US case |
| SW-11-NAT | Japan –<br><br>China<br>Korea | | Filed by Choice IP<br><br>Japan their ref PA45581ME-Asamura Patent Office |
| SW-12N<br><br>**RESISTIVE HEATING-COMPRESSION METHOD AND APPARATUS FOR COMPOSITE-BASED ADDITIVE MANUFACTURING** | 15/701,098<br>Filed 9/11/17<br>6864<br><br>Pub 3/15/19<br>2019/0072001 | | Awaiting exam |
| SW-13N<br><br>**Methods and Apparatus for Three-Dimensional Printed Composites Based on Folded Substrate Sheets** | 15/298,188<br>Filed 10/19/16 | 12/11/19<br>Final office action | Awaiting examiner<br><br>Restriction 10/14/18<br>Election 2/13/19<br><br>Filed TD in SWHEN2A over this application 3/13/19<br><br>Non final OA 5/15/19<br><br>Filed response 8/15/19<br><br>Final OA 9/11/19 |
| SWEPO<br><br>Methods and Apparatus for 3D Fabrication | EP 2776233 Patent (12828967.5) | 8/31/20<br>Annuity<br><br>Bolt Wade Tennant London | Annuity UK, DE, FR and CH due Aug. 2020 - year 9 |
| SWEPO-DIV<br><br>Methods and Apparatus for 3D Fabrication | EP 17208673.8<br><br>Published as EP3414094 | 8/31/20<br>Annuity<br><br>Bolt Wade Tennant London | Annuity EP |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| SW-14N<br><br>Methods for Fabricating Three-Dimensional Composites | 14/835,685 | | OA<br><br>NORMA<br><br>NOT OUR CASE |
| SW-15N<br><br>Three-Dimensional Printed Composite Articles | 14/835,697 | | OA Response filed<br><br>NOT OUR CASE<br><br>NOT OUR CASE |
| SW-16N<br><br>Tow Stabilization Method and Apparatus | 14/566,661 | | Notice of appeal filed 4/18<br><br>NORMA<br><br>NOT OUR CASE |
| SW-17<br><br>**IMPROVED HOLDOWN PROCESS AND SYSTEM FOR PLATEN** | 62/849,021<br>Filed 5/16/19 | 5/16/20 | CONVERT by one year date<br><br>Filed ADS 6/13/19 |
| SWHEN<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | NOTE: Patent original case | Response OA<br><br>NORMA<br><br>NOT OUR CASE |
| SWHEN2<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 14/835,690<br>6834<br>Filed 8/25/15<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | NOTE: Patent original case<br>9,833,949<br>Issued 12/5/17 | Maint fee<br>6/5/21 |
| SWHEN2A | 15/803,199 | 10,377,080 | Maint fee |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| Apparatus for Fabricating Three-Dimensional Printed Composites | 1095<br>Filed Nov 3, 2017<br><br>Pub 2/22/18<br>2018/0050490<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | Issued 8/13/19 | 2/13/23<br><br>Received final office action.<br><br>Filed electronic TD 3/13/19 over SW-13N<br><br>Filed after-final for TD 3/13/19<br><br>Notice of allowance 4/1/19<br><br>Paid issue fee 6/30/19 |
| SWHEN2A-CON<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 16/539,545<br>8999<br>Filed Aug. 13, 2019<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | | |
| Wilson-01N<br><br>THE SHINGLE HOOK | 15/881,876<br>7154<br>Filed 2/29/18<br><br>2018/0231221  8/16/18 | 1/16/20  final office action 3 mo | Received non-final office action 3/7/19<br><br>Filed response 7/7/19<br><br>Received final OA 10/16/19 |
| CB-04N<br><br>Prevention of RGA | 15/296,700 | 10,484,422<br>Issued 11/19/19<br><br>**NO CONTINUATION** | Maint Fee<br>05/19/23<br><br>Non-final OA 11/2/18<br>Filed response 4/29/19<br><br>Received notice of allowance 7/16/19<br><br>Paid issue fee 10/15/19 |
| CB-05N<br>Baseline Calculation for firewalling | 15/386,244<br>8878<br>Filed 12/21/16<br><br>Yonatan Striem-Amit | 10,417,414<br>Issued. 9/17/19 | Maint fee 3/17/23<br><br>Received final OA 2/21/19 |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| | | **NO CONTINUATION BY CLIENT** | Filed response to non-final office action 12-10-18<br><br>Filed after-final 5/10/19<br><br>Examiner amdt after phone interview<br><br>NOA 6/13/19<br><br>PAID ISSUE FEE 8/1/19 |
| CB-06N | 15/395,299<br>8849 | 10,055,579<br>Issued 8/21/18 | Maint fee<br>2/21/22 |
| CB-07 | 62/735,745<br>Filed 9/24/18 | | Converted 9/23/19 |
| CB-07N | 16/579,215<br>Filed 9/23/19<br>2152<br><br>Inventor<br>Phillip Tsukerman | **FILE IDS AND DEC** | Filed POA 9/25/19<br><br>Receive MP 10/8/19<br><br>Paid $80 MP 10/14/19 |
| CB-08 | 62/735,725<br>Filed 9/24/18 | | |
| CB-08N | 16/579,455<br>Filed 9/23/19<br>7486<br><br>Inventor<br>Gal Kaplan | **FILE IDS AND DEC** | Filed POA 9/25/19 |
| H-01PCT<br><br>**System and Method for Detecting Misinformation and Fake News via Network Analysis** | PCT/US19/61456<br>Int filing date 11/14/19<br>Int priority date 11/14/18<br><br>Applicant Hints Inc.<br>Inventor:<br>Elan Paplov | 5/14/21 Mo. 30 date | Filed with no fee |
| Rolf-01D | 29/646,383 | | Awaiting exam |

DATE: Dec. 2, 2019

| | | | |
|---|---|---|---|
| | | | |
| ET-05N | 16/232,006<br>1027<br>Filed 12/25/18<br><br>**Replaceable Lighting System for Artificial Christmas Trees and Other Decorations**<br><br>Cheng-Che Tsai | | Awaiting exam<br><br>Received MP 1/24/19<br>Filed response 3/25/19<br><br>Filed dec, assign and name fix 5/21/19 |
| FS-01<br>Fishman Dental | 62/690,499 | 6/27/19 | Conv Hard date<br>PCT filing date<br><br>NO CONVERSION re client 6/26/19 |
| RX-01N<br><br>METHOD AND APPARATUS FOR MITIGATING ACUTE REOXYGENATION INJURY DURING PERCUTANIOUS CORONARY INTERVENTION | 15/712,713<br>6715<br>Filed 9/22/17<br><br>Neil Thomas<br>Gintaras Vaisnys<br><br>Rheoxtech LLC<br><br>Pub 1/11/18<br>2018/0008763 | FILE POA | 9/24/18<br>Non-final office action<br><br>Filed response 3/25/19<br><br>Received Notice of Allowance.<br><br>Allowance pulled back Non-final issued with 103<br><br>Filed response to non-final OA 11/18/19 |
| RX-02N-RX-05N | | Entered<br><br><br><br>Entered | US 9,211,371<br>14/264,211<br>Maint fee<br>6/15/2023<br>$1800<br><br>US 8,178,041<br>12/748,529<br>Maint fee<br>11/15/23<br>$3600<br><br>US 9,084,856<br>14/039,673<br>1/24/23<br>$1800 |

DATE: Dec. 2, 2019

| | | | CA 2,768,351<br>We paid 2019<br>7/17/20<br>CA$250+ |
|---|---|---|---|
| | | | |

NOTE:  Patent 9,827,754 issued 11-28-17  Maint due 5-28-21  from 13/583,939
Assign this a standard number

Case 1:21-cv-00573-LMB-IDD   Document 1-2   Filed 05/06/21   Page 118 of 215 PageID# 143

DATE: Feb. 10, 2020

**Action items**

<u>DATE   ACTION</u>

Check and/or complete all assignments, declarations and IDS

<u>2020</u>

| | |
|---|---|
| 1/9 | MIT-17 10 month conversion date (Waiting for word from Joe or Neil) |
| 2/4 | MIT-04N final  OA 3 mo date |
| **2/14** | **SW-09N Issue Fee** |
| 2/28 | SW-07NAT annuity EP |
| 2/28 | SW-07NAT Req examination JP |
| **3/6** | **SW-07NAT Deadline for  claim reduction Japan** |
| 3/9 | MIT-17 12 mo conversion date |
| **3/11** | **MIT-02DIV Issue Fee** |
| 3/16 | MIT-18 10 mo conversion date |
| 3/24 | MIT-19 10 mo conversion date |
| 3/26 | SW-07DIV-CON OA 3 mo date (only 112) |
| 5/16 | SW-17 12 mo conversion date |
| 5/24 | MIT-18 12 mo conversion date |
| 5/24 | MIT-19 12 moconversion date |
| 5/29 | SW-04 Maint fee |

DATE: Feb. 10, 2020

| Case Number | Serial Number | Action Date | Comments |
|---|---|---|---|
| MIT-01 | 62/151,709<br>Filed 4/23/15 | | CONVERTED |
| MIT-01N<br>TLO#17874X<br><br>**DISCRETE ASSEMBLERS UTILIZING CONVENTIONAL MOTION SYSTEMS** | 15/031,545<br>1054<br>Filed 4/22/16<br><br>William Langford<br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/28806<br>62/151,709 4/23/15 | ~~10,155,313~~<br>Issued 12/18/18<br><br>**NO CONTINUATION** | **Maintenance Fee**<br>~~06/18/22~~ |
| MIT-02 | 62/158,343<br>Filed 5/7/2015 | | CONVERTED |
| MIT-02N<br>TLO#17898X<br><br>**SELF-ASSEMBLING ASSEMBLERS** | 15/034,974<br>1443<br>Filed 5/6/16<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>PCT/US/31058<br>62/158,343<br>5/7/2015 | ~~10,155,314~~<br>Issued 12/18/18<br><br>**NO CONTINUATION**<br>(Div pending) | **Maintenance Fee**<br>~~06/18/22~~ |
| MIT-02DIV<br>TLO#17898X<br><br>**SELF-ASSEMBLING ASSEMBLERS AND MANIPULATORS BUILT FROM A SET OF PRIMITIVE PARTS** | 15/338,960<br>5765<br>Filed Oct 31, 2016<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority app<br>62/158,343<br>Filed 5/7/2015 | **Pay issue fee<br>3/11/19** | Final Office Action<br><br>After final amendment filed 11/26/18<br>Advisory Action 12/06/18<br><br>Filed Notice of appeal with pre-appeal req 12/26/18<br><br>Lost 1/22/19<br><br>Filed appeal brief 3/26/19<br><br>Examiner ans 5/1/19<br>Won on 101 issue |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| | | | Filed RCE 7/1/19<br><br>Received Quayle 7/1019<br><br>Filed Quayle resp 9/4/19<br><br>Received non-compliant 10/4/19<br><br>Response to non-compliant 10/31/19<br><br>Notice of allowance 12/11/19 |
| MIT-03 | 62/158,424<br>Filed 5/7/15 | | CONVERTED |
| MIT-03N<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC LATTICE EXTRUDER SYSTEM (MILES)** | 15/035,009<br>1042<br>Filed 5/6/16<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/31069<br>62/158,424 5/7/15 | 9,809,977<br>Issued 11/07/17 | Maintenance Fee 5/7/21 |
| MIT-03CON<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC LATTICE EXTRUDER SYSTEM (MILES)** | 15/649,837<br>6588<br>Filed 7/14/17<br>Filed 5/7/15<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority<br>PCT/US16/31069<br>62/158,424 5/7/15 | 10,145,110<br>Issued 12/4/18 | Maintenance Fee 6/4/22 |
| MIT-03DIV<br>TLO#17899X<br><br>**DIGITAL MATERIAL ASSEMBLY BY PASSIVE MEANS AND MODULAR ISOTROPIC** | 15/340,244<br>3505<br>Filed 11/1/16<br><br>Matthew Carney<br>Benjamin Jenett<br>Neil Gershenfeld<br><br>Priority | | Received restriction requirement 9/11/18<br><br>Filed election 11/13/18<br><br>Received office action 1/22/19<br><br>Filed response 4/22/19 |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| **LATTICE EXTRUDER SYSTEM (MILES)** | PCT/US16/31069<br>62/158,424 5/7/15 | | Received final office action 6/7/19<br><br>Filed RCE 9/7/19<br><br>Received office action 9/27/19<br><br>Filed response 12/31/19 |
| MIT-04 | 62/116,423<br>Filed 2/14/15 | | CONVERTED |
| MIT-04N<br>TLO#17664X<br><br>**METHODS, SYSTEMS, AND APPARATUS FOR SELF-CALIBRATING EEG NEUROFEEDBACK** | 15/043,909<br>Filed 2/15/16<br>4989<br><br>Andreas Mershin<br>Thrasyvoulos Karydis | Office Action 2/4/20<br>3 mo | Response filed - Petition for color photos denied<br><br>Applicant-iniated interview 10/9/18<br><br>Filed Pilot 2.0 amendment 10/30/18 plus B/W dwgs and IDS<br><br>Received advisory<br><br>Filed RCE 12/27/18<br>Received OA 2/7/19<br>Filed response 5/7/19<br><br>Received final OA 7/17/19<br><br>Filed 2nd RCE 10/17/19<br><br>Received OA 11/4/19 |
| MIT-05 | 62/318,891<br>Filed 4/6/16 | | **NO CONVERSION** |
| MIT-06 | 62/384,302<br>Filed 9/7/16<br>62/355,008<br>Filed 6/27/16 | | CONVERTED |
| MIT-06N<br>TLO#18764X<br><br>**BIPEDAL ISOTROPIC LATTICE LOCOMOTING EXPLORER:** | 15/633,155<br>4989<br>Filed 6/26/17<br><br>Benjamin Jenett<br>Kenneth Cheung<br>Neil Gershenfeld | **10,046,820**<br>Issue date 8/14/18 | Maint Fee 2/14/22<br><br>**NO CONTINUATION**<br>Re Email ███ 8/10/18 |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| **ROBOTIC PLATFORM FOR LOCOMOTION AND MANIPULATION OF DISCRETE LATTICE STRUCTURES AND LIGHTWEIGHT SPACE STRUCTURES** | Priority 62/384,302 Filed 9/7/16 62/355,008 Filed 6/27/16 | | |
| MIT-06 PCT TLO#18764X<br><br>**BIPEDAL ISOTROPIC LATTICE LOCOMOTING EXPLORER: ROBOTIC PLATFORM FOR LOCOMOTION AND MANIPULATION OF DISCRETE LATTICE STRUCTURES AND LIGHTWEIGHT SPACE STRUCTURES** | PCT/US17/39246 6/26/17<br><br>Priority 62/355,008 6/7/16 62/384,302 9/716 | | **NO NATIONAL PHASE**<br><br>Rpt/Opinion issued<br><br>12/27/18 Mo. 30 |
| MIT-08 | 62/476,496 Filed 3/24/17 | | CONVERTED |
| MIT-08N TLO#19458X<br><br>**CURVED CREASE HONEYCOMBS WITH TAILORABLE STIFFNESS AND DYNAMIC PROPERTIES** | 15/934,547 5510 Filed 3/23/18<br><br>62/476,496 Filed 3/24/16<br><br>Samuel Calisch Neil Gershenfeld<br><br>pub 9/27/18 2018/0272588 | | Awaiting Exam<br><br>Declarations and Assign filed<br><br>IDSd international search rpt<br><br>IDSd PCT referred to in text + its art |
| MIT-08PCT TLO#19458X<br><br>**CURVED CREASE HONEYCOMBS WITH TAILORABLE STIFFNESS AND** | PCT/US18/24101<br><br>Priority 62/476,496 3/24/16<br><br>Pub 9/27/18 | NO NATIONAL PHASE re client 9/23/19<br><br>INT FD  3/23/18 INT PD 3/24/17 | Received search + opinion |

DATE: Feb. 10, 2020

| DYNAMIC PROPERTIES | WO 2018 175937 | | |
|---|---|---|---|
| MIT-09<br>**Folded Honeycombs** | 62/476,519<br>Filed 9/24/16 | | **NO CONVERSION** |
| MIT-10 | 62/549,327<br>Filed 3/24/17 | | CONVERTED<br>**NO PCT** |
| MIT-10N<br>TLO#19890X<br><br>**HIERARCHICAL ASSEMBLY OF SELF-REPLICATING SPACECRAFT USING DISTRIBUTED MECHANISMS AND ACTUATION IN DIGITAL MATERIALS** | 16/109,947<br>8056<br>Filed 8/23/18<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>62/549,327<br>Filed 3/24/17<br><br>Pub 3/14/19<br>2019/0077030 | | Awaiting Exam<br><br>ASSIGNED Filed decs and assigns 11/30/18<br><br>IDS<br><br>Replacement drawings filed 12/3/18 |
| MIT-11 | 62/574,689<br>Filed 10/19/17 | | CONVERTED<br>**NO PCT** |
| MIT-11N<br>TLO#20021JX<br><br>**A MOBILE ROBOT FOR LOCOMOTION THROUGH A 3D PERIODIC LATTICE ENVIRONMENT** | 16/144,144<br>4780<br>filed 9/27/18<br><br>Benjamin Jenett<br>Daniel Cellucci<br>Kenneth Cheung<br>Neil Gershenfeld<br><br>Priority<br>62/574,689<br>Filed 10/19/17<br><br>PUB 2019/0118390<br>4/25/19 | | Awaiting Exam<br><br>Filed response to Notice Corrected Papers 10/21/18 |
| MIT-12<br>TLO#20060X<br><br>**METHOD AND APPARATUS FOR TEMPORAL STEREOSCOPY** | 62/581,508<br>Filed 11/3/17<br><br>Andreas Mershin | | **NO CONVERSION** |
| MIT-13 | 62/598,734<br>Filed 12/14/17 | | CONVERTED<br>**NO PCT** |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| MIT-13N<br>TLO#20075JX<br><br>**METHODS AND APPARATUS FOR VARIABLE EMULSIFICATION** | 16/052,705  5571<br>Filed 8/2/18<br>2019/0184351   6/20/19<br><br>David Lai<br>Filippos Tourlomousis<br>Andreas Mershin<br>Neil Gershenfeld<br><br>Priority<br>62/598,734<br>Filed 12/14/17 | | Awaiting Exam<br><br>DECS + ASSIGNS+IDS<br><br>Utility Filed<br>Paid MP 8/25/18 |
| MIT-14 | 62/584,302<br>filed 11/10/17 | | CONVERTED<br>**NO PCT** |
| MIT-14N<br>TLO#20082X<br><br>**DIFFERENTIAL MAGNETIC LOAD CELLS FOR COMPACT LOW-HYSTERESIS FORCE AND TORQUE MEASUREMENTS** | 16/178,643<br>2619<br>Filed 11/2/18<br><br>Samuel Calisch<br>Neil Gershenfeld<br><br>Priority<br>62/584,302<br>filed 11/10/17<br><br>Pub 5/16/19<br>2019/0146043 | | Awaiting exam<br><br>Need decs and assigns<br><br>Need IDS |
| MIT-15 | 62/591,943<br>Filed 11/29/17 | | CONVERTED<br>**NO PCT** |
| MIT-15N<br>TLO#20116<br>**DISCRETELY ASSEMBLED LOGIC BLOCKS** | 16/159,835<br>9511<br>Filed 10/15/18<br>2019/0190523 6/20/19<br><br>William Langford<br>Amanda Ghassaei<br>Neil Gershenfeld<br><br>Priority<br>62/591,943<br>Filed 11/29/17 | Issue Date 12/03/19<br>10,498,342 | Maint fee 6/3/23<br><br><br><br>ASSIGNED/DEC<br>Filed 11/30/18<br><br>Receive notice of allowance 7/31/19<br><br>Paid issue fee 10/30/19 |
| MIT-16 | 62/100,753<br>1/7/15 | | CONVERTED |
| MIT-16N<br>TLO#17051X<br><br>**PRODUCTION OF COMPOSITE PARTS** | 14/960,825<br>6080<br>Filed 12/7/15<br><br>Samuel Calisch<br>Neil Gershenfeld | | Filed response to non-final office action 3/19/19.<br><br>Final office action 6/5/19 |

DATE: Feb. 10, 2020

| | Spencer Wilson | | Filed RCE 9/15/19<br><br>Received NOA 10/22/19<br>Paid issue fee 1/22/20 |
|---|---|---|---|
| MIT-17<br>TLO#21319X<br><br>**ELASTIC SHAPE MORPHING OF ULTRALIGHT STRUCTURES BY PROGRAMMABLE ASSEMBLY** | 62/816,078<br>5249<br>Filed 3/9/19<br><br>Benjamin Jenett<br>Neil Gershenfeld<br>Sean Swei<br>Nicholas Cramer<br>Kenneth Cheung | 3/9/20<br>Conversion date | CONVERT by one year date |
| MIT-18<br>TLO#21416X<br><br>**CORRUGATED CURVED CREASE ENERGY ABSORBERS** | 62/852,711<br>3346<br>Filed 5/24/19<br><br>Samuel Calisch<br>Neil Gershenfeld | 10 mo date 3/24/20 | CONVERT by one year date |
| MIT-19<br>TLO#21417X<br><br>**PRECISION PLANAR COIL PLACEMENT FOR THREE-DIMENSIONAL INDUCTIVE SENSORS** | 62/852,731<br>9800<br>Filed 5/24/19<br><br>Samuel Calisch<br>Neil Gershenfeld | 10 mo date 3/24/20 | CONVERT by one year date |
| MIT-20<br>TLO#21808X<br><br>**LASER ASSISTED MATERIAL PHASE CHANGE AND EXPULSION MICROMACHINING PROCESS** | 62/932,914<br>3532<br>Filed 11/8/19<br><br>Prashant Patil | 10 mo date 9/8/20 | CONVERT by one year date |
| MIT-21<br>TLO#21807X | 62/935,602<br>2037<br>Filed 11/14/19 | 10 mo date 9/14/20 | CONVERT by one year date |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| **DIAMOND ROTORS AND CAPS FOR MF NMR** | Prashant Patil<br>Wil Langford<br>et al. | | |
| MIT-22<br>TLO#21809<br><br>**MICRO ELECTROMECHANICAL (MEMS) RELAY** | 62/934,770<br>2408<br>Filed 11/13/19<br><br>Prashant Patil<br>Neal Gershenfeld | 10 mo date 9/13/20 | CONVERT by one year date |
| SW-01 | 61/769,740<br>Filed 2/26/13 | | CONVERTED |
| SW-01N<br><br>**Methods and Apparatus for Construction of Machine Tools** | 14/190,912<br>8572<br>Filed 2/26/14<br><br>Robert Swartz<br>Ilan Moyer<br><br>**Assigned back to Swartz from IO** | Issue date 7/9/19<br>10,343,243 | Maint 1/9/23<br><br>Final Office Action 10/30/18<br><br>FILED AFTER-FINAL 1/30/19<br><br>NOTICE OF ALLOWANCE 2/27/19<br><br>Filed issue fee 5/28/19 |
| SW-01CON<br><br>**Methods and Apparatus for Construction of Machine Tools** | 16/506,774<br>8396<br>Filed 7/9/19<br><br>Robert Swartz<br>Ilan Moyer | | Filed continuation<br><br>Received notice to pay surcharge and need new declaration for 2nd inventor.  Also didn't accept POA |
| SW-02 | 61/773,810<br>Filed 03-06-2013 | | CONVERTED |
| SW-02N<br><br>**Methods for Photosculpture** | 14/199,603<br>Filed 03-06-2014<br><br>Cont Photosculpture | 9,393,770<br>Issued 9/19/16 | Maint 1/19/24 |
| SW-02CON<br><br>**Methods for Photosculpture** | 15/211,972<br><br>Robert Swartz<br>Stephen Ness | 10,350,877<br>Issued 7/16/19 | Maint 1/16/23<br><br>Filed response to OA 8/2/18 |

DATE: Feb. 10, 2020

| | Eugene Gore<br>Buckley Crist | | Received Notice of Allowance 3/4/19<br><br>Paid issue fee 6/3/19 |
|---|---|---|---|
| SW-03 | SEE SW-04 et seq/ | | THERE IS NO LONGER AN SW-03 |
| SW-04 et seq.<br><br><br><br>NOTE: APP 13/297,262 WAS ORIGINALY CALLED SW-03.<br><br>**Methods and Apparatus for Distributed Data Storage**<br><br>THERE IS NOW NO SW-03 | This application is a Continuation of<br>    14/816,039<br>    08-02-2015<br>    Patented<br>    9,507,788<br><br>is a continuation of<br>    13/297,262<br>    11-15-2011<br>    Patented<br>    9,098,519<br>Claims Priority from Provisional Application<br>    61/413,793<br>    11-15-2010<br>    Expired<br><br>is a Continuation-in-part of    12/561,252<br>    09-16-2009<br>    Abandoned<br><br>Claims Priority from Provisional Application<br>    61/175,779<br>    05-05-2009<br>    Expired -<br><br>Claims Priority from Provisional Application<br>    61/097,345<br>    09-16-2008<br>    Expired | 9,507,788<br>Issued 11/29/16<br><br><br><br>9,098,519<br>Issued 8/4/15 | Maint  5/29/20<br><br><br><br>Maint 8/4/22<br>2nd fee |
| SW-04CON2 | 15/362,360<br>2705 | **CONTINUATION??** | Final Office Action<br>3 mo date |

DATE: Feb. 10, 2020

| **Matrix-Based Error Correction and Erasure Code Methods and Systems and Applications Thereof** | Filed 11/28/2016<br><br>Elan Pavlov<br>Stephen Ness<br>Roger Critchlow<br>Robert Swartz<br>Timothy S. Murphy<br>Ronald Lachman<br><br>**Swartz – Private** | | Filed notice of appeal with preappeal request 1/22/19<br><br>Lost preappeal 2/8/19<br><br>Filed appeal brief 3/21/19<br><br>Exam ans 5/14/19<br>Won on 101 issue<br><br>Filed RCE after appeal. 7/15/19<br><br>Receive notice of allowance 8/27/19<br><br>Paid issue fee 11/27/19 |
| SW-05 | 62/256,413<br>Filed 11/17/15 | | CONVERTED |
| SW-05N<br><br>**Additive Manufacturing Method and Apparatus** | 15/631,611<br>5433<br>Filed 6/23/2017<br><br>Robert Swartz<br><br>PUB 10/19/17<br>2017/6297303 | 10,252,487<br>Issued 4/9/19 | Maint Fee 10/9/22 |
| SW-05DIV<br><br>**Additive Manufacturing Method and Apparatus** | 16/298,630<br>2318<br>Filed 3/11/19<br><br>Robert Swartz<br><br>Pub 7/4/19<br>2019/0202164 | | Awaiting Examination<br><br>Record Assignment<br><br>FILE IDS |
| SW-05PCT<br><br>**Additive Manufacturing Method and Apparatus** | PCT/US16/62319<br>WO 2017/087546 | | **ENTERED NATIONAL PHASE 5/17/18**<br><br>EP only |

A0127

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| **SW-05NAT**<br><br>**Additive Manufacturing Method and Apparatus** | National Phase from PCT/US16/62319 WO 2017/087546<br><br>Europe EP 16867054.5<br><br>Published as EP3377322 | 11/30/20 FRKelly | Annuity<br><br>Received search rpt 6/19<br><br>Ordered response to search rpt 12/19 |
| **SW-06N**<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | 15/631,634 Filed 6/23/2017<br><br>SWARTZ ROBERT BAYLDON JOHN CRIST BUCKLEY GORE EUGENE | | **ABANDONED**<br><br>**THIS APPLICATION IS ABANDONED IN FAVOR OF CONTINUATION** |
| **SW-06CON**<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | 16/195,362 5782 Filed 11/19/2018<br><br>This is a continuation of SW-06N<br><br>PUB 3/21/19 2019/0084046 | | Awaiting Examination<br><br>Filed preliminary amendment 2/6/19<br><br>Restriction 3/28/19<br><br>Filed election 5/24/19<br><br>Received OA 12/216/19<br><br>Filed response 1/30/19 |
| **SW-06NPCT**<br><br>**Apparatus and Process for Producing Additive Manufactured Metal Matrix** | PCT/US16/62356 WO2017/087572 | | ENTERED NATIONAL PHASE  5/17/18<br><br>EP, JP, KR, CN |

DATE: Feb. 10, 2020

| Composites and Article of Manufacture Thereof | | | |
|---|---|---|---|
| SW-06NAT **Apparatus and Process for Producing Additive Manufactured Metal Matrix Composites and Article of Manufacture Thereof** | From PCT/US16/62356 WO2017/087572<br><br>Europe EP16867076.8 Japan JP 2018-526517 Korea ref IO118048/KR<br><br>China 2018 71700840560 ref PT-FPAP 1800 334-ZZY2<br><br>Note: Europe published as 3377249 on 9/26/18 | 11/30/2020 FRKelly 11/16/2019 Tokaokalaw 11/16/2021 AJU Kim Chang & Lee<br><br>Chang Tsi & Partners | Annuity<br><br>EXAM REQUESTED Req Exam Korea<br><br>EXAM REQESTED<br><br>Japan: Takaoka ███<br><br>Korea: ████████<br>██████<br><br>China ████████ |
| SW-07N **Method and Apparatus for Automated Composite-Based Manufacturing** | 15/611,320 Filed 6/1/17 8071 | **10,046,552** Issued 8/14/18 | Maint Fee 2/14/22 |
| SW-07DIV **Method and Apparatus for Automated Composite-Based Manufacturing** | 16/059,275 Filed 8/9/18 4578 | 10,384,437 Issues 8/20/19 | Maint Fee 2/20/23<br><br>Filed without paying extra claim fees<br><br>Filed prelim amendment limiting case to 20 claims. 10/29/18<br><br>Received OA 12/12/18<br><br>Filed response to OA 3/8/19 TD and 112<br><br>Notice of Allowance |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| | | | 4/4/19<br><br>Paid issue fee 7/5/19<br><br>Issue 8/20/19 |
| SW-07DIV-CON<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | 16/544,906<br>Filed 8/20/19<br>5175 | 3/26/20 Response OA<br><br><br><br>Pub 12/05/19<br>2019/0366701 | Filed 4 and 24 claims<br>3 sets apparatus – 1 set method<br><br>Filed base IDS 8/21/19<br><br>Received OA 12/26/19<br>Only 112 and doub pat |
| SW-07PCT<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | PCT/US17/17672<br>WO2017/139766 | | ENTERED NATIONAL PHASE 8/8/18<br><br>EP, JP, KR, CN |
| SW-07NAT<br><br>**Method and Apparatus for Automated Composite-Based Manufacturing** | From<br>PCT/US17/17672<br>WO2017/139766<br><br>Europe  EP17750965.0<br>Japan JP2019-542738<br>Korea<br>China 201780022914X<br><br>Europe pub EP3414094 | 2/28/20  Hertin & Part<br>2/8/20<br>2/8/21<br>2/19      Chofn | Annuity<br>Req Exam Japan<br>Req Exam Korea<br>Exam requested |
| SW-08<br><br>**METHODS AND APPARATUS FOR THREE-DIMENSIONAL PRINTED COMPOSITES BASED ON FLATTENED SUBSTRATE SHEETS** | 14/703,372 | 9,776,376<br>Issued 10/3/17 | Maint Fee<br>4/3/21 |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| SW-08N<br><br>**METHODS AND APPARATUS FOR THREE-DIMENSIONAL PRINTED COMPOSITES BASED ON FLATTENED SUBSTRATE SHEETS** | 15/722,653<br>Filed 10/2/17<br>1050 | 10,377,106<br>Issued 8/13/19 | Maint fee 2/13/23<br><br>Final Office action 11/14/2018<br><br>Filed after final 3/14/19<br><br>Notice of allowance 4/1/19<br><br>Paid issue fee 6/30/19 |
| SW-09 | 62/473,062<br>Filed 3/17/17 | | |
| SW-09N<br><br>**Method and Apparatus for Stacker Module for Automated Composite-Based Additive Manufacturing Machine** | 15/922,469<br>Filed 3/15/18<br>7537<br><br>62/473,062<br><br>Stacker | 2/14/20<br>**Pay Issue Fee** | Restriction 3/8/19<br><br>Filed election 5/6/19<br><br>Filed IDS<br><br>Received OA 6/27/19<br><br>Filed response 9/27/19<br><br>Received NOA 11/14/19 |
| SW-10 | 62/473,084<br>Filed 3/17/17 | | |
| SW-10N<br><br>**Method and Apparatus for Platen Module for Automated Composite-Based Additive Manufacturing Machine** | 15/923,335<br>Filed 3/16/18<br>8565<br><br>62/473,084<br><br>PUB 9/20/18<br>2018/0264725<br><br>Platen | | Awaiting exam<br>Filed IDS |
| SW-11 | 62/473,129<br>Filed 3/17/17 | | |
| SW-11N<br><br>**Method and Apparatus for Powder System** | 15/922,158<br>Filed 3/15/18<br>4175<br><br>62/473,129 | | Awaiting exam<br><br>Filed IDS for PCT search and opinion 7/27/18 |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| **Recycler for Printing Process** | PUB 9/20/18 2018/0264732<br><br>Powder Recycler | | |
| SW-11PCT<br><br>**Method and Apparatus for Powder System Recycler for Printing Process** | PCT/US18/22640<br><br>Not in foundation ip | Filed in<br><br>Japan<br>China<br>Korea | PUB 9/11/18 WO2018/170268<br><br>Received Int search rpt and opinion - IDSd into US case |
| SW-11-NAT | Japan – Application No.: 2020-500015<br><br><br><br>China<br>Korea | | Filed by Choice IP<br><br>Japan their ref PA45581ME-Asamura Patent Office |
| SW-12N<br><br>**RESISTIVE HEATING-COMPRESSION METHOD AND APPARATUS FOR COMPOSITE-BASED ADDITIVE MANUFACTURING** | 15/701,098 Filed 9/11/17 6864<br><br>Pub 3/15/19 2019/0072001 | | Awaiting exam |
| SW-13N<br><br>**Methods and Apparatus for Three-Dimensional Printed Composites Based on Folded Substrate Sheets** | 15/298,188 Filed 10/19/16<br><br>Robert Swartz Eugene Gore Buckley Crist | 12/11/19 Final office action **NOTE ALLOW TO ABANDON** | Restriction 10/14/18 Election 2/13/19<br><br>Filed TD in SWHEN2A over this application 3/13/19<br><br>Non final OA 5/15/19<br><br>Filed response 8/15/19<br><br>Final OA 9/11/19 |
| SW-13CON<br><br>**Methods and Apparatus for Three-** | 16/711,313 Filed 12/11/19 1000<br><br>Robert Swartz | | Filed IDS 12/13/19 |

DATE: Feb. 10, 2020

| **Dimensional Printed Composites Based on Folded Substrate Sheets** | Eugene Gore Buckley Crist  NOTE: MUST ADD INVENTOR | | |
|---|---|---|---|
| SWEPO  Methods and Apparatus for 3D Fabrication | EP 2776233 Patent (12828967.5) | 8/31/20 Annuity  Bolt Wade Tennant London | Annuity UK, DE, FR and CH due Aug. 2020 - year 9 |
| SWEPO-DIV  Methods and Apparatus for 3D Fabrication | EP 17208673.8  Published as EP3414094 | 8/31/20 Annuity  Bolt Wade Tennant London | Annuity EP |
| SW-14N  Methods for Fabricating Three-Dimensional Composites | 14/835,685 | | OA  NORMA  NOT OUR CASE |
| SW-15N  Three-Dimensional Printed Composite Articles | 14/835,697 | | OA Response filed  NOT OUR CASE  NOT OUR CASE |
| SW-16N  Tow Stabilization Method and Apparatus | 14/566,661 | | Notice of appeal filed 4/18  NORMA  NOT OUR CASE |
| SW-17  IMPROVED HOLDOWN PROCESS AND SYSTEM FOR | 62/849,021 Filed 5/16/19 | 5/16/20 | CONVERT by one year date  Filed ADS 6/13/19 |

DATE: Feb. 10, 2020

| PLATEN | | | |
|---|---|---|---|
| SWHEN<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | NOTE: Patent original case | Response OA<br><br>NORMA<br><br>NOT OUR CASE |
| SWHEN2<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 14/835,690<br>6834<br>Filed 8/25/15<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | NOTE: Patent original case<br>9,833,949<br>Issued 12/5/17 | Maint fee<br>6/5/21 |
| SWHEN2A<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 15/803,199<br>1095<br>Filed Nov 3, 2017<br><br>Pub 2/22/18<br>2018/0050490<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | 10,377,080<br>Issued 8/13/19 | Maint fee<br>2/13/23<br><br>Received final office action.<br><br>Filed electronic TD 3/13/19 over SW-13N<br><br>Filed after-final for TD 3/13/19<br><br>Notice of allowance 4/1/19<br><br>Paid issue fee 6/30/19 |
| SWHEN2A-CON<br><br>Apparatus for Fabricating Three-Dimensional Printed Composites | 16/539,545<br>8999<br>Filed Aug. 13, 2019<br><br>14/835,685<br>Robert Swartz<br>Buckley Crist<br>Eugene Gore<br>Joseph M. Jacobson | Pub 12/05/19<br>2019/0366626 | |
| SW-18<br><br>Carbon fiber sheet separation with flickers for | 62/965,079<br>7971<br>Filed Jan. 23, 2020<br><br>Robert Swartz<br>Jim Brough | | Convert 1/23/21 |

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| 3-Dimensional Printing | Eugene Gore | | |
| SW-19<br><br>Bulk Ink Bags for 3-Dimensional Printing | 62/965,083<br>4779<br>Filed Jan. 23, 2020<br><br>Robert Swartz<br>Michael Rohrer<br>Len Wanger<br>Drew Marshner<br>John Bayldon<br>Gintaras Vaisnys<br>Giovanni Meir | | Convert 1/23/21 |
| SW-20<br><br>Powder refill system for 3-Dimensional Printing | 62/965,089<br>9809<br>Filed Jan. 23, 2020<br><br>Eugene Gore<br>Robert Swartz | | Convert 1/23/21 |
| SW-21<br><br>Camera-based monitoring System for 3-Dimensional Printing | 62/965,096<br>7971<br>Filed Jan. 23, 2020<br><br>Robert Swartz<br>Len Wanger<br>John Bayldon<br>Jeff Saltzman<br>Chuck Pint<br>Eugene Gore<br>Gintaras Vaisnys<br>Giovanni Meir | | Convert 1/23/21 |
| Wilson-01N<br><br>THE SHINGLE HOOK<br><br>MICRO | 15/881,876<br>8750<br>Filed 2/29/18<br><br>2018/0231221 8/16/18 | 2/16/20 final office action 4 mo | Received non-final office action 3/7/19<br><br>Filed response 7/7/19<br><br>Received final OA 10/16/19 |
| CB-04N<br><br>**Prevention of RGA** | 15/296,700 | 10,484,422<br>Issued 11/19/19<br><br>**NO CONTINUATION** | Maint Fee<br>05/19/23<br><br>Non-final OA 11/2/18 |

A0135

DATE: Feb. 10, 2020

| | | | |
|---|---|---|---|
| | | | Filed response 4/29/19<br><br>Received notice of allowance 7/16/19<br><br>Paid issue fee 10/15/19 |
| CB-05N<br>**Baseline Calculation for firewalling** | 15/386,244<br>8878<br>Filed 12/21/16<br><br>Inventor:<br>Yonatan Striem-Amit | 10,417,414<br>Issued. 9/17/19<br><br><br>**NO CONTINUATION BY CLIENT** | Maint fee 3/17/23<br><br><br>Received final OA 2/21/19<br><br>Filed response to non-final office action 12-10-18<br><br>Filed after-final 5/10/19<br><br>Examiner amdt after phone interview<br><br>NOA 6/13/19<br><br>PAID ISSUE FEE 8/1/19 |
| CB-06N<br><br>**System Resources for Sandboxing** | 15/395,299<br>8849<br><br>Yonatan Striem-Amit | 10,055,579<br>Issued 8/21/18 | Maint fee<br>2/21/22 |
| CB-07 | 62/735,745<br>Filed 9/24/18 | | Converted 9/23/19 |
| CB-07N<br><br>**Method and mechanism for detection of pass-the-hash attacks** | 16/579,215<br>Filed 9/23/19<br>2152<br><br>Inventor<br>Phillip Tsukerman | **FILE IDS AND DEC** | Filed POA 9/25/19<br><br>Receive MP 10/8/19<br><br>Paid $80 MP 10/14/19 |
| CB-08 | 62/735,725<br>Filed 9/24/18 | | |
| CB-08N<br><br>**Correlating network traffic to their OS processes using packet capture libraries and kernel monitoring mechanisms** | 16/579,455<br>Filed 9/23/19<br>7486<br><br>Inventor<br>Gal Kaplan | **FILE IDS AND DEC** | Filed POA 9/25/19 |

DATE: Feb. 10, 2020

| H-01PCT **System and Method for Detecting Misinformation and Fake News via Network Analysis** | PCT/US19/61456 Int filing date 11/14/19 Int priority date 11/14/18  Applicant Hints Inc. Inventor: Elan Paplov | **5/14/21 Mo. 30 date** | Filed with no fee |
|---|---|---|---|
| Rolf-01D | 29/646,383 | | Awaiting exam |
| ET-05N | 16/232,006 1027 Filed 12/25/18  **Replaceable Lighting System for Artificial Christmas Trees and Other Decorations**  Cheng-Che Tsai | NO PCT re client email | Awaiting exam  Received MP 1/24/19 Filed response 3/25/19  Filed dec, assign and name fix 5/21/19  Received OA 9/18/19  Filed response 2/4/20 |
| FS-01 Fishman Dental | 62/690,499 | 6/27/19 | Conv Hard date PCT filing date  NO CONVERSION re client 6/26/19 |
| RX-01N  METHOD AND APPARATUS FOR MITIGATING ACUTE REOXYGENATION INJURY DURING PERCUTANIOUS CORONARY INTERVENTION | 15/712,713 6715 Filed 9/22/17  Neil Thomas Gintaras Vaisnys  Rheoxtech LLC  Pub 1/11/18 2018/0008763 | FILE POA | 9/24/18 Non-final office action  Filed response 3/25/19  Received Notice of Allowance.  Allowance pulled back Non-final issued with 103  Filed response to non-final OA 11/18/19 |

DATE: Feb. 10, 2020

| RX-02N-RX-05N | | Entered | US 9,211,371<br>14/264,211<br>Maint fee<br>6/15/2023<br>$1800 |
|---|---|---|---|
| | | Entered | US 8,178,041<br>12/748,529<br>Maint fee<br>11/15/23<br>$3600 |
| | | | US 9,084,856<br>14/039,673<br>1/24/23<br>$1800 |
| | | | CA 2,768,351<br>We paid 2019<br>7/17/20<br>CA$250+ |

NOTE: Patent 9,827,754 issued 11-28-17 Maint due 5-28-21 from 13/583,939
Assign this a standard number

**To:**        fg.law.rpg@gmail.com,mal@fg-law.com,
**From:**      PAIR_eOfficeAction@uspto.gov
**Cc:**        PAIR_eOfficeAction@uspto.gov
**Subject:**   Private PAIR Correspondence Notification for Customer Number 93344

Jan 08, 2021 04:00:32 AM

Dear PAIR Customer:

Flachsbart & Greenspoon
333 N. Michigan Avenue
27th Floor
Chicago, IL 60601-3901
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 93344 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|-------------|----------|---------------|---------------------|
| PCT/US19/61456 | PETDEC | 01/01/2021 | |
| | PET.DEC.OIPE | 01/01/2021 | |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

        Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
333 N. MICHIGAN AVE.
27th FLOOR
CHICAGO IL ILLINOIS 60601

**MAILED**

JAN 0 1 2021

INTERNATIONAL PATENT LEGAL ADM.

In re Application of:                         :
HINTS, Inc.                                   :
PCT No.: PCT/US2019/061456 (withdrawn)        :
Int. Filing Date: 14 November 2019            :
Priority Date: 14 November 2018               :     DECISION ON PETITION
Atty. Docket No.: None                        :     UNDER 37 CFR 1.137(a)
Title:  SYSTEM AND METHOD FOR                 :
        DETECTING MISINFORMATION              :
        AND FAKE NEWS VIA NETWORK             :
        ANALYSIS                              :

        This decision is issued in response to applicant's "Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)" filed 15 December 2020 in the United States Patent and Trademark Office (USPTO). Applicant is advised that this decision is being mailed to the address associated with customer number 93344 as a courtesy as this address is not the official correspondence address for the above-captioned international application.

## **BACKGROUND**

        On 14 November 2019, applicant filed a Request (Form PCT/RO/101) and accompanying materials to initiate the present international application. The submission did not include a fee payment. Box number IV listed the correspondence address as "33 N. Michigan Ave., Chicago, IL 60601 USA."

        On 29 November 2019, the United States Receiving Office (RO/US) mailed a "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) indicating that $2102.00 in fees were required.

        On 13 January 2020, the RO/US mailed an "Invitation To Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) requiring submission of $2102.00 in fees, as well as a $625.00 late payment fee. The Invitation stated that payment was required within one month and that: "Failure to pay the total amount due within the time limit indicated above may result in the international application being considered withdrawn by the receiving Office."

A0140

Application No.: PCT/US2019/061456                                              2

On 26 February 2020, the RO/US mailed a "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) indicating that the international application was considered withdrawn for failure to submit the fees required in the Invitation mailed 13 January 2020.

On 15 December 2020, applicant filed the present "Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)" considered herein.

## DISCUSSION

Applicant here did not pay the $2102.00 in required fees within one month of the filing of the international application, as required under PCT Rules 14.1(c), 15.3, and 16.1(f).

Based on applicant's failure to pay the required fees, and pursuant to PCT Rule 16bis.1(a) and 16bis.2, on 13 January 2020 the RO/US mailed the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" requiring payment of the $2102.00 in fees, as well as a $625.00 late payment fee. Consistent with PCT Rule 16bis.1(c), the Invitation expressly informed applicant that, if the required payment was not received within one month from the mail date of the Invitation, the application would be declared withdrawn.

The record does not show payment of the required fees within one month of the mail date of the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" or prior to the mailing of the "Notification That International Application Considered To Be Withdrawn" on 26 February 2020, nor does the present petition assert that such a timely fee payment was made. Under these circumstances, the withdrawal of the international application was appropriate under PCT Rules 16bis.1(c) and (e).

Applicant's present petition asserts that the failure to submit a timely payment of the required fees was unintentional; however, there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failure to timely pay the fees was unintentional. Applicant's present petition to reinstate this international application is therefore appropriately dismissed.

As stated above, there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, therefore, applicant's request to consider the application be treated as a new application under the PCT is refused.

## CONCLUSION

For the reasons discussed above, the petition to reinstate the present international application is **DISMISSED** without prejudice.

Application No.: PCT/US2019/061456                                             3

Applicant's petition under 37 CFR 1.137(a) is **DISMISSED** as moot.

As set forth in the "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) mailed on 26 February 2020, the present international application is considered withdrawn.

The fees submitted with the present petition will be refunded to applicant in due course.

Any further correspondence with respect to this matter may be filed electronically via EFS-Web selecting the document description "Petition for review and processing by the PCT Legal Office" or by mail addressed to Mail Stop PCT, Commissioner for Patents, Office of PCT Legal Administration, P.O. Box 1450, Alexandria, Virginia 22313-1450, with the contents of the letter marked to the attention of the Office of PCT Legal Administration.

/Derek A. Putonen/

Derek A. Putonen
Attorney-Advisor
International Patent Legal Administration
Tel:    (571) 272-3294



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
333 N. MICHIGAN AVE.
27th FLOOR
CHICAGO IL ILLINOIS 60601

MAILED

JAN 0 1 2021

INTERNATIONAL PATENT LEGAL ADM.

In re Application of:                           :
HINTS, Inc.                                     :
PCT No.: PCT/US2019/061456 (withdrawn)          :
Int. Filing Date: 14 November 2019              :
Priority Date: 14 November 2018                 :     DECISION ON PETITION
Atty. Docket No.: None                          :     UNDER 37 CFR 1.137(a)
Title:  SYSTEM AND METHOD FOR                   :
        DETECTING MISINFORMATION                :
        AND FAKE NEWS VIA NETWORK               :
        ANALYSIS                                :

 

     This decision is issued in response to applicant's "Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)" filed 15 December 2020 in the United States Patent and Trademark Office (USPTO). Applicant is advised that this decision is being mailed to the address associated with customer number 93344 as a courtesy as this address is not the official correspondence address for the above-captioned international application.

## **BACKGROUND**

     On 14 November 2019, applicant filed a Request (Form PCT/RO/101) and accompanying materials to initiate the present international application. The submission did not include a fee payment. Box number IV listed the correspondence address as "33 N. Michigan Ave., Chicago, IL 60601 USA."

     On 29 November 2019, the United States Receiving Office (RO/US) mailed a "Notification Concerning Payment Of Prescribed Fees" (Form PCT/RO/102) indicating that $2102.00 in fees were required.

     On 13 January 2020, the RO/US mailed an "Invitation To Pay Prescribed Fees Together With Late Payment" (Form PCT/RO/133) requiring submission of $2102.00 in fees, as well as a $625.00 late payment fee. The Invitation stated that payment was required within one month and that: "Failure to pay the total amount due within the time limit indicated above may result in the international application being considered withdrawn by the receiving Office."

Application No.: PCT/US2019/061456                                                    2

On 26 February 2020, the RO/US mailed a "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) indicating that the international application was considered withdrawn for failure to submit the fees required in the Invitation mailed 13 January 2020.

On 15 December 2020, applicant filed the present "Petition for Revival of an International Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)" considered herein.

## **DISCUSSION**

Applicant here did not pay the $2102.00 in required fees within one month of the filing of the international application, as required under PCT Rules 14.1(c), 15.3, and 16.1(f).

Based on applicant's failure to pay the required fees, and pursuant to PCT Rule 16bis.1(a) and 16bis.2, on 13 January 2020 the RO/US mailed the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" requiring payment of the $2102.00 in fees, as well as a $625.00 late payment fee. Consistent with PCT Rule 16bis.1(c), the Invitation expressly informed applicant that, if the required payment was not received within one month from the mail date of the Invitation, the application would be declared withdrawn.

The record does not show payment of the required fees within one month of the mail date of the "Invitation To Pay Prescribed Fees Together With Late Payment Fee" or prior to the mailing of the "Notification That International Application Considered To Be Withdrawn" on 26 February 2020, nor does the present petition assert that such a timely fee payment was made. Under these circumstances, the withdrawal of the international application was appropriate under PCT Rules 16bis.1(c) and (e).

Applicant's present petition asserts that the failure to submit a timely payment of the required fees was unintentional; however, there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failure to timely pay the fees was unintentional. Applicant's present petition to reinstate this international application is therefore appropriately dismissed.

As stated above, there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, therefore, applicant's request to consider the application be treated as a new application under the PCT is refused.

## **CONCLUSION**

For the reasons discussed above, the petition to reinstate the present international application is **DISMISSED** without prejudice.

A0144

Application No.: PCT/US2019/061456                                                    3

Applicant's petition under 37 CFR 1.137(a) is **<u>DISMISSED</u>** as moot.

As set forth in the "Notification That International Application Considered To Be Withdrawn" (Form PCT/RO/117) mailed on 26 February 2020, the present international application is considered withdrawn.

The fees submitted with the present petition will be refunded to applicant in due course.

Any further correspondence with respect to this matter may be filed electronically via EFS-Web selecting the document description "Petition for review and processing by the PCT Legal Office" or by mail addressed to Mail Stop PCT, Commissioner for Patents, Office of PCT Legal Administration, P.O. Box 1450, Alexandria, Virginia 22313-1450, with the contents of the letter marked to the attention of the Office of PCT Legal Administration.

/Derek A. Putonen/

Derek A. Putonen
Attorney-Advisor
International Patent Legal Administration
Tel:    (571) 272-3294



# United States Patent and Trademark Office

*Office of the Chief Financial Officer*

Document Code:WFEE

User :C47803

Refund Accounting Date:12/29/2020

| Effective Date | Sale Item Reference Number | Refund Total |
|---|---|---|
| 12/15/2020 | PCT/US19/61456 | $3,679.00 |

| Document Number | Fee Code | Fee Code Description | Amount Paid | Payment Method | Account Number |
|---|---|---|---|---|---|
| I2020BSE04105395 | 2601 | TRANSMITTAL FEE | $130.00 | Mastercard | ***********6195 |
| I2020BSE04105395 | 1619 | LATE PAYMENT FEE | $625.00 | Mastercard | ***********6195 |
| I2020BSE04105395 | 1701 | INTL FILING FIRST 30PGS EFS WITHOUT ZIP | $1,337.00 | Mastercard | ***********6195 |
| I2020BSE04105395 | 2454 | PET. DELAY SUB OR RESTORE PRIORITY-CLAIM | $1,050.00 | Mastercard | ***********6195 |
| I2020BSE04105395 | 1714 | INTERNATIONAL SEARCH (ROSPATENT) | $537.00 | Mastercard | ***********6195 |



# United States Patent and Trademark Office

*Office of the Chief Financial Officer*

Document Code:WFEE

User :C47803

Sale Adjustment Accounting Date:12/29/2020

| Effective Date | Sale Accounting Date | Sale Item Reference Number |
|---|---|---|
| 12/15/2020 | 12/29/2020 | PCT/US19/61456 |

| Document Number | Fee Code | Fee Code Description | Amount Paid | Payment Method |
|---|---|---|---|---|
| I2020BSE04105395 | 2601 | TRANSMITTAL FEE | $130.00 | Mastercard |
| I2020BSE04105395 | 1619 | LATE PAYMENT FEE | $625.00 | Mastercard |
| I2020BSE04105395 | 1701 | INTL FILING FIRST 30PGS EFS WITHOUT ZIP | $1,337.00 | Mastercard |
| I2020BSE04105395 | 2454 | PET. DELAY SUB OR RESTORE PRIORITY-CLAIM | $1,050.00 | Mastercard |
| I2020BSE04105395 | 1714 | INTERNATIONAL SEARCH (ROSPATENT) | $537.00 | Mastercard |

Doc Code: PET.PCT
Document Description: Petition for review by the PCT Legal Office

PTO/SB/64PCT (01-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR REVIVAL OF AN INTERNATIONAL (PCT) APPLICATION FOR PATENT DESIGNATING THE U.S. ABANDONED UNINTENTIONALLY UNDER 37 CFR 1.137(a)<br><br>Page 1 of 2 | Docket Number (Optional)<br><br>H-01PCT |
| --- | --- |

First named inventor: Elan Pavlov

International (PCT) Application No.: PCT/US19/61456          U.S. Application No. (if known): _____

Filed: Nov. 14, 2019

Title: System and method for detecting misinformation and fake news via network analysis

Attention: International Patent Legal Administration
**Mail Stop PCT**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

The above-identified application became abandoned as to the United States because the fees and documents required by 35 U.S.C. 371(c) and 37 CFR 1.495 were not filed prior to the expiration of the time set in 37 CFR 1.495(b) or (c) (as applicable). The date of abandonment is the day after the date on which the 35 U.S.C. 371(c) requirements were due. See 37 CFR 1.495(c) and (h).

**APPLICANT HEREBY PETITIONS FOR REVIVAL OF THIS APPLICATION.**

NOTE:  A grantable petition requires the following items:
    (1)  Petition fee;
    (2)  Proper reply;
    (3)  Terminal disclaimer with disclaimer fee which is required for all international applications having an international filing date before June 8, 1995; and
    (4)  Statement that the entire delay was unintentional.

**1.  Petition fee**

☒ Small entity fee $ 1050.00 (37 CFR 1.17(m)). Applicant asserts small entity status. See 37 CFR 1.27.

☐ Micro entity fee $ _____ (37 CFR 1.17(m)). Applicant certifies micro entity status. See 37 CFR 1.29.
    Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ Undiscounted fee $ _____ (37 CFR 1.17(m)).

**2.  Proper reply**

The proper reply (the missing requirement(s)) in the form of

Payment of the filing fee plus late payment fee (identify the type of reply):

    ☐ has been filed previously on _____.

    ☒ is enclosed herewith.

**3.  Terminal disclaimer with disclaimer fee**

☒ Since this international application has an international filing date on or after June 8, 1995, no terminal disclaimer is required.

☐ A terminal disclaimer (and disclaimer fee (37 CFR 1.20(d)) of $ _____ for a small entity or $ _____ for other than a small entity) disclaiming the required period of time is enclosed herewith (see PTO/SB/63).

This collection of information is required by 37 CFR 1.137(a). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 1 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO:  Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PET.PCT
Document Description: Petition for review by the PCT Legal Office

PTO/SB/64PCT (01-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PETITION FOR REVIVAL OF AN INTERNATIONAL (PCT) APPLICATION FOR PATENT DESIGNATING THE U.S. ABANDONED UNINTENTIONALLY UNDER 37 CFR 1.137(a)

### Page 2 of 2

**4. STATEMENT:** The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(a) was unintentional. [NOTE: The United States Patent and Trademark Office may require additional information if there is a question as to whether either the abandonment or the delay in filing a petition under 37 CFR 1.137(a) was unintentional (MPEP 711.03(c), subsections (III)(C) and (D)).]

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

| | |
|---|---|
| /Robert Greenspoon/ | Dec. 15, 2020 |
| Signature | Date |
| Robert P. Greenspoon | 40,004 |
| Typed or Printed Name | Registration Number, if applicable |
| 333 N. Michigan Ave. | 312 551-9500 |
| Address | Telephone Number |
| Chicago, IL 60540 | |
| Address | |

Enclosures:

- [x] Fee Payment
- [x] Reply
- [ ] Terminal Disclaimer Form
- [ ] Additional sheet(s) containing statements establishing unintentional delay
- [ ] Other (please identify): _____

### CERTIFICATE OF MAILING OR TRANSMISSION [37 CFR 1.8(a)]

I hereby certify that this correspondence is being:

- [ ] Deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to: Mail Stop PCT, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450.
- [x] Transmitted to the United States Patent and Trademark Office by EFS-Web, or by facsimile to (571) 273-8300, on the date shown below.

| | |
|---|---|
| Dec. 15, 2020 | /clifford kraft/  35,229 |
| Date | Signature |
| | Clifford H. Kraft |
| | Typed or printed name of person signing certificate |

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | PCT/US19/61456 |
| **Filing Date:** | 14-Nov-2019 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Filer:** | Robert P. Greenspoon./Clifford Kraft |
| **Attorney Docket Number:** | |

Filed as Small Entity

**Filing Fees for   International Application (PCT) for filing in the US receiving office**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| TRANSMITTAL FEE | 2601 | 1 | 130 | 130 |
| LATE PAYMENT FEE | 1619 | 1 | 625 | 625 |
| INTL FILING FIRST 30PGS EFS WITHOUT ZIP | 1701 | 1 | 1337 | 1337 |
| PET. DELAY SUB OR RESTORE PRIORITY-CLAIM | 2454 | 1 | 1050 | 1050 |
| INTERNATIONAL SEARCH (ROSPATENT) | 1714 | 1 | 537 | 537 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |

A0151

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **3679** |

A0152

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 41390101 |
| **Application Number:** | |
| **International Application Number:** | PCT/US19/61456 |
| **Confirmation Number:** | 4833 |
| **Title of Invention:** | SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS |
| **First Named Inventor/Applicant Name:** | HINTS INC. |
| **Customer Number:** | 93344 |
| **Correspondence Address:** | Flachsbart & Greenspoon<br>-<br>333 N. Michigan Avenue<br>27th Floor<br>Chicago          IL          60601-3901<br>US          312-551-9500<br>fg.law.rpg@gmail.com |
| **Filer:** | Robert P. Greenspoon./Clifford Kraft |
| **Filer Authorized By:** | Robert P. Greenspoon. |
| **Attorney Docket Number:** | |
| **Receipt Date:** | 15-DEC-2020 |
| **Filing Date:** | 14-NOV-2019 |
| **Time Stamp:** | 14:14:02 |
| **Application Type:** | International Application (PCT) for filing in the US receiving office |
| **Patent Number:** | |

## Payment information:

| Submitted with Payment | yes |
|---|---|
| Payment Type | CARD |
| Payment was successfully received in RAM | $3679 |
| RAM confirmation Number | E2020BEE15449763 |
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Petition for review by the PCT legal office | sb0064pct.pdf | 219827<br><br>6c0d54dbfed4b7fb26b56da0286853258b1588ee | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 38395<br><br>a43a16454ea73f06d604f83a5eb637f1f605ebff | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 258222 | | |

A0154

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

A0155

U.S.POSTAGE >> PITNEY BOWES

ZIP 22206 $ 000.50°
02 4W
0000355069 FEB 26 2020

RECEIVED

MAR 1 0 2020

USPTO MAIL CENTER

AN EQUAL OPPORTUNITY EMPLOYER

NIXIE          601          DE 1

RETURN TO SENDER
INSUFFICIENT ADDRESS
UNABLE TO FORWARD

BC:          22313145050

PCT
Organization _____
Bldg/Room __ RSQ/6A01
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA. 22313-1450
If Undeliverable Return in Ten Days

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

A0156

PCT/US2019/061456 10.03.2020

## PATENT COOPERATION TREATY

DTSV-1 Rec'd.PCT  MAR 1 0 2020

From the RECEIVING OFFICE

To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

NOTIFICATION THAT INTERNATIONAL
APPLICATION CONSIDERED
TO BE WITHDRAWN

(PCT Article 14(1) or (3) and Rules 12.3(d) or 12.4(d),
29.1 or 92.4(g)(i))

| | |
|---|---|
| Date of mailing *(day/month/year)* | 26 Feb 2020 |

| Applicant's or agent's file reference | **IMPORTANT NOTIFICATION** |
|---|---|

| International application No. PCT/US2019/061456 | International filing date *(day/month/year)* 14 Nov 2019 |
|---|---|

Applicant

HINTS INC.

The applicant is hereby notified that **the international application is declared by this receiving Office to be considered withdrawn** for the reason indicated below:

1. ☐  **Failure to correct certain defects**: An invitation (Form PCT/RO/106) to correct defects in the international application was mailed by this receiving Office on _____

   However:   ☐ no corrections, in response to that invitation, have been received within the prescribed time limit.

   ☐ applicant's corrections as submitted do not properly correct the defects noted in that invitation.

2. ☐  **Failure to furnish the required translation of the international application and/or to pay the late furnishing fee**: An invitation (Form PCT/RO/150 or Form PCT/RO/157) to furnish the required translation of the international application and to pay, where applicable, the late furnishing fee was mailed by this receiving Office on _____

   However, within the time limit referred to in that invitation:

   ☐ the required translation was not furnished.   ☐ the required late furnishing fee was not paid.

3. ☒  **Failure to pay prescribed fees**: An invitation (Form PCT/RO/133) to pay the prescribed fees was mailed by this receiving Office on _____13 JAN 2020_____

   However, within the time limit referred to in that invitation:

   ☒ no fees have been paid.

   ☐ the amounts paid are not sufficient to cover the transmittal fee, the international filing fee, the search fee and the late payment fee.

4. ☐  **Failure to furnish the original of the international application**: An invitation (Form PCT/RO/141) to furnish the original of the international application (transmitted earlier by facsimile machine/teleprinter/etc.) was mailed by this receiving Office on _____

   However, the original was not furnished within the time limit fixed in that invitation.

5. ☒  A copy of this Notification has been sent to the International Bureau and to the International Searching Authority.

   **ATTENTION:** This international application will not be published only if this Notification reaches the International Bureau before completion of technical preparations for international publication (Rule 29.1(v)).

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents P.O. Box 1450, Alexandria, VA 22313-1450 | **Lydell Meadows** |
| Facsimile No. 571-273-8300 | Telephone No.  703-756-1707 |

Form PCT/RO/117 (July 2008)

A0157

## PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

NOTIFICATION THAT INTERNATIONAL
APPLICATION CONSIDERED
TO BE WITHDRAWN

(PCT Article 14(1) or (3) and Rules 12.3(d) or 12.4(d),
29.1 or 92.4(g)(i))

| Date of mailing<br>*(day/month/year)* | 26 Feb 2020 |
|---|---|

| Applicant's or agent's file reference | **IMPORTANT NOTIFICATION** |
|---|---|

| International application No.<br>PCT/US2019/061456 | International filing date<br>*(day/month/year)*<br>14 Nov 2019 |
|---|---|

Applicant

HINTS INC.

---

The applicant is hereby notified that **the international application is declared by this receiving Office to be considered withdrawn** for the reason indicated below:

1. ☐ **Failure to correct certain defects**: An invitation (Form PCT/RO/106) to correct defects in the international application was mailed by this receiving Office on ......................................................................................................................

   However: ☐ no corrections, in response to that invitation, have been received within the prescribed time limit.

   ☐ applicant's corrections as submitted do not properly correct the defects noted in that invitation.

2. ☐ **Failure to furnish the required translation of the international application and/or to pay the late furnishing fee:** An invitation (Form PCT/RO/150 or Form PCT/RO/157) to furnish the required translation of the international application and to pay, where applicable, the late furnishing fee was mailed by this receiving Office on

   However, within the time limit referred to in that invitation:

   ☐ the required translation was not furnished.   ☐ the required late furnishing fee was not paid.

3. ☒ **Failure to pay prescribed fees**:  An invitation (Form PCT/RO/133) to pay the prescribed fees was mailed by this receiving Office on          **13 JAN 2020**

   However, within the time limit referred to in that invitation:

   ☒ no fees have been paid.

   ☐ the amounts paid are not sufficient to cover the transmittal fee, the international filing fee, the search fee and the late payment fee.

4. ☐ **Failure to furnish the original of the international application:**  An invitation (Form PCT/RO/141) to furnish the original of the international application (transmitted earlier by facsimile machine/teleprinter/etc.) was mailed by this receiving Office on

   However, the original was not furnished within the time limit fixed in that invitation.

5. ☒ A copy of this Notification has been sent to the International Bureau and to the International Searching Authority.

**ATTENTION:**  This international application will not be published **only** if this Notification reaches the International Bureau before completion of technical preparations for international publication (Rule 29.1(v)).

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| **Mail Stop PCT, Commissioner for Patents**<br>P.O. Box 1450, Alexandria, VA 22313-1450 | **Lydell Meadows** |
| Facsimile No.  571-273-8300 | Telephone No.  703-756-1707 |

Form PCT/RO/117 (July 2008)

A0158

PGT BldgRoom QSQ/6A01

Organization
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA. 22313-1450
If Undeliverable Return in Ten Days

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

USPTO MAIL CENTER
FEB 11 2020

AN EQUAL OPPORTUNITY EMPLOYER

U.S. POSTAGE >> PITNEY BOWES

ZIP 22206
02 4M
0000355069 JAN 13 2020
$ 000.50

NIXIE        601   DE 1        0002/02/20

RETURN TO SENDER
NO SUCH NUMBER
UNABLE TO FORWARD

BC: 22313145432

RETURN TO SENDER

A0159

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

<table>
<tr><td>To:<br>ROBERT P. GREENSPOON<br>C/O FLACHSBART & GREENSPOON LLC<br>33 N. MICHIGAN AVE.<br>CHICAGO, ILLINOIS 60601</td><td># PCT<br><br>INVITATION TO PAY PRESCRIBED FEES<br>TOGETHER WITH LATE PAYMENT FEE<br><br>(PCT Rule 16*bis* and<br>Administrative Instructions, Section 707)</td></tr>
</table>

<table>
<tr><td>Date of mailing<br>*(day/month/year)*</td><td>13 Jan 2020</td></tr>
<tr><td>Applicant's or agent's file reference</td><td>**PAYMENT DUE**   within ONE MONTH from<br>the above date of mailing</td></tr>
<tr><td>International application No.<br>PCT/US2019/061456</td><td>International filing date/Date of receipt *(day/month/year)*<br>14 Nov 2019</td></tr>
<tr><td colspan="2">Applicant<br>HINTS INC.</td></tr>
</table>

1. This receiving Office has found that the prescribed fees (i.e., transmittal fee, search fee and international filing fee) have not been paid (in full), within one month from the date of receipt of the international application (Rules 14, 15 and 16). See below for details of the calculation.

2. The applicant is hereby **invited**, within the time limit indicated above, **to pay the following total amount** (see the Annex for details):

| 2,102.00 | + | 625.00 | = | 2,727.00 |
|---|---|---|---|---|
| Total unpaid fees | | Late payment fee | | Total amount due |

3. **Failure to pay** the total amount due within the time limit indicated above may result in the international application being considered withdrawn by this receiving Office.

   **The applicant's attention is drawn to Rules 16*bis*.1(c) and 29.**

4. Additional observations *(if any):*

   ☐ the amount of _____ was received by this receiving Office after the expiration of the applicable time limit; the total amount due indicated above is correspondingly reduced

   ☐ other observations:

A copy of this Invitation is being sent to the International Bureau.

<table>
<tr><td>Name and mailing address of the receiving Office<br><br>Mail Stop PCT, Commissioner for Patents<br>P.O. Box 1450, Alexandria, VA 22313-1450<br>Facsimile No. 571-273-8300</td><td>Authorized officer<br><br>Felicia Lawrence<br><br>Telephone No. 571-272-3546</td></tr>
</table>

Form PCT/RO/133  (July 2015)

A0160

ANNEX TO FORM PCT/RO/133
CALCULATION OF THE PRESCRIBED FEES
*(If a reduced fee has been applied, the reduced amount is indicated.)*

| International application No. |
| --- |
| PCT/US2019/061456 |

**T** **Transmittal Fee**

| Prescribed amount: . . . . . . . . . . . . . . . . . . . . | 240.00 | **T** | ☐ correct amount |
| Amount paid: . . . . . . . . . . . . . . . . . . . . . . – | 0.00 | | ☐ overpayment |
| Balance: . . . . . . . . . . . . . . . . . . . . . . . . = | 240.00 | | ☒ balance due |

**S** **Search Fee**

| Prescribed amount: . . . . . . . . . . . . . . . . . . . . | 612.00 | **S** | ☐ correct amount |
| Amount paid: . . . . . . . . . . . . . . . . . . . . . . – | 0.00 | | ☐ overpayment |
| Balance: . . . . . . . . . . . . . . . . . . . . . . . . = | 612.00 | | ☒ balance due |

**I** **International Filing Fee**

Prescribed amount:

| Fixed amount for first 30 sheets: . . . . . . . | 1,250.00 | **i1** |

$$\underline{\hspace{1.5cm} 0 \hspace{1.5cm}} \times \underline{\hspace{1.5cm} 15.00 \hspace{1.5cm}} = \underline{\hspace{1cm} 0.00 \hspace{1cm}} \boxed{i2}$$

Number of sheets          Fee per sheet
in excess of 30

*(excluding pages referred
to in Section 707(a-bis))*

Reduction where the international application is filed
*(See PCT Fee Tables http://www.wipo.int/pct/en/fees.pdf)*:

| in electronic form, the request not being in character coded format . . . . . . . . . . – | 0.00 | **r** |

or

| in electronic form, the request being in character coded format . . . . . . . . . . . . – | 0.00 | **r** |

or

| in electronic form, the request, description, claims and abstract being in character coded format . . . . . . . . . . . . . . . . – | 0.00 | **r** |

| Sub-total: . . . . . . . . . . . . . . . . . . . . = | 1,250.00 | **i1+i2−r** |

*Applicants from certain States are entitled to a reduction of 90% of the international filing fee. Where the applicant is (or all applicants are) so entitled, the total to be entered at I is 10% of the sub-total entered at (i1+i2−r); (see Notes to the Fee Calculation Sheet as annexed to the Request Form, PCT/RO/101, for details):* . . . . . . . . . =

| | 1,250.00 | **I** | ☐ correct amount |
| Amount paid: . . . . . . . . . . . . . . . . . . . . . . – | 0.00 | | ☐ overpayment |
| Balance: . . . . . . . . . . . . . . . . . . . . . . . . | 1,250.00 | | ☒ balance due |

---

**Late Payment Fee**

The amount of the late payment fee corresponds to:

☐ 50% of total unpaid fees

☐ the transmittal fee (minimum amount of the late payment fee)

☒ 50% of the international filing fee, not taking into account any fee for each sheet of the international application in excess of 30 sheets (maximum amount of the late payment fee)

Form PCT/RO/133 (Annex) (July 2015)

## PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

INVITATION TO PAY PRESCRIBED FEES
TOGETHER WITH LATE PAYMENT FEE

(PCT Rule 16*bis* and
Administrative Instructions, Section 707)

| Date of mailing *(day/month/year)* | 13 Jan 2020 |
|---|---|

| Applicant's or agent's file reference | PAYMENT DUE | within ONE MONTH from the above date of mailing |
|---|---|---|

| International application No.  PCT/US2019/061456 | International filing date/Date of receipt *(day/month/year)*  14 Nov 2019 |
|---|---|

Applicant

HINTS INC.

---

1. This receiving Office has found that the prescribed fees (i.e., transmittal fee, search fee and international filing fee) have not been paid (in full), within one month from the date of receipt of the international application (Rules 14, 15 and 16).  See below for details of the calculation.

2. The applicant is hereby **invited**, within the time limit indicated above, **to pay the following total amount** (see the Annex for details):

| 2,102.00 | + | 625.00 | = | 2,727.00 |
|---|---|---|---|---|
| Total unpaid fees | | Late payment fee | | Total amount due |

3. **Failure to pay** the total amount due within the time limit indicated above may result in the international application being considered withdrawn by this receiving Office.

   **The applicant's attention is drawn to Rules 16*bis*.1(c) and 29.**

4. Additional observations *(if any)*:

   ☐ the amount of _____ was received by this receiving Office after the expiration of the applicable time limit; the total amount due indicated above is correspondingly reduced

   ☐ other observations:

A copy of this Invitation is being sent to the International Bureau.

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| **Mail Stop PCT, Commissioner for Patents**  P.O. Box 1450, Alexandria, VA 22313-1450 | Felicia Lawrence |
| Facsimile No.  571-273-8300 | Telephone No.  571-272-3546 |

Form PCT/RO/133  (July 2015)

A0162

## ANNEX TO FORM PCT/RO/133
## CALCULATION OF THE PRESCRIBED FEES
*(If a reduced fee has been applied, the reduced amount is indicated.)*

| International application No. |
| --- |
| PCT/US2019/061456 |

### T  Transmittal Fee

| | | |
| --- | --- | --- |
| Prescribed amount: | 240.00 T | ☐ correct amount |
| Amount paid: | 0.00 | ☐ overpayment |
| Balance: | = 240.00 | ☒ balance due |

### S  Search Fee

| | | |
| --- | --- | --- |
| Prescribed amount: | 612.00 S | ☐ correct amount |
| Amount paid: | 0.00 | ☐ overpayment |
| Balance: | = 612.00 | ☒ balance due |

### I  International Filing Fee

Prescribed amount:

Fixed amount for first 30 sheets: . . . . . . .   1,250.00 $i1$

| 0 | x | 15.00 | = | 0.00 $i2$ |
| --- | --- | --- | --- | --- |
| Number of sheets in excess of 30 | | Fee per sheet | | |

*(excluding pages referred to in Section 707(a-bis))*

Reduction where the international application is filed
*(See PCT Fee Tables http://www.wipo.int/pct/en/fees.pdf):*

| in electronic form, the request not being in character coded format | 0.00 r |
| --- | --- |

or

| in electronic form, the request being in character coded format | 0.00 r |
| --- | --- |

or

| in electronic form, the request, description, claims and abstract being in character coded format | 0.00 r |
| --- | --- |

Sub-total:   =   1,250.00 $i1+i2-r$

*Applicants from certain States are entitled to a reduction of 90% of the international filing fee. Where the applicant is (or all applicants are) so entitled, the total to be entered at I is 10% of the sub-total entered at (i1+i2-r); (see Notes to the Fee Calculation Sheet as annexed to the Request Form, PCT/RO/101, for details):* . . . . . . . . .   =   1,250.00 I    ☐ correct amount

| Amount paid: | 0.00 | ☐ overpayment |
| --- | --- | --- |
| Balance: | = 1,250.00 | ☒ balance due |

### Late Payment Fee

The amount of the late payment fee corresponds to:

☐  50% of total unpaid fees

☐  the transmittal fee (minimum amount of the late payment fee)

☒  50% of the international filing fee, not taking into account any fee for each sheet of the international application in excess of 30 sheets (maximum amount of the late payment fee)

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 22206 $ 000.65⁰
02 4W
0000355069 NOV 29 2019

RECEIVED
DEC 17 2019
USPTO MAIL CENTER

0012/09/19

AN EQUAL OPPORTUNITY EMPLOYER

NSN

NIXIE          601   DE   1

BC: 22313145676  ⟶ *1992-07632-29-41

RETURN TO SENDER
NO SUCH NUMBER
UNABLE TO FORWARD

NSN
5060224819 7012

Organization _____
PCT ___ Bldg/Room RSQ16A01
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
If Undeliverable Return in Ten Days

OFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

A0164

**PCT/US2019/061456 17 12 2019**

DTS/-i Rec'd PCT   DEC 1 7 2019

## PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:
ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

### NOTIFICATION CONCERNING PAYMENT OF PRESCRIBED FEES

(PCT Rules 12*bis*.1(c), 14, 15 and 16
and Administrative Instructions,
Sections 304, 323(b) and 707)

| Date of mailing *(day/month/year)* | 29 Nov 2019 |
|---|---|

| Applicant's or agent's file reference | **PAYMENT DUE** see item 3 for time limits |
|---|---|

| International application No. PCT/US2019/061456 | International filing date/Date of receipt *(day/month/year)* 14 Nov 2019 | Priority date *(day/month/year)* 14 Nov 2018 |
|---|---|---|

| Applicant HINTS INC. |
|---|

1. The applicant is hereby notified that this receiving Office has received:

   ☐ the payment of all the prescribed fees, and   ☐ an **overpayment**, which will be refunded in due course.

   ☒ **no or insufficient payment** of the prescribed fees and the applicant is hereby **invited to pay the balance due**, as summarized under item 2, within the time limit(s) indicated under item 3.

2. Fees and payment calculation:

   | 2,102.00 | – | 0.00 | = | 2,102.00 |
   |---|---|---|---|---|
   | Total fees payable | | Amount paid | | Balance |

   ☒ The details of the calculation are given in the Annex.

3. Time limit(s) for payment and amount(s) payable (Rules 14.1, 15.3 and 16.1(f)):

   ☒ within ONE MONTH from the date of receipt of the international application (**for the transmittal fee (if any), the search fee and the international filing fee**). The amount payable for each fee is the amount applicable on the date of receipt of the international application.

   ☐ within 16 MONTHS from the priority date (only for the fee for priority document). The applicant's attention is drawn to the fact that the request made by the applicant under Rule 17.1(b) will be considered not to have been made unless the fee is paid within that time limit.

4. Additional observations *(if necessary)*:

   ☐ The search copy will not be transmitted to the International Searching Authority until the search fee is paid (therefore the start of the international search will be delayed) (Rule 23.1(a) and (b)).

| Name and mailing address of the receiving Office Mail Stop PCT, Commissioner for Patents P.O. Box 1450, Alexandria, VA 22313-1450 Facsimile No. 571-273-8300 | Authorized officer Rita Dozier Telephone No. (571) 272-8669 |
|---|---|

Form PCT/RO/102  (July 2017)

A0165

ANNEX TO FORM PCT/RO/102
**CALCULATION OF THE PRESCRIBED FEES**
*(If a reduced fee has been applied, the reduced amount is indicated.)*

| International application No. |
|---|
| PCT/US2019/061456 |

**T** **Transmittal Fee**

| | | |
|---|---|---|
| Prescribed amount: | 240.00 T | ☐ correct amount |
| Amount paid: − | 0.00 | ☐ overpayment |
| Balance: = | 240.00 | ☒ balance due |

**S** **Search Fee**

| | | |
|---|---|---|
| Prescribed amount: | 612.00 S | ☐ correct amount |
| Amount paid: − | 0.00 | ☐ overpayment |
| Balance: = | 612.00 | ☒ balance due |

**I** **International Filing Fee**

Prescribed amount:

Fixed amount for first 30 sheets: . . . . .     1,250.00  i1

$$\frac{0}{\text{Number of sheets}} \times \frac{15.00}{\text{Fee per sheet}} = \quad 0.00 \;\; i2$$

Number of sheets
in excess of 30
*(excluding pages referred
to in Section 707(a-bis))*

Reduction where the international application is filed
*(See PCT Fee tables http://www.wipo.int/pct/en/fees.pdf)*

in electronic form, the request not being in
character coded format . . . . . . . . −     0.00  r

or

in electronic form, the request being in character
coded format . . . . . . . . . . −     0.00  r

or

in electronic form, the request, description,
claims and abstract being in character coded
format . . . . . . . . . . −     0.00  r

Sub-total: . . . . . . . . =     1,250.00  i1+i2-r

*Applicants from certain States are entitled to a reduction of 90% of the
international filing fee. Where the applicant is (or all applicants are) so
entitled, the total to be entered at I is 10% of the sub-total entered at* =     1,250.00  I     ☐ correct amount
*(i1+i2-r):  (see Notes to the Fee Calculation Sheet as annexed to the*                 0.00          ☐ overpayment
*Request Form, PCT/RO/101, for details):* . . . . . . =     1,250.00     ☒ balance due

Amount paid:

Balance: .

**P** **Fee for Priority Document**

| | | |
|---|---|---|
| | 0.00 P | ☒ correct amount |
| Prescribed amount: | 0.00 | ☐ overpayment |
| Amount paid: − | 0.00 | ☐ balance due |
| Balance: = | 0.00 | |

**ES** **Fee for Earlier Search Documents**

| | | |
|---|---|---|
| | 0.00 ES | ☐ correct amount |
| Prescribed amount: | 0.00 | ☐ overpayment |
| Amount paid: − | 0.00 | ☐ balance due |
| Balance: = | 0.00 | |

Form PCT/RO/102 (Annex) (July 2017)

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

# PCT

To:
ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

NOTIFICATION OF THE INTERNATIONAL
APPLICATION NUMBER AND OF THE
INTERNATIONAL FILING DATE

(PCT Rule 20.2(c))

| Confirmation No: 4833 | Date of mailing *(day/month/year)* | 29 Nov 2019 |
|---|---|---|

| Applicant's or agent's file reference | IMPORTANT NOTIFICATION |
|---|---|

| International application No. PCT/US2019/061456 | International filing date *(day/month/year)* 14 Nov 2019 | Priority date *(day/month/year)* 14 Nov 2018 |
|---|---|---|

Applicant
HINTS INC.

Title of the invention
SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS

1.  The applicant is hereby notified that the international application has been accorded the international application number and the international filing date indicated above.

2.  The applicant is further notified that the record copy of the international application:

   ☒ was transmitted to the International Bureau on _____ 29 Nov 2019 _____

   ☐ has not yet been transmitted to the International Bureau for the reason indicated below and a copy of this notification has been sent to the International Bureau*:

      ☐ because the necessary national security clearance has not yet been obtained.

      ☐ because *(reason to be specified)*:

   * The International Bureau monitors the transmittal of the record copy by the receiving Office and will notify the applicant (with Form PCT/IB/301) of its receipt. Should the record copy not have been received by the expiration of 14 months from the priority date, the International Bureau will notify the applicant (Rule 22.1(c)).

3.  FOREIGN TRANSMITTAL LICENSE INFORMATION                      Completed by: RD

   ☐ Additional license for foreign transmittal not required. This subject matter is covered by a license already granted or the equivalent U.S. national application. Refer to that license for information concerning its scope.

   ☐ License for foreign transmittal not required. 37 CFR 5.11(e)(1) or 37 CFR 5.11(e)(2). However, a license may be required for additional subject matter. See 37 CFR 5.15(b).

   ☒ Foreign transmittal license granted. 35 U.S.C. 184; 37 CFR 5.11 on ___ 27 Nov 2019 ___ :
                                                                    *(date)*

      ☐ 37 CFR 5.15(a)     ☒ 37 CFR 5.15(b)

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents P.O. Box 1450, Alexandria, VA 22313-1450 | Rita Dozier |
| Facsimile No.  571-273-8300 | Telephone No. (571) 272-8669 |

Form PCT/RO/105 (July 2008)

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

| | |
|---|---|
| To:<br>ROBERT P. GREENSPOON<br>C/O FLACHSBART & GREENSPOON LLC<br>33 N. MICHIGAN AVE.<br>CHICAGO, ILLINOIS 60601 | **PCT**<br><br>INVITATION TO CORRECT DEFECTS IN<br>THE INTERNATIONAL APPLICATION<br><br>(PCT Articles 3(4)(i) and 14(1) and Rule 26) |

| | |
|---|---|
| | Date of mailing<br>*(day/month/year)*    29 Nov 2019 |
| Applicant's or agent's file reference | **REPLY DUE**   within **TWO MONTHS** from the<br>above date of mailing |
| International application No.<br>    PCT/US2019/061456 | International filing date<br>*(day/month/year)*        14 Nov 2019 |

Applicant

HINTS INC.

---

1. ☒ The applicant is hereby invited, within the time limit indicated above, to correct in the international application as filed, the defects specified on the attached:

    ☐ Annex A

    ☐ Annex B1 *(text matter of the international application as filed)*

    ☒ Annex C1 *(drawings of the international application as filed)*

2. ☐ The applicant is hereby invited, within the time limit indicated above, to correct, in the translation of the international application furnished under Rule 12.3 or 12.4, the defects specified on the attached:

    ☐ Annex A

    ☐ Annex B2 *(text matter of the translation of the international application)*

    ☐ Annex C2 *(drawings of the translation of the international application)*

**Additional observations (if necessary):**

**HOW TO CORRECT THE DEFECTS?**

Except where the defect is in the request, any correction must be submitted by filing a replacement sheet embodying the correction and a letter accompanying the replacement sheet, which shall draw attention to the difference between the replaced sheet and the replacement sheet. For a defect in the request, a correction may simply be stated in a letter if it is of such a nature that the correction can be transferred clearly onto the request record copy (Rule 26.4).

**ATTENTION**

Failure to correct the defects will result in the international application being considered withdrawn by this receiving Office (see Rule 26.5 for further details).

A copy of this Invitation and any attachments has been sent to the International Bureau

☒ and the International Searching Authority.

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents<br>P.O. Box 1450, Alexandria, VA 22313-1450 | Rita Dozier |
| Facsimile No.  571-273-8300 | Telephone No.  (571) 272-8669 |

Form PCT/RO/106 (16 September 2012)

ANNEX C1 TO FORM PCT/RO/106

| International application No. |
|---|
| PCT/US2019/061456 |

This receiving Office has found that, with regard to the presentation of the **drawings of the international application as filed**, the physical requirements are not complied with to the extent that compliance therewith is necessary for:

1. ☒ reasonably uniform international publication (Rules 11 and 26.3(a)(i)) *(defects to be specified)*:

**Sheets containing drawings:**

a. ☐ the sheets do not admit of direct reproduction
b. ☐ the sheets are not free from creases, cracks, folds
c. ☐ one side of the sheets is not left unused
d. ☐ the paper of the sheets is not flexible/strong/white/smooth/non-shiny/durable
e. ☐ the drawings do not commence on a new sheet
f. ☐ the sheets are not connected as prescribed (Rule 11.4(b))
g. ☐ the sheets are not A4 size (29.7cm x 21cm)
h. ☐ the minimum margins on the sheets are not as prescribed
   (top: 2.5cm; left side: 2.5cm; right side: 1.5cm; bottom: 1cm)
i. ☐ the file reference number indicated on the sheets does not appear in the left-hand corner of the sheets, within 1.5cm of the top of the sheets
j. ☐ the file reference number exceeds the maximum of 12 characters
k. ☐ the sheets are not free from frames around usable or used surfaces
l. ☐ the sheets are not numbered in consecutive Arabic numerals (e.g. 1/3, 2/3, 3/3)
m. ☐ the sheet numbers are not centered at the top or bottom of the sheets
n. ☐ the sheet numbers are in the margin (see h. above for the size of the margins)
o. ☐ the sheets contain alterations/overwritings/interlineations/too many erasures
p. ☒ the sheets contain photocopy marks

**Drawings (Rule 11.13):**

a. ☐ do not admit of direct reproduction
b. ☐ contain unnecessary text matter
c. ☐ contain words so placed as to prevent translation without interference with lines thereof
d. ☐ are not executed in durable black color; the lines are not uniformly thick and well-defined
e. ☐ contain cross-sections not properly hatched
f. ☐ would not be properly distinguishable in reduced reproduction
g. ☐ contain scales not represented graphically
h. ☐ contain numbers, letters and reference lines lacking simplicity and clarity
i. ☐ contain lines drafted without the aid of drafting instruments
j. ☐ contain disproportionate elements of a figure not necessary for clarity
k. ☐ contain numbers and letters of height less than 0.32 cm
l. ☐ contain letters not conforming to the Latin, and where customary, Greek alphabets
m. ☐ contain figures on two or more sheets which form a single complete figure but which are not able to be assembled without concealing parts thereof
n. ☐ contain figures which are not properly arranged and clearly separated
o. ☐ contain different figures not numbered in consecutive Arabic numerals
p. ☐ contain different figures not numbered independently of the numbering of the sheets
q. ☐ are not restricted to reference signs mentioned in the description
r. ☐ do not contain reference signs that are mentioned in the description
s. ☐ contain the same feature denoted by different reference signs
t. ☐ are not arranged in an upright position, clearly separated from one another
u. ☐ are not presented sideways with the top of the figures at the left side of the sheets

2. ☐ satisfactory reproduction (Rules 11 and 26.3(b)(i))

Further observations *(if necessary)*:
Drawings should not be shaded.  Also, text matter is not legible in sheets.

Form PCT/RO/106 (Annex C1) (16 September 2012)

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:
ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

NOTIFICATION REGARDING CERTAIN
CORRECTIONS MADE *EX OFFICIO*

(PCT Administrative Instructions, Sections 319 and 327)

| Date of mailing *(day/month/year)* | 29 Nov 2019 |
|---|---|

| Applicant's or agent's file reference | REPLY DUE | NONE |
|---|---|---|
| | | However, see paragraph 3 below |

| International application No. | International filing date *(day/month/year)* | |
|---|---|---|
| PCT/US2019/061456 | | 14 Nov 2019 |

Applicant

HINTS INC.

---

1.   The applicant is hereby notified that this receiving Office has corrected formal defects in the international application *ex officio*, as shown on the attached copy of:

☒   the request, sheet No.:                                                      1,2

☐   the description, sheet No.:

☐   the claims, sheet No.:

☐   the drawings, sheet No.:

☐   other *(specify)*:

2.   If the applicant agrees with these corrections, no further action is required in this regard.

3.   **In case of disagreement** with these corrections, the applicant should promply inform this receiving Office accordingly.

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents | Rita Dozier |
| P.O. Box 1450, Alexandria, VA 22313-1450 | |
| Facsimile No. 571-273-8300 | Telephone No.  (571) 272-8669 |

Form PCT/RO/146 (April 2006)

A0170

# PCT

**REQUEST**

. The undersigned requests that the present
international application be processed
according to the Patent Cooperation Treaty.

<table>
<tr><td colspan="2">For receiving Office use only</td></tr>
<tr><td colspan="2">PCT/US19/61456<br>International Application No.</td></tr>
<tr><td colspan="2">14 November 2019 (14.11.2019)<br>International Filing Date</td></tr>
<tr><td colspan="2">PCT INTERNATIONAL APPLICATION RO/US<br>Name of receiving Office and "PCT International Application"</td></tr>
<tr><td colspan="2">Applicant's or agent's file reference<br>*(if desired) (12 characters maximum)*</td></tr>
</table>

**RO/US**

| Box No. I | TITLE OF INVENTION |
| --- | --- |

System and Method for Detecting Misinformation and Fake News via Network Analysis

| Box No. II | APPLICANT | ☐ This person is also inventor |
| --- | --- | --- |

**Name and address:** *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)*
Hints Inc.
8 The Green, Suite A
Dover DE 19901
~~USA~~ US

Telephone No.

Facsimile No.

Applicant's registration No. with the Office

**E-mail authorization:** Marking one of the check-boxes below authorizes the receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority to use the e-mail address indicated in this Box to send, notifications issued in respect of this international application to that e-mail address if those offices are willing to do so.
☐ as advance copies followed by paper notifications; or   ☐ exclusively in electronic form (no paper notifications will be sent).
E-mail address:

| State *(that is, country)* of nationality:<br>US | State *(that is, country)* of residence:<br>US |
| --- | --- |

| This person is applicant<br>for the purposes of: | ☒ all designated States | ☐ the States indicated in the Supplemental Box |
| --- | --- | --- |

| Box No. III | FURTHER APPLICANT(S) AND/OR (FURTHER) INVENTOR(S) |
| --- | --- |

☐ Further applicants and/or (further) inventors are indicated on a continuation sheet.

| Box No. IV | AGENT OR COMMON REPRESENTATIVE; OR ADDRESS FOR CORRESPONDENCE |
| --- | --- |

The person identified below is hereby/has been appointed to act on behalf of the applicant(s) before the competent International Authorities as:   ☒ agent   ☐ common representative

**Name and address:** *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country.)*
GREENSPOON, Robert P.
c/o Flachsbart & Greenspoon LLC
33 N. Michigan Ave.
Chicago, IL 60601
~~USA~~ US

Telephone No.
+1 312 551-9500

Facsimile No.
+1 312 551 9501

Agent's registration No. with the Office
40,004

**E-mail authorization:** Marking one of the check-boxes below authorizes the receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority to use the e-mail address indicated in this Box to send, notifications issued in respect of this international application to that e-mail address if those offices are willing to do so.
☒ as advance copies followed by paper notifications; or   ☐ exclusively in electronic form (no paper notifications will be sent).
E-mail address: rpg@fg-law.cin

☐ **Address for correspondence:** Mark this check-box where no agent or common representative is/has been appointed and the space above is used instead to indicate a special address to which correspondence should be sent.

Form PCT/RO/101 (first sheet) (July 2015)                    *See Notes to the request form*

Sheet No. . . 2 . . .

**Box No. III   FURTHER APPLICANT(S) AND/OR (FURTHER) INVENTOR(S)**

*If none of the following sub-boxes is used, this sheet should not be included in the request.*

RO/US

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)*<br><br>PAVLOV, Elan<br>57 7th St. Apt. 3<br>Cambridge, MA 02141<br>~~USA~~ US | This person is:<br><br>☐ applicant only<br><br>☐ applicant and inventor<br><br>☒ inventor only *(If this check-box is marked, do not fill in below.)* |
|---|---|
| | Applicant's registration No. with the Office |
| State *(that is, country)* of nationality:<br>US | State *(that is, country)* of residence:<br>US |
| This person is applicant for the purposes of: ☐ all designated States | ☐ the States indicated in the Supplemental Box |

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is:<br><br>☐ applicant only<br><br>☐ applicant and inventor<br><br>☐ inventor only *(If this check-box is marked, do not fill in below.)* |
|---|---|
| | Applicant's registration No. with the Office |
| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
| This person is applicant for the purposes of: ☐ all designated States | ☐ the States indicated in the Supplemental Box |

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is:<br><br>☐ applicant only<br><br>☐ applicant and inventor<br><br>☐ inventor only *(If this check-box is marked, do not fill in below.)* |
|---|---|
| | Applicant's registration No. with the Office |
| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
| This person is applicant for the purposes of: ☐ all designated States | ☐ the States indicated in the Supplemental Box |

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is:<br><br>☐ applicant only<br><br>☐ applicant and inventor<br><br>☐ inventor only *(If this check-box is marked, do not fill in below.)* |
|---|---|
| | Applicant's registration No. with the Office |
| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
| This person is applicant for the purposes of: ☐ all designated States | ☐ the States indicated in the Supplemental Box |

☐ Further applicants and/or (further) inventors are indicated on another continuation sheet.

Form PCT/RO/101 (continuation sheet) (July 2015)                    *See Notes to the request form*

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

## PCT

NOTIFICATION CONCERNING PAYMENT
OF PRESCRIBED FEES

(PCT Rules 12*bis*.1(c),  14, 15 and 16
and Administrative Instructions,
Sections 304, 323(b) and 707)

| Date of mailing *(day/month/year)* | 29 Nov 2019 |
|---|---|

| Applicant's or agent's file reference | **PAYMENT  DUE** |
|---|---|
| | see item 3 for time limits |

| International application No. | International filing date/Date of receipt *(day/month/year)* | Priority date *(day/month/year)* |
|---|---|---|
| PCT/US2019/061456 | 14 Nov 2019 | 14 Nov 2018 |

Applicant

HINTS INC.

---

1. The applicant is hereby notified that this receiving Office has received:

   ☐ **the payment** of all the prescribed fees, and   ☐ **an overpayment**, which will be refunded in due course.

   ☒ **no or insufficient payment** of the prescribed fees and the applicant is hereby **invited to pay the balance due**, as summarized under item 2, within the time limit(s) indicated under item 3.

2. **Fees and payment calculation:**

   | 2,102.00 | – | 0.00 | = | 2,102.00 |
   |---|---|---|---|---|
   | Total fees payable | | Amount paid | | Balance |

   ☒ The details of the calculation are given in the Annex.

3. **Time limit(s) for payment and amount(s) payable (Rules 14.1, 15.3 and 16.1(f)):**

   ☒ within ONE MONTH from the date of receipt of the international application (**for the transmittal fee** (if any), **the search fee** and **the international filing fee**).  The amount payable for each fee is the amount applicable on the date of receipt of the international application.

   ☐ within 16 MONTHS from the priority date (only for the fee for priority document).  The applicant's attention is drawn to the fact that the request made by the applicant under Rule 17.1(b) will be considered not to have been made unless the fee is paid within that time limit.

4. Additional observations *(if necessary)*:

   ☐ The search copy will not be transmitted to the International Searching Authority until the search fee is paid (therefore the start of the international search will be delayed) (Rule 23.1(a) and (b)).

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents<br>P.O. Box 1450, Alexandria, VA 22313-1450 | **Rita Dozier** |
| Facsimile No.  571-273-8300 | Telephone No.  (571) 272-8669 |

Form PCT/RO/102 (July 2017)

A0173

**ANNEX TO FORM PCT/RO/102**
**CALCULATION OF THE PRESCRIBED FEES**
*(If a reduced fee has been applied, the reduced amount is indicated.)*

| International application No. |
| --- |
| PCT/US2019/061456 |

**T** **Transmittal Fee**

| | | | |
| --- | --- | --- | --- |
| Prescribed amount: | . . . . . . . . . . . | 240.00 | T |
| Amount paid: | − | 0.00 | ☐ correct amount |
| Balance: . . . . . . . . . . . . . . . . . | = | 240.00 | ☐ overpayment |
| | | | ☒ balance due |

**S** **Search Fee**

| | | | |
| --- | --- | --- | --- |
| Prescribed amount: | . . . . . . . . . . . | 612.00 | S |
| Amount paid: | − | 0.00 | ☐ correct amount |
| Balance: . . . . . . . . . . . . . . . . . | = | 612.00 | ☐ overpayment |
| | | | ☒ balance due |

**I** **International Filing Fee**

Prescribed amount:

| | | | |
| --- | --- | --- | --- |
| Fixed amount for first 30 sheets: . . . . . . | 1,250.00 | i1 |

| 0 | x | 15.00 | = | 0.00 | i2 |
| --- | --- | --- | --- | --- | --- |

Number of sheets
in excess of 30
*(excluding pages referred
to in Section 707(a-bis))*

Reduction where the international application is filed
*(See PCT Fee tables http://www.wipo.int/pct/en/fees.pdf):*

| in electronic form, the request not being in character coded format . . . . . . . . . . | 0.00 | r |
| --- | --- | --- |
| or | | |
| in electronic form, the request being in character coded format . . . . . . . . . . | 0.00 | r |
| or | | |
| in electronic form, the request, description, claims and abstract being in character coded format . . . . . . . . . . | 0.00 | r |

| Sub-total: . . . . . . . . . . | = | 1,250.00 | i1+i2-r |
| --- | --- | --- | --- |

*Applicants from certain States are entitled to a reduction of 90% of the
international filing fee. Where the applicant is (or all applicants are) so
entitled, the total to be entered at 1 is 10% of the sub-total entered at
(i1+i2-r); (see Notes to the Fee Calculation Sheet as annexed to the
Request Form, PCT/RO/101, for details): . . . . . . . . .*

| | | | |
| --- | --- | --- | --- |
| | = | 1,250.00 | I |
| | | 0.00 | ☐ correct amount |
| Amount paid: | = | 1,250.00 | ☐ overpayment |
| | | | ☒ balance due |
| Balance: . . . . . . . . . . . . . . . . . | | | |

**P** **Fee for Priority Document**

| | | | |
| --- | --- | --- | --- |
| Prescribed amount: | | 0.00 | P |
| Amount paid: | | 0.00 | ☒ correct amount |
| Balance: . . . . . . . . . . . . . . . . . | | 0.00 | ☐ overpayment |
| | | | ☐ balance due |

**ES** **Fee for Earlier Search Documents**

| | | | |
| --- | --- | --- | --- |
| Prescribed amount: | . . . . . . . . | 0.00 | ES |
| Amount paid: | | 0.00 | ☐ correct amount |
| Balance: . . . . . . . . . . . . . . . . . | | 0.00 | ☐ overpayment |
| | | | ☐ balance due |

Form PCT/RO/102 (Annex) (July 2017)

A0174

## PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

Confirmation No: 4833

# PCT

NOTIFICATION OF THE INTERNATIONAL
APPLICATION NUMBER AND OF THE
INTERNATIONAL FILING DATE

(PCT Rule 20.2(c))

| Date of mailing *(day/month/year)* | 29 Nov 2019 |
|---|---|

| Applicant's or agent's file reference | **IMPORTANT NOTIFICATION** |
|---|---|

| International application No. | International filing date *(day/month/year)* | Priority date *(day/month/year)* |
|---|---|---|
| PCT/US2019/061456 | 14 Nov 2019 | 14 Nov 2018 |

Applicant
HINTS INC.

Title of the invention
SYSTEM AND METHOD FOR DETECTING MISINFORMATION AND FAKE NEWS VIA NETWORK ANALYSIS

1.   The applicant is hereby notified that the international application has been accorded the international application number and the international filing date indicated above.

2.   The applicant is further notified that the record copy of the international application:

   ☒   was transmitted to the International Bureau on _____ 29 Nov 2019 _____ .

   ☐   has not yet been transmitted to the International Bureau for the reason indicated below and a copy of this notification has been sent to the International Bureau*:

      ☐   because the necessary national security clearance has not yet been obtained.

      ☐   because *(reason to be specified)*:

   *   The International Bureau monitors the transmittal of the record copy by the receiving Office and will notify the applicant (with Form PCT/IB/301) of its receipt. Should the record copy not have been received by the expiration of 14 months from the priority date, the International Bureau will notify the applicant (Rule 22.1(c)).

3.   FOREIGN TRANSMITTAL LICENSE INFORMATION                    Completed by: RD _____

   ☐   Additional license for foreign transmittal not required.  This subject matter is covered by a license already granted or the equivalent U.S. national application.  Refer to that license for information concerning its scope.

   ☐   License for foreign transmittal not required.  37 CFR. 5.11(e)(1) or 37 CFR 5.11(e)(2).  However, a license may be required for additional subject matter.  See 37 CFR 5.15(b).

   ☒   Foreign transmittal license granted. 35 U.S.C. 184; 37 CFR 5.11 on _____ 27 Nov 2019 _____ :
                                                                                (date)

      ☐   37 CFR 5.15(a)          ☒   37 CFR 5.15(b)

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents<br>P.O. Box 1450, Alexandria, VA 22313-1450 | Rita Dozier |
| Facsimile No.   571-273-8300 | Telephone No. (571) 272-8669 |

Form PCT/RO/105  (July 2008)

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

To:
ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601

# PCT

NOTIFICATION REGARDING CERTAIN
CORRECTIONS MADE *EX OFFICIO*

(PCT Administrative Instructions, Sections 319 and 327)

| | |
|---|---|
| Date of mailing *(day/month/year)* | **29 Nov 2019** |

| Applicant's or agent's file reference | **REPLY DUE** | **NONE**<br>However, see paragraph 3 below |
|---|---|---|

| International application No.<br>PCT/US2019/061456 | International filing date *(day/month/year)* | **14 Nov 2019** |
|---|---|---|

Applicant

HINTS INC.

---

1.   The applicant is hereby notified that this receiving Office has corrected formal defects in the international application *ex officio*, as shown on the attached copy of:

   ☒   the request, sheet No.:  _____ 1,2 _____

   ☐   the description, sheet No.:  _____

   ☐   the claims, sheet No.:  _____

   ☐   the drawings, sheet No.:  _____

   ☐   other *(specify)*:

2.   If the applicant agrees with these corrections, no further action is required in this regard.

3.   **In case of disagreement** with these corrections, the applicant should promply inform this receiving Office accordingly.

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| Mail Stop PCT, Commissioner for Patents<br>P.O. Box 1450, Alexandria, VA 22313-1450<br>Facsimile No. 571-273-8300 | **Rita Dozier**<br><br>Telephone No.  (571) 272-8669 |

Form PCT/RO/146 (April 2006)

# PATENT COOPERATION TREATY

From the RECEIVING OFFICE

<table>
<tr>
<td>
To:

ROBERT P. GREENSPOON
C/O FLACHSBART & GREENSPOON LLC
33 N. MICHIGAN AVE.
CHICAGO, ILLINOIS 60601
</td>
<td>

# PCT

INVITATION TO CORRECT DEFECTS IN
THE INTERNATIONAL APPLICATION

(PCT Articles 3(4)(i) and 14(1) and Rule 26)
</td>
</tr>
</table>

| | |
|---|---|
| | **Date of mailing** *(day/month/year)*     **29 Nov 2019** |
| Applicant's or agent's file reference | **REPLY DUE**   within **TWO MONTHS** from the above date of mailing |
| International application No.    PCT/US2019/061456 | International filing date *(day/month/year)*    **14 Nov 2019** |

Applicant

HINTS INC.

---

1. ☒ The applicant is hereby **invited**, within the time limit indicated above, to correct **in the international application as filed**, the defects specified on the attached:

   ☐ Annex A

   ☐ Annex B1 *(text matter of the international application as filed)*

   ☒ Annex C1 *(drawings of the international application as filed)*

2. ☐ The applicant is hereby **invited**, within the time limit indicated above, to correct, **in the translation of the international application** furnished under Rule 12.3 or 12.4, the defects specified on the attached:

   ☐ Annex A

   ☐ Annex B2 *(text matter of the translation of the international application)*

   ☐ Annex C2 *(drawings of the translation of the international application)*

**Additional observations (if necessary):**

**HOW TO CORRECT THE DEFECTS?**

Except where the defect is in the request, any correction must be submitted by filing a replacement sheet embodying the correction and a letter accompanying the replacement sheet, which shall draw attention to the difference between the replaced sheet and the replacement sheet. For a defect in the request, a correction may simply be stated in a letter if it is of such a nature that the correction can be transferred clearly onto the request record copy (Rule 26.4).

**ATTENTION**

Failure to correct the defects will result in the international application being considered withdrawn by this receiving Office (see Rule 26.5 for further details).

A copy of this Invitation and any attachments has been sent to the International Bureau

   ☒ and the International Searching Authority.

---

| Name and mailing address of the receiving Office | Authorized officer |
|---|---|
| **Mail Stop PCT, Commissioner for Patents** P.O. Box 1450, Alexandria, VA 22313-1450 | **Rita Dozier** |
| Facsimile No. 571-273-8300 | Telephone No. (571) 272-8669 |

Form PCT/RO/106 (16 September 2012)

A0177

**ANNEX A TO FORM PCT/RO/106**

| International application No. |
| --- |
| PCT/US2019/061456 |

**The receiving Office has found the following defects in the international application as filed:**

1. As to the **signature** of the international application (Rules 4.15, 26.2*bis*(a) and 90.4), the request:

   a. ☐  is not signed by the applicant or, if there is more than one applicant, by at least one of them*.

   b. ☐  is signed by what appears to be an agent/common representative, but the international application is not accompanied by a power of attorney signed by at least one of the applicants*.

   c. ☐  other *(specify)*:

   \*   The applicant's attention is drawn to the fact that the national law applied by each designated Office may require, in connection with the processing of the international application in the national phase, that the applicant furnish the confirmation of the international application by the signature of any applicant for the designated State who has not signed the request (Rule 51*bis*.1(a)(vii)).

2. As to the indications concerning the **applicant**\* who is entitled, according to Rule 19.1, to file the international application with the receiving Office, the request  (Rules 4.4, 4.5 and 26.2*bis*(b)):

   a. ☐  does not properly indicate the applicant's name *(specify)*:

   b. ☐  does not indicate the applicant's address.

   c. ☐  does not properly indicate the applicant's address *(specify)*:

   d. ☐  does not indicate the applicant's nationality.

   e. ☐  does not indicate the applicant's residence.

   ☐  Further observations about indications concerning other applicants (if applicable):

   \*   Although Rules 4.4 and 4.5 require indications concerning the applicant, or if there are several applicants, of each of them for the purposes of Article 14(1)(a)(ii), if there is more than one applicant, it shall be sufficient that the indications required under Rule 4.5(a)(ii) and (iii) be provided in respect of one of them who is entitled according to Rule 19.1 to file the international application with the receiving Office (Rule 26.2*bis*(b)).

   However, the applicant's attention is drawn to the fact that the national law applied by each designated Office may require, in connection with the processing of the international application in the national phase, that the applicant furnish any missing indication required under Rule 4.5(a)(ii) and (iii) in respect of any applicant for the designated State (Rule 51*bis*.1(a)(vii)).

3. As to the  **language** of certain elements of the international application, other than the description and claims (Rules 12.1(c) and 26.3*ter*(a) and (c)):

   a. ☐  the **request** is not in a language of publication accepted by this receiving Office;  (the) language(s) accepted by this receiving Office is/are:

   b. ☐  the **text matter of the drawings** is not in the language in which the international application is to be published, which is:

   c. ☐  the **abstract** is not in the language in which the international application is to be published, which is:

4. The **title** of the invention:

   a. ☐  is not indicated in Box No. I of the request (Rule 4.1(a)).

   b. ☐  is not indicated at the top of the first sheet of the description (Rule 5.1(a)).

   c. ☐  as appearing in Box No. I of the request is not identical with the title heading the description (Rule 5.1(a)).

5. As to the **abstract** (Rules 8 and 26.1):

   ☐  the international application does not contain an abstract.

| **ANNEX B1 TO FORM PCT/RO/106** | International application No.<br>PCT/US2019/061456 |
| --- | --- |

This receiving Office has found that, with regard to the presentation of the **text matter of the international application as filed**, the physical requirements are not complied with to the extent that compliance therewith is necessary for:

1. ☐  reasonably uniform international publication (Rules 11 and 26.3(a)(i)) *(defects to be specified)*:

| | | Request | Description | Claims | Abstract |
| --- | --- | :---: | :---: | :---: | :---: |
| a. ☐ | the sheets do not admit of direct reproduction | ☐ | ☐ | ☐ | ☐ |
| b. ☐ | the element does not commence on a new sheet | ☐ | ☐ | ☐ | ☐ |
| c. ☐ | sheets are not free from creases, cracks, folds | ☐ | ☐ | ☐ | ☐ |
| d. ☐ | sheets are not used in the upright position | ☐ | ☐ | ☐ | ☐ |
| e. ☐ | one side of the sheets is not left unused | ☐ | ☐ | ☐ | ☐ |
| f. ☐ | the paper of the sheets is not flexible/strong/white/smooth/non-shiny/durable | ☐ | ☐ | ☐ | ☐ |
| g. ☐ | the sheets are not connected as prescribed (Rule 11.4(b)) | ☐ | ☐ | ☐ | ☐ |
| h. ☐ | sheets are not A4 size (29.7cm x 21cm) | ☐ | | | |
| i. ☐ | the minimum margins on the sheets are not as prescribed<br>(top: 2cm; left side: 2.5cm; right side: 2cm; bottom: 2cm) | | ☐ | ☐ | ☐ |
| j. ☐ | the file reference number indicated on the sheets does not appear in the<br>left-hand corner of the sheets, within 1.5 cm of the top of the sheets | | ☐ | ☐ | ☐ |
| k. ☐ | the file reference number exceeds the maximum of 12 characters | ☐ | | | |
| l. ☐ | the sheets of the description, claims and abstract are not numbered<br>in consecutive Arabic numerals | | ☐ | ☐ | ☐ |
| m. ☐ | the sheet numbers are not centered at the top or bottom of the sheets | ☐ | | | |
| n. ☐ | the sheet numbers are in the margin (see i. above for the size of the margins) | ☐ | ☐ | ☐ | ☐ |
| o. ☐ | the text matter is not typed or printed | ☐ | ☐ | ☐ | ☐ |
| p. ☐ | the typing on the sheets is not 1½-spaced | ☐ | ☐ | ☐ | ☐ |
| q. ☐ | the characters in the text matter on the sheets are less than 0.28 cm high<br>in capital letters | ☐ | ☐ | ☐ | ☐ |
| r. ☐ | the text matter on the sheets is not in dark, indelible color | ☐ | ☐ | ☐ | ☐ |
| s. ☐ | the element contains drawings | ☐ | ☐ | ☐ | ☐ |
| t. ☐ | the sheets contain alterations/overwritings/interlineations/too many erasures | ☐ | ☐ | ☐ | ☐ |
| u. ☐ | the sheets contain photocopy marks | ☐ | ☐ | ☐ | ☐ |

2. ☐  satisfactory reproduction (Rules 11 and 26.3(b)(i))

Further observations *(if necessary)*:

Form PCT/RO/106 (Annex B1) (16 September 2012)

| ANNEX C1 TO FORM PCT/RO/106 | International application No. |
|---|---|
| | PCT/US2019/061456 |

This receiving Office has found that, with regard to the presentation of the **drawings of the international application as filed**, the physical requirements are not complied with to the extent that compliance therewith is necessary for:

1. [X]  reasonably uniform international publication (Rules 11 and 26.3(a)(i)) *(defects to be specified)*:

**Sheets containing drawings:**

| | | |
|---|---|---|
| a. | [ ] | the sheets do not admit of direct reproduction |
| b. | [ ] | the sheets are not free from creases, cracks, folds |
| c. | [ ] | one side of the sheets is not left unused |
| d. | [ ] | the paper of the sheets is not flexible/strong/white/smooth/non-shiny/durable |
| e. | [ ] | the drawings do not commence on a new sheet |
| f. | [ ] | the sheets are not connected as prescribed (Rule 11.4(b)) |
| g. | [ ] | the sheets are not A4 size (29.7cm x 21cm) |
| h. | [ ] | the minimum margins on the sheets are not as prescribed (top: 2.5cm; left side: 2.5cm; right side: 1.5cm; bottom: 1cm) |
| i. | [ ] | the file reference number indicated on the sheets does not appear in the left-hand corner of the sheets, within 1.5cm of the top of the sheets |
| j. | [ ] | the file reference number exceeds the maximum of 12 characters |
| k. | [ ] | the sheets are not free from frames around usable or used surfaces |
| l. | [ ] | the sheets are not numbered in consecutive Arabic numerals (e.g. 1/3, 2/3, 3/3) |
| m. | [ ] | the sheet numbers are not centered at the top or bottom of the sheets |
| n. | [ ] | the sheet numbers are in the margin (see h. above for the size of the margins) |
| o. | [ ] | the sheets contain alterations/overwritings/interlineations/too many erasures |
| p. | [X] | the sheets contain photocopy marks |

**Drawings** (Rule 11.13):

| | | |
|---|---|---|
| a. | [ ] | do not admit of direct reproduction |
| b. | [ ] | contain unnecessary text matter |
| c. | [ ] | contain words so placed as to prevent translation without interference with lines thereof |
| d. | [ ] | are not executed in durable black color; the lines are not uniformly thick and well-defined |
| e. | [ ] | contain cross-sections not properly hatched |
| f. | [ ] | would not be properly distinguishable in reduced reproduction |
| g. | [ ] | contain scales not represented graphically |
| h. | [ ] | contain numbers, letters and reference lines lacking simplicity and clarity |
| i. | [ ] | contain lines drafted without the aid of drafting instruments |
| j. | [ ] | contain disproportionate elements of a figure not necessary for clarity |
| k. | [ ] | contain numbers and letters of height less than 0.32 cm |
| l. | [ ] | contain letters not conforming to the Latin, and where customary, Greek alphabets |
| m. | [ ] | contain figures on two or more sheets which form a single complete figure but which are not able to be assembled without concealing parts thereof |
| n. | [ ] | contain figures which are not properly arranged and clearly separated |
| o. | [ ] | contain different figures not numbered in consecutive Arabic numerals |
| p. | [ ] | contain different figures not numbered independently of the numbering of the sheets |
| q. | [ ] | are not restricted to reference signs mentioned in the description |
| r. | [ ] | do not contain reference signs that are mentioned in the description |
| s. | [ ] | contain the same feature denoted by different reference signs |
| t. | [ ] | are not arranged in an upright position, clearly separated from one another |
| u. | [ ] | are not presented sideways with the top of the figures at the left side of the sheets |

2. [ ]  satisfactory reproduction (Rules 11 and 26.3(b)(i))

Further observations *(if necessary)*:

Drawings should not be shaded.  Also, text matter is not legible in sheets.

# System and Method for Detecting Misinformation and Fake News via Network Analysis

This application claims priority from United States Provisional Patent Application Number 62/767,277 filed November 14, 2018.  Application 62/767,277 is hereby incorporated by reference in its entirety.

## BACKGROUND

Field of the invention

The present invention relates generally to automated detection through network and more particularly to method and systems for detecting fake news and other misinformation through network analysis.

Description of the Problem Solved

Fake news is considered a relatively hard problem with important social impact   With the rise of automated disinformation, there is a need for automated ways to identify fake news. Network analysis of the social and other accounts that share fake news can help classify or identify it, and limit its reach, as it is being shared. This is in contrast to content analysis plus source analysis, which attempt to limit fake news before it is shared.

There have been many attempts to detect, discover and define fake news.  For example, Facebook has hired thousands of reviewers to manually detect, review, rank, and mark fake news. For a documentary om this manual process, see *The Cleaners* (http://www.pbs.org/independentlens/videos/the-cleaners/). Facebook has signed contracts with external organizations such as Politifact, to detect and rank fake news.  Other attempts use NLP to attempt to discover fake news (see e.g., https://towardsdatascience.com/i-trained-fake-news-detection-ai-with-95-accuracy-and-almost-went-crazy-d10589aa57c accessed on 10/12/2018 or the attempts on https://www.ramp.studio/problems/fake_news, accessed 10/12/2018). Several startups use NLP for fake news detection (e.g. https://www.logically.co.uk/ accessed 11/17/2018). Most of these use a combination of humans and machine learning to analyze the content of the text/article/video, or the quality of the source, and some teach away from using network analysis.  [*Indeed, network analysis is only useful where you have access to data about how the story will be shared. For example, "AP Verify",*

1

*a joint project of Google and the AP, uses only textual understanding and humans, since at publication, AP does not have access to the data about how the story will be shared.*]

This problem is not unique to Facebook. For example, Reddit, Twitter, Facebook, Instagram, Whatsapp, YouTube (comments and recommendations) and email providers all face a version of this challenge.

## Solutions and history

### Present attempts

Automated attempts to identify problematic texts from their content include Google's 'hate speech AI' **https://thenextweb.com/artificial-intelligence/2018/09/11/googles-hate-speech-ai-easily-fooled/** and China's keyword-based censorship of social media. Twitter attempts to detect bots with humans reporting (https://www.theverge.com/2018/10/31/18048838/twitter-report-fake-accounts-spam-bot-crackdown accessed 11/1/2018).

Other attempts exist. For example, "Our previous work on the Credibility Coalition, an effort to develop web-wide standards around online-content credibility, and PATH, a project aimed at translating and surfacing scientific claims in new ways, is part of two efforts of many to think about data standards and information access across different platforms. The Trust Project, meanwhile, has developed a set of machine-readable trust indicators for news platforms; Hypothesis is a tool used by scientists and others to annotate content online; and Hoaxy visualizes the spread of claims online." (https://www.theatlantic.com/technology/archive/2018/08/how-misinfodemics-spread-disease/568921/ accessed 11/1/2018)

However, these attempts can be fooled by manipulating the exact words used in an article (or tweet), and have issues with detecting sarcasm, irony, criticism of the problematic texts, and other subtle elements of discourse. For some mediums such as videos (e.g., beheadings by ISIS) or photos, text search does not work and other methods are employed (see e.g., http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.706.7108&rep=rep1&type=pdf accessed 11/8/2018) which are not sufficient.

For examples of other attempts at ranking and increasing trust in news, see http://www.niemanlab.org/2018/04/so-what-is-that-er-trusted-news-integrity-trust-project-all-about-a-guide-to-the-many-similarly-named-new-efforts-fighting-for-journalism/ accessed 9/10/2018.

A0182

One notable attempt is Trustrank (https://en.wikipedia.org/wiki/TrustRank accessed 10/13/2018), which attempts to combat web spam by defining reliability. TrustRank uses a seed of reliable websites (selected manually) and propagates reliability by using Pagerank. Notably, TrustRank does not utilize passive data collected from user behaviors, or measures of user reliability.

Domain identification and blacklisting of fake news has been suggested but is easily circumvented Moreover, it does not detect small and seldom used domains. Other attempts at domain identification include Newsguard (http://www.niemanlab.org/2019/01/newsguard-changed-its-mind-about-the-daily-mails-quality-its-green-now-not-red/ accessed 1/31/2019) which is not as accurate as could be desired.

After the priority date of the present invention, an MIT professor published an article in the prestigious (https://en.wikipedia.org/wiki/Proceedings_of_the_National_Academy_of_Sciences_of_the_United_Sta tes_of_America accessed 28/1/2019) journal PNAS which was granted prominence as a journal preprint and received noteworthy press reports  as well as a press release and placement on the MIT website (http://news.mit.edu/2019/reader-crowdsource-fake-news-0128 accessed 29/01/2018). It is important to note that this solution has problems in that it weighs users linearly and does not take into account the variability in user quality. It is thus a special case and is not optimal. Despite this, the publication shows the novelty and importance of our approach. This result was also covered inThe Poynter Institute for Media Studies newsletter of 31/1/2019 (http://go.pardot.com/webmail/273262/328340559/26aa3f8a5d1bb368bb82e770a7f08e148d55496e5 bebb6f985401284871a7fe4).

## Background in the field of Internet search

Search is an important component of the way we use the Internet. Early search engines attempted to understand pages in terms of how humans classified them. For instance, the Yahoo directory attempted to manually annotate and rank the content of the web. Manual ranking suffered from immense scaling issues, and fell out of favor.

The next generation of search engines tried to understand page content automatically. Methods such as tf-idf (term-frequency inverse document-frequency https://en.wikipedia.org/wiki/Tf%E2%80%93idf accessed 10/13/2018) or natural language processing were widely used.  Difficulties arose due to the complexity of natural language processing, language subtleties, context and differing languages; however this is still is a component of many search tools.

3

The current generation of search engines utilizes very different mechanisms. Algorithms such as HITS (https://en.wikipedia.org/wiki/HITS_algorithm accessed 9/29/2018) and Pagerank (https://en.wikipedia.org/wiki/PageRank accessed 10/13/2018) have become mainstays of modern search. The unifying factor is that they look at networks of webpages, bootstrapping reliability and relevance scores, more than they look at the page content itself.

Figure 1 shows the history of search and misinformation detection. The final block titled "Network-based identification" relates to the present invention. Thus, even though the entire figure is marked as "prior art", this last block is not taught or suggested in the prior art.

## SUMMARY OF THE INVENTION

The present invention uses a method somewhat similar to the prior art HITS method to detect misinformation and fake news. In HITS, each node is assigned two numerical scores. The Authoritative score indicates how likely a given webpage is likely to have good information, while the Hub score indicates how likely it is to link to pages with a good Authoritative score. A page with a good Authoritative score is pointed to by many pages with good Hubness, and one with a good Hub score points to many Authoritative pages. These definitions are recursive, as each page's score references the scores of neighbors in its link graph. This recursion is solved by assigning initial weights to each page and updating the scores until the values converge. The present invention modifies the HITS method to pair people with articles, and will be called HINTS, as opposed to HITS. The HINTS method is also recursive and more accurately identifies misinformation than HITS.

Thus, the present invention (HINTS) represents a method for detection of misinformation without the need to analyze any articles that includes forming a mixed graph containing at least two different node types, such as users and articles with edges between users and articles with user weights for user nodes and article weights for article nodes. Seed nodes are planted at least one user node and at least one article node. User weights and article weights are manually assigned to the seed nodes, then neighborhoods are defined for the seed nodes. A HITS-like algorithm is then run for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the graph for the weights of articles and users. Finally, a set of highest weights for users and/or articles is outputted and possible remedial action can be taken.

An exemplary embodiment of the disclosed subject matter is a computer program product comprising an non-transitory computer readable medium; a first computer instruction forming a mixed graph containing at least two different node types, users and articles with edges between users and articles,

4

with user weights for user nodes and article weights for article nodes; a second computer instruction planting at least one seed user node and at least one seed article node into said mixed graph; a third computer instruction manually assigning user weights and article weights to the seed nodes; a forth computer instruction defining neighborhoods of the seed nodes; a fifth computer instruction running a HITS-like algorithm for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the mixed graph for the weights of articles and users; a sixth computer instruction outputting a set of highest weights for users and/or articles; wherein, said first, second, third, forth, fifth and sixth program instructions are stored on said non-transitory computer readable medium and executed on a computing device.

## DESCRIPTION OF THE FIGURES

Several figures are presented that illustrate features of the present invention.

**Figure 1** shows the history and evolution of search techniques and of misinformation detection.

**Figure 2** shows an outline of an embodiment of the present invention HITS.

Figures have been presented to aid in understanding the present invention.  The scope of the present invention is not limited to what is shown in the figures.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Turning to Figure 2, embodiments of the present invention can be seen.  Figure 2 shows both the HITS method and the HINTS method.

The present invention describes an automated, robust fake news detector which we call the *Human Interaction News Trust  System* [HINTS] to detect fake news and misinformation, even in the presence of adversaries who know how the detector works.  Our key tools are network dynamics and classification of members of the network in terms of their historical interaction with news.  The present inventions looks at how known and suspected fake news propagates in a dynamic network of people, and uses this data to identify new posts/publication/news items that are likely to be fake as well. This also gives information about accounts controlled by an adversary. Platforms can use this data to limit the damage a fake news article can do by limiting the reach of such an article.  And while limiting its reach, they can still increase confidence in the fakeness of the article e.g., by making it visible to small groups of users whose use patterns are the strongest indicators.

5

A0185

The present invention works for a wide variety of classification problems.

## Applying the present invention to news sharing

A key insight behind our fake news detector is that we focus on limiting the exposure of people to fake news, rather than trying to block all such news from being shared.  This dramatically increases the cost of spreading fake news, as it is most cost effective when people spread it on their own. For instance, there is very little fake news on broadcast television.

We identify people who are disproportionately likely to spread fake news, and use this to weight the credibility of what they share. The proverb "consider the source" shows that we already implicitly weigh the source of a statement in deciding how much to trust it.

This leads us to the following working definition: A credulous person is someone who disproportionately interacts positively with fake news, and a piece of fake news is one that is interacted with disproportionately by credulous people. Of course, some of these credulous accounts are intentionally sharing fake news, and may not be real people.  As with HITS, this definition is recursive and converges: we assign an initial **fake** value to each article and a **credulous** value to each user, and iterate.

Depending on the application, modes of interactions can include liking, sharing, spending time reading a source (estimated by for instance mouse movement over an article), commenting, reposting, following, favoriting, and the like. Other metrics such as bounce time (amount of time before user returns to previous page) and changes in search patterns can also be used. For any individual, this signal might be weak (or wrong) -- for example, some individuals might comment to disprove an article. However different modes of interaction can be assigned different weights, to make the aggregate signal useful. (And despite disclaimers, retweets are endorsements

The method of user identification can vary. Some websites have enough user activity on their website to rank the user by themselves. Others can utilize plugins on other websites such as Facebook or Twitter plugins, or can use the browser, such as Google sync (https://www.theverge.com/2018/9/24/17895536/google-chrome-69-log-in-sync-password-user-data-privacy accessed 10/13/2018) which tracks data through backup of users behaviors.
Another way is to utilize ad network data (https://en.wikipedia.org/wiki/Advertising_network accessed 10/13/2018), such as cookies on a user's computer, or device identification, (https://www.devhub.com/blog/2672675-reach-a-target-audience-with-device-id-targeting/ accessed 10/13/2018) or device fingerprinting to identify users -- to calibrate a user's information level or other

traits. Yet another way is to use browser history (https://www.spinda.net/papers/smith-2018-revisited.pdf accessed 11/4/2018).
Further methods are possible.

Thus, similar to HITS, we can define a graph. In the case of fake news the graph will be bipartite (HITS itself is not bipartite, but a person and a webpage are different entities) in which one side are people and the other side are articles or posts (or clusters of articles and posts), and there is a weighted link where there is an interactions between a person and an article. The weight can depend on the type of interaction, and can be negative if the person saw but declined to interact with the article – e.g., if a person habitually interacts with links they see on their twitter feed, and we know (or can assign a probability) that they saw an article and did not interact with it. Weights can be modified by the individual's propensity to interact with content (this would be equivalent to the 'out-degree' measure in the original HITS algorithm). Weights can also be modified based on personal information about the user such as gender. age, political affiliation or other attributed (either known or attributed).

## Details and novel elements

Negative links are novel to this use case; among web pages we don't have negative links: while we see which links exists on a webpage, we do not see which pages an author considered and rejected.

In order to seed the algorithm and teach it, we can use existing labeling by humans (note that a given article/user can have multiple labels with multiple levels of confidence). Sources that label data include Politifact, ABC News, the Associated Press, FactCheck.org, Snopes (see e.g., https://www.cjr.org/tow_center/facebook-fact-checking-partnerships.php accessed 10/1/2018), and AP Verify (https://newsinitiative.withgoogle.com/dnifund/dni-projects/ap-verify/ accessed 10/12/2018). When an article is manually fact checked, we can set the 'fakeness' value of that article to zero or one (or some appropriate value). While the algorithm can modify the fake news value for most articles, articles which are manually checked can optionally be pegged to that value, and the algorithm will not update them. This does not interfere with convergence.

A user can similarly be assigned a fixed credulous value of one if it is known to be a bot controlled by an adversary.

Clustering: when an article is marked as being untrustworthy, we do not merely mark an individual link. We can aggregate links to similar stories, or similar links to the same story. This is similar to how Google News (http://news.google.com) aggregates stories based on text similarity. Obviously if multiple links

7

point to the same text (e.g., short links such as bit.ly) it is even easier to aggregate stories.  Users can similarly be clustered when the same user has accounts on multiple platforms. Users can be identified/linked e.g., by cookies on their computers, browser fingerprinting or other methods. If users cannot be identified the algorithm will still work but convergence will be slightly slower.

The spread of news in a social network is different from new webpages. In particular, the speed of distribution is much faster. So, it is useful to calculate marginal values for the ranking of articles and people based on the already-calculated values from the graph at a prior time point. This makes it unnecessary to recalculate the values from scratch (though that can be done as a sanity check from time to time).  For example, we can frequently update the fakeness of an article based on user interactions, and only update the user values infrequently, or when a new user appears.

Updating one side of the graph (e.g., articles) much faster than the other side of the graph (e.g., users) is a novel need for this type of graph. We can also update the values of users with a limited number of steps. All of these methods introduce additional error, but it is small compared to the signal.

## Applications

Given these rankings, various actions can be taken. For example, pages or sources can be down-ranked and appear less frequently in newsfeeds or social media feeds. Warnings can be displayed or sources can be banned. It is also possible to show information from other sources to counterbalance. Of course, this can require some integration with other providers. However, in some cases a plugin can be used similar to how Adblock (https://en.wikipedia.org/wiki/AdBlock accessed 10/28/2018) hides ads or how Facebook purity filters post (https://en.wikipedia.org/wiki/Fluff_Busting_Purity accessed 10/28/2018).

## Extended use cases

While we have focused on fake news, similar analysis can be performed on other issues or objectionable content. For example, we can think of hate speech or deep fakes (e.g. https://www.deepfakes.club/faq accessed on 10/12/2018.

Note that the same person will have different scores for different propensities. It is possible that some sources (e.g., bots) might have high scores in multiple areas. For instance, some people are particularly good at detecting deepfakes (https://www.sciencedaily.com/releases/2018/10/181011173106.htm accessed 10/12/2018). Propaganda, conspiracy theories and misinformation are subject to similar analysis. This scoring can also be used to divide people into a variety of bins. For example, given a seed

8

A0188

of political affiliation (e.g., Fox news links vs MSNBC links) one can detect political affiliation as well as the bias of various news outlets.  It is particularly useful where there is a correlation between the properties of the different types of entities.

Another use case is identifying patterns of small social media channels.  For example, some chat servers running the Discord chat tool have issues with Nazi communities forming against the wishes of the server maintainers.  Some of these have names such as "Nazism 'n' Chill," "Reich Lords," "Rotten Reich," "KKK of America," "Oven Baked Jews," and "Whitetopia." By manually labeling these groups we can then use the algorithm to find other groups which are disproportionately inhabited by Nazis. These can be shut down or marked for manual inspection. Similar efforts can be done for chatrooms frequented by ISIS or other militant groups.

The place of a "user" can be replaced with other aspects of identity, such as IP address, username, typing habits (e.g., by using https://www.typingdna.com/ accessed on 10/9/2018) or any other method of statistically identifying a user across time or location. This identification can be unique or merely probabilistic.

We can also seed such a network with reliable classifications of users as well as, or instead of, with content classification. For example, if a user makes a statement that "I'd be the first to sign up and help you slaughter Muslims." (example from https://slate.com/technology/2018/10/discord-safe-space-white-supremacists.html accessed on 9/10/2018) we can mark that user as a racist/threat and then see where similar users congregate or what articles similar users read.

One interesting effect of using users to detect servers/articles/webpages/newspapers/group/etc is that while it is easy to change the name of a server, it is much harder to simultaneously change all of the users. Thus even if an adversary tries to rename/reinstall/move their chatrooms/webpage/twitter account/and the like, they must simultaneously change their users base IDs (which can be tracked e.g., using adtech which tracks users across the web). This poses some technical difficulties for an adversary.

A0189

**Further notes**

**Disproportionality**

A key concept is the notion of disproportionate actions or interactions. This notion is governed by the comparison of a user(s) with a control group. Ideally this control group would be matched as to aspects such as age/country/language/education/gender/etc. If the matching is not done properly, the algorithm will still work though it will have reduced power and hence more people will be exposed to the content of interest.

Control matching can be discovered in a variety of ways. For example, FB or Linkedin explicitly know demographic characteristics while Ad networks know them implicitly.

**Adversarial models**

A great deal of time and money is invested into propaganda and fake news networks.  We expect adversaries to try to outwit detection methods, for instance by creating fake profiles which appear to be benign (e.g., no interaction with any fake article) until they are called upon to manipulate the algorithm. However compared to the sybil attacks possible on current platforms, this is expensive and time consuming for an adversary.

In particular, in contrast with traditional sybil attacks where a successful sybil account becomes more effective over time as its follower count increases, our network analysis reduces its effectiveness after its first few broadcasts of fake items.

**Compounding and chaining**

We can chain this method with other known methods of identifying fake news. Popular methods of identifying users across multiple websites, such as tracking cookies, are used to identify a user across multiple websites. This lets us identify users who visit problematic websites (e.g. Stormfront) and mark other websites (e.g., the benign sounding Odinia International or Vanguard News Network) as being problematic, since they disproportionately share a common user base.

Similarly, with Nazi chat rooms on Discord, we can seed the algorithm with Nazi websites to identify users (using the graph with websites and users) and then use those users to identify problematic chat

A0190

rooms. Alternately we could start with any of the levels and reach any other (e.g., start with seeded chatrooms and end up with websites).

Note that it is possible to treat each level separately. For example, we can complete the computations on a bipartite graph of webs and users before starting the computation on users and Discord chatrooms. We can also do this in parallel with a single graph containing all of the entities (e.g., users, websites, and chatrooms) and weights measuring the connections. This can be done e.g., by utilized belief propagation (https://en.wikipedia.org/wiki/Belief_propagation accessed on 9/10/2018).

Note that this method can be used either independently or in conjunction with other methods such as manual human input or NLP.


## A variant example

There have been many attempts to rank webpage quality. For example, https://moz.com/blog/low-quality-pages (accessed 10/15/2018) has a list of criteria to rank the quality of webpages. Similarly, https://support.google.com/google-ads/answer/2454010 (accessed 10/15/2018). We can use our invention to increase the accuracy of such attempts. For example, we can use cookie tracking (e.g., https://www.symantec.com/security-center/writeup/2006-080217-3524-99) to identify users. We can then manually identify a set of high quality websites (e.g. websites ending in .edu or .gov. We can use high quality websites if desired). We can then define a graph which consists of websites and users. A user is linked to a website if they visited (e.g., within the last month). Websites are linked to each other if they have a link (similar to how it works today). User can be linked if they share properties (e.g. known demographics). We can then run Pagerank on the graph to determine quality of websites. It is also possible to achieve other properties by judiciously choosing the initial seed of websites. For example, choosing a seed of the websites for high quality cars (e.g., BMW.com, ferrari.com, https://www.lamborghini.com/en-en/) will allow us to find a set of users who are interested in high end cars. Such users, are disproportionally likely to be interested in other sites such as https://global.astonmartin.com/en-us.

This increases the accuracy of web targeting and ranking since we can incorporate the actual behavior of users.


## Clickfraud

Click fraud is when an adversary attempts to fool an ad network to think it is receiving valid clicks when it is not (despite the name this also refers to impressions and actions). This then causes the advertiser to

11

pay for the ads it allegedly served to clients. For example,
https://www.buzzfeednews.com/article/craigsilverman/how-a-massive-ad-fraud-scheme-exploited-android-phones-to (accessed 10/23/2018) details a network in which an adversary created a network of fake users to consume ads. The users were created based on profiles of real users of apps. These users had the same click behavior, and the same activity as other users, except they were multiplied by created fake personas.

In this case we have a network of humans (and personas) and of apps (through which the ads were served and where the money was connected). Note that the personas disproportionately interact through the compromised apps (in fact they exclusively interact through the apps. By tracking users through multiple apps (e.g. by fingerprinting or other methods such as described in
https://arstechnica.com/information-technology/2018/09/dozens-of-ios-apps-surreptitiously-share-user-location-data-with-tracking-firms/ accessed 10/23/2018) we can detect that these users interact disproportionately through a small set of apps, and take action. In order to circumvent this detection, the fake personas would have to reduce their proportion of activity through the compromised apps to approximately background activity of a normal actor, in order to avoid detection. This greatly reduces the value of this scheme to the adversary.

In this case the apps (or parts of the apps) are acting in a way similar to the URLs, and the users are acting as users (identified e.g., by fingerprinting). Thus, we have a bipartite graph, with two parts (users and apps) and can use the algorithm as before.

This also works for detection of purchased likes on e.g. Instagram.

**Pseudo code:**

The following pseudo code provide a concrete example of an embodiment of the present invention.  It should be noted that numerous other embodiments and code are possible, and are within the scope of the present invention.

Create a graph which consists of users and news articles. There is an edge between a user and an article, if the user interacted (e.g. liked) an article and a negative weight between a user if the user saw the article and did not interact.  Users are not necessarily just individuals, but any entity that can consume

12

A0192

or distribute information including hashtags.  Articles are not necessarily just news articles and the like, but any type of information that is distributed to any group of users over any network with any technology.

Start with a labeled set of data (e.g., Snopes, Politifact https://www.politifact.com/truth-o-meter/article/2017/dec/15/we-started-fact-checking-partnership-facebook-year/ accessed 18/11/2018). Mark it as fake.

Use the HITS (or Pagerank) algorithm to converge the graph for the weights of the articles and users.  A HITS-like algorithm is any algorithm that converges the graph for the weights of multiple sides of a mixed graph.

Mark articles with a fake score above a threshold.

(Optionally) extract fake articles to feed into a text algorithm for earlier detection.

**Technical workflow and example**

| Stage | Comments | Example |
|---|---|---|
| Choose seeds (explicitly or implicitly labeled) | Can be manually annotated or self annotated such as #QAnon or users in a group | We choose #Khashoggi as our seed. The meaning of our label is right wing political hashtag. Note that this is not completely error free since some people use it differently.  Any of numerous other hashtags could be used |
| Define neighborhood. These are the set of nodes (people/pages/hashtags) which are linked to by the seeds. Neighborhood should be a sample/all of distance at least 2 for best results. Larger neighborhoods have more power | The edges are of the form (A posts hashtag B) and (B is posted by A) | We choose a sample of 1000 users who had used the hashtag. Total users was over 25k but we used less for faster computation.  Again, any number could be used and is within the scope of the present invention. |
| Run the propagation algorithm to propagate the labels with appropriate weights | | We ran 3 rounds of updating both people and hashtags while keeping the weights of the labeled hashtag constant. Convergence is very fast.  Any number of rounds could be used. |
| Output the top weights which are now labeled (with error probabilities) | Can output both links/hashtags as well as people. | The algorithm found other right wing political hashtags as expected. Examples are: |

13

| | | #AmericaFirst, #MAGA, #RedWave Beto illegally fund caravan |
|---|---|---|
| Optionally run an NLP/ML algorithm on the larger labeled data set | | |

**Note**

The technique of the present invention can be used as a standalone method, or can be incorporated as a signal or input to other methods. For example, our system can be integrated into content ranking on Google, or used as a prefilter for human filtering by Facebook.

It is also interesting to note that after the seeding, our method does not need to analyze the data. This can be useful in such cases as encrypted communications.

**Extension to increase labeled data for semantic analysis**

A possible problem our method is that it requires data from users, and hence we must allow an adversary to expose some users to the content we wish to avoid. However, conventional methods suffer from the lack of sufficient labeled data to do NLP/ML/semantic analysis properly. One way of improving our results is that we can use the output of our method as input for semantic analysis. For example, by giving an NLP algorithm the labels of articles (and potentially the margins https://en.wikipedia.org/wiki/Margin_(machine_learning) or other aggregate data) we can increase the size of the labeled data which is available for NLP. Note that this can be done in a privacy preserving fashion.

**User interface**

Since the output of the algorithm depends on the labeled seed, it is useful to have an easy method for labeling data. One way to do so is to have a search (e.g., Google search) find related articles and show them to a user who can then manually click a True/False button next to each article. It is also possible to have multiple buttons for different aspects (e.g. True/False and conspiracy/Not). This UI can make easier to feed a new seed/query into the system.

A0194

### Feedback loops

HINTS can also be paired with machine learning classification methods to improve fake news detection before network interaction. HINTS scores collected for a set of articles could provide a set of labelled training data for training a classifier to predict trustworthiness of future articles. Current content-based detection methods rely on human labeling. The speed at which HINTS labels could be collected would reduce the lag in current content-based methods that inhibit scaling and increase exploitability.

The labeling via network analysis also provides a margin which can be treated as a confidence level into the NLP. This is useful for some applications. For example, when feeding into a Bayes net, knowing the weights on the labeled sample provides additional value and can improve the accuracy of the classifier.

### Multiple weak  learners

NLP approaches oftentimes have a margin ([https://en.wikipedia.org/wiki/Margin_(machine_learning)](https://en.wikipedia.org/wiki/Margin_(machine_learning))) accessed 11/18/2018). The use of HINTS approach has an assigned probability which can also be thought of as a margin. Thus, we can combine both of these methods (as well as potentially other methods) by using ML techniques such as boosting ([https://en.wikipedia.org/wiki/Boosting_(machine_learning)](https://en.wikipedia.org/wiki/Boosting_(machine_learning)) accessed 11/18/2018). One advantages of this is that it  reduces the number of users which have to interact with a given piece of content before we can do classification.

### Time based linkages and harassment

Another useful application of the present invention is to detect harassment. There are cases of harassment of online figures which are coordinated in sites.. The ability to coordinate harassment is important for the psychological effect it has on the victim.

The present invention can disrupt the loop. For example, we can create a bipartite graph with celebrities (or other potential victims) on one side of the graph and people who contact them on the other side. We can restrict the graph to contact within a given time period. We can then run hits on the bipartite graph with celebrities and contacts to discover the correlations between contacts and remediate (e.g., by rate limiting, prohibiting suspect contacts or manual inspection).

The use of time limitations or constraints on edges is useful in other applications.

### Phrases

The unit of analysis does not have to be pages. It can be phrases or hashtags.

**Partial remediation for worldview**

One interesting aspect of the present invention is remediation. One novel form of remediation is to remediate the appearance of the content at issue such that only people who have not expressed an interest or affinity for the content are remediated. This reduces the perceived impact on those who share the same world view (e.g., whose score on the graph created by the seed is within a constant factor) since they are not subject to remediation effects and are not impacted by the algorithm.

**Sources of seeds and labeled data**

There are many types of labeled data. Data can be self-labeled (e.g., using a given hashtag), labeled by manual fact checkers (e.g., datacommons.org), labeled by trustworthiness of source (e.g., papers of records), labeled by political affiliation or other methods.

**Sociological analysis**

The people who interact with misinformation are not random. There are certain traits which contribute to the propensity to interact with misinformation. For example, many studies have found that older people are more susceptible to misinformation (PEW, 2018), (Andrew Guess, 2019:), (Antonis Kalogeropoulos, 2018). Other studies have shown that a psychological trait known as "Need for Cognition" (John T Cacioppo, 1982) mediates susceptibility to misinformation even controlling for the desirability of information as reflecting the world view of the user (Pennycook, 2018), (Juliana Leding, 2019). Other traits such as social networks, information ecologies, and social context also influence susceptibility to misinformation (Krause, 2019). There is very active research into additional traits and properties which impact on vulnerability to interaction with misinformation.

These traits vary widely. However, they all share in common the fact that these traits change slowly (if at all). This means that if we knew these traits for all users, we could assign a probability for every user to interact with misinformation. Therefore, we could simply look at which users have the traits, and invoke Bayes rule to determine the probability that a given piece of news is fake, given the users which interact with it. Unfortunately, we don't actually have the value of these traits for all users. Fortunately, we don't actually need the value. By looking at the previous interactions with misinformation, we can look at these traits as a hidden variable and still determine the likelihood that a piece of content is misinformation given the users which interact with it. This simply requires two invocations of Bayes rule, one to estimate the hidden variable based on previous interactions (with labeled data) and one two estimate the current piece of content based on the hidden variable.

16

**Summary of Features**

The present invention has at least the following features:


Ranking pages based on user input and vice versa +

Mixed graph with more than one type of entity (e.g., people are diff from websites)

Stopping propagation based on interaction with specific users (and not just on content). Tradeoff between number of exposures and certainty.

Network analysis on changing graph with increased efficiency

Negative links  where we look at the lack of an expected link(s) as opposed to the mere existence of a link.

Claim use of normalization and fixed values in graph taken from manual input.

a graph with more than 2 entity types (HITS only has 1-2 types of entities depending on whether the two groups are of the same type [webpages] or not [urls & people])

Use of implicit  human interactions to propagate labels. the claim of (x) where the labels are authenticity rating

Aggregation of inputs from multiple users where the labels are aggregated non linearly and where the labels are of trustworthiness metrics.

collaborative filtering with manual seeds

filtering with diff user weights


The subject matter is related to the field of collaborative filtering  (e.g., https://en.wikipedia.org/wiki/Collaborative_filtering accessed on Nov 1st 2019). However, in contrast to collaborative filtering some of the data is labeled. There are many techniques used in collaborative  filtering such as deep learning (ibid)

The subject matter is related to boosting in that each individual can be thought of as a weak learner and we aggregate across multiple learners. See e.g., https://en.wikipedia.org/wiki/Boosting_(machine_learning) accessed on Nov 1st 2019).

17

A0197

The solution can be used for other moderation tasks such as pornography or harassment detection. This is due to the fact that different users have different propensities to indulge in e.g., pornography. Thus, for example, we can differentiate the napalm girl photograph from a pornographic photo since the user base who shares/interacts/views/likes the napalm girl photo is substantially different from the user base who interacts with pornography. Thus, previous interactions with porn can help us determine whether this "new" photo is being interacted with in a lewd way of in a non-lewd way. See e.g.,(https://www.theguardian.com/technology/2016/sep/09/facebook-reinstates-napalm-girl-photo accessed on Nov 1st 2019).

The invention can also be used in combination with Gibbs sampling (e.g. https://en.wikipedia.org/wiki/Gibbs_sampling access Nov 1st 2019). If there are different segments of the population, we can weigh the known segments differently so as to achieve better results.

We can also other methods to leverage the signal. For example, we can use Bayes theorem (https://en.wikipedia.org/wiki/Bayes%27_theorem accessed Nov 1st 2019) to determine the hidden variables which inform the propensity and then use our estimate of the hidden propensities to estimate the probability that a new article is fake news.

Several illustrations and descriptions have been presented to aid in understanding the present invention. One with skill in the art will understand that numerous changes and variations may be made without departing from the spirit of the invention. Each of these changes and variations is within the scope of the present invention.

**Industrial Applicability**

The present invention is a major improvement in networking technology and has wide applicability in the industrial field of detecting and preventing the spread of misinformation including fake news.

18

I claim:

1.   A method for detection of misinformation without need to analyze articles comprising:

> forming a mixed graph containing at least two different node types, users and articles with edges between users and articles, with user weights for user nodes and article weights for article nodes;

> planting at least one seed user node and at least one seed article node into said mixed graph;

> manually assigning user weights and article weights to the seed nodes;

> defining neighborhoods of the seed nodes;

> running a HITS-like algorithm for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the mixed graph for the weights of articles and users;

> outputting a set of highest weights for users and/or articles.

2.   The method of claim 1 further comprising updating a first side of the mixed graph faster than a second side of the mixed graph.

3.   The method of claim 2 wherein the first side of the mixed graph is articles, and the second side of the mixed graph is users.

4.   The method of claim 1 wherein user weights are only updated when a new user appears.

5.   The method of claim 1 wherein no article is analyzed.

6.   The method of claim 1 wherein user weights are determined by comparison with a control group.

7.   The method of claim 1 wherein article weights are determined by user input.

8.   The method of claim 1 wherein propagation is stopped based on interaction with specific predetermined users.

19

A0199

9. The method of claim 1 further comprising assigning negative links between users and articles that represent a lack of an expected association between a particular user and a particular article.

10. The method of claim 1 further comprising normalization and fixed values in the mixed graph taken from manual input.

11. The method of claim 1 wherein the mixed graph has more than two node types.

12. The method of claim 1 further comprising using implicit human interactions to propagate labels.

13. The method of claim 1 further comprising aggregation of inputs from multiple users to generate labels.

14. The method of claim 13 wherein the labels are aggregated non linearly.

15. The method of clam 13 wherein the labels are of trustworthiness metrics.

16. A method for detection of misinformation comprising:

> forming a mixed graph containing at least two different node types, users and articles with edges between users and articles, with user weights for user nodes and article weights for article nodes;

> planting at least one seed user node and at least one seed article node into said mixed graph;

> manually assigning user weights and article weights to the seed nodes;

> defining neighborhoods of the seed nodes;

> running a HITS-like algorithm for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the mixed graph for the weights of articles and users, wherein articles may be updated more often than users;

> outputting a set of highest weights for users and/or articles.

17. The method of claim 16 wherein user weights are only updated when a new user appears.

18. The method of claim 16 wherein no article is analyzed.

19. The method of claim 16 wherein user weights are determined by comparison with a control group.

20. The method of claim 16 wherein propagation is stopped based on interaction with specific predetermined users.

21. The method of claim 16 further comprising assigning negative links between users and articles that represent a lack of an expected association between a particular user and a particular article.

22. A method for detection of misinformation comprising using non-intentional human interactions to rate content for a property of interest.

23. The method of claim 22 wherein the content is misinformation.

24. The method of claim 22 wherein the interactions are in a graph.

25. The method of claim 22 wherein multiple people are utilized to get a ranking.

26. A method for detection of misinformation comprising using a network with more than one type of entity to do content ranking.

27. The method of claim 26 wherein the content is misinformation.

28. A method for detection of misinformation including ranking pages based on user input and vice versa.

29. A method for detection of misinformation including mixed graph with more than one type of entity (e.g., people are diff from websites).

30. A method for detection of misinformation including stopping propagation based on interaction with specific users (and not just on content) including tradeoffs between number of exposures and certainty.

31. A method for detection of misinformation including network analysis on changing graph with increased efficiency.

32. A method for detection of misinformation including negative links  where we look at the lack of an expected link(s) as opposed to the mere existence of a link.

21

33. A method for detection of misinformation including use of normalization and fixed values in a graph taken from manual input.

34. A method for detection of misinformation including a graph with more than 2 entity types.

35. A method for detection of misinformation including use of implicit human interactions to propagate labels.

36. A method for detection of misinformation including where the labels are authenticity rating. where the labels are authenticity rating.

37. A method for detection of misinformation including aggregation of inputs from multiple users.

38. A method for detection of misinformation wherein the labels are aggregated non-linearly.

39. A method for detection of misinformation wherein the labels are of trustworthiness metrics.

40. A method for detection of misinformation including collaborative filtering with manual seeds.

41. A method for detection of misinformation including filtering with diff user weights.

42. A computer program product comprising a non-transitory computer readable medium:

> a first computer instruction forming a mixed graph containing at least two different node types, users and articles with edges between users and articles, with user weights for user nodes and article weights for article nodes;

> a second computer instruction planting at least one seed user node and at least one seed article node into said mixed graph;

> a third computer instruction manually assigning user weights and article weights to the seed nodes;

> a forth computer instruction defining neighborhoods of the seed nodes;

> a fifth computer instruction running a HITS-like algorithm for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the mixed graph for the weights of articles and users;

> a sixth computer instruction outputting a set of highest weights for users and/or articles;

22

wherein, said first, second, third, forth, fifth and sixth program instructions are stored

on said non-transitory computer readable medium and executed on a computing device.

A0203

ABSTRACT

A method for detection of misinformation (HINTS) without the need to analyze any articles that includes forming a mixed graph containing at least two different node types, such as users and articles with edges between users and articles with user weights for user nodes and article weights for article nodes.  Seed nodes are planted at least one user node and at least one article node.  User weights and article weights are manually assigned to the seed nodes, then neighborhoods are defined for the seed nodes.  A HITS-like algorithm is then run for a predetermined number of rounds updating both people and articles while keeping the weights of the seed nodes constant to converge the graph for the weights of articles and users.  Finally, a set of highest weights for users and/or articles is outputted and possible remedial action can be taken.

A0204



**FIGURE 1**



**FIGURE 2**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 37753750 |
| **Application Number:** | |
| **International Application Number:** | PCT/US19/61456 |
| **Confirmation Number:** | 4833 |
| **Title of Invention:** | System and Method for Detecting Misinformation and Fake News via Network Analysis |
| **First Named Inventor/Applicant Name:** | Hints Inc. |
| **Customer Number:** | 93344 |
| **Correspondence Address:** | Robert Greenspoon<br>Cliffrd kraft<br>333 N. Michigan Ave<br>-<br>chicago     IL     60601<br>US     312 551-9500<br>rpg@fg-law.com |
| **Filer:** | Robert P. Greenspoon./Clifford Kraft |
| **Filer Authorized By:** | Robert P. Greenspoon. |
| **Attorney Docket Number:** | POV- |
| **Receipt Date:** | 14-NOV-2019 |
| **Filing Date:** | |
| **Time Stamp:** | 15:19:13 |
| **Application Type:** | International Application (PCT) for filing in the US receiving office |
| **Patent Number:** | |

## Payment information:

Submitted with Payment | no

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | PCT-Transmittal Letter | xmittal.pdf | 138523<br>a4bd9933d50516a7d7337cb0376b7b7c81819c2c | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | RO/101 - Request form for new IA - Conventional | request.pdf | 367852<br>2035964db7fce3ab88ac285d8daadf26a0339fcc | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Specification | spec.pdf | 744326<br>f325ddd701cc40e81afd25cec96878b6f3a76350 | no | 18 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Claims | claims.pdf | 118143<br>110fce289883b86bb43c9c40739beeeeddb5d44 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Abstract | abstract.pdf | 19773<br>74eba12569bef0417960865333428 5cd1e5d0768 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Drawings-only black and white line drawings | FIGS.pdf | 207491<br>ea96f33432f85ff9cf047d8e8879cbe1ba792ae | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 1596108 | | |

A0207

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Approved for use through 08/31/2019. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL LETTER TO THE UNITED STATES RECEIVING OFFICE (RO/US)

| | |
|---|---|
| Priority Mail Express Mailing Label No.: | Date of Deposit: **14 Nov. 2019** |
| File Reference No.: | International Application No. (If known): |
| Customer Number¹: **93344** | Earliest Priority Date Claimed (dd/mm/yyyy): **14 Nov. 2018** |
| Title of Invention: **System and method for detecting misinformation and fake news via network analys** | |
| Applicant: **Hints Inc.** | |

¹Customer Number will allow access to the application in Private PAIR but cannot be used to establish or change the correspondence address.

[✓] This is a new International Application

### SCREENING DISCLOSURE INFORMATION:

In order to assist in screening the accompanying international application for purposes of determining whether a license for foreign transmittal should and could be granted and for other purposes, the following information is supplied. (check all boxes as apply):

[ ] The invention disclosed was **not** made in the United States of America.

[ ] There is no prior U.S. application relating to this invention.

[ ] The following prior U.S. application(s) contain subject matter which is related to the invention disclosed in the attached international application. *(NOTE: priority to these applications may or may not be claimed on the Request (form PCT/RO/101) and this listing does not constitute a claim for priority.)*

| application no. | **62/767,277** | filed on **Nov. 14, 2018** |
|---|---|---|
| application no. | | filed on |

[ ] The present international application contains additional subject matter not found in the prior U.S. application(s) identified above. The additional subject matter is found on pages _____
and [ ] DOES NOT ALTER  [ ] MIGHT BE CONSIDERED TO ALTER the general nature of the invention in a manner which would require the U.S. application to have been made available for inspection by the appropriate defense agencies under 35 U.S.C. 181 and 37 C.F.R. 5.15.

### Itemized list of contents & entity status

| | |
|---|---|
| Sheets of Request form:  **4** | Check no.: |
| Sheets of description (excluding sequence listing):  **18** | Return receipt postcard: |
| Sheets of claims:  **5** | Power of attorney: |
| Sheets of abstract: **1** | Certified copy of priority document (specify): |
| Sheets of drawings: **1** | PTO/SB15A or B or equivalent: |
| Sheets (paper or pdf) of sequence listing: | Other (specify): |
| Sequence listing text file: [ ] CD or diskette  [ ] via EFS-Web | |

[ ] Applicant asserts small entity status. See 37 CFR 1.27. If this written assertion is made by the applicant, all applicants must sign (37 C.F.R. §1.42)

[ ] Applicant certifies micro entity status. See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.

| The person signing this form is: | [ ] Applicant | **Robert P. Greenspoon** |
|---|---|---|
| | [✓] Attorney/Agent Registration No. **40,004** | Name of person signing |
| | [ ] Common Representative | Signature **\Robert Greenspoon\** |

This collection of information is required by 37 CFR 1.10 and 1.412. The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 15 minutes to complete, including gathering information, preparing, and submitting the completed form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.
**SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

A0209

DocCode – SCORE

# SCORE Placeholder Sheet for IFW Content

Application Number: PCTUS1961456          Document Date: 11/14/2019

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019

A0210

# PCT

## REQUEST

The undersigned requests that the present international application be processed according to the Patent Cooperation Treaty.

| For receiving Office use only |
|---|
| **PCT/US19/61456**<br>International Application No. |
| **14 November 2019 (14.11.2019)**<br>International Filing Date |
| **PCT INTERNATIONAL APPLICATION RO/US**<br>Name of receiving Office and "PCT International Application" |
| Applicant's or agent's file reference<br>*(if desired) (12 characters maximum)* |

**RO/US**

| Box No. I | TITLE OF INVENTION |
|---|---|

System and Method for Detecting Misinformation and Fake News via Network Analysis

| Box No. II | APPLICANT | ☐ This person is also inventor |
|---|---|---|

Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)*

Hints Inc.
8 The Green, Suite A
Dover DE 19901
~~USA~~  US

Telephone No.

Facsimile No.

Applicant's registration No. with the Office

**E-mail authorization:** Marking one of the check-boxes below authorizes the receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority to use the e-mail address indicated in this Box to send, notifications issued in respect of this international application to that e-mail address if those offices are willing to do so.
☐ as advance copies followed by paper notifications; or   ☐ exclusively in electronic form (no paper notifications will be sent).
E-mail address:

| State *(that is, country)* of nationality:<br>US | State *(that is, country)* of residence:<br>US |
|---|---|

This person is applicant for the purposes of:  ☒ all designated States   ☐ the States indicated in the Supplemental Box

| Box No. III | FURTHER APPLICANT(S) AND/OR (FURTHER) INVENTOR(S) |
|---|---|

☐ Further applicants and/or (further) inventors are indicated on a continuation sheet.

| Box No. IV | AGENT OR COMMON REPRESENTATIVE;  OR ADDRESS FOR CORRESPONDENCE |
|---|---|

The person identified below is hereby/has been appointed to act on behalf of the applicant(s) before the competent International Authorities as:   ☒ agent   ☐ common representative

Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country.)*

GREENSPOON, Robert P.
c/o Flachsbart & Greenspoon LLC
33 N. Michigan Ave.
Chicago, IL 60601
~~USA~~  US

Telephone No.
+1 312 551-9500

Facsimile No.
+1 312 551 9501

Agent's registration No. with the Office
40,004

**E-mail authorization:** Marking one of the check-boxes below authorizes the receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority to use the e-mail address indicated in this Box to send, notifications issued in respect of this international application to that e-mail address if those offices are willing to do so.
☒ as advance copies followed by paper notifications; or   ☐ exclusively in electronic form (no paper notifications will be sent).
E-mail address: rpg@fg-law,cin

☐ **Address for correspondence:** Mark this check-box where no agent or common representative is/has been appointed and the space above is used instead to indicate a special address to which correspondence should be sent.

Form PCT/RO/101 (first sheet) (July 2015)                    *See Notes to the request form*

A0211

Sheet No. . . 2 . . .

**Box No. III     FURTHER APPLICANT(S) AND/OR (FURTHER) INVENTOR(S)**

*If none of the following sub-boxes is used, this sheet should not be included in the request.*

RO/US

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is: |
|---|---|
| PAVLOV, Elan<br>57 7th St. Apt. 3<br>Cambridge, MA 02141<br>---USA  US | ☐ applicant only<br>☐ applicant and inventor<br>☒ inventor only *(If this check-box is marked, do not fill in below.)*<br><br>Applicant's registration No. with the Office |

| State *(that is, country)* of nationality:<br>US | State *(that is, country)* of residence:<br>US |
|---|---|

| This person is applicant for the purposes of: | ☐ all designated States | ☐ the States indicated in the Supplemental Box |
|---|---|---|

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is: |
|---|---|
| | ☐ applicant only<br>☐ applicant and inventor<br>☐ inventor only *(If this check-box is marked, do not fill in below.)*<br><br>Applicant's registration No. with the Office |

| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
|---|---|

| This person is applicant for the purposes of: | ☐ all designated States | ☐ the States indicated in the Supplemental Box |
|---|---|---|

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is: |
|---|---|
| | ☐ applicant only<br>☐ applicant and inventor<br>☐ inventor only *(If this check-box is marked, do not fill in below.)*<br><br>Applicant's registration No. with the Office |

| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
|---|---|

| This person is applicant for the purposes of: | ☐ all designated States | ☐ the States indicated in the Supplemental Box |
|---|---|---|

| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country. The country of the address indicated in this Box is the applicant's State (that is, country) of residence if no State of residence is indicated below.)* | This person is: |
|---|---|
| | ☐ applicant only<br>☐ applicant and inventor<br>☐ inventor only *(If this check-box is marked, do not fill in below.)*<br><br>Applicant's registration No. with the Office |

| State *(that is, country)* of nationality: | State *(that is, country)* of residence: |
|---|---|

| This person is applicant for the purposes of: | ☐ all designated States | ☐ the States indicated in the Supplemental Box |
|---|---|---|

☐ Further applicants and/or (further) inventors are indicated on another continuation sheet.

Form PCT/RO/101 (continuation sheet) (July 2015)                    *See Notes to the request form*

A0212

Sheet No. . . .3. . .

| Box No. V | DESIGNATIONS |
|---|---|

The filing of this request **constitutes under Rule 4.9(a) the designation** of all Contracting States bound by the PCT on the international filing date, for the grant of every kind of protection available and, where applicable, for the grant of both regional and national patents.

However,

☐  DE Germany **is not designated** for any kind of national protection

☐  JP Japan **is not designated** for any kind of national protection

☐  KR Republic of Korea **is not designated** for any kind of national protection

*(The check-boxes above may only be used to exclude (irrevocably) the designations concerned if, at the time of filing or subsequently under Rule 26bis.1, the international application contains in Box No. VI a priority claim to an earlier national application filed in the particular State concerned, in order to avoid the ceasing of the effect, under the national law, of this earlier national application.)*

| Box No. VI | PRIORITY CLAIM AND DOCUMENT |
|---|---|

**The priority of the following earlier application(s) is hereby claimed:**

| Filing date of earlier application *(day/month/year)* | Number of earlier application | Where earlier application is: | | |
|---|---|---|---|---|
| | | national application: country or Member of WTO | regional application: regional Office | international application: receiving Office |
| item (1)  14 Nov. 2018  14.11.2018 | 62/767,277 | US | | |
| item (2) | | | | |
| item (3) | | | | |

☐ Further priority claims are indicated in the Supplemental Box.

**Furnishing the priority document(s):**

☒  **The receiving Office** is requested to prepare and transmit to the International Bureau a certified copy of the earlier application(s) *(only if the earlier application(s) was filed with the receiving Office which, for the purposes of this international application, is the receiving Office)* identified above as:

☒ all items    ☐ item (1)    ☐ item (2)    ☐ item (3)    ☐ other, see Supplemental Box

☐  **The International Bureau** is requested to obtain from a digital library a certified copy of the earlier application(s) identified above, using, where applicable, the access code(s) indicated below *(if the earlier application(s) is available to it from a digital library)*:

☐ item (1) _____  ☐ item (2) _____  ☐ item (3) _____  ☐ other, see
access code          access code         access code         Supplemental Box

**Restore the right of priority:** the receiving Office is requested to restore the right of priority for the earlier application(s) identified above or in the Supplemental Box as item(s) (_____). *(See also the Notes to Box No. VI; further information **must** be provided to support a request to restore the right of priority.)*

**Incorporation by reference:** where an element of the international application referred to in Article 11(1)(iii)(d) or (e) or a part of the description, claims or drawings referred to in Rule 20.5(a) is not otherwise contained in this international application but is completely contained in an earlier application whose priority is claimed on the date on which one or more elements referred to in Article 11(1)(iii) were first received by the receiving Office, that element or part is, subject to confirmation under Rule 20.6, incorporated by reference in this international application for the purposes of Rule 20.6.

| Box No. VII | INTERNATIONAL SEARCHING AUTHORITY |
|---|---|

**Choice of International Searching Authority (ISA)** *(if more than one International Searching Authority is competent to carry out the international search, indicate the Authority chosen; the two-letter code may be used)*:

ISA/  RU _____

Form PCT/RO/101 (second sheet) (July 2015)                          *See Notes to the request form*

Sheet No.    4

| Box No. IX | CHECK LIST for EFS-Web filings - this sheet is only to be used when filing an international application with RO/US via EFS-Web |
|---|---|

| This international application **contains** the following: | Number of sheets | This international application is **accompanied by** the following item(s) *(mark the applicable check-boxes below and indicate in right column the number of each item):* | Number of items |
|---|---|---|---|
| (a) request form PCT/RO/101 (including any declarations and supplemental sheets) . . . . . . : | 4 | 1. ☐ fee calculation sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |
| (b) description (excluding any sequence listing part of the description, see (f), below) . . . . . : | 18 | 2. ☐ original separate power of attorney . . . . . . . . . . . . . . . . : | |
| | | 3. ☐ original general power of attorney . . . . . . . . . . . . . . . . . : | |
| (c) claims . . . . . . . . . . . . . . . . . . . . : | 5 | 4. ☐ copy of general power of attorney; reference number: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |
| (d) abstract . . . . . . . . . . . . . . . . . . . . : | 1 | 5. ☐ priority document(s) identified in Box No. VI as item(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |
| (e) drawings (if any) . . . . . . . . . . . . : | 1 | 6. ☐ Translation of international application into *(language)*: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |
| (f) sequence listing part of the description in the form of an **image file** (e.g. PDF) . . . . . . . . . . : | | 7. ☐ separate indications concerning deposited microorganism or other biological material . . . . . . . . . : | |
| | | 8. ☐ *(only where item (f) is marked in the left column)* copy of the sequence listing in electronic form (Annex C/ST.25 text file) not forming part of the international application but **furnished only for the purposes of international search** under Rule 13*ter* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |
| **Total number of sheets** (including the sequence listing part of the description if **filed as an image file**) . . . . . . . . . . : | 29 | | |
| (g) sequence listing part of the description | | 9. ☐ *(only where item (f) (in the left column) and item 8 (above) are marked)* a statement confirming that "the information recorded in electronic form submitted under Rule 13*ter* is identical to the sequence listing as contained in the international application" as filed via EFS-Web: . . . . . . : | |
| ☐ filed in the form of an **Annex C/ST.25 text file** | | | |
| ☐ WILL BE filed separately on physical data carrier(s), on the same day and in the form of an **Annex C/ST.25 text file** | | 10. ☐ copy of results of earlier search(es) (Rule 12*bis*.1(a)) . . : | |
| Indicate type and number of physical data carrier(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | | 11. ☐ other *(specify)*: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : | |

| Figure of the drawings which should accompany the abstract: | 2 | Language of filing of the international application: | ENGLISH |
|---|---|---|---|

| Box No. X | SIGNATURE OF APPLICANT, AGENT OR COMMON REPRESENTATIVE |
|---|---|

*Next to each signature, indicate the name of the person signing and the capacity in which the person signs (if such capacity is not obvious from reading the request).*

/Robert Greenspoon/

GREENSPOON, Robert P.    USPTO Reg. No. 40,004

─── For receiving Office use only ───

| 1. Date of actual receipt of the purported international application: | **14 November 2019 (14.11.2019)** | 2. Drawings: |
|---|---|---|
| 3. Corrected date of actual receipt due to later but timely received papers or drawings completing the purported international application: | | ☐ received: |
| 4. Date of timely receipt of the required corrections under PCT Article 11(2): | | ☐ not received: |
| 5. International Searching Authority (if two or more are competent):  ISA / RU | 6. ☐ Transmittal of search copy delayed until search fee is paid | |

─── For International Bureau use only ───

Date of receipt of the record copy
by the International Bureau:

Form PCT/RO/101 (last sheet – EFS) (July 2015)                              *See Notes to the request form*

A0214