**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| HINTS, INC., and ELAN PAVLOV, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-573 (LMB/IDD) |
| | ) | |
| ANDREW HIRSHFELD, in his Official Capacity | ) | |
| Performing the Functions and Duties of the | ) | |
| Director of the United States Patent and | ) | |
| Trademark Office, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR A
TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY
<u>INJUNCTION</u>**

## INTRODUCTION

Stripped of the sympathetic atmospherics, this is a run-of-the-mill case involving lack of attorney diligence that led to missed deadlines.  The Patent Cooperation Treaty ("PCT") is an international agreement between nearly 200 countries, one of which is the United States, that streamlines the process for patent applicants to seek patents across the globe.  Congress has adopted the PCT (and its accompanying rules) through the Patent Act, 35 U.S.C. §§ 351, 361–68, 371–76 (2018), which is administered by the U.S. Patent and Trademark Office ("USPTO").

The streamlined process is composed of two sequential stages: an "international stage" and a "national stage."  Applications during the "international stage" must, inter alia, identify *one* correspondence address by which the relevant patent office communicates with the applicants. Communications include notices about fees that must be paid to advance the applications through the "international stage."  When notices are sent to applicants concerning delinquent fees, and they do not pay them, their applications are considered "withdrawn."

That is what happened here.  Plaintiffs, through their agent, failed to adequately monitor the progress of Plaintiffs' international application that was sent to the correspondence address, including the timely submission of requisite fees.  Consequently, as required by the PCT, the USPTO deemed the application as being "withdrawn."  Plaintiffs have now brought this case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06 (2018), which requires them to demonstrate that the USPTO's decision in this regard represented a "clear error in judgment," and have simultaneously moved for "extraordinary relief" in the form of a preliminary injunction that orders the USPTO to temporarily remove the "withdrawn" designation from their application.  But because the USPTO acted in accordance with all applicable patent laws, the motion should be denied.

## BACKGROUND

Two preliminaries are necessary to understand why the USPTO did not violate the APA:  first, the legal background, including relevant portions of the PCT and USPTO prosecution and petition practice; and second, the factual background, including Plaintiffs' failure to pay their application fees.

## I.    Legal Background

### A.    The Patent Cooperation Treaty

The PCT is "an international agreement allowing applicants to streamline the process of obtaining patent rights across multiple member nations" (or "contracting states").[1]  *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1330 (Fed. Cir. 2000) (citing PCT Art. 1).  The PCT enables a "U.S. applicant to file one application, an international application, in a standardized format in English in the U.S. Receiving Office (the U.S. Patent and Trademark Office), and have that application acknowledged as a regular national or regional filing in as many [c]ontracting [s]tates to the PCT as the applicant designates, i.e., names, as countries or regions in which patent protection is desired."[2]  Manual of Patent Examining Procedure ("MPEP") § 1801 (quotation marks omitted)[3]; *see also Actelion Pharms., Ltd. v. Lee*, 216 F. Supp. 3d 680, 682 (E.D. Va. 2016), *aff'd*, 881 F.3d 1339 (Fed. Cir. 2018).  "The filing of an international application will automatically constitute the designation of all contracting countries to the PCT on that filing date."  MPEP § 1801; *see also Actelion Pharms.*, 216 F.

---

[1]  The PCT, as well as its implementing regulations and attendant administrative instructions, can be found at the World Intellectual Property Organization's ("WIPO") website.  *See* WIPO, PCT Treaty, Regulations and Administrative Instructions, *available at* https://www.wipo.int/pct/en/texts/ (last visited May 28, 2021).  The WIPO is a "self-funding agency of the United Nations, with 193 member states."  *Id.* at https://www.wipo.int/about-wipo/en/.

[2]  The "Receiving Office" is a term of art from the PCT.  It refers to the patent office of any contracting nation that initially accepts an international application.

[3]  "The MPEP is commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters."  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995) (alteration and quotation marks omitted).  It may be given judicial notice as an official interpretation of statutes or regulations, to the extent it does not conflict with a statute.  *Id.*

Supp. 3d at 682.  This marks the commencement of what is referred to as the "international stage."
*See generally* 35 U.S.C. §§ 361–68.

Three rules relevant to this case govern international applications.  First, the international application (or PCT application) may designate an "agent"[4]—also colloquially termed a "patent prosecution attorney" or "prosecution counsel"—for purposes of communicating with and advancing the application through the Receiving Office.  *See* PCT Rule 90.4[5]; *see also* MPEP § 1807.  Second, that designation must include a correct mailing (or correspondence) address by which the Receiving Office communicates with the agent.  *See* PCT Rule 4.4(d); PCT Administrative Instruction 108(c); *see also* MPEP § 1807.  Third, if the correspondence address is incorrect, the agent may request that it be corrected.  *See* PCT Rule 92*bis*.1.[6]

Additional rules govern fee payments.  Once the international application is submitted, filing fees must be paid within a month of that submission.  PCT Rules 14.1(c), 15.3, 16.1(f); *see also* MPEP §§ 1801, 1807.  If the filing fees are not paid within that month, the Receiving Office affords the applicant about another month to pay the filing fees, as well as a late payment fee.  PCT Rules 16*bis*.1(a), 16*bis*.2.  If the filing fees and the late payment fee are not paid within this grace period, the Receiving Office deems the application "withdrawn."  PCT Rules 16*bis*.1(c)(i), 27.1; PCT Art. 14(3)(a).  Upon payment of all requisite fees, the applicant then generally has 30 months from the earliest priority date[7] to fulfill other documentary and fee requirements before proceeding onto the "national stage,"

---

[4]  If there are two or more applicants and they have not assigned an agent to represent them, the PCT allows them to designate one of the applicants as the "representative," i.e., point of contact, for the international application.  *See* PCT Rule 90.2.

[5]  "The rules issued under the PCT are . . . legally binding on the [USPTO]."  *Actelion Pharms.*, 216 F. Supp. 3d at 682 (citing *Helfgott*, 209 F.3d at 1335)); *see also* 35 U.S.C. § 364.

[6]  This rule references an "International Bureau."  The International Bureau is a component of the WIPO that may serve as a Receiving Office for an international application.  *See* PCT Rule 19.1(a)(iii).

[7]  For purposes of this case, the "priority date" can generally be understood as the earliest date in which an applicant filed a patent application directed to the invention that is claimed in the

where the application is individually examined by the patent offices in each jurisdiction for which patent protection is sought. *See* PCT Art. 22(1); 35 U.S.C. § 371(b); *see also Exela Pharma Scis., LLC v. Lee*, 781 F.3d 1349, 1350 (Fed. Cir. 2015); MPEP § 1893.03.

The USPTO is responsible for administering the Patent Act and issuing necessary regulations relating to carry out that administration. *See* 35 U.S.C. §§ 1, 2. The U.S. has adopted the PCT through the Patent Act, and the USPTO has promulgated regulations in accordance therewith. *See id.* §§ 351, 361–68, 371–76; 37 C.F.R. Subpart C (scattered from 37 C.F.R. §§ 1.401 to 1.499). This includes all requirements concerning designation of an agent and timely payment of requisite fees to advance a PCT application to the "national stage." *See* 35 U.S.C. §§ 361(b), (d), 364, 376(a); 37 C.F.R. §§ 1.431(c), (d), 1.445, 1.455. Importantly, failure to timely pay requisite fees results in the USPTO declaring the PCT application "withdrawn." 37 C.F.R. § 1.431(d) (implementing PCT Rules 16*bis*.1(c)(i), 27.1; PCT Art. 14(3)(a)); *see also* 35 U.S.C. §§ 361(b), 364(a).

B.     **Additional Patent Prosecution Background**

1.     **Customer Number Practice**

Relevant in part to this case is the USPTO's "Customer Number practice." MPEP § 403. A "Customer Number" is a number generally assigned to a patent prosecution attorney who is licensed to practice before the USPTO. *Id.* In certain circumstances that allows an attorney to be designated as the agent of the applicant(s) on a particular U.S. patent application by merely relying on the Customer Number. *Id.* The attorney can also link a correspondence address to the assigned Customer Number. *Id.* The USPTO will then send all communications related to that application to the linked

---

international application. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1324 n.5 (Fed. Cir. 2008). Under the PCT, the applicant may claim priority to the filing date of an earlier application, provided the international filing date is no more than one year after the filing date of the earlier filed application. *See* PCT Art. 8 (incorporating by reference Article 4 of the Stockholm Act of the Paris Convention for the Protection of Industrial Property, which provides the one-year window).

correspondence address.  *Id.*  Notably, however, the Customer Number practice "*may not be used*" in the filing of a PCT application "to appoint an agent or designate a correspondence address."  MPEP § 1807 (emphasis added).  Any attempt to do so is  null and void.  *Id.*

### 2.   37 C.F.R. § 1.137 Petition

37 C.F.R. § 1.137 allows a patent applicant to seek revival of an unintentionally abandoned application.  However, among other requirements, only an application that was deemed "abandoned" in examination or "a prosecution" that was deemed "terminated" in a reexamination can obtain such relief under this regulation.  37 C.F.R. § 1.137(a).  Critically, an international application is declared "withdrawn" by the USPTO for failure to timely pay requisite fees pursuant to 37 C.F.R. § 1.431(d), and thus § 1.137(a) has no relevance to such an application.

### 3.   37 C.F.R. § 1.181 Petition

In the USPTO, administrative review of substantive, issues on the merits of a patent application proceeds on a different track from administrative review of procedural issues, with the Patent Trial and Appeal Board reviewing merits issues by appeal and the Director reviewing procedural issues by petition.  "The USPTO has . . . established a separate process for filing petitions to address or challenge certain matters not directly involving the merits of an examiner's rejection of a patent claim."  *Big Baboon, Inc. v. Lee*, 2015 WL 2085571, at *1 (W.D. Wash. May 4, 2015) (citing 37 C.F.R. §§ 1.181–1.183), *aff'd*, 667 F. App'x 995 (Fed. Cir. 2016).  Among other challenges, "[a] petition under § 1.181 may be filed to challenge an examiner's action that is not appealable to the Board or to 'invoke the supervisory authority of the Director [of the USPTO] in appropriate circumstances.'"  *Id.* (quoting 37 C.F.R. § 1.181(a)(3)).

## II.   Factual Background

### A.   Plaintiffs' PCT Application and Their Failure to Pay Fees

Plaintiffs filed their PCT application (International Application No. PCT/US19/61456) with

the USPTO (i.e., the Receiving Office) on November 14, 2019.  Mem. in Supp. of Pls.' Appl. for a

TRO and Mot. for a Prelim. Inj. (Dkt. No. 12) ("TRO Mem."), Ex. 3 at A209, A211–14.[8]  It claimed

a priority date of November 14, 2018.  *Id.* at A213.  That generally meant that the PCT application

had to enter the "national stage" in all jurisdictions for which Plaintiffs sought patent protection,

including the United States, by May 14, 2021.[9]  *See* PCT Art. 22(1); 35 U.S.C. § 371(b); *see also Exela*,

781 F.3d at 1350; MPEP § 1893.03.

The PCT application designated as Plaintiffs' "agent or common representative" a patent

prosecution attorney (or prosecution counsel) with the following "address for correspondence" in

Chicago, Illinois: "33 N. Michigan Ave."  *Id.* at A211.  Plaintiff did not submit the necessary filing fees

with their application.  So, on November 29, 2019, the USPTO mailed a "Notification Concerning

Payment Of Prescribed Fees" to the correspondence address identified in the international

application, which indicated that $2,102.00 in filing fees were required.  *Id.* at A165–66.  The postal

service returned the correspondence to the USPTO as undeliverable.  *Id.* at A164.

On January 13, 2020, having heard nothing from Plaintiffs and their agent, the USPTO mailed

an "Invitation To Pay Prescribed Fees Together With Late Payment," requiring submission of the

$2,102.00 in filing fees, as well as a $625.00 late payment fee, to the correspondence address.  *Id.* at

A160–61; *see also id.* at 162–63.  The mailing noted that payment was required within one month and

---

[8]  The USPTO ordinarily submits the administrative record for an APA case.  *See, e.g.*, *Maritel, inc. v. Collins*, 422 F. Supp. 2d 188, 195-97 (D.D.C. 2006).  But because of the currently pending motion and the condensed timeframe within which to respond to Plaintiffs, it will for now rely on Plaintiffs' submission of the relevant administrative materials (file history of the PCT application).

[9]  As Plaintiffs have explained, notwithstanding the USPTO's designation of the PCT application as "withdrawn," the agency administratively accommodated the entry of the application into the national stage in the U.S., pending the completion of this litigation.  *See* TRO Mem. at 9 n.2.  Moreover, according to Plaintiffs, some other PCT countries have extended this 30-month deadline to 31 or 32 months.  *Id.*, Declaration of Robert Greenspoon ("Greenspoon Decl.") ¶¶ 4–8.

that a failure to pay could result in the application being "considered withdrawn" by the USPTO. *Id.* It was returned to the USPTO as undeliverable. *Id.* at A159.

On February 26, 2020, still having heard nothing from Plaintiffs or their patent prosecution counsel, the USPTO sent a "Notification That International Application Considered To Be Withdrawn" to the correspondence address identified in the international application. *Id.* at A157–58. This letter notified Plaintiffs and their counsel that the PCT application was considered "withdrawn" for failure to timely pay the filing and late payment fees. *Id.* at A158. The postal service returned the letter to the USPTO as undeliverable. *Id.* at A156.

**B.    Plaintiffs and Their Agent Petition the USPTO Seeking Removal (or Vacatur) of the "Withdrawn" Designation From the International Application**

**1.    37 C.F.R. § 1.137 Petition**

Approximately *ten months later*, on December 15, 2020, Plaintiffs and their agent filed a "Petition for Revival of an International Application (PCT) for Patent Designating the U.S. Abandoned Unintentionally Under 37 C.F.R. [§] 1.137(a)," which also belatedly included the requisite fees. *Id.* at A148–50. They asserted that the delay in payment was "unintentional" without any additional explanation. *Id.* at A149.

The USPTO rejected the petition. *See id.* at A140–42; *see also id.* at A143–45. The USPTO explained that Plaintiffs and their agent did not pay the $2,102.00 in filing fees within a month of submitting the application as required by PCT Rules 14.1(c), 15.3, and 16.1(f). *Id.* at A141. The USPTO further explained that, pursuant to PCT Rules 16*bis*.1(a), 16*bis*.1(c), 16*bis*.2, it mailed Plaintiffs and their prosecution counsel the "Invitation To Pay Prescribed Fees Together With Late Payment." *Id.* That correspondence not only sought payment of the $2,102.00 in filing fees and the $625.00 late payment fee, but also notified them that if these fees were not paid within a month, their application would be declared "withdrawn." *Id.* And neither Plaintiffs nor their agent disputed the nonpayment. *Id.* Instead, they merely asserted that the failure to pay was unintentional. *Id.* But, as the USPTO

noted, "there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failing to timely pay the fees was unintentional." *Id.*  37 C.F.R. § 1.137(a) simply does not afford the relief Plaintiffs and their counsel sought. *See id.*; *see also id.* at A54.  Therefore, the petition to reinstate the international application was dismissed, the § 1.137(a) petition was dismissed as moot, and the fees that accompanied the petition were returned. *See id.* at A141–42; *see also id.* at A54.

### 2. 37 C.F.R. § 1.181 Petition

On January 27, 2021, Plaintiffs and their counsel filed a "Request for Reconsideration and Petition [U]nder 37 C.F.R. [§] 1.181 to Withdraw Holding of Abandonment and Withdrawal and to Revive Unintentionally Withdrawn PCT International Application," which again belatedly included the requisite fees. *Id.* at A68–85.  They asserted several reasons as to why the USPTO should not consider their international application as "withdrawn."  First, they relied on MPEP § 711.03 and its explanation that an applicant can petition the USPTO under 37 C.F.R. § 1.181 to rescind the "withdrawn" designation if the applicant demonstrates that the designation was the byproduct of having not received correspondence from the USPTO. *Id.* at A68–69.  They argued that they met that standard as the USPTO sent communications to an incorrect correspondence address. *See id.* at A69–82.  They cited several cases where the USPTO had allegedly granted other § 1.181 petitions under similar circumstances. *Id.* at A69, A78.  And they also noted that Plaintiffs' agent entered his Customer Number that was linked to the correct correspondence address when he electronically submitted the PCT application. *Id.* at A78–79.

The USPTO rejected the petition. *Id.* at A53–56.  The USPTO explained that the correspondence address identified in the PCT application is the address that controls, regardless of whatever other address may have been provided to the USPTO. *See id.* at A54–55.  Effectively, as alluded to in MPEP § 403, the "Customer Number practice" could not be relied upon for a proper

correspondence address for an international application. *Id.* at A54. Further, the USPTO acknowledged and explained that, although 37 C.F.R. § 1.181 does allow the USPTO to remove "withdrawn" designations from international applications for failure to respond to USPTO correspondence, this is only in the circumstance where the mailing was not delivered to the correspondence address identified in the international applications. *Id.* at A54. Therefore, this petition was also dismissed, and the USPTO intends to return their fees.[10]

## C.      The Instant Civil Action

Plaintiffs commenced the instant lawsuit under the APA to challenge the USPTO's denial of the § 1.137 and § 1.181 petitions for removal of the "withdrawn" designation from their PCT application. *See generally* Compl. ¶¶ 1–93. According to Plaintiffs, the USPTO has not acted in accordance with 35 U.S.C. §§ 363–64; 37 C.F.R. §§ 1.137, 1.181–1.183; PCT Article 48; PCT Rule 82*bis*.2, and PCT Administrative Instruction 709. *See id.* ¶¶ 86–93. Plaintiffs have also moved for preliminary injunctive relief requiring the USPTO to temporarily remove (or vacate) the "withdrawn" designation so that there are allegedly no administrative hurdles to getting their national stage application on file in foreign jurisdictions. *See id.* at 24, 25. They argue that the USPTO's consideration of their PCT application as "withdrawn" will de facto block their ability to seek patent protection in other PCT jurisdictions. *See* TRO Mem. at 1–2, 22–23. The USPTO believes that Plaintiffs are not entitled to preliminary injunctive relief.

## <u>ARGUMENT</u>

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining

---

[10]  Because the § 1.137 and § 1.181 petitions were dismissed without prejudice, Plaintiffs have filed a third petition. *See* TRO Mem. at 9. Notwithstanding the pendency of the third petition, the USPTO acquiesces for purposes of this litigation only that the rejections of the first two petitions constitute "final agency action" subject to APA review. *See, e.g.*, *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1361 (Fed. Cir. 2018).

orders and preliminary injunctions.  Fed. R. Civ. P. 65(a), (b); *see also* 5 U.S.C. § 705.  These "are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).[11]  Proof of entitlement to these extraordinary remedies "are governed by the same four-part test . . . ." *Hendiazad v. Ocwen Loan Servicing, LLC*, 2019 WL 1497026, at *5 (E.D. Va. Apr. 4, 2019) (Brinkema, J.).  Parties must *clearly show* that  (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent an injunction, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008).  The last two injunctive relief factors merge when the relief is sought against the government. *See Nken v. Holder*, 556 U.S. 418, 434, 435 (2009); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 700 (E.D. Va. 2020).

Where, as here, parties seek "*[m]andatory*" injunctive relief that does not preserve the status quo, and instead, changes it, the relief is particularly "disfavored." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994); *see also Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980); *Calvary Christian Ctr. v. City of Fredericksburg*, 800 F. Supp. 2d 760, 776 (E.D. Va. 2011) ("A mandatory preliminary injunction requires another party to perform a positive act.").  The standard for obtaining mandatory injunctive relief is *even more* exacting and heightened than usual. *Pashby v. Delia*, 709 F.3d 307, 319, 320 (4th Cir.

---

[11]  The U.S. Court of Appeals for the Federal Circuit will have jurisdiction over any appeal of this case as it involves a substantial question of patent law. *E.g.*, *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020) ("APA claims against the [USPTO] 'raise a substantial question of patent law.'" (alteration omitted) (quoting *Exela Pharma*, 781 F.3d at 1352)).  But to the extent the Court denies injunctive relief  here and Plaintiffs appeal, the Federal Circuit will apply the law of the regional circuit—here, the U.S. Court of Appeals for the Fourth Circuit—with respect to the *standards* governing the propriety of preliminary injunctive relief. *E.g.*, *Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 751 (Fed. Cir. 2015).

2013).  Plaintiffs cannot meet these standards as they have not clearly shown that: (1) the USPTO acted contrary to any patent law; (2) they would suffer irreparable harm absent the injunctive relief sought; and (3) such relief is in the public interest.

I.     **Plaintiffs Cannot Succeed on the Merits of Their Administrative Procedure Act Claim Because the USPTO Properly Decided That Their PCT Application was "Withdrawn."**

The APA allows parties who are aggrieved by final agency actions to seek judicial review of those actions.  5 U.S.C. §§ 702, 704.  Agency actions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." *Id.* § 706(2)(A).  But this Court does not review the USPTO's decisions here de novo; rather, "[u]nder the arbitrary and capricious standard the scope of review is a narrow one." *Japanese Found. for Cancer Rsch. v. Lee*, 773 F.3d 1300, 1304 (Fed. Cir. 2014) (quoting *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).  A "court is not empowered to substitute its judgment for that of the agency." *Id.* at 1304 (quoting *Bowman*, 419 U.S. at 285).  The agency "acts arbitrarily or capriciously only if the decision was not based on the relevant factors or it fails to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  And a reviewing Article III court may only reverse if it "can conclude with 'definite and firm conviction' that a clear error of judgment or a mistake has been committed." *President & Fellows of Harvard Coll. v. Lee*, 589 F. App'x 982, 984 (Fed. Cir. 2014).  Moreover, the agency need not "explicitly spell out [its] rationale or reasoning in perfect detail or clarity as long as [the court] can discern the path the agency followed." *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1342–43 (Fed. Cir. 2019) (first citing *Bowman*, 419 U.S. at 286; then citing *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015)).  Here, Plaintiffs cannot meet this significant hurdle—the USPTO did not commit a "clear error in judgment" in rejecting the § 1.137 and § 1.181 petitions as the law

11

does not afford them the relief sought in those petitions.

**A.      The 37 C.F.R. § 1.137 petition was correctly dismissed because the PCT does not allow for reinstatement of Plaintiffs' international application when they failed to timely pay fees.**

An applicant filing a PCT application must submit the requisite filing fees to the Receiving Office within a month of the filing.  PCT Rules 14.1(c), 15.3, 16.1(f); 37 C.F.R. § 1.431(c); MPEP §§ 1801, 1807.  If the Receiving Office does not receive the filing fees, it then alerts the applicant that the fees can be belatedly paid within a month if accompanied by a late payment fee.  PCT Rules 16*bis*.1(a), 16*bis*.2; 35 U.S.C. §§ 361(b), 364(a); 37 C.F.R. § 1.431(c).  If these collective fees are not received during this one-month window, the Receiving Office must declare that the application is considered "withdrawn."  PCT Rules 16*bis*.1(c)(i); PCT Art. 14(3)(a); 35 U.S.C. §§ 361(b), 364(a); 37 C.F.R. § 1.431(d).

Here, Plaintiffs do not dispute that they never timely paid the filing and late payment fees, as required by the PCT.  They paid these requisite fees only when they submitted their 37 C.F.R. § 1.137 petition and asserted that the delay in doing so was "unintentional."  TRO Mem., Ex. 3 at A149.  The USPTO properly rejected the petition as "there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failure to timely pay the fees was unintentional."  *Id.* at A141; *see also id.* at A54; PCT Rules 14.1(c), 15.3, 16.1(f), 16*bis*.1(c)(i); PCT Art. 14(3)(a); 35 §§ 361(b), 364(a); 37 C.F.R. § 1.431(c), (d).  Plaintiffs have not demonstrated otherwise.

Saddled with the indisputable premise that the PCT application had been "withdrawn" in the absence of payment of fees, Plaintiffs offer new arguments why the USPTO should have erased the "withdrawn" designation in response to their petition under § 1.137.  *See* TRO Mem. at 11–14.  Although Plaintiffs raise a host of arguments in support in their brief in this Court, they *never raised them* before the USPTO in their § 1.137 petition.  *Compare* A149, *with* TRO Mem. at 11–14.  The Court

should not consider them for the first time here.  *See Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994) ("[I]t is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved." (citing Supreme Court precedent)); *see also Dist. Mem'l Hosp. of Sw. N.C., Inc. v. Thompson*, 364 F.3d 513, 520 (4th Cir. 2004).  The USPTO's dismissal of the § 1.137 petition should be sanctioned on this basis alone.

Even if it were to consider these arguments, they do not show a "clear error in judgment." First, Plaintiffs' contention that § 1.137 relief should be afforded to both international and domestic (i.e., non-PCT) applications stands on an overbroad reading of the statute.  *See* TRO Mem. at 12. Noting that 35 U.S.C. § 363 provides that an "international application designating the United States shall have the same effect . . . of a national application for [a] patent regularly filed" in the USPTO, Plaintiffs argue that the law makes no (relevant) distinctions as to how international and domestic applications are handled by the USPTO.  TRO Mem. at 12.  But § 363's instruction that the PCT application "shall have the same effect" as a domestic application is limited to a specific issue: filing-date priority.  As the Federal Circuit has recognized, that language means only that the PCT application is entitled to the same filing date as if it had been filed as a domestic application.  *See Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1044–45 (Fed. Cir. 2001) ("Under 35 U.S.C. § 363, the United States filing date . . . of a patent application filed under the PCT in which the United States is designated, is the date of the PCT application . . . .").  In other words, § 363 affords an applicant the benefit of the earlier filing date when the PCT application enters the international stage as opposed to the later filing date when the application enters the national stage.  *See Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1368 (Fed. Cir. 2005) ("[U]nder 35 U.S.C. § 363, the international filing date of a PCT application is also the U.S. filing date for the corresponding national stage application.  It should be borne in mind that the filing date of the international application is also the filing date for the national stage application." (cleaned up)); *see also* PCT Article 11(3).  That means if

13

Plaintiffs are ultimately successful at obtaining a U.S. patent on their PCT application, it will be deemed as having been filed on November 14, 2019 (the international filing date) instead of May 14, 2021 (date of entry into the national stage).  Section 363 does not put a PCT application on the same footing as a domestic application in any other respect—that would render the adoption of the PCT meaningless.

Moreover, Plaintiffs' contention that PCT and domestic applications should be treated equally under § 1.137 is further undermined by the plain language of the regulation.  Section 1.137 is entitled "Revival of abandoned application, or terminated or limited reexamination prosecution."  It allows "[r]evival on the basis of unintentional delay" *only if* the revival is sought for "an abandoned application or a reexamination prosecution terminated under [37 C.F.R.] § 1.550(d) or § 1.957(b) or limited under § 1.957(c)."  37 C.F.R. § 1.137(a).  Plaintiffs' PCT application, however, was considered "*withdrawn*" (not abandoned or terminated) pursuant to *37 C.F.R. § 1.431(d)*.  Consequently, § 1.137 can never afford Plaintiffs the relief they seek and precludes any finding that the USPTO clearly erred in exercising its judgment.[12]  This is a quintessential example of fitting a square peg in a round hole, and Plaintiffs certainly cannot ask this Court to amend the regulation to make it fit their particularized circumstances.[13]

_____

[12] For this reason, Plaintiffs' reliance on MPEP § 711.03(c) is misplaced because that section discusses the scope of relief available under 37 C.F.R. § 1.137.  *See* TRO Mem. at 19.  To the extent Plaintiffs separately and independently analogize their case to *Delgar Inc. v. Schuyler*, 1971 WL 16674, at *1 (D.D.C. Dec. 22, 1970), which is cited in MPEP § 711.03(c), the analogy is inapt.  *See* TRO Mem. at 19.  That case concerned non-receipt of correspondence from the USPTO due to an apparent irregularity in postal service (or at worst, the USPTO inadvertently sent it to the wrong correspondence address).  *See id.* at *3, *8.  Here, the non-receipt of correspondence was entirely caused by Plaintiffs (or more accurately, their agent).  Neither the postal service nor the USPTO can be blamed for the non-receipt here.  And so for this reason, even if § 1.137 excused unintentional delay in paying requisite fees for PCT applications, Plaintiffs still would not meet the necessary standard for relief under this regulation.

[13] Plaintiffs assert that the USPTO routinely grants § 1.137 petitions (allegedly about 1,256 petitions were granted between 2014 and 2021), but they do not identify a single petition that was granted to

Second, Plaintiffs contend that the USPTO is wrong that the PCT has no mechanism by which the "withdrawn" designation can be removed, citing 35 U.S.C. § 364, PCT Article 48(2)(a), and PCT Rule 82*bis*.2.  *See* TRO Mem. at 12–13.  These are of no help to Plaintiffs.  35 U.S.C. § 364 merely authorizes the USPTO to excuse untimely acts in accordance with the PCT.  *See id.* § 364(b) ("[A]pplicant's failure to act within prescribed time limits in connection with requirements pertaining to an international application may be excused as provided in the [PCT] and [its] Regulations.").  In turn, PCT Article 48(2)(a) states: "Any [c]ontracting [s]tate shall, as far as that State is concerned, excuse, for reasons admitted under its national law, any delay in meeting any time limit."  And PCT Rule 82*bis*.2 explains:

> The provisions of the national law which is referred to in Article 48(2) concerning the excusing, by the designated or elected [s]tate, of any delay in meeting any time limit are those provisions which provide for reinstatement of rights, restoration, *restitutio in integrum* or further processing in spite of non-compliance with a time limit, and any other provision providing for the extension of time limits or for excusing delays in meeting time limits.

Plaintiffs identify no U.S. law that allows the USPTO to excuse a delay in paying the filing and late payment fees on a PCT application.  In fact, Article 48 applies to national stage applications *only*.  *See Farnum v. Manbeck*, 1991 WL 329752, at *4 (D.D.C. Oct. 17, 1991).  The law requires the USPTO to "declare the international application withdrawn under PCT Article 14(3)(a)" when the requisite fees are not timely paid.  37 C.F.R. § 1.431(d).  Again, § 1.137 is inapplicable as the plain language of that regulation only excuses unintentional delay in narrow circumstances.  *See* 37 C.F.R. § 1.137(a) ("revive an abandoned application or a reexamination prosecution terminated under § 1.550(d) or § 1.957(b)

---

reinstate an international application considered "withdrawn" under 37 C.F.R. § 1.431(d).  *See* TRO Mem. at 17–18.  Indeed, according to Plaintiffs' cursory assessment of the USPTO's petition granting practices, the USPTO has actually denied § 1.137 petitions with circumstances akin to those here.  *See* TRO Mem. at 18 ("For example, in *Chevron*, the grant of relief followed a procedural history nearly identical to that here: a first petition filed under Rule 137 that the [USPTO] dismissed without prejudice . . . .").

or limited under § 1.957(c)").  In sum, the USPTO did not exhibit "clear error in judgment" in dismissing the § 1.137 petition.[14]

### B. The 37 C.F.R. § 1.181 petition was correctly dismissed as the correspondence address in the PCT application was the controlling address.

PCT Rule 4 identifies a list of requirements for a complete international application.  PCT Rule 4.4 specifically addresses what names and addresses must be on the application.  Where an agent (prosecution counsel) is designated for the international application, "only *one* address may be indicated" for that agent.  PCT Rule 4.4(d) (emphasis added); *see also* PCT Administrative Rule 108(c); 37 C.F.R. § 1.455(d); MPEP § 1807.  Thus, the "*one* address" of the designated agent is the controlling correspondence address for purposes of communicating with the Receiving Office to advance the application from the international phase to the national phase.

Here, Plaintiffs do not dispute that they identified the wrong correspondence address, as "33 N. Michigan Ave." in Chicago, Illinois, on their PCT application.  A211.  They also do not dispute that the USPTO sent all of its correspondence regarding the requisite fees for the application to the address that the Plaintiffs identified or that the Plaintiffs failed to respond properly and timely to that correspondence because of the wrong address.  Under these circumstances, the PCT required the USPTO to declare the application as considered "withdrawn."  *See* PCT Rules 14.1(c), 15.3, 16.1(f), 16*bis*.1(c)(i); PCT Art. 14(3)(a); 35 U.S.C. §§ 361(b), 364(a); 37 C.F.R. § 1.431(c), (d); MPEP § 1801. This is a far cry from a "clear error in judgment."

Plaintiffs perceive this as a harsh consequence given that the correspondence address for their

---

[14] To the extent that Plaintiffs may dispute the USPTO's interpretation of any of the relevant statutes (including the PCT) or regulations at issue in this case, such as § 1.137, that interpretation is entitled to deference.  *E.g.*, *Morganroth v. Quigg*, 885 F.2d 843, 848 (Fed. Cir. 1989) ("application and enforcement of . . . narrow technical and specialized statutory and regulatory provisions governing abandonment and revival of patent applications" was entitled to deference); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425 (Fed. Cir. 1988) (deference to agency's statutory interpretations).

agent contained a minor typographical error; that the correspondence was returned to the USPTO as undeliverable; and that the USPTO had access to the correct address. *See* TRO Mem. at 14–21. Yet the PCT makes clear that this must be the result, and the U.S. statutes and regulations that implement the PCT are consistent with the Treaty. Plaintiffs offer five contrary arguments, all of which plainly fail under the PCT framework. First, Plaintiffs argue that once any correspondence was returned to the USPTO as undeliverable, the USPTO was responsible for correcting Plaintiffs' own error; the USPTO should have reviewed the relevant Customer Number of Plaintiffs' agent that was used during the electronic submission of the PCT application to the USPTO; reconciled the inconsistencies in the correspondence addresses as permitted under MPEP § 403; and sent the correspondence to the address associated with that Customer Number. *See* TRO Mem. at 14–15. Nothing requires the USPTO to engage in these steps; at the very least, the USPTO's decision in this regard falls far short of the "clear error of judgment" necessary for reversal here. And moreover, as Plaintiffs admit, MPEP "§ 1807 . . . provides that a Customer Number cannot be used to initially designate the correspondence address for a PCT application in the international stage . . . ." *Id.* In fact, that section provides that the Customer Number may *never* be used to designate a correspondence address for an international application. MPEP § 1807 ("The Customer Number Practice set forth in MPEP § 403 *may not be used in the international phase* to appoint an agent or designate a correspondence address." (emphasis added)). Plaintiffs cannot burden the USPTO with responsibilities that the law does not provide.[15]

_____

[15] Plaintiffs make much of the fact that the USPTO sent adverse petition decisions to them at the address associated with the Customer Number of their agent when the USPTO did not do so for prior correspondence. *See* TRO Mem. at 16–17. The USPTO sent the initial adverse petition decisions to that address "as a courtesy" as it was "not the official correspondence address" for the international application. *Id.*, Ex. 3 at A140. Thereafter, Plaintiffs filed a request under PCT Rule 92bis to officially change the correspondence address, and as such, all future communications were set to Plaintiffs' "correct" address. Plaintiffs have cited no authority that required the USPTO to extend this courtesy any earlier than it did, much less that the agency had a regular and consistent practice of extending this courtesy to all applicants who identified an incorrect address as the correspondence address on

Second, Plaintiffs' insistence that the USPTO "could have" emailed the correspondence to Plaintiffs when the postal service returned them as undeliverable, consistent with PCT Administrative Instruction 709(a), is a red herring.  *See* TRO Mem. at 16.  That Instruction is not binding upon the USPTO, *see* 35 U.S.C. § 364(a), and even if it were, it does not mandate electronic notifications for PCT applicants.  Further, the USPTO has already determined that, as a matter of policy, electronic notifications are *not* "practicable" as no section of the MPEP offers PCT applicants the option of receiving notifications electronically.  PCT Administrative Instruction 709(a).

Third, Plaintiffs argue that the USPTO should have acted consistent with MPEP § 707.13, which allows the USPTO to re-send correspondence when it is not mailed to the correct address.  *See* TRO Mem. at 16.  But, as Plaintiffs have already admitted, "MPEP [§] 707.13 . . . directly applies only for United States national applications," i.e., domestic applications.  A27.  "*[N]othing like it exists expressly for international applications*."  TRO Mem., Ex. 3 at A27 (emphasis added).  MPEP § 707.13 is also inapplicable because the USPTO *did* send correspondence to the "correct" address for purposes of the international application.  Again, under the PCT, the correspondence address identified on the PCT application is the controlling correspondence address.  *See* PCT Rule 4.4(d); PCT Administrative Rule 108(c); 37 C.F.R. § 1.455(d); MPEP § 1807.

Fourth, Plaintiffs rattle off a list of administrative cases where the USPTO purportedly granted § 1.181 relief when the agency sent correspondence regarding failure to pay fees for PCT applications and the applicants never received that correspondence.  *See* TRO Mem. at 18 (citing A37–38, 40–42, 44–46).  While this has superficial appeal, the devil is in the details.  In every one of these cases, the non-receipt of correspondence was a result of either: (1) the USPTO inadvertently sending the correspondence to an address other than the one identified on the PCT application; or (2) postal

---

an international application.

service irregularities caused the correspondence to not have been received (or timely received) by the applicants.  *Compare* TRO Mem., Ex. 3 at A37, *with* Def.'s Ex. 1 (application address matches petition address); TRO Mem., Ex. 3 at A40, *with* Def.'s Ex. 2 (same); TRO Mem., Ex. 3 at A44, *with* Def.'s Ex. 3 (same).  Section 1.181 relief was never afforded to applicants, such as Plaintiffs, who listed incorrect correspondence addresses on their PCT applications.[16]  *Compare* TRO Mem., Ex. 3 at A53, 140, *with id.* at A211 (*application* address does not match petition address).  Put differently, when the applicant is responsible for its own non-receipt of correspondence, § 1.181 relief is unavailable.  This is not a "clear error in judgment."

Fifth, what remain are Plaintiffs' attempts to draw parallels to *Helfgott* and *Taylor v. USPTO*, 339 F. App'x 995 (Fed. Cir. 2009).  *See* TRO Mem. at 20–21.  Neither case justifies reinstatement of their PCT application.  *Helfgott* generally concerned PCT Rule 91.1, which allows for correction of obvious errors in certain PCT paperwork.  *See id.* at 1330–33, 1335.  The Federal Circuit rejected the

---

[16]  Because the USPTO will not get a sur-reply before the Court's scheduled hearing on Plaintiffs' motion, the agency anticipates that Plaintiffs may argue that such line drawing is arbitrary and capricious.  If they do, the USPTO notes that the distinction as to when § 1.181 relief is afforded to non-receipt of correspondence regarding fees is consistent with the PCT.  Article 48(1) states:

> Where any time limit fixed in this Treaty or the Regulations is not met because of interruption in the mail service or unavoidable loss or delay in the mail, the time limit shall be deemed to be met in the cases and subject to the proof and other conditions prescribed in the Regulations.

Where the USPTO inadvertently sends correspondence to an address different than the one on the PCT application, that qualifies as an "unavoidable loss or delay in the mail" from the applicants' perspective.  And where non-receipt of correspondence was caused by postal service irregularities, that qualifies as either "interruption in the mail service or unavoidable loss or delay in the mail."  Importantly, the USPTO's line-drawing efforts in this regard, which is what the USPTO is obligated to do in its adjudicatory capacity, is entitled to deference.  *See Morganroth*, 885 F.2d at 848; *Ethicon*, 849 F.2d at 1425; *see also ExxonMobil Mktg. Co. v. FERC*, 297 F.3d 1071, 1085 (D.C. Cir. 2002) ("We are generally unwilling to review line-drawing performed by the Commissioner, unless a petitioner can demonstrate that lines drawn are patently unreasonable, having no relationship to the regulatory problem." (cleaned up)).

USPTO's erroneous reading of that rule, which prohibited the applicant from correcting the mistakes he made. *See id.* at 1336. Not only is PCT Rule 91.1 not implicated here, but Plaintiffs have also not relied on any allegation that the USPTO is refusing to allow them to correct the correspondence address on their PCT application consistent with any PCT rule. And *Taylor* generally concerned MPEP § 2531, which requires the USPTO to notify an applicant about shortcomings with any submission of maintenance fees (e.g., insufficient payment) before deeming a patent as expired for failure to timely pay maintenance fees. *See* 339 F. App'x at 998. The Federal Circuit concluded that the USPTO acted arbitrarily and capriciously when it failed to do so. *See id.* This stands in contrast to the USPTO's conduct here. It mailed all communications concerning requisite fees to the correspondence address on the PCT application before declaring that the application was considered "withdrawn." In short, Plaintiffs have fallen well short of clearly showing that they are likely to succeed on the merits of their APA claims. While they perceive the USPTO's conduct to be unfair (despite not checking on the application for approximately 10 months), they have not adequately demonstrated how the agency's conduct is arbitrary, capricious, or otherwise not in accordance with the law.

## II.   Plaintiffs' Bald Speculation That Foreign Patent Offices Will Not Accept Their National Stage Patent Applications Does Not Constitute Irreparable Harm.

The extraordinary injunctive relief sought here cannot be predicated upon merely "a *possibility* of irreparable harm . . . ." *Winter*, 555 U.S. at 22 (emphasis added). There must be a "clear showing of irreparable harm" that is "both actual and immediate," meaning that such harm "must be neither remote nor speculative." *Stewart v. Lee*, 2016 WL 8317009, at *1 (E.D. Va. June 2, 2016) (Brinkema, J.) (cleaned up). Injuries, however substantial, in terms of lost "time, money and energy expended in the absence of an injunction [are] not enough to support a finding of irreparable harm." *Di Biase*, 872 F.3d at 235 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). And there can be no finding of irreparable harm if Plaintiffs "have not shown that they availed themselves of opportunities to avoid the injuries of which they now complain." *Id.* at 235 (4th Cir. 2017); *see also Provident Pharm., Inc. v.*

*Amneal Pharms., LLC*, 2008 WL 3843505, at *4 (E.D. Va. Aug. 15, 2008) (finding of irreparable harm improper if plaintiff "exacerbated its own condition" or if harm was "entirely avoidable" (citations and quotation marks omitted)).

Here, Plaintiffs have not made any clear showing of irreparable harm. Plaintiffs posit that if the USPTO does not temporarily remove the "withdrawn" designation from their PCT application then foreign patent offices will necessarily reject their national stage applications. *See* TRO Mem. at 22. In support, they primarily hang their hat on *two paragraphs* from the declaration of their patent prosecution counsel (their agent for their PCT application) who has allegedly spent 25 years prosecuting international and domestic patent applications. *See id.* (citing Greenspoon Decl. ¶¶ 9–10). In those paragraphs, counsel vaguely represents that he routinely consults with (an unknown number of) unnamed foreign patent counsel "to acquire knowledge about how the laws of foreign jurisdictions will operate under *hypothetical* scenarios, and how foreign patent offices will handle administrative details about attempted filings." Greenspoon Decl. ¶ 9 (emphasis added). From these mystery consultations, and based on his "professional judgment and opinion," he asserts in conclusory fashion that "a consequence of the USPTO not agreeing to temporarily vacate the 'considered withdrawn' finding is that foreign jurisdictions . . . will not accept for filing any attempted PCT 'national stage' filing." *Id.* ¶ 10. The alleged consequence is speculative at best. *See* TRO Mem. at 24 (only a "*possibility*" that their national stage applications will not be accepted (emphasis added)). As counsel admits, his opinion is based on merely contemplating "*hypothetical[s]*" about foreign patent law with unnamed and unidentified foreign patent attorneys. Greenspoon Decl. ¶ 9 (emphasis added). There is no evidence whatsoever that his opinion is accurate or that it is shared by those he routinely consults with.[17] *See, e.g., Hamrick v. Quinlin*, 956 F.2d 1162, 1992 WL 38159, at *1 (4th Cir. 1992) (table)

---

[17] There is also no evidence that if the USPTO temporarily vacates its "withdrawn" designation that

("conclusory statements insufficient to prove that [plaintiff] would suffer irreparable harm absent injunctive relief" (quotation marks omitted)); *see also S. J. Stile Assocs. Ltd. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981) ("A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great.").

That is possibly because PCT Article 25 provides a pathway for Plaintiffs to file their national stage applications in foreign jurisdictions, notwithstanding the USPTO's declaration that their application is considered "withdrawn." As Plaintiffs recognize, the plain language of PCT Article 25(2)(a) specifically allows them to litigate the propriety of the USPTO's conduct while prosecuting their national stage applications in foreign jurisdictions. *See* TRO Mem. at 22–23 (citing PCT Art. 25(2)(a)). Plaintiffs are dissatisfied with the relief afforded under PCT Article 25(2)(a). But their dissatisfaction does not amount to irreparable harm.

Plaintiffs conclusorily assert that some foreign jurisdictions where they intend to seek patent protection "do not grant Article 25 requests in practice." TRO Mem. at 23 (citing Greenspoon Decl. ¶¶ 9–10). Other than their patent prosecution counsel's say-so, there is no evidence that is accurate. *See Edmond v. Ozmint*, 2010 WL 476037, at *2 (D.S.C. Feb. 3, 2010) (irreparable harm cannot be predicated on self-serving statements). Even if the accusation were true that foreign jurisdictions are not abiding by the PCT, that is no basis for injunctive relief here as the USPTO is not causing the alleged irreparable harm. *Hunter Grp., Inc. v. Smith*, 164 F.3d 624, 1998 WL 682154, at *2 (4th Cir. 1998) (table) ("To satisfy its burden of proving irreparable injury, the plaintiff must demonstrate a

---

Plaintiffs will meet all other administrative requirements for filing proper national stage applications in foreign jurisdictions, and thus the injunctive relief would not remedy the alleged harm. *Hunter Grp., Inc. v. Smith*, 164 F.3d 624, 1998 WL 682154, at *2 (4th Cir. 1998) (table) ("[A] preliminary injunction will not issue unless it will remedy the alleged injuries." (citation omitted)); *see also Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 756 (D. Md. 2020), *appeal dismissed*, 2020 WL 6042036 (4th Cir. May 28, 2020). In other words, they have not shown that irreparable harm would cease after the issuance of injunctive relief.

causal connection between the alleged harm and the actions to be enjoined . . . ." (citation omitted)); *cf. Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). Instead, Plaintiffs should be pursuing judicial relief in those foreign jurisdictions against their allegedly rogue patent offices.

Plaintiffs complain that seeking Article 25 relief in every foreign jurisdiction where they intend to seek patent protection is "plainly unreasonable." TRO Mem. at 23 n.5. That is irrelevant. *See Di Biase*, 872 F.3d at 235 ("[T]ime, money and energy expended in the absence of an injunction [are] not enough to support a finding of irreparable harm." (citation omitted)).

Plaintiffs also suggest that the window within which to seek relief under Article 25(2)(a) has already closed as it was not sought within two months after the USPTO declared their PCT application "withdrawn." *See* TRO Mem. at 23. Preliminarily, this is not a correct interpretation of the time limit under Article 25. Specifically, the Article 25 time period is not a time limit for requesting review of the actions of the Receiving Offices, and requesting relief therefrom, by the national offices under the Article. Instead, the Article 25 time limit is simply the time period under which applicant may request that the WIPO forward copies of their files to the national offices. That said, the fact that Plaintiffs missed the Article 25 time limit is a problem of their own making. Plaintiffs' prosecution counsel had *25 years* of experience prosecuting international and domestic applications. Greenspoon Decl. ¶ 9. Part of his practice includes conducting "routine docket check[s]" for patent applications for which he was responsible. Compl. at 2. Given his familiarity with PCT applications and his practice of routinely checking dockets for those patent applications he was prosecuting, he at least should have known that the propriety of the filing of the PCT application was in jeopardy when several months passed and the filing fees had not been paid, and that there would be a limited opportunity to cure any defect. Self-inflicted or avoidable irreparable harm does not inure to Plaintiffs' benefit. *See HCI*

*Techs., Inc. v. Avaya, Inc.*, 446 F. Supp. 2d 518, 524 (E.D. Va. 2006) ("self-inflicted wounds do not constitute irreparable injury" (citation omitted)), *aff'd*, 241 F. App'x 115 (4th Cir. 2007); *see also Di Biase*, 872 F.3d at 235; *Provident Pharm.*, 2008 WL 3843505, at *4.[18]  In sum, Plaintiffs' cries of irreparable harm are too speculative to support the extraordinary remedy of a preliminary injunction.

## III.   Neither the Balance of Equities Nor the Public Interest Favors an Injunction.

Extraordinary injunctive relief also requires a clear showing "that the balance of equities tips in . . . favor [of an injunction], and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Because the government's interest is the public interest, these last two factors merge.[19]  *See Nken*, 556 U.S. at 434; *Aslanturk*, 459 F. Supp. 3d at 700.

---

[18]  Relatedly, Plaintiffs cannot clearly show irreparable harm as there is a remedy besides an injunction for their prosecution counsel's lack of diligence. *E.g.*, *United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) (explaining that availability of relief other than an injunction negates a finding of irreparable harm).  They may pursue a malpractice action and receive damages against their counsel. *See, e.g.*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 & n.10 (1962); *Singhal v. Mentor Graphics Corp.*, 328 F. App'x 648, 650 (Fed. Cir. 2009) ("A litigant is bound by the 'acts or omissions' of his chosen lawyer." (quoting *Link*, 370 U.S. at 633–34)); *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 576–77 (4th Cir. 1973) (explaining that if harm is inflicted upon a client by an attorney, the client's remedy is a malpractice action); *Ranjha v. Dep't of Homeland Sec.*, 2011 WL 2311866, at *5 n.5 (E.D. Va. June 7, 2011) (Brinkema, J.) (similar). To be sure, this is an uncomfortable path to trek down, but Plaintiffs have not shown why damages from a malpractice suit could not adequately address their alleged harm. *See, e.g.*, *Minn. Laws. Mut., Ins. Co. v. Protostorm*, LLC, 197 F. Supp. 3d 876, 881 (E.D. Va. 2016) (in an insurance case, describing an underlying legal malpractice suit against patent prosecution counsel for negligent abandonment of PCT application that resulted in almost $7 million of damages), *aff'd*, 703 F. App'x 208 (4th Cir. 2017).  As the Federal Circuit has observed, the USPTO does not bear the burden of providing relief to a disappointed client when a malpractice action against an attorney is the appropriate remedy.  *Japanese Found.*, 773 F.3d at 1309 n.6.

[19]  The balance of equities cannot tip in Plaintiffs' favor as their prosecution counsel with 25 years of experience should have known that, once the PCT application was submitted without the filing fees, there would be a looming deadline in which to pay those fees, *see* PCT Rule 16bis.1(c)(i); PCT Art. 14(3)(a); 35 U.S.C. §§ 361(b), 364(a); 37 C.F.R. §§ 1.431(c), (d), especially when he was conducting "routine docket check[s]" of his cases, Compl. at 2.  No reason is even proffered as to why the filing fees did not accompany the filing of the international application initially.  To grant injunctive relief here would suggest that lack of diligence may be excused. *See, e.g.*, *Galaton v. Johnson*, 2011 WL 9688271, at *2 (E.D.N.C. Aug. 17, 2011) ("Equity need not and will not provide a balm for [plaintiff's] self-inflicted wound.").

Here, as an initial matter, because Plaintiffs have not established a likelihood of success on the merits or irreparable harm, injunctive relief is not in the public interest.  *See Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 205 (4th Cir. 2019); *Di Biase*, 872 F.3d at 236.  Moreover, Plaintiffs' allegedly tenuous standing before foreign patent offices is merely a consequence that follows from the USPTO's enforcement of the PCT (through the Patent Act and implementing regulations), and enforcement of the law is in the public interest.  *See Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008) (preliminary injunction would not issue against USPTO because "there is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce" (citation omitted)), *aff'd*, 330 F. App'x 919 (Fed. Cir. 2009).  Put differently, the Court should refrain from issuing an injunction so that the USPTO can continue to uphold the PCT.  *See Peterson v. Nat'l Telecomm'cns & Info. Admin.*, 505 F. Supp. 2d 313, 319 (E.D. Va. 2006) (denying preliminary injunction in part because it would "harm the United States's ability to abide by its treaties", i.e., "prevent the United States from complying with these treaties").

Plaintiffs insist that without injunctive relief there is a "*possibility*" that foreign patent offices will not accept their national stage applications.  TRO Mem. at 24 (emphasis added).  Notwithstanding that this harm is speculative, Plaintiffs have not explained how the public interest is advanced by the USPTO's temporary removal of the "withdrawn" designation from their PCT application.  Failing to clearly show that preliminary injunctive relief would serve the public interest, Plaintiffs are not entitled to this extraordinary remedy.

## CONCLUSION

For the foregoing reasons, the USPTO respectfully requests that this Court deny the motion for a TRO and preliminary injunction.

Dated: May 28, 2021

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By: _____/s/_____
HUGHAM CHAN
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3743
Fax:    (703) 299-3983
Email:  hugham.chan@usdoj.gov

*Counsel for Defendant*

*Of Counsel:*
Daniel Kazhdan
Benjamin T. Hickman
Associate Solicitors, USPTO