IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HINTS, INC., et al.,       )
                           )
    Plaintiffs,           )
                           )
v.                         )   1:21-cv-573 (LMB/IDD)
                           )
ANDREW HIRSHFELD, in his Official )
    Capacity Performing the Functions and )
    Duties of the Director of the United States )
    Patent and Trademark Office, )
                           )
    Defendant.            )

## MEMORANDUM OPINION

In this civil action, plaintiffs Hints, Inc. ("Hints") and Elan Pavlov ("Dr. Pavlov") claim that defendant Andrew Hirshfeld, in his official capacity as the Acting Director of the United States Patent and Trademark Office ("USPTO"), violated § 706(2) of the Administrative Procedure Act ("APA") by declaring their international patent application "withdrawn" and dismissing their petitions to reinstate it. Before the Court are the parties' cross-motions for summary judgment. The motions have been fully briefed, and oral argument has been held. For the following reasons, plaintiffs' Motion for Summary Judgment [Dkt. No. 28] and defendant's Motion for Summary Judgment [Dkt. No. 31] will be granted in part and denied in part.

I.

A.

The Patent Cooperation Treaty ("PCT") is "an international agreement allowing inventors to streamline the process of obtaining patent rights across multiple member nations." Helfgott & Karas, P.C. v. Dickinson, 209 F.3d 1328, 1330 (Fed. Cir. 2000). By using the PCT, a "U.S.

applicant [can] file one application, 'an international application,' in a standardized format in English in the U.S. Receiving Office (the U.S. Patent and Trademark Office), and have that application acknowledged as a regular national or regional filing in as many Contracting States to the PCT as the applicant 'designates,' i.e., names, as countries or regions in which patent protection is desired." Manual of Patent Examining Procedure ("MPEP") § 1801 (9th ed. 2020).[1]

An international application is composed of "a request, a description, one or more claims, one or more drawings (where required), and an abstract." PCT art. 3(2). The "Request" is the face of the application; it "requests that the present international application be processed according to the [PCT]." A31;[2] accord PCT Admin. Instruction 207(a). During what is known as the "international phase" of the PCT process, the Receiving Office processes the application and collects initial fees. See 35 U.S.C. §§ 361-62. Generally, initial fees must be paid within one month of an application being filed. See PCT Rule 14.1(c).[3] If the Receiving Office does not receive payment within thirty days, it will notify the applicant that the fees, along with a late fee, must be paid within one month of the notice. See PCT Rule 16bis.1(a). If the applicant fails to pay the fees after that notice, the Receiving Office will declare the application "considered

---

[1] "The MPEP is commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters," and "[a]lthough the MPEP does not have the force of law, it is entitled to judicial notice 'so far as it is an official interpretation of statutes or regulations with which it is not in conflict.'" Airbus S.A.S. v. Firepass Corp., 793 F.3d 1376, 1380 (Fed. Cir. 2015) (quoting Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1439 (Fed. Cir. 1984), abrogated on other grounds by Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992)).

[2] All record citations beginning with "A" refer to the "Administrative Record," which is available at docket entry 27-1.

[3] "The rules issued under the PCT are . . . legally binding on the [USPTO]." Actelion Pharms. LTD. v. Lee, 216 F. Supp. 3d 680, 682 (E.D. Va. 2016), aff'd, 881 F.3d 1339 (Fed. Cir. 2018).

2

withdrawn" and send a notice of that declaration to the applicant. See, e.g., PCT art. 14(3)(a); PCT Rule 16bis.1(c).

After fulfilling all initial documentary and fee requirements, but no later than 30 months after the earliest priority date,[4] the applicant can enter the "national phase" of the PCT process, during which the contracting states designated by the applicant will determine whether to grant the application on the basis of their own national laws. 35 U.S.C. § 371(b); PCT art. 22(1); World Intell. Prop. Org., PCT Applicant's Guide—International Phase Ch. 3 (2022).

B.

The following facts are uncontested.

Dr. Pavlov invented a process called the "Human Interaction News Trust System," or "HINTS," to detect online misinformation and fake news. A4-5. On November 14, 2019, Dr. Pavlov and his company, Hints, Inc., through experienced patent counsel, filed an application with the USPTO to patent HINTS pursuant to the PCT. [Dkt. No. 29] at ¶¶ 1-2; A26-28. Clifford Kraft ("Kraft"), an attorney with decades of experience preparing patent applications, was responsible for filing plaintiffs' PCT Application, No. PCT/US2019/061456 ("the '456 Application"). A107; [Dkt. No. 29] at ¶¶ 11-12. Kraft worked for plaintiffs' patent agent, attorney Robert Greenspoon ("Greenspoon"). A107. When Kraft filed the '456 Application, "he was dealing with a number of personal issues, including caring for his elderly wife who was suffering from dementia." [Dkt. No. 29] at ¶ 12. On the Request form, Kraft indicated that plaintiffs appointed Greenspoon as their patent agent, which meant that all correspondence regarding the application should be directed to Greenspoon. See PCT Instruction 108(b); 37

---

[4] A PCT applicant may claim priority to the filing date of an earlier application. See PCT Rule 4.10(a).

C.F.R. § 1.455(d). Although Greenspoon's mailing address was 333 N. Michigan Ave., Kraft accidentally indicated on the Request form that it was 33 N. Michigan Ave.—an address that does not exist. [Dkt. No. 29] at ¶ 10; A31. Just about everything else on the Request was accurate, including the agent's name, telephone number, fax number, and "registration number," which was indexed to a USPTO file containing the correct 333 N. Michigan Ave. address. [Dkt. No. 29] at 1; [Dkt. No. 29-1] at 17:12-16. The relevant portion of the request form is reproduced below:

| Box No. IV | AGENT OR COMMON REPRESENTATIVE; OR ADDRESS FOR CORRESPONDENCE | | |
|---|---|---|---|
| The person identified below is hereby/has been appointed to act on behalf of the applicant(s) before the competent International Authorities as: | | ☒ agent | ☐ common representative |
| Name and address: *(Family name followed by given name; for a legal entity, full official designation. The address must include postal code and name of country.)*<br>GREENSPOON, Robert P.<br>c/o Flachsbart & Greenspoon LLC<br>33 N. Michigan Ave.<br>Chicago, IL 60601<br>~~USA~~ US | | Telephone No.<br>+1 312 551-9500 | |
| | | Facsimile No.<br>+1 312 551 9501 | |
| | | Agent's registration No. with the Office<br>40,004 | |

A31.

Because Kraft submitted the application online through the USPTO's Electronic Filing Service ("EFS") portal, he also had to provide Greenspoon's contact information separately from the Request. [Dkt. No. 29] at ¶ 13. This information included a "Correspondence Address," a "Customer Number" indexed to a mailing address, a telephone number, and an email address. Id. Kraft typed the correct information in these data fields, including the correct 333 N. Michigan Ave. address. Id. After filing the '456 application, Kraft received the following electronic filing receipt from the USPTO, which used Greenspoon's correct mailing address.

| Customer Number: | 93344 |
|---|---|
| Correspondence Address: | Robert Greenspoon<br>Cliffrd kraft<br>333 N. Michigan Ave<br>-<br>chicago    IL    60601<br>US    312 551-9500<br>rpg@fg-law.com |

A26.

Kraft did not include the filing fees when he submitted the '456 application. A70. Accordingly, on November 29, 2019, the USPTO mailed a "Notification Concerning Payment of Prescribed Fees" to the address on the Request form—the incorrect 33 N. Michigan Ave. address. Id.; A35. The U.S. Postal Service returned the notification to the USPTO with the indication, "RETURN TO SENDER / NO SUCH NUMBER / UNABLE TO FORWARD." A43. Because Greenspoon had not received the fee notice, he did not tender the fees. Id.; A71. As a result, on January 13, 2020, the USPTO sent a second and final notice of delinquent payment to the same incorrect address. A52. Plaintiffs, of course, did not receive the second notice, and the U.S. Postal Service again returned the letter to the USPTO with the statement, "RETURN TO SENDER / NO SUCH NUMBER / UNABLE TO FORWARD." A54. On February 26, 2020, rather than making any effort to determine whether it had a correct address in its records, the USPTO declared the '456 application "considered withdrawn" and mailed a "Notification that International Application Considered to Be Withdrawn" to the incorrect 33 N. Michigan Ave. address. A57. Neither party asserts that the USPTO attempted to contact plaintiffs by other means or determine why the notifications were returned as undelivered.

It was not until "late 2020" when Kraft checked the file himself and discovered that the '456 Application had been withdrawn. [Dkt. No. 29] at ¶ 22. Kraft immediately filed a petition

to reinstate the application. That petition was submitted on December 15, 2020, using a form provided by the USPTO titled "Petition for Revival of an International (PCT) Application for Patent Designating the U.S. Abandoned Unintentionally under 37 CFR 1.137(a)" ("First Petition").[5] A60-62. The petition included all required fees. A68. On January 1, 2021, USPTO Attorney-Advisor Derek Putonen ("Putonen") dismissed plaintiffs' First Petition without prejudice, finding that "there is no mechanism within the PCT to reinstate an international application that is considered withdrawn for failure to timely pay the required fees, regardless of whether the failure to timely pay the fees was unintentional." A70-72. The USPTO mailed a copy of this decision to the correct 333 N. Michigan Ave. address and refunded the filing fee. Id.

On January 27, 2021, plaintiffs filed a second petition, this one called a "Request for Reconsideration and Petition under 37 CFR 1.181 to Withdraw Holding of Abandonment and Withdrawal and to Revive Unintentionally Withdrawn PCT International Application" ("Second Petition").[6] A88. Again, the petition included all required fees. Id. On February 26, 2021, the same USPTO attorney-advisor dismissed plaintiffs' Second Petition. A159-162. In doing so, Putonen recognized that his previous decision was erroneous (he characterizes it as merely "inarticulate") because the PCT does allow for reinstatement of a withdrawn international application when the applicant never received the late payment notices. A160. That reinstatement mechanism is found in 37 C.F.R. § 1.181, not in 37 C.F.R. § 1.137(a). Id. Although 37 C.F.R. § 1.181 does not define "appropriate circumstances," Putonen concluded

---

[5] Section 1.137(a) provides that "[i]f the delay in reply by applicant or patent owner was unintentional, a petition may be filed pursuant to this section to revive an abandoned application . . . ." 37 C.F.R. § 1.137(a).

[6] Section 1.181(a) states, in relevant part, that a "[p]etition may be taken to the Director" of the USPTO "[t]o invoke the supervisory authority of the Director in appropriate circumstances." 37 C.F.R. § 1.181(a).

that relief was proper under § 1.181 only if the USPTO had failed to mail the relevant notices to the "correct official correspondence address of record," which the USPTO considered to be the address on the face of the Request. A160-61. He therefore concluded that because the USPTO mailed the forms to that address, the forms were "properly mailed" and plaintiffs' petition for relief under § 1.181 was dismissed. A161.

On March 17, 2021, plaintiffs filed their third and final petition, titled as a "Request for Final Agency Action, and Renewed Petition Under 37 C.F.R. 1.137(a), 1.181, 1.182 and 1.183"[7] ("Third Petition"). A163. On May 6, 2021, before the USPTO could respond, plaintiffs filed the two-count Complaint pending before the Court, in which they claim that the USPTO's denials of plaintiffs' petitions were contrary to law (Count I) and arbitrary and capricious (Count II) in violation of the APA. [Dkt. No. 1] at 21. On June 4, 2021, the Court granted plaintiffs' request for a preliminary injunction and ordered the defendant to vacate the "considered withdrawn" declaration and restore the status of the '456 application to "pending."[8] [Dkt. No. 19].

On July 15, 2021, the same USPTO Attorney-Advisor who dismissed plaintiffs' first two petitions issued an 11-page decision dismissing plaintiffs' Third Petition. A217-27. The decision found, in relevant part, that relief was not warranted under § 1.181 because plaintiffs were at fault for not receiving the past-due notifications, and plaintiffs had "not cited any instances where the Office granted relief based on a showing of nonreceipt where the reason for

---

[7] Section 1.182 states that "[a]ll situations not specifically provided for in the regulations of this part will be decided in accordance with the merits of each situation by or under the authority of the Director . . . ." 37 C.F.R. § 1.182. Section 1.183 provides, "[i]n an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director . . . ." 37 C.F.R. § 1.183.

[8] Without the preliminary injunction, plaintiffs would not have been able to proceed into the "national phase" on time and their application would have been precluded from being examined by foreign patent offices.

nonreceipt was because applicant provided an invalid address as the correspondence address . . . ." A224-27. It is against this record that the parties filed cross-motions for summary judgment.

## II.

"[I]n an APA agency review case, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA.'" Hyatt v. U.S. Patent & Trademark Off., 146 F. Supp. 3d 771, 780 (E.D. Va. 2015) (quoting Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). Under the APA, a court may set aside an agency's final action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 704; id. § 706(2)(A). Compliance with § 706(2)(A) requires the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Casa de Md. v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 703 (4th Cir. 2019) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). For an explanation to be satisfactory, the agency must "provide[] 'enough clarity that its path may reasonably be discerned.'" Id. (quoting Jimenez-Cedillo v. Sessions, 885 F.3d 292, 297 (4th Cir. 2018)). It must also account for inconsistencies in agency policy, because "[a]n 'unexplained inconsistency' in agency policy indicates that the agency's action is arbitrary and capricious, and therefore unlawful." Id. (quoting Jimenez-Cedillo, 885 F.3d at 298). Although judicial review under this standard is "highly deferential," a court must nonetheless "engage in a searching and careful inquiry of the [administrative] record, so that [it] may consider whether the agency considered the relevant factors and whether a clear

8

error of judgment was made." Id. (quoting Friends of Back Bay v. U.S. Army Corps of Eng'rs, 681 F.3d 581, 587 (4th Cir. 2012)).

III.

A.

As Judge Clevenger observed in Helfgott & Karas, P.C. v. Dickinson, "[t]he circumstances of this case should give pause to those who engage in the complex yet crucial administrative process known as patent prosecution before the United States Patent and Trademark Office . . . ." 209 F.3d at 1330. Judge Clevenger's observations apply directly to the issues before this Court:

> Mistakes are inevitable, much as all those involved try to minimize their possibility. Even if total elimination of mistakes is an illusory goal, their reasonable mitigation should not be. Sound judgment, flexibility, and the careful following of considered processes are critical to ensuring that small mistakes do not become large ones, and that mistakes of form do not overwhelm the correctness of substance. Unfortunately, in this case, at least some of these elements were lacking from both parties to this dispute, leaving it to us to ascertain error, and assign responsibility for it.

Id. So too here, elements of "[s]ound judgment, flexibility, and the careful following of considered processes" were lacking. The Court recognizes that the '456 Application contained a typographical error, and that as experienced patent attorneys, Kraft and Greenspoon should have known that a filing fee would be due shortly after the application was filed. Moreover, it appears that Greenspoon's law firm did not have an adequate system in place to track the application's status. If there had been a system, the firm should have recognized that the fees were overdue. On the other hand, attorneys are human, and it is uncontested that Kraft was undergoing significant personal burdens when he left one number off Greenspoon's mailing address.

The record also shows that defendant was persistently inflexible and unforgiving. The USPTO withdrew the '456 Application despite twice being placed on clear notice by the U.S.

9

Postal Service that "NO SUCH NUMBER" existed, which meant that the USPTO was also on clear notice that the applicant had not received the past-due notices. Despite the ease with which it could have contacted plaintiffs or their agent by other means, as they had done at least with domestic patent applications, the USPTO chose not to in this case. For example, a 2017 USPTO decision cited by plaintiffs, In re Application of Hidetoshi Suzuki, stated that after an Office action was returned to the USPTO as undeliverable "due to a miscommunication of the correspondence address," the "examiner alerted the applicant to this via a telephone conversation." [Dkt. No. 29-5] at 3.

Although the Court must examine each summary judgment motion "separately on its own merits," Wingate v. Fulford, 987 F.3d 299, 304 (4th Cir. 2021) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)), both motions boil down to the same two issues: whether the USPTO acted arbitrarily, capriciously, or contrary to law (1) by declaring plaintiffs' application "considered withdrawn" after the required fees were not paid, and (2) by denying plaintiffs' subsequent petitions to reinstate the application after the fees and penalties were tendered.

As to the first issue, although there were multiple means by which the USPTO could have found the correct address, including checking the agent's registration number or customer number, both of which were on file with defendant and indexed to the correct address, defendant did not violate the APA by initially declaring the application withdrawn after no fees were paid. To establish this violation, plaintiffs needed to identify a law or past practice requiring the USPTO, when notified that the correspondence address provided by a PCT applicant on the Receipt did not exist, to attempt to find a correct address within its records and re-mail notices to that address. Plaintiffs have failed to make that showing. They have not identified any such law

or regulation, and the only example of a past practice was not in the context of the PCT application process, which has some unique procedural elements and may be treated differently from domestic patent applications. Because the applicable law clearly provides for the withdrawal of an application when the required fees have not been timely paid, the defendant's withdrawal of the plaintiffs' application did not violate the APA. See PCT art. 14(3)(a); 37 C.F.R. § 1.431(d). Therefore, as to this issue, plaintiffs' motion for summary judgment will be denied and the defendant's will be granted.

On the other hand, as to the second issue, defendant's final agency action dismissing plaintiffs' Third Petition was arbitrary and capricious because it departed, without adequate notice to the applicants, from a past practice of vacating withdrawals of PCT applications when the applicant unintentionally did not receive the past-due notices but later tendered all required late fees and penalties with a request for reinstatement of the application under § 1.181.

B.

Despite a paucity of either agency or court decisions on this issue, plaintiffs have shown that before they filed their petitions, the USPTO had granted relief under § 1.181 to at least three PCT applicants seeking cancellation of withdrawals when the applicant simply showed they had not received the past-due notices. For example, in In re Application of Custom Care Products, Inc., the applicant filed a PCT application in March 2006 and did not include the filing fees. A194. The USPTO mailed a "Notification Concerning Prescribed Fees" in April 2006, which went unanswered. Id. The following month, the USPTO sent a second notice, titled "Invitation to Pay Prescribed Fees Together with Late Payment Fee," which also went unanswered. Id. Accordingly, in July 2006, the USPTO declared the PCT application withdrawn and mailed the applicant a notice of the withdrawal. Id. In September 2007—14 months later—the applicant filed a petition under § 1.181 to "revive" the withdrawn application on the ground that he had not

11

received the past-due notices. Id. The petition was granted that same month because the applicant made what the USPTO characterized as the required showing: "(1) a statement by the practitioner that the Office action was not received by the practitioner; (2) a statement attesting that a search of the file jacket and docket records indicates that the Office action was not received; and (3) a copy of the docket record where the non-received Office action would have been entered had it been received . . . ." Id. The USPTO did not consider any other factor.

Custom Care Products, Inc. is not an anomaly. The USPTO utilized the same three-element framework in In re Application of Yissum Research Development Company of the Henbrew [sic] University of Jerusalem and In re Application of Chevron U.S.A., Inc., both of which the USPTO also decided in 2007. A197-203. In each example, the applicant filed a PCT application without paying the filing fee, claimed it did not receive the USPTO's two reminders to pay the fee, and therefore had its application "considered withdrawn." Id. When the applicants filed petitions under § 1.181 to reinstate the applications and tendered the required fees and penalties, the USPTO reinstated the applications. Id. In doing so, the USPTO applied the same three elements and cited § 711.03(c) of the MPEP as the source of those elements.[9] Id. Consequently, in each of these three examples, upon receiving adequate proof that applicants did not receive past-due notices, the USPTO reinstated the PCT application pursuant to § 1.181 once all fees and penalties were paid. Because defendant has not cited any decisions dismissing similar petitions, there is no evidence in this record that these three decisions from 2007 represent a past practice that the USPTO has since abandoned.

---

[9] To the extent defendant argues MPEP § 711.03(c) "has no bearing on an international application that was considered withdrawn," that argument is flatly contradicted by the USPTO's reliance on § 711.03(c) in Custom Care Products, Inc., Yissum Research Development Co., and Chevron U.S.A., Inc.

The facts in plaintiffs' case are not just similar to the facts in those three examples, they are more compelling. Like the applicants in <u>Custom Care Products, Inc.</u>, <u>Yissum Research Development Co.</u>, and <u>Chevron U.S.A., Inc.</u>, plaintiffs filed a PCT application, did not receive the past-due notices, and after the application was "considered withdrawn," filed a petition for its reinstatement and tendered the required fees and penalties. But while the applicants in those three decisions had to provide documentation to prove that they did not receive the notifications, the proof of nonreceipt here was indisputable, given that the U.S. Postal Service returned both notices to the USPTO as undelivered. In other words, there was no risk of fraud here because there was absolutely no question that plaintiffs' agent did not receive the notices. In addition, although plaintiffs' attorney and agent did not supervise the application diligently, they still filed a petition to reinstate the application sooner than the applicant did in <u>Custom Care Products, Inc.</u> In that case, the applicant took 14 months to request that the withdrawal be vacated, whereas plaintiffs here filed their first petition fewer than 10 months after they realized their application had been withdrawn.

Despite these previous decisions, the MPEP guidance, and the failure to cite any decisions using a fault-based standard, the USPTO dismissed plaintiffs' § 1.181 petitions using an entirely different standard. According to defendant, it was not enough that plaintiffs had indisputably not received the forms. See, e.g., A160 (USPTO admitting "it is clear that applicant did not receive the forms"). Defendant looked beyond the question of "whether" the documents were received and instead considered "why" they were not received. In essence, the USPTO dismissed plaintiffs' § 1.181 petitions on the new ground of applicant error. Specifically, the USPTO defined "[t]he issue at hand" in the February 26, 2021, decision as whether the USPTO mailed the forms to the address the applicant provided. A160-61. Because the USPTO had

13

determined that it had "properly mailed" the forms, it found that plaintiffs were at fault for not receiving the notices and therefore denied relief. A161. The USPTO made this fault-based distinction explicit in the July 15, 2021, decision—the final agency action—in which it stated that plaintiffs "ha[d] not cited any instances where the Office granted relief based on a showing of nonreceipt <u>where the reason for nonreceipt</u> was because applicant provided an invalid address as the correspondence address." A226 (emphasis added).

It is unclear where the fault-based standard came from, as neither the February 26, 2021, decision nor the July 15, 2021, decision cites to any previous case in which that standard was used nor any statute or regulation that provides for it. Even so, defendant argues that the Court is bound to uphold its decision so long as "the record reveals that a rational basis exists for its decision," <u>Manufactured Hous. Inst. v. EPA</u>, 467 F.3d 391, 398 (4th Cir. 2006) (quoting <u>Nat. Res. Def. Council v. EPA</u>, 16 F.3d 1395, 1401 (4th Cir. 1993)); however, that rational basis must be "articulated by the agency itself." <u>Casa de Md.</u>, 924 F.3d at 703 (quoting <u>State Farm</u>, 463 U.S. at 50).

The July 15, 2021, decision can be read as offering three justifications for the fault-based standard, none of which provides a rational basis for it. First, the USPTO considered plaintiffs' case factually distinguishable from <u>Custom Care Products, Inc.</u>, <u>Yissum Research Development Co.</u>, and <u>Chevron U.S.A., Inc.</u> The USPTO reasoned that the applicants in the three prior decisions were not at fault for their non-receipt because "the correct correspondence address was listed" on the PCT Request form, whereas here, plaintiff provided an incorrect correspondence address on the PCT Request form.[10] A225-26. Of course, that reasoning does not rule out the

---

[10] Although those three prior decisions do not explain why the applicants did not receive the notices, defendant speculates that the notices did not reach the intended address in those cases either because "the USPTO inadvertently sen[t] the correspondence to an address other than the

14

possibility that the applicants in those three decisions received the notices but chose not to respond to them, which cannot be true in plaintiffs' case. Moreover, this factual distinction—that those applicants listed the correct address on the Request, whereas plaintiffs did not—does not preclude the legal standard applied in those decisions from applying to the circumstances presented here, and nothing in those three decisions nor in the MPEP § 711.03(c) suggests limiting relief to cases where the applicant was not at fault.[11]

Second, the USPTO provided a policy justification. Specifically, the USPTO's decision explained that providing an incorrect address should have consequences because it "could be used as a tactic by applicants to delay having to pay application fees, to provide additional 'bites at that apple' to amend applications in national applications that are not available to applicants providing a correct address, and to extend patent term[s]." A224-25. This concern about fraud is legitimate; however, it is clearly inapplicable given the uncontested facts that Kraft was distracted when he filled out the application and, despite those distractions, indicated the correct address on all the other filings which called for the applicants' agent's address. It is also significant that the USPTO does not accuse plaintiffs of attempting to take advantage of any fraudulent "tactics" about which it is concerned. Accordingly, the policy concerns underlying a fault-based standard are inapplicable.

---

one identified on the PCT application" or "postal service irregularities caus[ed] the correspondence to not have been received (or timely received) by the applicants." [Dkt. No. 32] at 32.

[11] The July 15, 2021, decision also states that plaintiffs did not make the showing required under Delgar Inc. v. Schuyler, 172 USPQ 513 (D.D.C. 1971), because they did not "include a statement from the practitioner describing the system used for recording an Office action received at the correspondence address of record with the USPTO." A225. That factor is irrelevant here because it is uncontestable that plaintiffs did not receive the past-due notices.

15

As to the third justification, the USPTO pointed out that plaintiffs did not present any decisions "where the Office granted relief . . . where the reason for nonreceipt was because applicant provided an invalid address." A226. Although that is an accurate description of what occurred during the administrative proceeding, plaintiffs were able to provide the Court with a recent USPTO decision which did exactly that. In <u>In re Application of Laforge Optical, Inc.</u>, decided on May 3, 2017, the USPTO "granted relief . . . where the reason for nonreceipt was because applicant provided an invalid address." [Dkt. No. 29-2]. Defendant objects that this decision was "<u>never raised</u> in any of [plaintiffs'] three petitions before the agency." Although that is true, the USPTO cannot reasonably claim that it was unaware of it, because it is one of the USPTO's own legal decisions, and a recent one at that, given that it was decided in 2017.

In <u>Laforge Optical</u>, the correspondence address on the PCT Request form listed "Richard Kurtz, One International Place, Boston Massachusetts 02110" as the applicant's agent when it should have provided "Greenberg Traurig, LLP" as the addressee, because Mr. Kurtz did not work in the Boston office. [Dkt. No. 29-2] at 6. As in plaintiffs' case, the agent had not paid the filing fee when the application was filed. <u>Id.</u> at 7. Consequently, the USPTO mailed him the notices about the unpaid fee; however, because there was no tenant named "Richard Kurtz" at the given address, the U.S. Postal Service returned the notices to the USPTO as undelivered. <u>Id.</u> Just as in plaintiffs' case, the USPTO withdrew the international application for failure to pay the fees, and the applicant filed a petition under 37 C.F.R. § 1.182 to reinstate it. <u>Id.</u> at 3-4. Initially, the USPTO dismissed the petition because the non-receipt was caused by "a failure by applicant's representative." <u>Id.</u> at 6, 8. If that decision had remained, it would have provided a rational basis for the USPTO's denial here; however, two months later, the USPTO vacated the denial because "[t]he fees ha[ve] been paid." <u>Id.</u> at 2. As a result of the vacatur, defendant has

16

had to admit that the USPTO had rescinded its "considered withdrawn" designation in a case where the plaintiff provided the USPTO with an incorrect correspondence address. [Dkt. No. 32] at 34 n.14.

At a minimum, defendant's dismissal of plaintiffs' § 1.181 petitions was arbitrary and capricious because defendant cannot explain why plaintiffs' petitions, each of which included the required delinquent fees and penalties, should have been treated any differently than the petition in Laforge Optical.[12] An "unexplained inconsistency" like this is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act." Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005); see also Mylan Pharms., Inc. v. FDA, 454 F.3d 270, 276 (4th Cir. 2006). Defendant's only argument is that there is no inconsistency because Laforge Optical's vacatur was "erroneous." [Dkt. No. 32] at 34 n.14. According to defendant, there is "no law" that allows the USPTO to rescind the "considered withdrawn" designation when the applicant causes the non-receipt; however, there is also nothing in this record that indicates either a law or regulation that requires the USPTO to deny a petition to vacate a withdrawal decision if the applicant inadvertently provided the wrong address. Accordingly, other than its disagreement with the decision, defendant has offered no basis on which to argue that Laforge Optical, a decision made within four years of the decision before the Court, is erroneous.

IV.

Accordingly, the Court finds that the USPTO acted arbitrarily and capriciously when it dismissed plaintiffs' petitions to reinstate their application under 37 C.F.R. § 1.181 (or §§ 1.182,

---

[12] Defendant admits that it is "irrelevant" that Laforge Optical concerned a § 1.182 petition, rather than a § 1.181 petition. [Dkt. No. 32] at 33 n.13.

1.183), and thereby violated the APA. The USPTO also failed to employ the "[s]ound judgment, flexibility, and . . . careful following of considered processes" that Judge Clevenger observed "are critical to ensuring that small mistakes do not become large ones, and that mistakes of form do not overwhelm the correctness of substance." Helfgott & Karas, P.C., 209 F.3d at 1330. For these reasons, plaintiffs' Motion for Summary Judgment [Dkt. No. 28] on this issue will be granted, and defendant's Motion for Summary Judgment [Dkt. No. 31] on this issue will be denied by an Order to be issued with this Memorandum Opinion, which will require the USPTO to render permanent its vacatur of the "considered withdrawn" finding and issue all necessary communications for this vacatur to have effect in all relevant international patenting jurisdictions.

Entered this 23rd day of March, 2022.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge